**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

PUBLISHERS CLEARING HOUSE LLC,

Debtor.

**NOT FOR PUBLICATION**

Case No. 25-10694 (MG)

## MEMORANDUM OPINION GRANTING SALE MOTION

Pending before the Court is the Motion of Publishers Clearing House LLC, as debtor and debtor-in-possession ("PCH" or the "Debtor"), in support of the Debtor's Motion for Entry of Orders *(I)(A) Approving Bidding Procedures in Connection With a Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof; (C) Establishing Certain Assumption and Assignment Procedures and Approving the Form and Manner of Notice Thereof; (D) Directing the Appointment of a Consumer Privacy Ombudsman;[1] and (E) Granting Related Relief; and (II)(A) Authorizing the Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances And Other Interests; and (B) Granting Related Relief* (the "Motion," ECF Doc. # 59) with respect to the second of two proposed orders (the "Sale Order," ECF Doc. # 59-2). The other proposed order (the "Bidding Procedures Order," ECF Doc. # 59-1), was granted by the Court on May 29, 2025 (ECF Doc. # 127). The Debtor subsequently filed a Notice of Successful Bidder and Next-Highest Bidder for the Debtor's Assets ("Auction Notice," ECF Doc. # 154), confirming that a virtual auction (the "Auction") was held on June 17, 2025, and that, after the bidding concluded,

---

[1]    This portion of the Motion was resolved via stipulation on May 15, 2025 via entry of the *Joint Stipulation and Agreed Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman* (the "Consumer Privacy Ombudsman Stipulation," ECF Doc. # 100).

the Debtor declared ARB Interactive, Inc. (the "Successful Bidder") as the winning bidder for

the Debtor's assets, and PCH Interactive, LLC as the next-highest bidder (the "Next-Highest

Bidder"). (Auction Notice ¶¶ 4, 6.) On June 27, 2025, the Debtor filed a revised proposed Sale

Order incorporating comments from the Successful Bidder and other parties in interest (the

"Revised Proposed Order," ECF Doc. # 174 at 4), the proposed Asset Purchase Agreement, by

and between the Debtor and the Successful Bidder (the "Asset Purchase Agreement," ECF Doc.

# 174 at 56), and the Declaration of J. Scott Victor in Support of Debtor's Motion for Entry of

Order (A) Authorizing the Sale of All or Substantially All of the Debtor's Assets Free and Clear

of Liens, Claims, Encumbrances and Other Interests; and (B) Granting Related Relief (the

"Victor Declaration," ECF Doc. # 174 at 143).

Also pending before the Court is the *Debtor's Notice Regarding Assumption and*

*Assignment of Executory Contracts and Unexpired Leases and Establishment of Cure Claims*

*Bar Date for Non-Debtor Counterparties to Executory Contracts and Unexpired Leases*, filed on

June 13, 2025 (the "Assumption and Assignment Notice," ECF Doc. # 146). Cigna Health and

Life Insurance Company ("Cigna") filed an Objection to the Assumption and Assignment Notice

on June 20, 2025 (the "Assumption and Assignment Objection," ECF Doc. # 155). On June 27,

2025, counsel for the Debtor advised that the Cigna Assumption and Assignment Objection has

been resolved. (Revised Proposed Order ¶ 39.)

The Court held a hearing on the Motion (the "Sale Hearing") on June 30, 2025; the

Debtor indicated that it intends to submit a further revised proposed order following the Sale

Hearing. For the reasons stated below, the Court **GRANTS** the Motion. A separate Order will

be entered.

## I.    BACKGROUND

### A.  Case Background

The Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition", ECF Doc. # 1) in the above-captioned action (the "Chapter 11 Case") on April 9, 2025 (the "Petition Date").  The Debtor is a sweepstakes company which initially experienced growth fueled by direct mail magazine offerings, TV commercials, and diversified product offerings; today, PCH principally offers free-to-play, chance-to-win digital games and entertainment across a network of web- and app-based entertainment platforms.  (*See* First-Day Declaration of William H. Henrich, or the "Henrich Declaration," ¶¶ 20, 30, ECF Doc. # 1.)  In the years leading up to the filing of the Petition, the Debtor experienced increasing financial headwinds due to changing consumer behavior, costs, and competition, as well as the COVID-19 pandemic and various legal and regulatory challenges.  (Henrich Declaration ¶¶ 28–36.)

On May 2, 2025, the Court entered an order (the "Final DIP Order," ECF Doc. # 61), approving on a final basis the Debtor's entry into a post-petition senior secured receivables purchase financing facility with Prestige Capital Finance, LLC (the "DIP Factor").  Pursuant to the Final DIP Order and the DIP PSA (as defined in the Final DIP Order), the DIP Factor purchased certain of the Debtor's accounts receivable.  (Final DIP Order ¶ 3.)  The Debtor's obligations under the DIP PSA are secured by first-priority liens on and security interests in all assets of the Debtor, subject to the Carve-Out (as defined in the Final DIP Order) (the "DIP Liens").  (Final DIP Order ¶¶ 9–11.)  The DIP PSA provides that the DIP Factor:

> shall be paid in full at closing of any sale of substantially all assets of Seller's [the Debtor's] business, but upon a sale of a portion of the Collateral (excluding the purchased Accounts), the liens of Prestige shall attach to the proceeds of sale in the order of their priority, provided that 25% of such proceeds shall be remitted to Prestige to be held as cash collateral in favor of Prestige pursuant to a cash collateral agreement/addendum in form reasonably satisfactory to Prestige.

(Addendum to DIP PSA § 3.3.)

## B.  The Sale and Marketing Process

On February 9, 2025, prior to the Petition Date, the Debtor retained SSG Advisors, LLC ("SSG") as its exclusive investment banker, to advise and assist the Debtor with a potential sale, financing or other restructuring transaction.  (Motion ¶ 10.)  The Debtor reported that SSG had engaged with "multiple interested parties," subject to confidentiality agreements, with respect to a "potential transaction, including a sale of all or a portion of the Debtor's assets, including its valuable intellectual property."  (*Id.*)  The Debtor determined, after consultation with SSG and its other advisors, that a Court-approved auction and sale process for the sale of PCH's assets, free and clear of any liens, claims and encumbrances, would facilitate a value-maximizing transaction in the best interests of the Debtor and its estate.  (*Id.* ¶ 13.)

Pursuant to the Notice of Auction, with the assistance of SSG, the Debtor qualified three bidders (the "Bidders") in accordance with the Bidding Procedures to participate in the Auction on June 17, 2025.  (Notice of Auction ¶¶ 2–3.)  Following the conclusion of bidding, the Debtor declared ARB Interactive, Inc. as the Successful Bidder since it submitted the highest and best bid during the Auction consisting of a purchase price of (i) $7,100,000 in cash, plus (ii) approximately $378,096.75 in cure costs related to contracts that the Successful Bidder seeks to have assumed and assigned to it under section 365 of the Bankruptcy Code, plus (iii) the assumption of certain prize winner liabilities.  (*Id.* ¶ 4.)

## C.  Assumption and Assignment Procedures

The Debtor also previously sought authority to assume and assign to any Successful Bidder, the Assumed Contracts in accordance with the Assumption and Assignment Procedures set forth in the Assumption and Assignment Notice attached to the Bidding Procedures Order as

Schedule 3.  (*Id.* ¶ 32.)  To effectuate the assumption and assignment process, the Debtor

proposed to serve the Assumption and Assignment Notice on the non-debtor parties to the

Assumed Contracts regarding the potential assumption and assignment of the Assumed

Contracts, no later than five days before the objection deadline in connection with the Sale

Hearing.  (*Id.* ¶ 33.)  The list of Assumed Contracts attached to the Assumption and Assignment

Notice would contain all of the Debtor's executory contracts that may be sought to be assumed

by a Qualified Bidder, subject to amendments by the Debtor, and shall set forth (a) the name and

address of the counterparties to the executory contracts proposed to be assumed and assigned to

any potential Successful Bidder or its designee; (b) the nature of the executory contract; and (c)

the amount of any cure costs that the Debtor believes to be due and owing (the "Cure Amount").

(*Id.*)  The Successful Bidder is responsible for paying cure costs, if any, under any Assumed

Contracts that are ultimately assumed and assigned to the Successful Bidder.  (*Id.* ¶ 34.)  Any

non-debtor party who objects to its Cure Amount set forth in the Assumption and Assignment

Notice was required to file an objection to the Cure Amount with the Court and serve the

objection upon counsel for the Debtors and the U.S. Trustee; the objection must state with

specificity the nature of the objection and the amount of the alleged Cure Amount and include

appropriate supporting documentation demonstrating the calculation of the cure amounts as

claimed.  (*Id.* ¶ 35.)  If no objection is timely and appropriately filed, any non-debtor party to an

Assumed Contract would be barred and permanently enjoined from asserting any amounts in

excess of the Cure Amount set forth in the Assignment Notice.  (*Id.* ¶ 36.)  Any non-debtor

party to an Assumed Contract was provided the right to request adequate assurance of

performance by the Successful Bidder of such Assumed Contract either by contacting the

Successful Bidder through its attorneys, or filing, prior to the deadline for objecting to the

proposed Sale Order, such request with the Court and serving it upon counsel to the Debtor and the U.S. Trustee no later than 5 days prior to the Sale Hearing.  (*Id.* ¶ 37.)   If no such requests for adequate assurance were timely made or filed, the Successful Bidder would be deemed to have provided adequate assurance as required by section 365(f)(2)(B) of the Bankruptcy Code. (*Id.* ¶ 38.)

The Court approved the Assumption and Assignment Notice on May 29, 2025, in connection with its approval of the Bidding Procedures Order.  (*See* Bidding Procedures Order at Schedule 3, ECF Doc. # 127 at 26).  Cigna thereafter filed the Assumption and Assignment Objection on June 20, 2025 "to assure that, should the Debtor elect to assume and assign the Cigna Contracts," as that term is defined in the Assumption and Assignment Objection, "the Debtor, *inter alia*, (i) identifies and designates such Contracts, upon adequate notice to Cigna prior to the Sale Hearing; and (ii) satisfies its cure obligations consistent with section 365 of the Bankruptcy Code."  (Assumption and Assignment Objection ¶ 8.)  However, pursuant to the Revised Proposed Order, as submitted by the Debtor on June 27, 2025, the Cigna Contracts "shall not be assumed and assigned to the Successful Bidder," resolving the Assumption and Assignment Objection.  (Revised Proposed Order ¶ 39.)

## II.    LEGAL STANDARD

### A.  Sale of a Debtor's Assets

Section 363 of the Bankruptcy Code, with section 1107(a) of the Bankruptcy Code, provides that a "[debtor], after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).  In any bankruptcy sale, the "overarching objective" is to "maximize value to the estate."  *In re Metaldyne Corp.*, 409

B.R. 661, 667–68 (Bankr. S.D.N.Y. 2009) (citing *In re Integrated Res., Inc.*, 147 B.R. 650, 659 (S.D.N.Y. 1992)).

"Although not specified by section 363, the Second Circuit requires that transactions under section 363 be based on the sound business judgment of the debtor or trustee." *In re MF Glob. Inc.*, 467 B.R. 726, 730 (Bankr. S.D.N.Y. 2012) (citing *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *see also In re Lionel Corp.*, 722 F.2d 1063, 1071 (2d Cir. 1983) (stating that the court must "expressly find from the evidence presented before [it] at the hearing a good business reason to grant" a section 363 sale motion). The debtor "carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will aid the debtor's reorganization." *In re Lionel Corp.*, 722 F.2d at 1071.

Section 363(f) of the Bankruptcy Code allows the debtor to "sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate." 11 U.S.C. § 363(f). "Interests" are not defined in the Bankruptcy Code, but the Second Circuit applies a broad definition:

> Rather than formulating a single precise definition for "any interest in such property," courts have continued to address the phrase "on a case-by-case basis." At minimum, the language in § 363(f) permits the sale of property free and clear of *in rem* interests in the property, such as liens that attach to the property. But courts have permitted a broader definition that encompasses other obligations that may flow from ownership of the property. . . .

*In re Motors Liquidation Co.*, 829 F.3d 135, 155 (2d Cir. 2016) (citations and internal quotation marks omitted).

The Second Circuit defines "interest in such property" as any claims that arise from the property being sold." *In re Metroplex on the Atl., LLC*, 545 B.R. 786, 792–93 (Bankr. E.D.N.Y. 2016) (citations omitted) (quoting *In re Chrysler LLC*, 576 F.3d 108, 126 (2d Cir. 2009), *cert. granted and judgment vacated on other grounds*, 558 U.S. 1087 (2009)).

7

Entities with an interest in a property sold pursuant to section 363 can attach that interest to the proceeds of the property sold. *See Macarthur Co. v. Johns-Manville Corp.*, 837 F.2d 89, 94 (2d Cir. 1988) (citing *Ray v. Norseworthy*, 90 U.S. 128, 134–35 (1874)) ("It has long been recognized that when a debtor's assets are disposed of free and clear of third-party interests, the third party is adequately protected if his interest is assertable against the proceeds of the disposition."); *see also* S. Rep. No. 989, 95th Cong., 2d Sess. 56 (1978), *reprinted in* 1978 U.S. Code Cong. & Admin. News 5787, 5842 (committee report on 11 U.S.C. § 363(f)) ("Most often, adequate protection in connection with a sale free and clear of other interests will be to have those interests attach to the proceeds of the sale.").

## B. Rejection of Unexpired Lease

Section 365(a) of the Bankruptcy Code states that "the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." The Code also states that "[t]he trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from and after the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed or rejected, notwithstanding section 503(b)(1) of this title." 11 U.S.C. § 365(d)(3). Finally, the Bankruptcy Code states:

> Subject to subparagraph (B), an unexpired lease of nonresidential real property under which the debtor is the lessee shall be deemed rejected, and the trustee shall immediately surrender that nonresidential real property to the lessor, if the trustee does not assume or reject the unexpired lease by the earlier of—
> (i)      the date that is 120 days after the date of the order for relief; or
> (ii)     the date of the entry of an order confirming a plan.

11 U.S.C. § 365(d)(4)(a).

### C. Consumer Privacy Protections

Section 332 of the Bankruptcy Code sets forth criteria pursuant to which a court may assess potential consumer privacy issues with respect to the sale of personally identifiable information. A consumer privacy ombudsman appointed by a court shall "provide . . . information to assist the court in its consideration of the facts, circumstances, and conditions of the proposed sale or lease of personally identifiable information under section 363(b)(1)(B)," including: (1) the debtor's privacy policy; (2) the potential losses or gains of privacy to consumers if such sale or such lease is approved by the court; (3) the potential costs or benefits to consumers if such sale or such lease is approved by the court; and (4) the potential alternatives that would mitigate potential privacy losses or potential costs to consumers. 11 U.S.C. § 332(b). A court may approve the sale after affording "due consideration to the facts, circumstances, and conditions" of the sale following the appointment of the consumer privacy ombudsman. 11 U.S.C. § 363(b)(1)(B)(i). Additionally, the reviewing court must find that "no showing was made that such sale . . . would violate applicable nonbankruptcy law." 11 U.S.C. § 363(b)(1)(B)(ii).

### D. The Guidelines

The United States Bankruptcy Court for the Southern District of New York has established amended guidelines (the "Guidelines") for the conduct of asset sales under 11 U.S.C. § 363(b). The Guidelines establish the necessary components of a Debtor's application to conduct asset sales, stating that the Debtor's application must include a Sale Procedures Order, a Sale Order, Sale Procedures, and a Sale Motion, along with additional detailed information suggested or required within each of the sections. A debtor applying for this Court's approval of asset sales must comply with General Order M-383.

9

### III.    DISCUSSION

#### A.  Compliance with the Guidelines

As required by the Guidelines, the Motion includes a copy of the proposed order, information about the qualifications of bidders, and as recommended by the Guidelines, accounts for a back-up bidder in the event the highest bidder is not able to consummate the sale.  (*See* Guidelines §§ I.A, B.3.)  Further, as recommended by the Guidelines, the Terms of Sale require that all bidders who participate in the auction provide a good faith deposit in the amount of ten percent (10%) of the cash consideration of the Bid.  (*Id.* § B.2.d.)  The Motion also separately discloses specific "extraordinary provisions," including provisions limiting successor liability and granting relief from Bankruptcy Rules 6004(h) and 6006(d), as required by the Guidelines. Accordingly, the Motion complies with the Guidelines.

#### B.  Articulation of a Business Justification

As required, the Debtor has articulated a sound business purpose for the Auction and Sale.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989)*.*  The Asset Purchase Agreement provides that PCH believes, "following consultation with [its] professionals, and consideration of available alternatives, that, in light of the current circumstances, a sale of certain of [its] assets as provided herein is necessary to maximize value, and is in the best interest of the Debtor's estate and its creditors."  (Asset Purchase Agreement at Recitals, ECF Doc. # 174 at 56).  Counsel represents that the "consideration provided by the Successful Bidder for the Acquired Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Transfer Act, New York State Debtor Creditor Law and all other applicable laws."

(Revised Proposed Order ¶ N.)  The Debtor submits that it has "demonstrated a sufficient basis and compelling circumstances requiring the Debtor to enter into the Purchase Agreement and sell the Acquired Assets under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and are in the best interests of the Debtor's estate and its creditors." (*Id.* ¶ Q.)

The Court should not second-guess the Debtor's judgment without specific justification, "as business judgment of the estate representative is entitled to great deference." *See In re Borders Grp., Inc.*, 453 B.R. 477, 483 (Bankr. S.D.N.Y. 2011).  Accordingly, the Court should conclude that the Debtor has articulated an appropriate business justification for the Sale and entry into the Asset Purchase Agreement.

### C.  Sale of Assets Free and Clear of Liens under Section 363(f)

The Debtor has satisfied the requirements of section 363(f) and should be permitted to sell the property free and clear of all liens and interests.  The Debtor indicates that the "Successful Bidder would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtor's estate and its creditors, if the Acquired Assets were not sold to it free and clear of all Liens or if the Successful Bidder would, or in the future could, be liable for any Liens against the Acquired Assets." (Revised Proposed Order ¶ T).  The Debtor submits that "[s]elling the Acquired Assets other than free and clear of any and all" Liens would "adversely impact the Debtor's estate, and the sale of the Acquired Assets other than as free and clear of all Liens would be of substantially less value to the Debtor's estate." (*Id.* ¶ U).  Additionally, one of the grounds for selling a property free and clear is that the lienholder consents.  11 U.S.C. § 363(f)(2).  Here, the DIP Lender has consented to the Sale of the Assets upon the terms set forth in the DIP PSA.  (Motion ¶ 57; Revised

Proposed Order ¶ V.)  All other "holders of Liens who did not object or withdrew their
objections to the Sale Transaction" are deemed to have consented to the Sale  pursuant to section
363(f)(2) of the Bankruptcy Code.  (Revised Proposed Order ¶ V.)

### D.  Good Faith Protections Under Section 363(m)

The Victor Declaration provides that the Debtor's advisor, SSG, "marketed the Debtor's
assets" from March 2025 through June 2025, "in an effort to expose the opportunity to the
market" through a number of means, including the creation of a "teaser" to potential buyers,
provision of a non-disclosure agreement, development, population, and monitoring of a virtual
data room, and communication with interested parties to facilitate potential bids.  (Victor
Declaration ¶ 7.)  As a result of these efforts, "52 prospective bidders executed NDAs," four
parties submitted bid packages, and three bidders were "deemed Qualified Bidders in accordance
with the Bidding Procedures."  (*Id.* ¶ 8.)  The Successful Bidder submitted the "highest bid for
the Debtor's Assets" after approximately 20 rounds of bidding.  (*Id.* ¶ 11.)  The Successful
Bidder's offer consisted of "a purchase price of (i) $7,100,000 in cash, plus (ii) approximately
$378,096.75 in cure costs related to contracts that the Successful Bidder seeks to have assumed
and assigned to it under section 365 of the Bankruptcy Code, plus (iii) the assumption of certain
prize winner liabilities."  (*Id.*)  Additionally, the "Successful Bidder is considering offers of
employment to the Debtor's employees."  (*Id.*)  The Successful Bidder is "not purchasing any of
the Debtor's accounts receivable, estimated to be approximately $5,400,000."  (*Id.*)  The Debtor
submits that the Successful Bidder "is purchasing the Acquired Assets in good faith," and that
the Asset Purchase Agreement "was negotiated, proposed and entered into by the Debtor and the
Successful Bidder without collusion, in good faith and from arms' length bargaining positions."

(Revised Proposed Order ¶ K.)  Accordingly, the Successful Bidder has been adequately afforded the protections available under section 363(m) of the Bankruptcy Code.

### E.  Report of the Consumer Privacy Ombudsman

Pursuant to Consumer Privacy Ombudsman Stipulation, the U.S. Trustee appointed Lucy L. Thomson as the Consumer Privacy Ombudsman in this case.  (ECF Doc. # 102).  The Consumer Privacy Ombudsman issued a report on June 24, 2025, addressing issues relating to privacy and the protection of personally identifiable information, as defined within section 101(41A) of the Bankruptcy Code, of the Debtor's consumers and customers (the "CPO Report," ECF Doc. # 166).

The Consumer Privacy Ombudsman recommends that the Court approve the Sale of the Debtor's personal data to the Successful Bidder, with the following agreed-to requirements and restrictions:

(1)     PCH customers' "sensitive personal information," as that term is defined in the Asset Purchase Agreement, will be expunged and excluded from the purchased assets.  (CPO Report at 34.)

(2)     All PCH data transferred to the Successful Bidder will be maintained in a "separate entity" and not mixed with any ARB or Modo data.  (*Id.*)

(3)     The Successful Bidder is required to comply with the settlement agreement in the case captioned *FTC v. PCH*, Case No. 23-cv-4735 (E.D.N.Y.) (June 30, 2023).  (*Id.*)

(4)     The Successful Bidder agrees to abide by the following "qualified buyer" criteria.

   a.     The buyer is in "materially the same line of business as the debtor."  The Consumer Privacy Ombudsman reports that both PCH and ARB are "consumer digital technology companies that provide sweepstakes, games and other services to consumers."

   b.     The buyer agrees to "use the personally identifiable consumer records for the same purpose(s) as they were used previously."

   c.     The buyer agrees to "comply with the debtor's privacy policy."

    d.   The buyer agrees that, "prior to making any 'material change' to the privacy policy, or using or disclosing personal information in a different manner from that specified in the privacy policy, it will notify consumers and afford them an opportunity to Opt-out of the changes to those policies or the new uses of their personal information."

    e.   The buyer agrees to "notify the customers of the change in ownership, and advise them that they will abide by the debtor's privacy policy."

    f.   The buyer agrees to "employ appropriate information security controls (technical, operational and managerial) to protect the personally identifiable customer information, including strong encryption."

    (CPO Report § III(3); *id.* at 34.)

(5)    The Successful Bidder is required to comply with "all relevant state and territorial laws governing casino sweepstakes and gaming, as well as applicable non-bankruptcy laws." (CPO Report at 34.)

(6)    The Successful Bidder "should not diminish the privacy protections currently offered to PCH and [Modo] Casino consumers/customers." (CPO Report § III(5).) The Successful Bidder will "honor all prior choices made by PCH customers with respect to the sharing and use of their PII." (*Id.* at 35.)

(7)    PCH customers will be provided the opportunity to opt-in to create Modo Casino accounts. (*Id.*)

(8)    Following the Court's approval of the Sale, a "prominent notification" will be posted on the PCH website announcing the Sale, and the Successful Bidder will notify PCH customers of the Sale by email. (*Id.*)

The CPO Report, which was drafted on an expedited basis, is thorough and appropriately accounts for important consumer privacy concerns relevant to this "complex" and "multi-faceted" transaction. (CPO Report § II.) The Court concludes that the protections and restrictions proposed by the Consumer Privacy Ombudsman, as set forth in the CPO Report and the Revised Proposed Order, are appropriate.

### F. Waiver of Stay

Waiver of the requirements of Bankruptcy Rules 6004(h) and 6006(d), which respectively require stays of orders authorizing the sale of debtor's assets and authorizing the assignment of section 365(f) unexpired leases, is appropriate, as set forth in the Revised

Proposed Order.  (Revised Proposed Order ¶ B.)  As the Debtor notes, these stays could "further delay the date that a new owner can take possession and control of the Assets and/or Assumed Contracts and thus could chill the sale," and their waiver would permit a "smoother transition for the new owner and unburden the Debtor and the estate from any obligations arising from the Assets, assumed liabilities, and Assumed Contracts, and the proceeds of sale will provide needed liquidity to the Debtor on a more expedited basis."  (Motion ¶ 68.)

### G.  Cigna's Assumption and Assignment Objection

As set forth in the Revised Proposed Order, the Cigna Contracts (as defined in the Assumption and Assignment Objection) "shall not be assumed and assigned to the Successful Bidder pursuant to this Order."  (Revised Proposed Order ¶ 39.)  The Debtor submits that this "resolves" the Assumption and Assignment Objection.  (*Id.*)  The Objection was withdrawn at the hearing.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Motion.  A separate Order will be entered.

Dated:    June 30, 2025
          New York, New York

*Martin Glenn*
MARTIN GLENN
Chief United States Bankruptcy Judge