**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------x

In re                                           :
                                                :          Chapter 11
PUBLISHERS CLEARING HOUSE LLC,    :
                                                :          Case No. 25-10694 (MG)
                     Debtor.               :

---------------------------------------------------------x

### ORDER (A) AUTHORIZING SALE OF ALL OR SUBSTANTIALLY ALL OF THE DEBTOR'S ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES AND OTHER INTERESTS; AND (B) GRANTING RELATED RELIEF

Upon consideration of the motion [Docket No. 59] (the "Motion")[1] of Publishers Clearing

House LLC (the "Debtor"), the above-captioned debtor and debtor-in-possession, for entry of an

order (this "Order"), pursuant to sections 105(a), 363, and 365 of title 11 of the United States Code

(the "Bankruptcy Code"), and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), (a) authorizing and approving the Debtor's entry into that

certain Asset Purchase Agreement, dated as of June 27, 2025, by and between ARB Interactive,

Inc. (the "Successful Bidder") and the Debtor, a copy of which is attached hereto as Exhibit 1

(together with all schedules and exhibits attached thereto, as may be amended from time to time

and filed with the Court prior to the Closing Date, the "Purchase Agreement"), and authorizing the

sale of the Acquired Assets (as defined in the Purchase Agreement) to the Successful Bidder, free

and clear of all Liens (as defined below); and (b) granting such other and further relief as this Court

deems just and proper under the circumstances; and upon this Court's *Joint Stipulation and Agreed*

*Order Directing the United States Trustee to Appoint a Consumer Privacy Ombudsman* [Docket

No. 100] and *Order (A) Approving Bidding Procedures in Connection with a Sale of All or*

---

[1] Capitalized terms not otherwise defined herein shall have the meanings given to them in the Motion or the Purchase Agreement (as defined below). A copy of the Purchase Agreement is attached hereto as Exhibit 1.

*Substantially All of the Debtor's Assets Free and Clean of Liens, Claims, Encumbrances and Other Interests; (B) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof; (C) Establishing Certain Assumption and Assignment Procedures and Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* [Docket No. 127] (the "Bidding Procedures Order"); and upon the *Notice Regarding Assumption and Assignment of Executory Contracts and Expired Leases and Establishment of Cure Claims Bar Date for Non-Debtor Counterparties to Executory Contracts and Unexpired Leases* (the "Assumption and Assignment Notice") [Docket No. 146]; and upon the Declaration of J. Scott Victor in support of the Motion [Docket No. 174] (the "Declaration"); and it appearing that due and appropriate notice of the Motion, the Bidding Procedures Order, the Bidding Procedures, the Assumption and Assignment Notice, the Auction and the Sale Hearing having been given; and it appearing that no other notice of the relief granted by this Order need be given; and the Court having conducted a hearing on the Motion on June 25, 2025 (the "Sale Hearing"); and the Debtor and its advisors having conducted a marketing process in compliance with the Bidding Procedures Order and determined that the Successful Bidder has submitted the highest or otherwise best bid for the Acquired Assets, as more specifically described in the Purchase Agreement; and all parties in interest having been heard, or having had the opportunity to be heard, regarding entry of this Order and approval of the sale of the Acquired Assets and assumption and assignment of certain contracts to the Successful Bidder (the "Sale Transaction") and the Purchase Agreement; and upon all arguments, testimony and evidence presented to the Court, this Court hereby makes the following findings of fact and conclusions of law:[2]

---

[2] Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when appropriate. *See* Bankruptcy Rule 7052.

A.      This Court has jurisdiction to hear and determine the Motion and to grant the relief requested in the Motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue of this case and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.      This Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court expressly finds that there is no just reason for delay in the implementation of this Order, waives any stay, and expressly directs entry of judgment as set forth herein.

C.      This proceeding is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(A), (N) and (O).

D.      The statutory predicates for the Motion are sections 105, 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

E.      As evidenced by the affidavits of service filed with the Court, and based upon the representations of counsel at the Sale Hearing, (i) proper, timely and adequate notice of the Motion, the Bidding Procedures Order, the Bidding Procedures and Bid Deadline, the Assumption and Assignment Notice, the Auction and the Sale Hearing has been provided in accordance with Bankruptcy Rules 2002, 6004, 6006, 9007, and 9008, (ii) such notice was good, sufficient and appropriate under the circumstances, and (iii) no other or further notice is necessary or shall be required.

*F.*      In accordance with the Bid Procedures Order, the Debtor has served a *Notice Regarding Assumption and Assignment of Executory Contracts and Unexpired Leases and Establishment of Cure Claims Bar Date for Non-Debtor Counterparties to Executory Contracts*

*and Unexpired Leases* [Docket No. 146] (the "Cure Notice"), which identified the Cure Costs (as defined in the Purchase Agreement), upon each non-Debtor counterparty to an Assigned Contract. The service and provision of the Cure Notice were good, sufficient, and appropriate under the circumstances, and no further notice need be given in respect of assumption and assignment of the Assigned Contracts or establishing a Cure Cost for the respective Assigned Contracts. Non-Debtor counterparties to the Assigned Contracts have had an adequate opportunity to object to assumption and assignment of the applicable Assigned Contract and the Cure Cost set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the non-Debtor counterparty from accepting performance by, or rendering performance to, the Successful Bidder for purposes of section 365(c)(1) of the Bankruptcy Code).  Any party that did not timely file an objection before the Objection Deadline (as defined in the Cure Notice) shall be deemed to have consented to the (i) assumption and assignment of the Assigned Contract and (ii) proposed Cure Cost set forth on the Cure Notice (except as otherwise agreed by the Debtor and the Successful Bidder).

G.    A reasonable opportunity to object or be heard with respect to the Motion and the Sale Transaction has been afforded to all interested persons and entities.

H.    Notice, as specified in the preceding paragraph and in the Motion and as evidenced by the affidavits of service filed with the Court, has been provided in the form and manner specified in the Motion and required by the Bidding Procedures Order, and such notice is reasonable and adequate.

I.    The sale process for the Debtor's assets and the Auction were conducted in accordance with the Bidding Procedures Order, in a non-collusive, fair and good faith manner, and

a reasonable opportunity has been given to any interested party to make a higher or otherwise better offer for the Debtor's assets.

J.      The Successful Bidder is purchasing the Acquired Assets in good faith and is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and is therefore entitled to the protections thereof.

K.      The Purchase Agreement was negotiated, proposed and entered into by the Debtor and the Successful Bidder without collusion, in good faith and from arms' length bargaining positions. Neither the Debtor nor the Successful Bidder has engaged in any conduct that would cause or permit the Sale Transaction or any part of the transactions contemplated by the Purchase Agreement to be avoidable under section 363(n) of the Bankruptcy Code.

L.      As demonstrated by the record established at the Sale Hearing, the Debtor afforded interested potential purchasers a full and fair opportunity to qualify as Qualified Bidders under the Bid Procedures and to submit an offer for the Debtor's assets.

M.      The Successful Bidder is not an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

N.      The Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia. Neither the Debtor nor the Successful Bidder is entering into the Sale Transactions fraudulently for the purpose of statutory and common law fraudulent conveyance and fraudulent transfer claims. The consideration provided by the Successful Bidder for the Acquired Assets pursuant to the Purchase Agreement (i) is fair and reasonable, (ii) is the highest or otherwise best offer for the Acquired Assets, and (iii) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code, the

Uniform Fraudulent Transfer Act, New York State Debtor Creditor Law and all other applicable laws.

O.    Pursuant to, and to the extent set forth in, sections 363(f) and 365(a) of the Bankruptcy Code, and subject to entry of this Order, the transfer of each of the Acquired Assets to the Successful Bidder in accordance with the Purchase Agreement will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Successful Bidder with all right, title, and interest of the Debtor to the Acquired Assets free and clear of all Claims and Encumbrances. Claims (as defined in the Purchase Agreement) shall include, but not be limited to, all debts arising under, relating to, or in connection with any act of the Debtor or claims, liabilities, obligations, demands, guaranties, options, rights, contractual commitments, restrictions, rights to refunds, escheat obligations, interests, Liens (as defined herein) and matters of any kind and nature, whether arising prior to or subsequent to the commencement of the chapter 11 case, and whether imposed by agreement, applicable law, equity, or otherwise, including, without limitation, rights with respect to claims and Encumbrances (a) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtor's or Successful Bidder's interests in the Acquired Assets, or any similar rights; (b) in respect of taxes owed by the Debtor for periods prior to the Closing Date, including, but not limited to, sales, income, use, or any other type of tax; (c) in respect of restrictions, rights of first refusal, charges, or interests of any kind or nature, if any, including, without limitation, any restriction of use, voting, transfer, receipt of income, or other exercise of any attributes of ownership relating to, accruing, or arising any time prior to the Closing Date, with the exception of the Assumed Liabilities; (d) in respect of any labor or

employment agreements; (e) in respect of any mortgages, deeds of trust, and security interests; (f) in respect of any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtor; (g) in respect of any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to the Employee Retirement Income Security Act, as amended; (h) under the Fair Labor Standards Act; (i) under Title VII of the Civil Rights Act of 1964; (j) under the Federal Rehabilitation Act of 1973; (k) under the National Labor Relations Act; (l) under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq; (m) under the Age Discrimination in Employment Act, as amended; (n) the Americans with Disabilities Act; (o) under the Family Medical Leave Act; (p) under the Labor Management Relations Act; (q) under the Multiemployer Pension Protection Act; (r) under the Pension Protection Act; (s) under the Consolidated Omnibus Budget Reconciliation Act of 1985; (t) under the Comprehensive Environmental Response Compensation and Liability Act; (u) under any state discrimination laws; (v) under any state unemployment compensation laws or any other similar state laws; (w) under any other state or federal benefits or claims relating to any employment with the Debtor or any of its respective predecessors; (x) under any "bulk sale" or similar law; (y) under any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (z) under any escheat or unclaimed property laws; (aa) to the extent not included in the foregoing, under any of the Excluded Liabilities under the Purchase Agreement; and (bb) under any theories of successor or transferee liability, in each case, regardless of whether such theory, rule, or law would purport to provide for the Successful Bidder's direct liability rather than merely as a successor of the Debtor.

P.      The transactions contemplated under the Purchase Agreement do not amount to a consolidation, merger, or *de facto* merger of the Successful Bidder and the Debtor and/or the Debtor's estate; there is not substantial continuity between the Successful Bidder and the Debtor; there is no continuity of enterprise between the Debtor and the Successful Bidder; the Successful Bidder is not a mere continuation of the Debtor or its estates; and the Successful Bidder is not a successor or assignee of the Debtor or its estate for any purpose. Except for the Assumed Liabilities, the (i) transfer or the Acquired Assets to the Successful Bidder and (ii) the assumption by the Debtor and assignment to the Successful Bidder of the Assigned Contracts do not and will not subject the Successful Bidder to any liability whatsoever with respect to the operation of the Debtor's business before the Closing Date or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based on, in whole or in part, directly or indirectly, any theory of law or equity, including, without limitation, any theory of equitable law, including, without limitation, any theory of antitrust or successor or transferee liability.

Q.      The Debtor has demonstrated a sufficient basis and compelling circumstances requiring the Debtor to enter into the Purchase Agreement and sell the Acquired Assets under section 363 of the Bankruptcy Code, and such actions are appropriate exercises of the Debtor's business judgment and are in the best interests of the Debtor's estate and its creditors.

R.      The marketing and bidding processes implemented by the Debtor and its advisors, as set forth in the Motion, were fair, proper, and reasonably calculated to result in the best value received for the Debtor's assets.

S.      The Debtor has full authority and power to execute and deliver the Purchase Agreement and related agreements and all other documents contemplated by the Purchase

Agreement, to perform its obligations therein and to consummate the Sale Transaction. Except as set forth in the Purchase Agreement, no additional consents or approvals are necessary or required for the Debtor to enter into the Purchase Agreement, perform its obligations therein and consummate the Sale Transaction.

T.     The Successful Bidder would not have entered into the Purchase Agreement and would not consummate the Sale Transaction, thus adversely affecting the Debtor's estate and its creditors, if the Acquired Assets were not sold to it free and clear of all Liens or if the Successful Bidder would, or in the future could, be liable for any Liens against the Acquired Assets.

U.     Selling the Acquired Assets other than free and clear of any and all liens, claims (as defined in section 101(5) of the Bankruptcy Code), Claims, Encumbrances, security interests, mortgages, encumbrances, obligations, including employee benefit obligations charges against or interests in property, adverse claims, claims of possession, rights of way, licenses, easements or restrictions of any kind, demands, guarantees, actions, suits, defenses, deposits, credits, allowances, options, rights, restrictions, limitations, contractual commitments, rights of first refusal, rights of setoff or recoupment, or interests of any kind or nature whether known or unknown, legal or equitable, matured or unmatured, contingent or noncontingent, liquidated or unliquidated, asserted or unasserted, whether arising prior to or subsequent to the commencement of this chapter 11 case, whether imposed by agreement, understanding, law, equity or otherwise, subject to applicable law, including section 363 of the Bankruptcy Code (collectively, the "Liens") would adversely impact the Debtor's estate, and the sale of the Acquired Assets other than as free and clear of all Liens would be of substantially less value to the Debtor's estate.

V.     The provisions of section 363(f) of the Bankruptcy Code have been satisfied. Prestige Capital Finance, LLC ("DIP Factor") has consented to the Sale Transaction upon the terms

set forth herein and in the DIP PSA. All other holders of Liens who did not object or withdrew their objections to the Sale Transaction are deemed to have consented to the Sale Transaction pursuant to section 363(f)(2) of the Bankruptcy Code.

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED, EFFECTIVE IMMEDIATELY, AS FOLLOWS:**

1.      The relief requested in the Motion is granted and approved in all respects, as set forth herein.  The Debtor's entry into the Purchase Agreement and the Sale Transaction is hereby approved in all respects.  Except as may be expressly provided herein, objections to the relief sought in the Motion that have not been previously resolved or withdrawn are hereby overruled on their merits.

2.      The Debtor is authorized and directed to take any and all actions necessary or appropriate to (a) consummate the Sale Transaction in accordance with the Motion, the Purchase Agreement and this Order, and (b) perform, consummate, implement and close fully the Sale Transaction, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Purchase Agreement including, without limitation, any transition services agreements, data transfer agreements, or consents to the assignment by the Successful Bidder of any of its rights under or relating to the Purchase Agreement.

3.      Those holders of Liens and other non-Debtor parties who did not object, or who withdrew their objections to entry of this Order, the Motion, the Bidding Procedures Order,  the Sale Hearing, the Sale Transaction and the Purchase Agreement are deemed to have consented to this Order, the Bidding Procedures Order, the Sale Transaction and the Purchase Agreement pursuant to section 363(f)(2) of the Bankruptcy Code and are enjoined from taking any action against the Successful Bidder, its successors, its assigns, its representatives, its affiliates, its

properties, or any agent of the foregoing to recover any claim which such person or entity has

against the Debtor or any of its affiliates or any of the Debtor's property.  Those holders of Liens

and other non-Debtor parties who did object, if any, fall within one or more of the other subsections

of section 363(f) of the Bankruptcy Code and are adequately protected by having their Liens, if

any, attach to the proceeds of the Sale Transaction ultimately attributable to the property against

or in which they assert a Lien and/or by having their Liens satisfied from the proceeds of the Sale

Transaction at Closing.

### Sale and Transfer of the Acquired Assets

4.    Upon Closing, the Acquired Assets transferred, sold and delivered to the Successful

Bidder shall be free and clear of all Liens of any person or entity.  The transfer of the Acquired

Assets to the Successful Bidder constitutes a legal, valid and effective transfer of the Acquired

Assets and shall vest the Successful Bidder with all right, title and interest in and to the Acquired

Assets and, other than the Assumed Liabilities, the Successful Bidder shall take title to and

possession of the Acquired Assets free and clear of all Liens and other interests of any kind or

nature whatsoever, including, but not limited, to "bulk sale" rules (or similar laws) and theories of

successor or successor-in-interest liability regardless of whether such theory, rule, or law would

purport to provide for the Successful Bidder's direct liability rather than merely as a successor of

the Debtor and Claims in respect of the Excluded Liabilities.  All such Liens and other interests to

attach to the cash proceeds received by the Debtor that are ultimately attributable to the property

against or in which such Liens are asserted, subject to the terms of such Liens with the same

validity, force, and effect, and in the same order of priority, which such Liens now have against

the Acquired Assets or their proceeds, if any, subject to any rights, claims, and defenses the Debtor

or its estate, as applicable, may possess with respect thereto, and subject in all respects to the rights

of the DIP Factor pursuant to that certain *Final Order (I) Authorizing the Debtor to Enter Into A Post-Petition Senior Secured Financing Facility, (II) Modifying the Automatic Stay, and (III) Granting Related Relief* entered on May 2, 2025 [ECF No. 61] (the "Final DIP Order"). Unless otherwise expressly included in the definition of "Assumed Liabilities", the Successful Bidder shall not be responsible for any Liens, including, for the avoidance doubt, any Claims or other Encumbrances.

5.      Upon closing of the Sale Transaction, this Order shall be construed as, and shall constitute for any and all purposes, a full and complete general assignment, conveyance and transfer of the Acquired Assets pursuant to the terms of the Purchase Agreement.

6.      On the Closing, all entities, including, but not limited to, the Debtor, creditors, employees, former employees, shareholders, former shareholders, administrative agencies, tax and regulatory authorities, governmental agencies and departments, secretaries of state, federal, state and local officials, and their respective successors or assigns, including, but not limited to, persons asserting any Liens, Claims or Encumbrances of any kind or nature whatsoever (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinated), arising under or out of, in connection with, or in any way relating to the Debtor, the Acquired Assets, the operation of the Debtor's business prior to the Closing Date, or the transfer of the Acquired Assets to the Successful Bidder in accordance with the Purchase Agreement, shall be permanently and forever barred, restrained and enjoined from asserting against the Acquired Assets or the Successful Bidder (or its successors, assigns, agents or representatives), such persons' or entities' Liens, Claims, or other Encumbrances in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Successful Bidder, its

successors, assets, or properties; (b) enforcing, attaching, collecting or recovering, in any manner, any judgment, award, decree, or order against the Successful Bidder, its successors, or their assets or properties; (c) creating, perfecting, or enforcing any Lien, Encumbrance, Claim or interest against the Successful Bidder, its successors, their assets, or their properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due to the Successful Bidder or its successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating, or failing or refusing to transfer or renew any license, permit, or authorization to operate any of the Acquired Assets or conduct any business in connection with the Acquired Assets.

7.      To the greatest extent available under applicable law, the Successful Bidder shall be authorized, as of the Closing Date, to operate under any license, permit, registration and governmental authorization or approval of the Debtor with respect to the Acquired Assets to the extent transferred in the Purchase Agreement, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to the Successful Bidder as of the Closing Date.

8.      Each and every term and provision of the Purchase Agreement, together with the terms and provisions of this Order, shall be binding in all respects upon all persons and entities, including, but not limited to the Debtor, Debtor's estate, the Acquired Assets, the Successful Bidder, creditors, employees, former employees and shareholders, trustees, administrative agencies, governmental departments, secretaries of state, federal, state and local officials and their respective successors or assigns, including but not limited to persons asserting any Claim or Encumbrance against or interest in the Debtor's estate or the Debtor's assets.

9.      Upon the Closing, all persons and entities holding Liens of any kind and nature against the Debtor's assets hereby are barred from asserting such Liens against the Successful Bidder (or its successors, assigns, agents or representatives) and/or the Acquired Assets and, effective upon the transfer of the Acquired Assets to the Successful Bidder upon Closing, the Liens shall attach to the proceeds of the Sale Transaction with the same force, validity, priority and effect, if any, as against the Debtor's assets.

10.     This Order (a) is and shall be effective as a determination that, upon Closing, all Liens existing as to the Acquired Assets conveyed to the Successful Bidder have been and hereby are adjudged to be unconditionally released, discharged and terminated, with all such Liens attaching automatically to the proceeds in the same manner and priority, and (b) shall be binding upon and govern the acts of all persons and entities, including all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies or units, governmental departments or units, secretaries of state, federal, state and local officials and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Acquired Assets conveyed to the Successful Bidder.  All Liens of record as of the date of this Order shall be deemed to be removed and stricken as against the Acquired Assets in accordance with the foregoing.  All persons and entities are authorized and specifically directed and ordered to strike all such recorded Liens against the Acquired Assets from their records, official or otherwise.

11.     If any person or entity which has filed financing statements, mortgage, *lis pendens* or other documents or agreements evidencing Liens on the Acquired Assets shall not have

delivered to the Debtor prior to Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements and any other documents necessary for the purpose of documenting the release of all Liens which the person or entity has or may assert with respect to the Acquired Assets, the Debtor is hereby authorized and directed upon Closing, and the Successful Bidder is hereby authorized upon Closing, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.  Upon Closing, each of the Debtor's creditors is authorized and directed to execute such documents and take all such actions as may be necessary to release their respective Liens against the Acquired Assets.

12.    Nothing in this Order, the Purchase Agreement, or any document, agreement, or instrument contemplated by any of the foregoing, including any transition services or transition period agreements, shall: (a) be construed to authorize or permit (i) the assumption and/or assignment of any surety bond issued by (A) Contractors Bonding Insurance Company ("CBIC"), or (B) U.S. Specialty Insurance Company ("USSIC") (collectively, the "Sureties" and, each individually, a "Surety") on behalf of the Debtor (collectively, the "Surety Bonds" and, each individually, a "Surety Bond"), (ii) the assumption and/or assignment of any indemnity agreements executed by the Debtor pursuant to which the Surety Bonds were issued (the "Indemnity Agreements" and, each individually, an "Indemnity Agreement"), or (iii) obligate a Surety to replace any Surety Bond and/or issue any new surety bond on behalf of a buyer; or (b) be deemed to provide a Surety's consent to the involuntary substitution of any principal under any Surety Bond and/or any Indemnity Agreement, including, for the avoidance of doubt, that the buyer(s) shall not be a substitute principal under any Surety Bond or any Indemnity Agreement absent a Surety's consent thereto and  further order of the Court. Additionally, nothing in this Order, the

Purchase Agreement, or any other document, agreement, or instrument contemplated by any of the foregoing shall be deemed to alter, limit, modify, release, waive, or prejudice any rights, remedies, and/or defenses that the Sureties have or may have under applicable bankruptcy and non-bankruptcy laws, under any of the their respective Surety Agreements, or related agreements, or any letters of credit, or other Surety collateral relating thereto.

13.    Upon Closing, the Successful Bidder (or its successors, assigns, agents or representatives) shall not be deemed to be (a) a successor to the Debtor, (b) *de facto* merged with the Debtor or (c) a mere continuation of the Debtor. Without limiting the generality of the foregoing, and except as specifically provided in the Purchase Agreement, the Successful Bidder (or its successors, assigns, agents or representatives) shall not be liable for any Claims or Liens against the Debtor or any of its predecessors or affiliates or assets, other than as expressly provided for in the Purchase Agreement and/or in this Order.

## Assumption and Assignment of Contracts

14.    Schedule 2.1(c) to the Purchase Agreement identifies all executory contracts or unexpired leases the Successful Bidder wishes to be assumed by the Debtor and assigned by the Debtor to the Successful Bidder (as may be amended prior to the closing, the "Assigned Contracts"). All executory contracts or unexpired leases not identified as Assigned Contracts shall not be assumed by the Debtor and assigned to the Successful Bidder and shall constitute "Excluded Assets". The Debtor shall (a) assume in the bankruptcy case and assign to the Successful Bidder all of the Assigned Contracts, free and clear of all Liens, Encumbrances and other interests of any kind or nature whatsoever (other than the Assumed Liabilities) provided that the Successful Bidder shall pay all scheduled and disclosed Cure Costs in connection with such assumption and assignment and (b) execute and deliver to the Successful Bidder such documents, agreements or

other instruments as the Successful Bidder may reasonably request as necessary to assign and transfer the Assigned Contracts to the Successful Bidder in accordance with the Purchase Agreement.

15.     With respect to the Assigned Contracts: (a) each Assigned Contract is an executory contract or unexpired lease under section 365 of the Bankruptcy Code; (b) the Debtor may assume each of the Assigned Contracts in accordance with section 365 of the Bankruptcy Code; (c) the Debtor may assign each Assigned Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, condition, renewal, or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect; (d) all other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Successful Bidder of each Assigned Contract, in accordance with the Purchase Agreement, have been satisfied; (e) the Assigned Contracts shall be transferred and assigned to, and following the Closing Date, remain in full force and effect for the benefit of the Successful Bidder in accordance with the Purchase Agreement, notwithstanding any provision in any such Assigned Contract (including those of the type described in sections 365(b)(2) and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer; and (f) upon the Closing Date, in accordance with sections 363 and 365 of the Bankruptcy Code, the Successful Bidder shall be fully and irrevocably vested in all right, title, and interest of each Assigned Contract.

16.     Notwithstanding anything herein or in the Purchase Agreement to the contrary, prior to the Closing Date, the Successful Bidder may add or remove any contract from the list of Assigned Contracts set forth in Schedule 2.1(c) of the Purchase Agreement (and thereby include or exclude such Contract from the definition of Assigned Contracts).  To the extent that an objection by a counterparty to any Assigned Contract, including an objection related to the applicable Cure Cost, is not resolved prior to the Closing, the Successful Bidder may, without any further approval of the Court, elect to (a) not have the Debtor assume and assign such Contract to it, or (b) have the Debtor postpone the assumption of such Assigned Contract until the resolution of such objection; provided, however, that the Debtor, the Successful Bidder, and the relevant non-Debtor counterparty under each Assigned Contract shall have authority to compromise, settle, or otherwise resolve any objections to its proposed assumption and assignment without further order of the Court, with any agreed upon Cure Cost to be paid to the appropriate counterparty by the Successful Bidder as a condition subsequent to such assumption and assignment of the relevant Assigned Contract.  To the extent applicable, the Debtor shall file a schedule of the final Assigned Contracts reasonably promptly after the Closing Date.

## **Consumer Privacy**

17.     Notwithstanding anything in this Order or the Purchase Agreement, Sensitive Personal Information (as defined in the Purchase Agreement) collected from Users (as defined in the Purchase Agreement) shall be expunged and shall not be transferred to the Successful Bidder as part of the Sale Transaction.

18.     Upon Closing, all Personal Information (as defined in the Purchase Agreement) transferred to the Successful Bidder as part of the Sale Transaction shall be stored separately from other Personal Information maintained by the Successful Bidder.

19.    The Successful Bidder shall comply with the remaining applicable obligations under the settlement agreement filed in the matter captioned *FTC v. PCH*, Case No. 23-cv-4735 (E.D.N.Y. June 30, 2023).

20.    The Successful Bidder satisfies and shall comply with the following "qualified buyer" criteria:

   a.   The Successful Bidder is in materially the same line of business as the Debtor;

   b.   The Successful Bidder has agreed to use the personally identifiable consumer records acquired pursuant to the Purchase Agreement for the same purpose(s) as they were used previously by the Debtor;

   c.   The Successful Bidder has agreed to comply with the Debtor's privacy policy with respect to data acquired from the Debtor;

   d.   The Successful Bidder has agreed that, prior to making any "material change" to the Debtor's privacy policy, or using or disclosing personal information in a different manner from that specified in the Debtor's privacy policy, the Successful Bidder will notify consumers and afford them an opportunity to opt-out of the changes to those policies or the new uses of their personal information;

   e.   The Successful Bidder has agreed to notify the Debtor's customers of the change in ownership of the Acquired Assets, and advise them that they will abide by the Debtor's privacy policy; and

   f.   The Successful Bidder has agreed to employ appropriate information security controls (including technical, operational, and managerial controls) to protect the personally identifiable customer information acquired from the Debtor, including strong encryption.

21.    The Successful Bidder shall abide by all applicable Federal, state, and international laws, including state and territorial laws governing casino sweepstakes and gaming (including bans on casino sweepstakes) and other applicable non-bankruptcy laws, including laws prohibiting unfair or deceptive practices (UDAP) and data breach, data disposition, privacy, "do-not-call" and "no spam" laws.

22.     Following entry of this Order, a prominent notification of the Sale Transaction shall be posted on the Debtor's website.

23.     Following the closing of the Sale Transaction, the Successful Bidder shall notify the Debtor's customers by email of the Sale Transaction and shall honor all prior elections made by the Debtor's customers with respect to the sharing and use of their Personal Information acquired from the Debtor.

24.     To the extent the Successful Bidder will invite the Debtor's customers onto any secondary platform of the Successful Bidder, the onboarding process shall be on an "opt-in" basis where the privacy policy applicable to such platform requires.

## **Additional Provisions**

25.     The provisions of this Order and the Purchase Agreement and any actions taken pursuant hereto or thereto shall survive entry of any order which may be entered (a) dismissing the Debtor's bankruptcy case, (b) confirming a chapter 11 plan, (c) converting the Debtor's bankruptcy case to a case under chapter 7 of the Bankruptcy Code, or (d) appointing a trustee or an examiner, and the terms and provisions of the Purchase Agreement as well as the rights and interests granted pursuant to this Order and the Purchase Agreement shall continue in this or any superseding case and shall be binding upon the Debtor, the Successful Bidder, and their respective successors and permitted assigns.

26.     Each and every federal, state, and governmental agency or department and any other person or entity is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Purchase Agreement.

27.     The Purchase Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto, in writing signed

by such parties, and in accordance with the terms thereof, without further order of the Court; provided, that any such modification, amendment, or supplement does not have a material adverse effect on the Debtor's estate.

28.    Unless otherwise expressly set forth herein or in the Purchase Agreement (or any document, instrument, or agreement executed to implement the Purchase Agreement) or in connection with enforcing the terms of this Order and/or the Purchase Agreement (or any document, instrument, or agreement executed to implement the Purchase Agreement), neither the Debtor nor the Successful Bidder nor any of the Debtor's or Successful Bidder's current or former respective affiliates, subsidiaries, directors, officers, agents, successors, assigns, or advisors (collectively, "Released Parties"), shall have or incur any liability to, or be subject to any action, claims, interests, obligations, rights, suits, damages, causes of action, remedies, and/or any other liabilities whatsoever by any other Released Party arising out of, or otherwise in connection with, any act or omission related to the negotiations, investigation, preparation, execution or delivery of the Purchase Agreement, and the entry into and consummation of the Sale Transaction.

29.    To the extent anything contained in this Order conflicts with a provision in the Purchase Agreement, this Order shall govern and control.

30.    The Successful Bidder is purchasing the Acquired Assets in good faith and is a good faith Successful Bidder within the meaning of section 363(m) of the Bankruptcy Code, and is therefore entitled to the protections of that provision.  The consideration provided by the Successful Bidder for the Acquired Assets is fair and reasonable, and the Sale Transaction may not be avoided under section 363(n) of the Bankruptcy Code.

31.    Any attorney-client privilege with respect to the Acquired Assets to the extent first arising prior to the Closing shall belong exclusively to the Debtor until the consummation of the

Debtor's orderly winddown of its estate, and such privilege shall be retained and controlled exclusively by the Debtor, and may be waived, if at all, only with the Debtor's consent until the consummation of the Debtor's orderly winddown of its estate. The foregoing privilege shall not be controlled, owned, used, or waived by Successful Bidder following the consummation of the Sale Transaction until the completion of the orderly winddown of Debtor's estate. Any disclosure or provision by the Debtor to Successful Bidder of any such attorney-client privilege is inadvertent and is not intended to be, and is not in fact, a waiver of any such privilege. Notwithstanding the foregoing, (i) in the event of any dispute between Successful Bidder or its affiliates or representatives, on the one hand, and a third party, on the other hand, each of Successful Bidder and its affiliates and representatives, as applicable, shall have the right to assert (and upon written request of the Debtor or its affiliates or representatives shall assert) the privilege or protection to prevent disclosures of such information to such third party, or upon the written request of Successful Bidder or its affiliates or representatives, the Debtor shall, assert (and not waive), such privilege or protection, and (ii) in the event of any dispute between Successful Bidder or its affiliates or representatives, on the one hand, and the Debtor or its affiliates or representatives, on the other hand, no communications, documents or other information received by Successful Bidder or its affiliates or representatives in connection with the Sale Transaction that is subject to the privilege or protection shall be admissible by Successful Bidder or its affiliates or representatives for any purpose.

32.     This Court retains jurisdiction to (a) interpret, implement and enforce the terms and provisions of this Order (including any injunctive relief provided in this Order), the terms of the Purchase Agreement and all amendments thereto and any waivers and consents thereunder, and each of the agreements executed in connection therewith; (b) protect the Successful Bidder (and

its successors, assigns, agents and representatives) and the Acquired Assets from and against any

of the Liens; (c) resolve any disputes arising under or related to the Purchase Agreement or the

Sale Transaction; (d) adjudicate all issues concerning (alleged) pre-closing Liens and any other

(alleged) interest(s) in and to the Debtor's assets, including the extent, validity, enforceability,

priority and nature of all such (alleged) Liens and any other (alleged) interest(s); and (e) adjudicate

any and all issues and/or disputes relating to the Debtor's right, title or interest in the Debtor's

assets, the Acquired Assets, the Motion and/or the Purchase Agreement.

33.    From and after the date hereof, the Debtor shall act in accordance with the terms of

the Purchase Agreement, and the Debtor, to the extent it has not already done so, shall execute the

Purchase Agreement prior to Closing.

34.    This Order and the Purchase Agreement shall be binding in all respects upon all

creditors (whether known or unknown) of the Debtor, all successors and assigns of the Successful

Bidder, the Debtor and its affiliates and subsidiaries, and the Debtor's assets, and upon dismissal

of the Debtor's bankruptcy case.

35.    The failure specifically to include any particular provisions of the Purchase

Agreement in this Order shall not diminish or impair the efficacy of such provisions, it being the

intent of the Court that the Purchase Agreement and each and every provision, term and condition

thereof be, and therefore is, authorized and approved in its entirety.

36.    The provisions of this Order are non-severable and mutually dependent.

37.    The automatic stay of section 362(a) of the Bankruptcy Code shall not apply to and

otherwise shall not prevent the exercise or performance by any party of its rights or obligations

under the Purchase Agreement, including, without limitation, with respect to any cash held in

escrow pursuant to the provisions thereof.

38.    This Order shall take effect immediately and shall not be stayed pursuant to Bankruptcy Rules 6004(h), 6006(d), 7062, or otherwise.

39.    Notwithstanding anything to the contrary in this Order, or any notice related thereto, the Cigna Contracts (as defined in the *Objection of Cigna to Notice Regarding Assumption and Assignment of Executory Contracts and Unexpired Leases and Establishment of Cure Claims Bar Date for Non-Debtor Counterparties to Executory Contracts and Unexpired Leases* [Docket No. 155] ("Cigna Objection")) shall not be assumed and assigned to the Successful Bidder pursuant to this Order.  This resolves the Cigna Objection.

40.    Notwithstanding anything in this Order, the Motion, the Purchase Agreement, or any other sale documents, the Sale Transaction does not (and shall not be deemed to) impair the rights of claimants/plaintiffs in *Pett et al. v. Publishers Clearing House, Inc.*, Case No. 2:22-cv-11389-DPH-EAS (E.D. Mich.) to recover for those claims from insurers under insurance policies issued to the Debtor before the filing of this Bankruptcy Case or any bad-faith or statutory rights against such insurers related thereto.

41.    Payoff of DIP Obligations. Upon the Closing, the Debtor is authorized and directed to pay the DIP Factor from the proceeds of the Sale Transaction all DIP Obligations (as defined in the Final DIP Order) owing through the date of the Closing as set forth in a Payoff Letter to be delivered to the Debtor as of the Closing a form of which is attached as Exhibit 2 (the "Payoff Letter"), which payment (the "Payoff Amount") shall be in full satisfaction of the DIP Obligations (as defined in the Final DIP Order).  The terms of the Payoff Letter are hereby approved.  Anything herein and/or in the Final DIP Order to the contrary notwithstanding, the automatic stay under section 362(a) of the Bankruptcy Code is hereby modified to enable the DIP Factor to realize upon and apply such sale proceeds in satisfaction of the DIP Obligations in

accordance with the Final DIP Order.  Upon receipt of the Payoff Amount, without further order

of the Court, (i) except as to those terms expressly surviving termination, the DIP PSA (as defined

in the Final DIP Order), and commitments of the DIP Factor thereunder, are hereby automatically

terminated, and the DIP Factor shall not be obligated to make any further advances or other

extension of credit under the DIP Facility (as defined in the Final DIP Order), (ii) all security

interests and liens on the DIP Collateral shall be hereby automatically released (without the

necessity of filing UCC-3 termination statements, provided that the DIP Factor is authorized to

file such UCC-3 termination statements), and (iii) all uncollected and unpaid accounts receivable

shall be hereby automatically charged back and reassigned to the Debtor.


Dated:      New York, New York
            June 30, 2025

                                        _____/s/Martin Glenn_____
                                          THE HONORABLE MARTIN GLENN
                                        CHIEF UNITED STATES BANKRUPTCY JUDGE