**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7203
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Tracy L. Klestadt
Lauren C. Kiss
Stephanie R. Sweeney

*Counsel to the Debtor and Debtor-in-*
*Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------x
In re                                             :
                                                  :          Chapter 11
PUBLISHERS CLEARING HOUSE LLC,       :
                                                  :          Case No. 25-10694 (MG)
                      Debtor.            :
-------------------------------------------------------x

### NOTICE OF CLOSING OF SALE AND FILING OF
### AMENDED ASSET PURCHASE AGREEMENT

**PLEASE TAKE NOTICE**, that on June 30, 2025, the Court entered its *Order (A) Authorizing Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (B) Granting Related Relief* [Docket No. 177] (the "Sale Order") approving the sale of the Debtor's assets to ARB Interactive, Inc. (the "Successful Bidder"), or its designee, pursuant to the terms of that certain Asset Purchase Agreement, dated as of June 18 2025, by and between the Debtor and ARB Interactive, Inc., attached to the Sale Order as Exhibit 1 (together with all schedules and exhibits attached thereto, as may be amended from time to time, the "Purchase Agreement").

**PLEASE TAKE FURTHER NOTICE**, that in accordance with Section 11.5 of the Purchase Agreement, by delivery to the Debtor of that certain Notice of Assignment dated July 9, 2025, the Successful Bidder assigned all of its rights and obligations under the Purchase Agreement to PCH Digital LLC ("NewCo"), provided that such assignment shall not relieve Successful Bidder of Successful Bidder's obligations under the Purchase Agreement, the Sale Order, or any other Order of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE**, that in accordance with Section 11.2 of the Purchase Agreement and paragraph 27 of the Sale Order, the Debtor and NewCo entered into that certain Amendment No. 1 to Asset Purchase Agreement, dated as of July 14, 2025 (the "Amendment").

**PLEASE TAKE FURTHER NOTICE**, that a copy of the Purchase Agreement and Amendment, together with all schedules and exhibits thereto, is attached hereto as **Exhibit "A"**.

**PLEASE TAKE FURTHER NOTICE**, that the closing of the transactions contemplated by the Purchase Agreement (as amended) occurred on July 15, 2025.


Dated:    New York, New York
          July 15, 2025

                              **KLESTADT WINTERS JURELLER**
                              **SOUTHARD & STEVENS, LLP**


                    By:  */s/ Tracy L. Klestadt*
                         Tracy L. Klestadt
                         Lauren C. Kiss
                         Stephanie R. Sweeney
                         200 West 41st Street, 17th Floor
                         New York, New York 10036
                         Tel: (212) 972-3000
                         Fax: (212) 972-2245
                         Email: tklestadt@klestadt.com
                                lkiss@klestadt.com
                                ssweeney@klestadt.com


                         *Counsel to the Debtor and Debtor-in-Possession*

# **<u>Exhibit A</u>**

*Execution Version*

# ASSET PURCHASE AGREEMENT

THIS ASSET PURCHASE AGREEMENT (this "<u>Agreement</u>") is made as of June 18, 2025 (the "<u>Effective Date</u>"), by and between ARB Interactive, Inc., a Delaware corporation (the "<u>Buyer</u>"), and Publishers Clearing House LLC, a New York limited liability company (the "<u>Seller</u>" or the "<u>Debtor</u>"). Capitalized terms used herein and not otherwise defined herein have the meaning set forth in <u>Article I</u>.

## RECITALS

WHEREAS, on April 9, 2025 (the "<u>Petition Date</u>"), the Seller filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>") in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>") and the Debtor's case is being administered under Case No. 25-10694 (MG) (the "<u>Bankruptcy Case</u>"); and

WHEREAS, Buyer has delivered to Klestadt Winters Jureller Southard & Stevens, LLP ("<u>KWJSS</u>") an amount in cash totaling $710,000 (such amount, as it may be adjusted pursuant hereto, the "<u>Deposit</u>") in immediately available funds; and

WHEREAS, Seller believes, following consultation with Seller's professionals, and consideration of available alternatives, that, in light of the current circumstances, a sale of certain of Seller's assets as provided herein is necessary to maximize value, and is in the best interest of the Debtor's estate and its creditors; and

WHEREAS, Seller desires to sell to Buyer all of the Acquired Assets (defined below) and transfer to Buyer the Assumed Liabilities (defined below), and Buyer desires to purchase from Seller all of the Acquired Assets and assume all of the Assumed Liabilities, in each case on the terms and subject to the conditions hereinafter set forth; and

WHEREAS, the execution and delivery of this Agreement and Seller's ability to consummate the transactions set forth in this Agreement are subject to, among other things, the entry of the Sale Order (defined below) under, *inter alia*, sections 363 and 365 of the Bankruptcy Code; and

WHEREAS, the Parties desire to consummate the proposed transaction as promptly as practicable after the Bankruptcy Court enters the Sale Order.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and in consideration of the representations, warranties and covenants herein contained, and for other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged and intending to be legally bound hereby, the Parties agree as follows:

## ARTICLE I

## DEFINITIONS

Section 1.1    <u>Definitions</u>. For purposes of this Agreement, the following terms have the meaning specified or referenced below.

"Acquired Assets" shall have the meaning set forth in Section 2.1.

"Acquired Intellectual Property" shall have the meaning set forth in Section 2.1.

"Acquired IT Assets" means all computers, Software, servers, workstations, peripherals, networks, routers, data communication lines, telecommunications equipment, and other information technology equipment, systems and infrastructure that are used or held for use by or on behalf of Seller or any of its Affiliates in connection with the operation of the Business.

"Affiliate" shall have the meaning ascribed to it section 101(2) of the Bankruptcy Code.

"Agreement" shall have the meaning set forth in the Preamble.

"Allocation" shall have the meaning set forth in Section 7.1(d).

"Alternative Transaction" means, to the extent approved by the Bankruptcy Court, a transaction or series of related transactions (whether by asset sale, equity purchase, merger or otherwise) pursuant to which Seller agrees to a sale (to a Person other than Buyer) of all of the Acquired Assets or any group of assets that includes all or any material portion of the Acquired Assets.

"Appointee" shall have the meaning set forth in Section 10.1(c)(ii).

"Assigned Contracts" shall have the meaning set forth in Section 2.1.

"Assignment and Assumption Agreement" shall have the meaning set forth in Section 3.5(c).

"Assumed General Liabilities" shall have the meaning set forth in Section 2.3.

"Assumed Liabilities" shall have the meaning set forth in Section 2.3.

"Assumed Prize Liabilities" shall have the meaning set forth in Section 2.3.

"Auction" shall mean the auction for the sale and purchase of the Acquired Assets, to be conducted in accordance with the Bidding Procedures.

"Avoidance Actions" means any and all claims for relief of Seller under chapter 5 of the Bankruptcy Code, or state fraudulent conveyance, fraudulent transfer or other similar state laws, and all proceeds thereof.

"Bankruptcy Case" shall have the meaning set forth in the Recitals.

"Bankruptcy Code" shall have the meaning set forth in the Recitals.

"Bankruptcy Court" shall have the meaning set forth in the Recitals.

"Bidding Procedures Order" means the *Order (A) Approving Bidding Procedures in Connection with a Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens,*

*Claims, Encumbrances and Other Interests; (b) Scheduling an Auction and Sale Hearing and Approving the Form and Manner of Notice Thereof; (C) Establishing Certain Assumption and Assignment Procedures and Approving the Form and Manner of Notice Thereof; and (D) Granting Related Relief* [Docket No. 127].

"Bidding Procedures" means the solicitation, bid and auction procedures attached as Schedule 1 to the Bidding Procedures Order.

"Books and Records" shall have the meaning set forth in Section 7.6.

"Business" means the business and operations of Seller and its Affiliates as conducted as of date hereof, including their various prize opportunities and sweepstakes, casual game playing, token reward economy, advertising solutions, and data solutions businesses.

"Business Day" means any day of the year, other than a Saturday or Sunday, on which national banking institutions in New York, New York are open to the public for conducting business and are not required or authorized by Law to close.

"Buyer" shall have the meaning set forth in the Preamble.

"Buyer Termination Notice" shall have the meaning set forth in Section 10.1(c)(i).

"Cash Consideration" means $7,100,000.

"Claims" has the meaning given to such term in Section 101(5) of the Bankruptcy Code.

"Closing" shall have the meaning set forth in Section 3.4.

"Closing Date" shall have the meaning set forth in Section 3.4.

"Closing Date Cash Payment" shall have the meaning set forth in Section 3.3.

"Closing Legal Impediment" shall have the meaning set forth in Section 8.2.

"Code" means the Internal Revenue Code of 1986, as amended.

"Confidentiality Agreement" means that certain Confidentiality Agreement, by and between the Seller and ARB Gaming LLC, dated as of May 9, 2025.

"Contract" means any contract, agreement, undertaking, lease, sublease, license, sublicense, regulatory license, engagement, sales order, purchase order or other commitment, whether written or oral (including commitments to enter into any of such), that is binding on any Person or any part of its property under applicable Law.

"Copyright Infringement Claim" shall have the meaning set forth on Schedule 4.10(d).

"Cure Costs" means amounts that must be paid and obligations that otherwise must be satisfied, including pursuant to Sections 365(b)(1)(A) and (B) of the Bankruptcy Code, in connection with the assumption and/or assignment of the Assigned Contracts.

"Debtor" shall have the meaning set forth in the Preamble.

"Deposit" shall have the meaning set forth in the Recitals.

"Digital Services" shall have the meaning set forth in Section 2.1(a)(i).

"DIP Order" means the *Final Order (i) Authorizing the Debtor to Enter into a Post-Petition Senior Secured Financing Facility; (ii) Modifying the Automatic Stay; and (iii) Granting Related Relief* [Docket No. 61].

"Effective Date" shall have the meaning set forth in the Preamble.

"Encumbrance" means any charge, lien (statutory or otherwise, including as defined in section 101(37) of the Bankruptcy Code), license, sublicense, claim, mortgage, hypothecation, deed of trust, pledge, security interest, security agreement, defect of title, option, right of use or possession, right of first offer or first refusal, easement, servitude, restrictive covenant, encroachment, encumbrance, claim of ownership, lease, sublease, or other similar restriction of any kind.

"Enforceability Exceptions" shall have the meaning set forth in Section 4.2.

"Excluded Assets" shall have the meaning set forth in Section 2.2.

"Excluded Liabilities" shall have the meaning set forth in Section 2.4.

"Final Order" means an Order or judgment of the Bankruptcy Court entered by the clerk of the Bankruptcy Court or such other court on the docket in the Bankruptcy Case or the docket of such other court, which has not been modified, amended, reversed, vacated or stayed and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument or rehearing has expired and as to which no appeal, petition for certiorari or motion for new trial, reargument or rehearing shall then be pending or (b) if an appeal, writ of certiorari new trial, reargument or rehearing thereof has been sought, such order or judgment of the applicable Bankruptcy Court, or other court of competent jurisdiction shall have been affirmed by the highest court to which such Order was appealed, or certiorari shall have been denied, or a new trial, reargument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument or rehearing shall have expired, as a result of which such order shall have become final in accordance with Rule 8002 of the Federal Rules of Bankruptcy Procedure or a similar rule of such other court of competent jurisdiction; *provided*, that, with respect to the Bankruptcy Court, the possibility that a motion under Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be (but for the avoidance of doubt has not been) filed relating to such order, shall not cause such order not to be a Final Order.

"General Assignment Agreements" shall have the meaning set forth in Section 3.5(h).

"Governmental Authority" means any United States federal, state, municipal, county or local or any foreign, government, governmental agency or authority, or regulatory or administrative authority, board, bureau, commission, division or other instrumentality of any of

the foregoing exercising or entitled to exercise any administrative, executive, judicial, legislative, regulatory or self-regulatory or taxing authority or power, including the United States Patent and Trademark Office and United States Copyright Office, or any court, tribunal, arbitrator or judicial body having competent jurisdiction over any of the Parties or their respective properties or assets, including the Bankruptcy Court.

"Intellectual Property" means any and all worldwide intellectual property and proprietary rights including all (a) patents and patent applications, together with all divisionals, continuations, continuations in part, reissues, re-examinations, renewals and extensions thereof, and all priority rights resulting from any of the foregoing ("Patents"); (b) trademarks, service marks, trade dress, logos, trade names, corporate names, fictitious business names, domain names (and associated subdomains), social media identifiers, and other indicia of source or origin (whether or not registered) and all registrations and applications for registration of any of the foregoing and all renewals thereof, together with all goodwill associated with any of the foregoing ("Marks"); (c) copyrights, whether or not registered, and all registrations, and applications for registration thereof and all reversions, extensions and renewals thereof ("Copyrights"); (d) rights in Software; and (e) trade secrets, know how, processes, methods, designs, inventions, techniques, and other rights in proprietary or confidential information.

"Knowledge of Seller" means the actual knowledge of an officer or employee of Seller who is at the level of vice president or higher.

"Law" means any foreign or domestic federal, state, municipal, local, national, supranational law, statute, code, ordinance, rule, regulation, order, judgment, writ, stipulation, award, injunction or decree by any Governmental Authority.

"Liability" means any debt, loss, claim, damage, demand, fine, judgment, penalty, liability or obligation (whether known or unknown, asserted or unasserted, absolute or contingent, accrued or unaccrued, liquidated or unliquidated, or due or to become due), including amounts paid in settlement, interest, court costs, costs of investigators, any attorneys', accountants', financial advisors or other experts' fees or other expenses incurred in connection therewith.

"Material Adverse Effect" means any effect, change, condition, circumstance, development or event that, individually or in the aggregate with all other effects, changes, conditions, circumstances, developments and events, (x) has had, or would reasonably be expected to have, a material adverse effect on the Acquired Assets or the Assumed Liabilities, or (y) would, or would reasonably be expected to, materially impair or impede Seller's ability to consummate the transactions contemplated by this Agreement or the other Transaction Documents, or to perform its obligations under this Agreement or the other Transaction Documents, or prevent or materially delay the consummation by Seller of the transactions contemplated by this Agreement or the other Transaction Documents or the performance of its obligations under this Agreement or the other Transaction Documents; provided, however, that solely with respect to clause (x) of this definition, no event, circumstances, development, change or effect resulting from any of the following shall be deemed to constitute or shall be taken into account in determining whether a Material Adverse Effect has occurred for purposes of Section 8.6 hereof: (A) changes in global or national economic or political conditions, (B) changes or proposed changes following the date hereof in applicable Law or the interpretation, enforcement or implementation thereof or in GAAP

or international financial reporting standards, or the interpretation thereof, (C) any failure by the Seller to meet any internal or third-party projections or forecasts or estimates of revenue, earnings or other performance measures or operating statistics (provided, that the facts, circumstances or occurrences giving rise to or contributing to such failure that are not otherwise excluded from this definition of "Material Adverse Effect" may be taken into account in determining whether there has been a Material Adverse Effect), or (D) changes, including impacts on relationships with users, customers, suppliers, vendors, employees, or Governmental Authorities, in each case attributable to the execution, announcement, pendency or consummation of this Agreement or any Transaction Document or the transactions contemplated hereby or the Bankruptcy Case.

"North American Trademark Assignment" shall have the meaning set forth in Section 3.5(d).

"Open Source Software" means any software licensed, distributed or otherwise made available as "free software" (as defined by the Free Software Foundation), or "open source software" (meaning software distributed under any license approved by the Open Source Initiative as set forth at http://www.opensource.org), or under any similar licensing or distribution model.

"Order" means any award, writ, injunction, judgment, order, directive, stipulation, verdict, consent, declaration or decree entered, issued, made or rendered by any Governmental Authority.

"Ordinary Course of Business" means, with respect to the Business, the ordinary and usual course of day-to-day operations of the business through the date hereof and consistent with past practice, excluding any actions taken in connection with the Bankruptcy Case.

"Other Trademark Assignment" shall have the meaning set forth in Section 3.5(e).

"Outside Date" shall have the meaning set forth in Section 10.1(b)(ii).

"Party" or "Parties" means, individually or collectively, Buyer and Seller.

"Patent Assignment" shall have the meaning set forth in Section 3.5(f).

"PCH Privacy Policy" means the privacy policy located at privacy.pch.com as updated on January 27, 2025.

"Permitted Encumbrances" means the list of encumbrances set forth on Schedule 1.1.

"Person" means any individual, corporation (including any non-profit corporation), partnership, limited liability company, joint venture, estate, trust, association, organization or other entity or Governmental Authority.

"Personal Information" means any information that relates to or is reasonably linkable to any natural person, device or household, and/or is considered "personally identifiable information," "personal information," "personal data," or any similar term by any applicable Privacy Laws or Section 101(41A) of the Bankruptcy Code.

"Petition Date" shall have the meaning set forth in the Recitals.

"Pett Claims" shall mean the claims alleged by certain individuals in the action captioned *Pett, et al. v. Publishers Clearing House, Inc.*, case number 2:22-cv-11389-DPH-EAS, pending before the United States District Court for the Eastern District of Michigan.

"Post-Closing Tax Period" means (a) any taxable period beginning after the Closing Date and (b) the portion of any Straddle Period beginning after the Closing Date.

"Pre-Closing Covenant" shall have the meaning set forth in Section 11.13.

"Pre-Closing Tax Period" means (a) any taxable period ending on or before the Closing Date and (b) the portion of any Straddle Period beginning on the first day of such Straddle Period and ending at the close of business on the Closing Date.

"Privacy Laws" means all Laws, rules, guidance, guidelines or standards relating to privacy, data security, the Processing of Personal Information and data breach notification, website and mobile application privacy policies and practices, consumer protection, content moderation, online safety, online platform regulation, the Processing and security of payment card information (including the Payment Card Industry Data Security Standard and other applicable card association rules), wiretapping, the interception of electronic communications, the tracking or monitoring of online activity, data- or web-scraping, advertising or marketing, and email, text message, or telephone communications, including: the Federal Trade Commission Act; the Telephone Consumer Protection Act; the Telemarketing and Consumer Fraud and Abuse Prevention Act; the Controlling the Assault of Non-Solicited Pornography and Marketing Act; the Children's Online Privacy Protection Act; and the California Consumer Privacy Act ("CCPA") and any similar Laws enacted and in effect in other U.S. states.

"Privacy Requirements" means all applicable: (i) Privacy Laws; (ii) policies, notices, and/or statements related to privacy, security or the Processing of Personal Information; and (iii) contractual commitments related to privacy, security, or the Processing of Personal Information.

"Proceeding" means any action, arbitration, audit, hearing, investigation, litigation, claim, proceeding or suit (whether civil criminal, administrative, investigative or appellate proceeding or any informal proceeding) commenced, brought, conducted, or heard by or before, or otherwise involving, any Governmental Authority, other than an Avoidance Action.

"Process", "Processed" or "Processing" means any operation or set of operations which is performed on information, including Personal Information, such as the use, collection, processing, storage, recording, organization, adaption, alteration, transfer, retrieval, consultation, disclosure, dissemination, combination or disposal of such Personal Information, and/or is considered "processing" by any applicable Privacy Laws.

"Proprietary Software" shall have the meaning set forth in Section 4.10(a).

"Purchase Price" has the meaning set forth in Section 3.1.

"Representative" means, with respect to a particular Person, any director, officer, manager, member, incorporators, partners, direct and indirect stockholders, employee, agent, consultant,

advisor or other representative of such Person, including legal counsel, accountants and financial advisors.

"Sale Motion" shall mean the motion filed by the Seller seeking approval of the sale of the Acquired Assets [Docket No. 59].

"Sale Notice" means the Notice of Auction and Sale Hearing approved by the Bankruptcy Court as part of the Bidding Procedures Order.

"Sale Order" means an Order of the Bankruptcy Court, in form and substance acceptable to Buyer, (a) authorizing and approving pursuant to Sections 105, 363, and 365 of the Bankruptcy Code, inter alia, (i) the sale of the Acquired Assets of Seller to Buyer on the terms and conditions set forth herein, free and clear of all Encumbrances (to the extent set forth herein), other than Assumed Liabilities and (ii) the assumption and assignment of the Assigned Contracts to Buyer; (b) finding that (i) Buyer has provided adequate assurance (as that term is used in section 365 of the Bankruptcy Code) of future performance in connection with the assumption of the Assigned Contracts, (ii) the consideration provided by Buyer pursuant to this Agreement constitutes reasonably equivalent value and fair consideration for the Acquired Assets; (iii) Buyer and Seller did not engage in any conduct that would allow this Agreement to be set aside pursuant to section 363(n) of the Bankruptcy Code; (iv) Buyer has acted in "good faith" within the meaning of Section 363(m) of the Bankruptcy Code; and (v) this Agreement was negotiated, proposed and entered into by the Parties without collusion, in good faith and from arm's length bargaining positions; and (c) ordering that (i) notwithstanding that provision of the Federal Rules of Bankruptcy Procedures 6004(h) and 6006(d), the Sale Order is not stayed and is effective immediately upon entry; and (ii) Buyer shall have no Liability or responsibility for any Liability or other obligation of Seller arising under or related to the Acquired Assets other than as expressly set forth in this Agreement, including successor or vicarious Liabilities of any kind or character, including any theory of antitrust, environmental, successor, or transferee Liability, labor law, de facto merger, or substantial continuity (as amended, modified, or supplemented).

"Security Incident" means any (i) accidental, unlawful or unauthorized access, use, loss, exfiltration, disclosure, alteration, destruction, encryption, compromise, or other Processing of Personal Information and/or confidential information; or (ii) occurrence that constitutes a "data breach," "security breach," "personal data breach," "security incident," "cybersecurity incident," or any similar term under any applicable Law.

"Seller" shall have the meaning set forth in the Preamble.

"Seller Termination Notice" shall have the meaning set forth in Section 10.1(d)(i).

"Sensitive Personal Information" means Personal Information that (a) is defined as "sensitive," "special category," or any similar term under Privacy Requirements; (b) relates to a "child," "known child," "minor," or any similar term under Privacy Requirements; or (c) otherwise relates to racial or ethnic origin, religious beliefs, mental or physical health, sexual orientation, citizenship or immigration status, genetics or biometrics, or precise geolocation.

"Software" means all (a) software and computer programs, including applications, interfaces, tools, templates, menus, buttons, icons, schematics and operating systems and all

software implementation of algorithms, models and methodologies, whether in source code or object code, (b) databases, data files and data compilations, including any and all data and collections of data, and (c) documentation (including programmers' notes and source code annotations, user manuals and other training documentation) relating to any of the foregoing.

"Straddle Period" means any taxable period beginning on or before the Closing Date and ending after the Closing Date.

"Subsidiary" means any entity with respect to which a specified Person (or a Subsidiary thereof) has the power, through the ownership of securities or otherwise, to elect a majority of the directors or similar managing body.

"Tax" or "Taxes" means any federal, state, local or foreign income, gross receipts, capital stock, license, escheat, unclaimed property, franchise, profits, withholding, social security, unemployment, disability, real property, ad valorem/personal property, stamp, excise, occupation, sales, use, transfer, value added, alternative minimum, estimated or other tax or imposition, including any interest, penalty or addition thereto.

"Tax Return" means any return, declaration, report, claim for refund, information return or other document (including any related or supporting estimates, elections, schedules, statements, or information) filed with or required to be filed with any Governmental Authority or required to be provided to any Person, in each case in connection with the determination, assessment or collection of any Tax or the administration of any laws, regulations or administrative requirements relating to any Tax.

"Third Party" means a Person who or which is neither a Party nor an Affiliate of a Party.

"Topix Patents" shall have the meaning set forth on Schedule 4.10(a)(i).

"Transaction Documents" means this Agreement, the General Assignment Agreements, bills of sale, the Assignment and Assumption Agreement, the North American Trademark Assignment, the Other Trademark Assignment, the Patent Assignment, the Copyright Assignment and any other agreements, instruments or documents entered into pursuant to this Agreement.

"Transfer Taxes" shall have the meaning set forth in Section 7.1(a).

"Users" shall have the meaning set forth in Section 2.1(a)(i).

Section 1.2    Other Definitions and Interpretive Matters.

(a)    Unless otherwise indicated to the contrary in this Agreement by the context or use thereof:

(i)    When calculating the period of time before which, within which or following which any act is to be done or step taken pursuant to this Agreement, the date that is the reference date in calculating such period shall be excluded.  If the last day of such period is a day other than a Business Day, the period in question shall end on the next succeeding Business Day.  Any reference to "days" means calendar days unless Business Days are expressly specified.

(ii)       Any reference in this Agreement to "$" means U.S. dollars.

(iii)      Unless the context otherwise requires, all capitalized terms used in the Schedules shall have the respective meanings assigned in this Agreement.  No reference to or disclosure of any item or other matter in the Schedules shall be construed as an admission or indication that such item or other matter is material.  No disclosure in the Schedules relating to any possible breach or violation of any Contract or Law shall be construed as an admission or indication that any such breach or violation exists or has actually occurred.  Any information, item or other disclosure set forth in any Schedule shall be deemed to have been set forth in all other applicable Schedules if the relevance of such disclosure to such other Schedule is reasonably apparent on its face.  All Schedules attached or annexed hereto or referred to herein are hereby incorporated in and made a part of this Agreement as if set forth in full herein.

(iv)      Any reference in this Agreement to gender includes all genders, and words importing the singular number also include the plural and vice versa.

(v)       The provision of a table of contents, the division of this Agreement into Articles, Sections and other subdivisions and the insertion of headings are for convenience of reference only and shall not affect or be utilized in the construction or interpretation of this Agreement.  All references in this Agreement to any "Section," "Article," or "Schedule" are to the corresponding Section, Article, or Schedule of or to this Agreement unless otherwise specified.

(vi)      Words such as "herein," "hereof" and "hereunder" refer to this Agreement as whole and not merely to a subdivision in which such words appear, unless the context otherwise requires.  The word "or" when used in this Agreement is not meant to be exclusive unless expressly indicated otherwise.

(vii)     The word "including" or any variation thereof means "including, without limitation," and shall not be construed to limit any general statement that it follows to the specific or similar items or matters immediately following it.  The word "extent" in the phrase "to the extent" means the degree to which a subject or other thing extends, if applicable, and such phrase does not mean simply "if".

(viii)    Any reference to any federal, state, local or foreign statute or Law shall be deemed also to refer to all rules and regulations promulgated thereunder, unless the context requires otherwise.

## ARTICLE II

## PURCHASE AND SALE

Section 2.1     Purchase and Sale of the Acquired Assets.  On the terms and subject to the conditions set forth in this Agreement, on the Closing Date, in consideration of payment of the Purchase Price and assumption of the Assumed Liabilities by Buyer, Seller shall sell, transfer, assign, convey and deliver, or cause to be sold, transferred, assigned, conveyed and delivered, to Buyer, free and clear of any Encumbrances, and Buyer shall purchase, assume and accept from Seller, all right, title and interest of Seller and, to the extent relating to the Business, of its

Affiliates, in and to all of the assets and properties, in each case, owned, held, used or held for use in the conduct of the Business (other than Excluded Assets)(collectively, the "Acquired Assets"):

(a)    To the extent permitted by Privacy Laws and the Sale Order:

(i)    all information (excluding Sensitive Personal Information, but including, for the avoidance of doubt, all categories of Personal Information and related information described in the PCH Privacy Policy that does not constitute Sensitive Personal Information) related to: (A) all active and inactive registrants, entrants, visitors, and other users of the Company's websites, applications, or other digital services (collectively, "Digital Services"); (B) all current and past recipients of the Company's direct mail; (C) all active and inactive participants in the Company's surveys and polls provided through the Company's Digital Services or provided through third-party Digital Services using Company branding; and (D) any other consumers located or having a home address in the United States from whom Personal Information was collected by the Company pursuant to the PCH Privacy Policy (collectively, as set forth in subsections (A)-(D), but excluding, for the avoidance of doubt, employees and business partners, "Users");

(ii)    any of the information described in Section 2.1(a)(i) that has been anonymized, pseudonymized, or otherwise de-identified;

(iii)    all records related to Users expressing, indicating, or otherwise communicating their choice, direction, instruction, request, acknowledgement, acceptance or agreement with respect to the Company's Processing of their Personal Information, including acknowledgments or acceptances of the PCH Privacy Policy, consent to the Processing of Personal Information, opt ins and opt outs to the sale or other Processing of Personal Information (including for marketing purposes), and requests to exercise rights afforded under Privacy Laws; and

(iv)    all encryption keys, passcodes or cyphers required to access any of the foregoing;

(b)    all Intellectual Property owned or purported to be owned by the Seller and, to the extent relating to the Business, any of its Affiliates, including the Proprietary Software and the Intellectual Property required to be listed on Schedule 4.10(a), together with (i) all tangible embodiments of the foregoing (in whatever form or medium), including all audio and video recordings, images and other content (including website and mobile application content), (ii) all past, present, and future claims and causes of action arising out of or relating to any infringement, misappropriation, dilution, or other violation or impairment of the foregoing, and the right to sue or otherwise recover therefor (and to retain any damages or other amounts recovered), and (iii) all proceeds of the foregoing, including license fees, royalties, income, damages, proceeds of suit and other payments now or hereafter due and/or payable with respect to any of the foregoing (collectively, the "Acquired Intellectual Property");

(c)    subject to Section 6.1(c), the Contracts set forth on Schedule 2.1(c) (collectively, the "Assigned Contracts") including any prepaid amounts or deposits in respect of such Assigned Contracts;

(d)    the Acquired IT Assets;

(e)     the assets listed on Schedule 2.1(e);

(f)     all information, emails, files (including file histories, original certificates, and all other internal and external correspondence and documentation relating to the registrations and applications for registration of the Acquired Intellectual Property), manuals, guidelines, books and records, other materials and documents to the extent related to the Acquired Assets or the Assumed Liabilities, but excluding any such information subject to attorney-client privilege; and

(g)     all rights to third-party coverage Claims and insurance proceeds related to the Acquired Assets or the Assumed Liabilities, excluding any rights or proceeds arising from or relating to the Pett Claims (if any).

Section 2.2    Excluded Assets.    Notwithstanding anything herein to the contrary, the Buyer shall not acquire any right, title or interest in or to any assets, properties, rights, interests, or claims of any kind or description of Seller or its Affiliates other than the Acquired Assets (collectively, the "Excluded Assets").  For the avoidance of doubt, Excluded Assets shall include the following:

(a)     Avoidance Actions and all Claims that Seller has arising prior to the Closing;

(b)     (i) Seller's cash, cash equivalents, bank deposits and similar items, and (ii) any accounts receivable of Seller, in each case excluding, for the avoidance of doubt, the Deposit (to the extent payable to Buyer hereunder);

(c)     Organizational documents, corporate records and minute books of Seller (excluding any documents, records and books related to the Acquired Assets or the Assumed Liabilities);

(d)     Any Sensitive Personal Information processed by Seller or any of its Affiliates;

(e)     All Claims and causes of action of Seller, including counterclaims that may be asserted in response to any proofs of claim filed against Seller (other than such Claims and causes of actions constituting Acquired Intellectual Property or otherwise with respect to any other Acquired Assets or any Assumed Liabilities);

(f)     Rights that will accrue to Seller under this Agreement; and

(g)     Any Contract to which Seller or any of its Affiliates is a party or by which any of its assets or properties are bound, in each case, that is not an Assigned Contract, including all real property leases and all personal property located on the premises in respect thereof.

Section 2.3    Assumed Liabilities.    On the terms and subject to the conditions set forth in this Agreement, at the Closing, contemporaneously with the sale, assignment and transfer of the Acquired Assets to Buyer, Buyer shall assume and agree to pay, perform and discharge, as and when due (in accordance with the respective terms and subject to the respective conditions thereof)

(a) those Liabilities arising from or relating to the ownership of the Acquired Assets or the use thereof by Buyer, in each case, solely to the extent (i) such Liabilities arise after the Closing from the ownership and operation of the Acquired Assets by Buyer following the Closing, and (ii) relate to events, facts and circumstances first existing following the Closing (and not in existence at any time at or prior to the Closing), (b) with respect to Taxes, solely those Taxes pro-rated to Buyer pursuant to Section 7.1(c), (c) Cure Costs associated with the Assigned Contracts (as set forth in subsections (a), (b) and (c), collectively, the "Assumed General Liabilities"), (d) payment obligations of Seller in respect of prizes solely to the extent arising from contests launched after the Petition Date, (e) payment obligations of Seller in respect of prizes set forth on Schedule 2.3 hereto (as set forth in subsections (d) and (e), collectively, the "Assumed Prize Liabilities"); provided, however, that, notwithstanding anything to the contrary herein or otherwise, the Assumed Prize Liabilities assumed by Buyer hereunder shall not exceed in any event $3,800,000 in the aggregate and shall be subject to the sub-caps set forth on Schedule 2.3, and (f) all Liabilities arising from, following the Closing Date, leases with respect to all the Acquired IT Assets and all the office equipment acquired pursuant to this Agreement ("Assumed Equipment Leases", and together with the Assumed General Liabilities and Assumed Prize Liabilities, collectively, the "Assumed Liabilities"); and no other Liabilities whatsoever of Seller or any of its Affiliates.

Section 2.4    Excluded Liabilities.  Buyer shall not assume or be obliged to pay, perform or otherwise discharge, and Seller shall be solely and exclusively liable with respect to, any Liability of Seller or any of its Affiliates that is not an Assumed Liability, including (a) any Liability of Seller or any of its Affiliates, or otherwise imposed on the Acquired Assets, in respect of (i) sweepstakes, games, contests or any other prizes (whether awarded or not), other than the Assumed Prize Liabilities, and/or (ii) any Tax attributable to any Pre-Closing Tax Period, including (x) any Taxes of any other Person under Treasury Regulation Section 1.1502-6 (or any similar provision of state, local or foreign law), as a transferee or successor, by Contract or otherwise, and (y) any Transfer Taxes (as described in Section 7.1(a)), but excluding those Taxes pro-rated to the Buyer pursuant to Section 7.1(c) and (b) any Liability to the extent arising from or relating to the Copyright Infringement Claim (such Liabilities, collectively, the "Excluded Liabilities").

Section 2.5    Assignment; Cure Costs.  Subject to the terms and conditions of this Agreement and the Sale Order, Seller shall transfer and assign all Assigned Contracts to Buyer, and Buyer shall assume all Assigned Contracts from Seller, as of the Closing Date pursuant to, inter alia, Section 365 of the Bankruptcy Code and the Sale Order.  In connection with such assumption and assignment of the Assigned Contracts in accordance with Section 2.1 and the other applicable provisions hereof, Buyer shall pay and discharge all Cure Costs at the Closing.  To the maximum extent permitted by the Bankruptcy Code or other applicable Law, the Assigned Contracts shall be assumed and assigned to Buyer as of the Closing Date. Notwithstanding anything to the contrary in this Agreement, to the extent that the assignment to Buyer of any Assigned Contract is not permitted by Law or is not permitted without the consent of another Person and, in the case of the Assigned Contracts that are the subject of Section 365 of the Bankruptcy Code and the Sale Order, as applicable, such restriction cannot be effectively overridden or canceled by the Sale Order, or other related Order of the Bankruptcy Court,  or to the extent an objection to assumption and assignment of an Assigned Contract is pending before the Bankruptcy Court as of the Closing Date, then this Agreement will not be deemed to constitute an assignment or an undertaking or attempt to assign the same or any right or interest therein if

such consent is not given or such objection is not resolved, and the Closing shall proceed with respect to the remaining Assigned Contracts, subject to any applicable Order of the Bankruptcy Court; provided, however, that Seller will use its reasonable best efforts to obtain any such consents to assign such Assigned Contracts to Buyer.

Section 2.6    Further Assurances.  Following the Closing, Seller, on the one hand, and Buyer, on the other hand, shall, upon the reasonable request of the other Party, use their respective commercially reasonable efforts to take, or cause to be taken, all appropriate action, do or cause to be done all things reasonably necessary under applicable Law, and execute and deliver such instruments and documents and to take such other actions, in each case at the requesting Party's expense, to consummate (or to record or otherwise evidence) the transactions contemplated by this Agreement at or after the Closing.

# ARTICLE III

# PURCHASE PRICE; CLOSING

Section 3.1    Purchase Price.  In consideration for the purchase, sale, assignment and conveyance of the Acquired Assets, Buyer shall pay to Seller cash in the amount of the Cash Consideration (the "Purchase Price") and assume the Assumed Liabilities.

Section 3.2    Deposit.  On or prior to the date hereof, Buyer has delivered to KWJSS the Deposit in immediately available funds.  The Deposit shall not be subject to any Encumbrance, attachment, trustee process, or any other judicial process of any creditor of Seller or Buyer.  If the Closing occurs, the Deposit shall be retained by Seller at the Closing (and deducted from the Purchase Price due and payable at the Closing), or if this Agreement is terminated, treated in the manner set forth in Section 10.2. For the avoidance of doubt, the Deposit shall not be property of the Debtor's estate (except if and to the extent payable to Seller hereunder).

Section 3.3    Closing Date Payment.  Upon the terms and subject to the conditions set forth in this Agreement and the Sale Order, at the Closing, (a) Buyer shall pay to Seller cash by wire transfer of immediately available funds in an amount equal to (i) the Cash Consideration, less (ii) the Deposit and all interest and other earnings accrued and earned thereon (such difference, the "Closing Date Cash Payment") and (b) Buyer and Seller shall direct KWJSS to indefeasibly transfer the Deposit together with all interest and other earnings accrued and earned thereon, in each case, to an account designated by Seller in writing at least one Business Day in advance of the anticipated Closing Date.  Notwithstanding anything to the contrary herein or otherwise, Seller shall be deemed the owner of the Deposit and all interest and other earnings accrued and earned thereon for all Tax purposes.

Section 3.4    Closing Date.  On the terms and subject to the conditions set forth in this Agreement, the closing of the sale of the Acquired Assets and the assumption of the Assumed Liabilities contemplated hereby (the "Closing") shall take place by electronic exchange of documents on a date no later than the third Business Day following the date on which the conditions set forth in Article VIII and Article IX have been satisfied or (if permissible) waived (other than the conditions that by their nature are to be satisfied by actions taken at the Closing, but subject to the satisfaction or (if permissible) waiver of such conditions), or at such other place

or time as Buyer and Seller may mutually agree upon in writing.  The date and time at which the Closing actually occurs is referred to herein as the "<u>Closing Date</u>."

Section 3.5    <u>Buyer's Deliveries to Seller</u>.  At the Closing, Buyer shall deliver or shall caused to be delivered to Seller each of the following:

(a)    the Closing Date Cash Payment in accordance with clause (a) of <u>Section 3.3</u>;

(b)    each other Transaction Document not previously executed to which Buyer is a party, duly executed by Buyer;

(c)    an assignment and assumption agreement with respect to the Assigned Contracts, in a form reasonably satisfactory to Buyer and Seller (the "<u>Assignment and Assumption Agreement</u>"), assigning to Buyer all of Seller's rights, title and interest in and to such Assigned Contracts, duly executed by Buyer;

(d)    the Assignment of U.S. and Canadian Trademarks, in the form of <u>Exhibit A</u> attached hereto (the "<u>North American Trademark Assignment</u>"), duly executed by Buyer;

(e)    the Assignment of Trademarks, in the form of <u>Exhibit B</u> attached hereto (the "<u>Other Trademark Assignment</u>"), duly executed by Buyer;

(f)    the Assignment of Patents, in the form of <u>Exhibit C</u> attached hereto (the "<u>Patent Assignment</u>"), duly executed by Buyer;

(g)    the Assignment of Copyrights, in the form of <u>Exhibit D</u> attached hereto (the "<u>Copyright Assignment</u>"), duly executed by Buyer;

(h)    such other bills of sale, assignments and other good and sufficient instruments of assumption and transfer, each in form reasonably satisfactory to Buyer and Seller (the "<u>General Assignment Agreements</u>"), as reasonably requested to transfer and assign the Acquired Assets and Assumed Liabilities to Buyer; and

(i)    a duly executed certificate from an officer of Buyer certifying on behalf of Buyer that the conditions set forth in <u>Section 9.1</u> and <u>Section 9.5</u> have been fulfilled by Buyer.

Section 3.6    <u>Seller's Deliveries to Buyer</u>.  At the Closing, Seller shall deliver or shall cause to be delivered to Buyer each of the following:

(a)    each other Transaction Document to which Seller is a party, duly executed by Seller;

(b)    such bills of sale, deeds, endorsements, assignments, other good and sufficient instruments, each in form reasonably satisfactory to Buyer, which are necessary to vest in Buyer all the right, title and interest of Seller in, to or under any or all of the Acquired Assets free and clear of Encumbrances (or to otherwise record or evidence the same);

(c)        such General Assignment Agreements, duly executed by Seller;

(d)        such Assignment and Assumption Agreement, duly executed by Seller;

(e)        the North American Trademark Assignment, duly executed by Seller;

(f)        the Other Trademark Assignment, duly executed by Seller;

(g)        the Patent Assignment, duly executed by Seller;

(h)        the Copyright Assignment, duly executed by Seller;

(i)        a payoff letter from the DIP Factor (as defined in the DIP Order) setting forth the amount of the DIP Obligations (as defined in the DIP Order) outstanding as of the Closing Date and UCC-3 termination statements and other releases reasonably requested by Buyer to memorialize the release of the DIP Factor's liens on the Acquired Assets;

(j)        a duly executed certificate from an officer of Seller certifying on behalf of Seller that the conditions set forth in Section 8.1, Section 8.6 and Section 8.7 have been fulfilled by Seller;

(k)        a copy of the Sale Order entered by the Bankruptcy Court, which shall have become a Final Order; and

(l)        a duly completed Internal Revenue Service Form W-9 properly completed and executed by Seller.

## ARTICLE IV

## REPRESENTATIONS AND WARRANTIES OF SELLER

Except as set forth in the Schedules and as a result of the pendency of the Bankruptcy Case, Seller hereby represents and warrants to Buyer that the following statements contained in this Article IV are true and correct as of the date hereof and as of the Closing Date:

Section 4.1        Organization, Standing and Corporate Power.  Seller is a limited liability company duly organized, validly existing and in good standing under the Laws of the State of New York, the jurisdiction of its formation or organization, and has all the requisite limited liability company or other entity power and authority to own or lease all of its properties and assets and to carry on its business as it is now being conducted.  Prior to the commencement of the Bankruptcy Case, Seller is duly licensed or qualified to do business in each jurisdiction in which the nature of the business conducted by it or the character or location of the properties and assets owned or leased by it makes such licensing or qualification necessary, except where the failure to be so licensed or qualified has not had, or would not reasonably be expected to have, individually or in the aggregate, a Material Adverse Effect.

Section 4.2        Authority; Validity; Consents.  Seller has, subject to requisite Bankruptcy Court approval, the requisite corporate power and authority necessary to enter into and perform

Seller's obligations under this Agreement and the other Transaction Documents to which Seller is a party and to consummate the transactions contemplated hereby and thereby. Except to the extent excused by or unenforceable as a result of the filing of the Bankruptcy Case or pursuant to the Sale Order, the execution and delivery by Seller of this Agreement and the other Transaction Documents to which Seller is a party, the performance of Seller's obligations hereunder and thereunder, and the consummation of the transactions contemplated hereby and thereby by Seller have been duly and validly authorized and approved by all necessary corporate or other action on the part of Seller. This Agreement has been duly and validly executed and delivered by Seller and each other Transaction Document required to be executed and delivered by Seller at the Closing will be duly and validly executed and delivered by Seller at the Closing. Subject to requisite Bankruptcy Court approval, this Agreement and the other Transaction Documents constitute, with respect to Seller, the legal, valid and binding obligations of Seller, enforceable against Seller in accordance with their respective terms, except as such enforceability is limited by bankruptcy, insolvency, reorganization, moratorium or similar laws now or hereafter in effect relating to creditors' rights generally or general principles of equity ("<u>Enforceability Exceptions</u>"). Subject to, and after giving effect to, requisite Bankruptcy Court approval (including, without limitation, the Sale Order), as applicable, and except (a) for entry of the Sale Order, and (b) for notices, filings and consents required in connection with the Bankruptcy Case, Seller is not required to give any notice to, make any filing with or obtain any consent from any Person (including any Governmental Authority) in connection with the execution and delivery of this Agreement and the other Transaction Documents to which it is a party or the consummation or performance of any of the transactions contemplated hereby and thereby.

Section 4.3    <u>No Conflict</u>. After giving effect to the Sale Order, the authorization, execution and delivery of this Agreement and the other Transaction Documents does not and will not, and the performance by Seller of this Agreement and the other Transaction Documents will not, except to the extent excused by or unenforceable as a result of the filing of the Bankruptcy Case or pursuant to the Sale Order, with or without notice, lapse of time or both, (a) conflict with or violate any provision of Seller's organizational documents, (b) conflict with or violate any Law, permit or Order applicable to Seller or by which any Acquired Asset or Assumed Liability is bound or affected, or (c) result in any breach of or any loss of benefit under, or give rise to any right of termination or amendment, or result in the creation of any Encumbrance (other than a Permitted Encumbrance) with respect to any Assigned Contract, except with respect to the immediately preceding clauses (b) and (c), for any such conflict, violation, breach, default or other occurrence which would not, individually or in the aggregate, reasonably be expected to have a Material Adverse Effect.

Section 4.4    <u>Transfer of Acquired Assets</u>.  Seller has sole and exclusive good and valid title to all of the Acquired Assets. Upon delivery to Buyer on the Closing Date of the instruments of transfer contemplated by <u>Section 3.6</u>, and subject to the terms of the Sale Order, Seller will thereby transfer to Buyer all of the Acquired Assets free and clear of all Encumbrances.

Section 4.5    <u>Legal Proceedings</u>.  Except as disclosed in the Bankruptcy Case, there is no Proceeding or Order pending or to the Knowledge of Seller, threatened against or affecting Seller, the Assumed Liabilities or the Acquired Assets that (a) would reasonably be expected to restrain or prohibit, delay or otherwise challenge the consummation, legality or validity of the transactions contemplated hereby or (b) would have a Material Adverse Effect.

Section 4.6    <u>Compliance with Laws and Orders</u>. Seller is in compliance and since January 1, 2022 has been in compliance in all material respects with all Laws and Orders relating to the Acquired Assets (including the use thereof) and the conduct of the business. Seller has not received any written citation, complaint, Order, or other communication since January 1, 2022 from a Governmental Authority that alleges that Seller is not in compliance with any Law or Order, in each case except as set forth on <u>Schedule 4.6</u> hereof.

Section 4.7    <u>Omitted</u>.

Section 4.8    <u>Brokers or Finders</u>.  Except as set forth on <u>Schedule 4.8</u>, neither Seller nor any Person acting on behalf of Seller has (a) used any investment banker, broker, finder or similar agent or (b) become obligated to pay any fee or commission to any broker, finder, investment banker, financial advisory, agent or intermediary for or in connection with this Agreement, the other Transaction Documents to which it is a party or the transactions contemplated hereby or thereby.  Any such fees or commissions shall be paid in full by Seller.

Section 4.9    <u>Assigned Contracts</u>. Seller has used best efforts to identify, locate and make available to Buyer a list of all Contracts material to the Business to which Seller is a party as of the Effective Date, and each such Contract is listed on <u>Schedule 4.9</u>.  There has been no written or, to the Knowledge of Seller, oral, notice of any termination, cancellation or limitation of, or any materially adverse modification or change in, the business relationship of Seller with any counterparties to the Assigned Contracts.

Section 4.10    <u>Intellectual Property; IT Assets</u>.

(a)    <u>Schedule 4.10(a)(i)</u> contains a complete and accurate list of (i) all active registrations of, and all pending applications to register, any Patents, Marks, and Copyrights, (ii) all domain name registrations and social media handles, and (iii) all unregistered Marks material to the conduct of the Business, in each case owned by Seller or, to the extent relating to the Business, any of its Affiliates. Seller has used best efforts to identify on <u>Schedule 4.10(a)(i)</u> a list of all Software owned or purported to be owned by Seller or, to the extent relating to the Business, any of its Affiliates (any such Software, whether or not listed, collectively, "<u>Proprietary Software</u>").  Except as set forth on <u>Schedule 4.10(a)(ii)</u>, there are no fees, filings, or other actions that must be paid or made within six (6) months after the date of this Agreement in order to maintain in full force and effect any Intellectual Property required to be set forth on <u>Schedule 4.10(a)(i)</u>.

(b)    Except as set forth on <u>Schedule 4.10(b)</u>, to the Knowledge of Seller, Seller or, to the extent relating to the Business, one of its Affiliates exclusively owns all right, title and interest in and to the Acquired Intellectual Property and has the valid right to use all other Intellectual Property necessary to operate the Business as currently conducted.  To the Knowledge of Seller, the execution and delivery of this Agreement and the other Transaction Documents, and the consummation of the transactions contemplated hereby and thereby, will not result in the loss, limitation, termination or other impairment of, or give rise to any right of any Person to limit, terminate or otherwise impair the right of Buyer to own or use or otherwise exercise any other rights that Seller or any of its Affiliates currently has with respect to, any such Intellectual Property, or otherwise result in the imposition on Buyer of any new or additional requirements with respect

to any such Intellectual Property. To the extent the Acquired Intellectual Property was not internally developed by Seller's employees, such Acquired Intellectual Property is subject to a valid and binding written agreement pursuant to which Seller acquired all rights in and to such Acquired Intellectual Property.

(c)    After Seller having used best efforts to identify the Open Source Software used in connection with the Proprietary Software, to the Knowledge of Seller, none of the Proprietary Software incorporates or is comprised of or is distributed with any Open Source Software in a manner that has required or would require the disclosure, licensing or distribution of any Proprietary Software (i) in source code form, or (ii) for a minimal fee or free of charge.

(d)    No Proceeding is pending and, except as set forth on <u>Schedule 4.10(d)</u>, during the past six (6) years (or earlier if presently unresolved), neither Seller nor any of its Affiliates has received any written notice: (i) alleging that the conduct of the Business or the use of any Acquired Intellectual Property infringe, misappropriate, dilute or otherwise violate the Intellectual Property of another Person; or (ii) challenging the validity, enforceability, registration, scope, ownership or use of any Acquired Intellectual Property.  To the Knowledge of Seller, no Person is infringing, misappropriating, diluting or otherwise violating the rights of Seller or any of its Affiliates in any Acquired Intellectual Property.  No Acquired Intellectual Property is subject to any outstanding Order or Contract restricting the use or licensing thereof.

(e)    Seller and its Affiliates take and have taken commercially reasonable steps to protect the integrity and security of the Acquired IT Assets (and all information and transactions stored or contained therein or transmitted or processed thereby) against unauthorized use, access, interruption, modification or corruption.

Section 4.11    <u>Privacy and Data Security</u>. To the Knowledge of Seller, with respect to all Personal Information included in the Acquired Assets: (i) Seller has materially complied with all Privacy Requirements for the past three (3) years, and the transfer of such Personal Information to Buyer will not materially violate any Privacy Requirements; (ii) Seller has not experienced any material Security Incidents in the past three (3) years; and (iii) except as set forth in <u>Schedule 4.6</u>, Seller has not received any notice, inquiry, claim, or complaint from any Person, or been subject to any investigation or enforcement action by any Governmental Authority, alleging material non-compliance with any Privacy Requirement.

Section 4.12    <u>Employee Matters</u>.

(a)    Except as disclosed in the Bankruptcy Case, there are no pending or, to the Knowledge of Seller, threatened Proceedings brought or alleged in writing by or on behalf of any current or former employees of Seller or its Affiliates against Seller or any of its Affiliates involving any employment-related claims, including, but not limited to, claims with respect to discrimination, harassment, retaliation, whistleblowing, unfair labor practices, wages and hours, misclassification of employees or independent contractors as such, immigration practices, wrongful termination, denials of leaves of absence, breach of any collective bargaining or other labor agreement, breach of any express or implied contract of employment, occupational health and safety, fair employment practices, or employment tax withholding practices, except as would

not reasonably be expected to result in material liability to Seller or its applicable Affiliates, individually or in the aggregate.

(b)    No employee of Seller or its Affiliates who is at the level of vice president or higher has been or is being investigated by Seller or its applicable Affiliate in connection with any conduct constituting sexual misconduct, harassment, or discrimination nor is any employee at the level of vice president or higher currently subject to any disciplinary action by Seller or any of its Affiliates in connection with such conduct, in each case that would reasonably be expected to cause any material damage to the Business or the reputation of the Business.

Section 4.13    No Other Representations or Warranties; No Survival.  Seller acknowledges and agrees, on behalf of itself and its Affiliates, that, except for the representations and warranties contained in Article V, none of Buyer, Buyer's Affiliates or any other Person on behalf of Buyer or Buyer's Affiliates makes any express or implied representation or warranty with respect to Buyer or with respect to any information provided by or on behalf of Buyer or its Affiliates to Seller or any of its Affiliates or any of its or their respective Representatives.  All representations and warranties of Buyer will expire upon the earlier of the Closing Date and the termination of this Agreement.  Nothing in this Section 4.13, however, shall relieve Buyer from any Liability on account of actual or knowing fraud.

## ARTICLE V

## REPRESENTATIONS AND WARRANTIES OF BUYER

Buyer hereby represents and warrants to Seller that the following statements contained in this Article V are true and correct as of the date hereof and as of the Closing Date:

Section 5.1    Organization and Good Standing.  Buyer is a corporation, duly organized, validly existing and in good standing under the laws of Delaware and has the requisite corporate power and authority to own or lease all of its properties and assets and to carry on its business as it is being conducted on the date hereof.  The Buyer is duly licensed or qualified to do business in each jurisdiction in which the nature of the business conducted by it or the character or location of the properties and assets owned or leased by it makes such licensing or qualification necessary, except for those licenses or qualifications the absence of which would not prevent or materially delay the consummation of the transactions contemplated hereby.

Section 5.2    Authority; Validity; Consents.  Buyer has the requisite power and authority necessary to enter into and perform Buyer's obligations under this Agreement and the other Transaction Documents to which it is a party and to consummate the transactions contemplated hereby and thereby.  The execution, delivery and performance of this Agreement by Buyer and the consummation by Buyer of the transactions contemplated herein have been duly and validly authorized by all requisite corporate actions in respect thereof.  The execution and delivery by the Buyer of this Agreement and the other Transaction Documents to which the Buyer is a party, the performance and compliance by Buyer with its obligations herein and therein, and the consummation by it of the transactions contemplated hereby and thereby have been duly and validly authorized and approved by all necessary corporate or other action on the part of the Buyer, and no other corporate or other proceedings on the part of the Buyer and no other stockholder votes

are necessary to authorize the execution of this Agreement or the other Transaction Documents, or the performance or consummation by the Buyer of the transactions contemplated hereby and thereby. This Agreement has been duly and validly executed and delivered by Buyer and each other Transaction Document to which Buyer is a party will be duly and validly executed and delivered by Buyer at the Closing. This Agreement and the other Transaction Documents to which Buyer is a party constitute the legal, valid and binding obligation of Buyer, enforceable against Buyer in accordance with their respective terms, except as such enforceability is limited by the Enforceability Exceptions. Subject to requisite Bankruptcy Court approval, as applicable, Buyer is not and will not be required to give any notice to or obtain any consent from any Person in connection with the execution and delivery of this Agreement and the other Transaction Documents to which it is a party or the consummation or performance of any of the transactions contemplated hereby or thereby.

Section 5.3    No Conflict.  The execution and delivery of this Agreement and the other Transaction Documents and the consummation of the transactions provided for herein and therein will not result in the breach of any of the terms and provisions of, or constitute a default under, or conflict with, or cause any acceleration of any obligation of Buyer under (a) any agreement, indenture, or other instrument to which it is bound, (b) the certificate of incorporation of Buyer, (c) any Order or (d) any Law, except, with respect to clauses (a), (c) and (d), for any such conflicts, breaches, defaults or other occurrences which would not, individually or in the aggregate, reasonably be expected to prevent or materially delay the consummation of the transactions contemplated hereby.

Section 5.4    Availability of Funds; Solvency.  Buyer will have at the Closing sufficient cash in immediately available funds to pay the Closing Date Cash Payment and any other costs, fees and expenses required to be paid by it under this Agreement and the other Transaction Documents. As of the Closing and immediately after consummating the transactions contemplated by this Agreement and the other transactions contemplated by the Transaction Documents, Buyer will not, assuming that the representations and warranties made by Seller in Article IV of this Agreement, any certificate required to be delivered by Seller to Buyer pursuant to Section 3.6(i), or any other Transaction Document  are accurate in all respects, and Seller complies in all respects with its covenants, obligations and agreements hereunder and the other Transaction Documents, (i) be insolvent (either because Buyer's financial condition is such that the sum of Buyer's debts is greater than the fair value of Buyer's assets or because the present fair value of Buyer's assets will be less than the amount required to pay Buyer's probable Liability on Buyer's debts as they become absolute and matured), (ii) have unreasonably small capital with which to engage in Buyer's business, or (iii) have incurred or plan to incur debts beyond Buyer's ability to repay such debts as they become due.

Section 5.5    Legal Proceedings.  There are no Proceedings pending or, to the knowledge of Buyer, threatened, that would affect in any material respect Buyer's ability to perform Buyer's obligations under this Agreement or any other Transaction Documents or to consummate the transactions contemplated hereby or thereby.

Section 5.6    Brokers or Finders.  Except for Ivory Capital Asia Pte Ltd and Grant Thornton, neither Buyer nor any Person acting on behalf of Buyer has (a) used any investment banker, broker, finder or similar agent or (b) become obligated to pay any fee or commission to

any broker, finder, investment banker, financial advisory, agent or intermediary for or on account of the transactions contemplated by this Agreement, the other Transaction Documents to which it is a party or the transactions contemplated hereby or thereby.  Any such fees or commissions shall be paid in full by the Buyer.

Section 5.7    Condition of Acquired Assets; Buyer's Investigation; Representations. Notwithstanding anything contained in this Agreement to the contrary, Buyer acknowledges and agrees, on behalf of itself and its Affiliates, that Seller, Seller's Affiliates or any other Person on behalf of Seller or Seller's Affiliates is not making any representations or warranties whatsoever, express or implied, beyond those expressly made by Seller in Article IV (subject to the disclosures set forth on the Schedules) or as set forth in the certificate provided to Buyer by Seller pursuant to Section 3.6(i) or in any other Transaction Documents, and Buyer acknowledges and agrees that, except for the representations and warranties contained in Article IV or as set forth in the certificate provided to Buyer by Seller pursuant to Section 3.6(i) or in any other Transaction Document, or except as provided in Section 2.1 or in the Sale Order, the Acquired Assets are being transferred on a "where is" and, as to condition, "as is" basis.  Buyer acknowledges that it has conducted to Buyer's satisfaction Buyer's own independent investigation of Acquired Assets and Assumed Liabilities.  In connection with Buyer's investigation, Buyer has received or may receive from Seller certain projections, forward-looking statements and other forecasts and certain business plan information.  Buyer acknowledges that there are uncertainties inherent in attempting to make such estimates, projections and other forecasts and plans, that Buyer is familiar with such uncertainties, that Buyer is taking full responsibility for making Buyer's own evaluation of the adequacy and accuracy of all estimates, projections and other forecasts and plans so furnished to Buyer (including the reasonableness of the assumptions underlying such estimates, projections, forecasts or plans), and that Buyer shall have no claim against Seller or any of its Affiliates or Representatives with respect thereto.  Accordingly, Buyer acknowledges that Seller makes no representation or warranty with respect to such estimates, projections, forecasts or plans (including the reasonableness of the assumptions underlying such estimates, projections, forecasts or plans), except for those expressly made by Seller in Article IV (subject to the disclosures set forth on the Schedules) or as set forth in the certificate provided to Buyer by Seller pursuant to Section 3.6(i)or in any other Transaction Document.  Nothing in this Section 5.7, however, shall relieve Seller from any Liability on account of actual or knowing fraud. Except in the case of actual or knowing fraud, all representations and warranties of Seller will expire upon the earlier of the Closing Date or the termination of this Agreement.

## ARTICLE VI

## ACTIONS PRIOR TO THE CLOSING DATE

Section 6.1    Operations Prior to the Closing Date.  Seller covenants and agrees that, except (i) as otherwise expressly required by this Agreement, (ii) with the prior written consent of Buyer, (iii) as required by the Bankruptcy Court or (iv) as otherwise required by Law, after the Effective Date and prior to the Closing Date (or the earlier termination of this Agreement):

(a)    Seller shall, and shall cause its Affiliates to, use reasonable best efforts, taking into account Seller's status as Debtor-in-Possession in the Bankruptcy Case, to maintain and preserve (i) the Acquired Assets in their present condition, and (ii)  all material business,

commercial, employee, regulatory and other relationships relating to the Acquired Assets and the Assumed Liabilities, and, without limiting the generality of the foregoing,

(b)    Seller shall not, and shall cause its Affiliates not to (directly or indirectly):

(i)    sell, lease (as lessor), mortgage or pledge, license, assign, transfer, abandon, allow to prematurely lapse, fail to maintain or otherwise dispose of, or permit to become subject to any Encumbrance (other than (A) Permitted Encumbrances, (B) Encumbrances arising under any Order of the Bankruptcy Court relating to the use of cash collateral (as defined in the Bankruptcy Code) or (C) Encumbrances arising in connection with any debtor-in-possession financing of Seller) any Acquired Assets, in each case, except for (I) non-exclusive licenses granted in the Ordinary Course of Business, and (II) the payment of payables in the Ordinary Course of Business;

(ii)    incur any indebtedness for borrowed money, enter into any capital lease or guarantee any such indebtedness or capital lease, in each case that would constitute an Assumed Liability, other than (A) in accordance with the DIP Order approved by the Bankruptcy Court in the Bankruptcy Case, or (B) accounts payable or other amounts payable in the Ordinary Course of Business;

(iii)    acquire any material assets, securities, properties, interests or businesses for the conduct of its business, tangible or intangible, other than any accounts receivable in the Ordinary Course of Business;

(iv)    (A) cancel or compromise any material Claim or waive or release any material right, in each case, that is a Claim or right related to an Acquired Asset, or (B) commence, settle or propose to settle, or consent to the entry of any judgment or Order with respect to, any Proceedings, in each case with respect to or affecting the Acquired Assets or the Assumed Liabilities, in each case other than (1) any Proceeding in respect of which any related liability is fully covered by an insurance policy and the proceeds of which constitute Acquired Assets, or (2) any Proceeding solely relating to an Excluded Asset or an Excluded Liability;

(v)    (A) make, change or revoke any Tax election; (B) change an annual accounting period; (C) adopt or change any accounting method with respect to Taxes; (D) file any amended Tax Return; (E) enter into any closing agreement; (F) settle or compromise any Tax claim or assessment; or (G) consent to any extension or waiver of the limitation period applicable to any claim or assessment with respect to Taxes, in each case to the extent such action would adversely affect the Acquired Assets or the Buyer in a Post-Closing Tax Period;

(vi)    amend, modify, supplement, change, waive, or terminate any Assigned Contract;

(vii)    Process Personal Information in violation of any Privacy Requirements, fail to maintain reasonable technical, physical, and organizational security measures, or materially change the PCH Privacy Policy or Seller's practices with respect to the Processing Personal Information;

(viii)    change any accounting policies, principles or practices relating to the Acquired Assets or Assumed Liabilities; or

(ix)    enter into any agreement or commitment to take, or authorize, any action prohibited by this Section 6.1.

(c)    Seller shall cooperate with the Buyer and its Representatives' reasonable requests for information and Buyer's due diligence or Buyer's efforts to identify any Contracts related to or necessary for the ownership and operation of the Acquired Assets. From the Effective Date until the Closing, Buyer may amend Schedule 2.1(c) to add or remove any Contract from Schedule 2.1(c) by providing Seller with written notice thereof.

Section 6.2    Bankruptcy Court Filings and Approval

(a)    From the date of the Auction until the transactions contemplated hereby are consummated, Seller shall not, and shall not cause its Affiliates and its and their respective Representatives to, initiate contact with, solicit, or encourage submission of any inquiries, proposals or offers by, any Person (in addition to Buyer and its Affiliates and its and their respective Representatives) in connection with any Alternative Transaction; provided that Seller shall have the authority to respond to any inquiries or offers with respect to an Alternative Transaction and perform any and all other acts related thereto solely if, and to the extent that, (i) Seller or its board of directors (or other governing body), upon advice from outside financial advisors and legal counsel, determines in its good faith business judgment that proceeding with the transactions contemplated hereby would violate its or such governing body's fiduciary obligations under applicable Law and (ii) such act is not in violation of the Bidding Procedures Order or the Bankruptcy Code.

(b)    Seller shall use Seller's reasonable best efforts to obtain entry of the Sale Order and such other relief from the Bankruptcy Court as may be necessary or appropriate in connection with this Agreement and the consummation of the transactions contemplated by this Agreement.  Buyer agrees that it will promptly take such actions as are reasonably requested by Seller to assist in obtaining entry of the Sale Order and, consistent with Section 2.6, a finding by the Bankruptcy Court of adequate assurance of future performance by Buyer.

(c)    Seller and Buyer acknowledge that this Agreement and the sale of the Acquired Assets are subject to Bankruptcy Court approval.  Seller and Buyer acknowledge that to obtain such approval, (i) Seller must demonstrate that they have taken reasonable steps to obtain the highest or otherwise best offer possible for the Acquired Assets and (ii) Buyer must provide adequate assurance of future performance under the Assigned Contracts (and Buyer hereby agrees to provide reasonable assurances thereof necessary in order to obtain the foregoing approvals).

(d)    Seller has given, and shall give, all notices required to be given by applicable Law, to all Persons entitled thereto, of all motions (including the motions seeking entry of the Bidding Procedures Order and the Sale Order), orders, hearings and other proceedings relating to this Agreement and the transactions contemplated hereby and thereby and such additional notice as ordered by the Bankruptcy Court or as Buyer may reasonably request.

(e)    In the event an appeal is taken or a stay pending appeal is requested, from the Bidding Procedures Order or the Sale Order, Seller shall immediately notify Buyer of such appeal or order of stay.  Seller shall also provide Buyer with written notice of any motion or application filed in connection with any appeal from or stay request in respect of either such orders. Seller and Buyer shall use their respective commercially reasonable efforts to defend such appeal or stay request and obtain an expedited resolution of such appeal.

(f)    After entry of the Sale Order, Seller shall not take any action that is intended to, or fail to take any action the intent of which failure to act is to, result in the reversal, voiding, modification or staying of the Sale Order.

## ARTICLE VII

## ADDITIONAL AGREEMENTS

Section 7.1    <u>Taxes</u>.

(a)    Any sales, use, transfer, documentary, stamp, registration, recording, value added or similar Taxes and fees (including any penalties and interest) payable in connection with the sale or transfer of the Acquired Assets ("<u>Transfer Taxes</u>"), along with any expenses arising in connection with preparation and filing of Tax Returns with respect to the Transfer Taxes, shall be borne solely by Seller.  Accordingly, if Buyer is required by Law to pay any such Transfer Taxes, Seller shall promptly reimburse Buyer for the amount of such Transfer Taxes actually paid by Buyer.  Each Tax Return with respect to Transfer Taxes will be prepared and filed by the Party that customarily has primary responsibility for filing such Tax Return pursuant to applicable Law. Seller and Buyer shall use commercially reasonable efforts and cooperate in good faith to exempt the sale and transfer of the Acquired Assets from any such Transfer Taxes to the extent allowed under applicable Law, and shall each timely sign and deliver (or cause to be timely signed and delivered) such certificates or forms as may be necessary or appropriate.

(b)    Notwithstanding any other provisions in this Agreement, Buyer and Seller hereby waive compliance with all "bulk sales," "bulk transfer" and similar laws that may be applicable with respect to the sale and transfer of any or all of the Acquired Assets to Buyer.

(c)    Any property or similar Taxes, if any, applicable to the Acquired Assets for a Straddle Period shall be apportioned between the Buyer on the one hand and Seller on the other hand based on the number of days of the Straddle Period included in the Pre-Closing Tax Period and the number of days of the Straddle Period in the Post-Closing Tax Period.  Seller shall be liable for the proportionate amount of such Taxes that is attributable to the Pre-Closing Tax Period, and Buyer shall be liable for the proportionate amount of such Taxes that is attributable to the Post-Closing Tax Period.  Seller shall pay to Buyer an amount equal to any such Taxes payable by Buyer which are attributable to the Pre-Closing Tax Period, and the Buyer shall pay to Seller an amount equal to any such Taxes which have been paid by Seller, which are not attributable to the Pre-Closing Tax Period.  Such payments shall be made on the Closing Date, or if later, on the date such Taxes are due (or thereafter, promptly after request by Buyer or Seller if such Taxes are not identified by Buyer or Seller on or prior to the Closing Date).

(d)    To the extent required by applicable Law, the Buyer shall prepare and deliver to Seller the allocation of the Purchase Price, together with any other items that are treated as consideration for U.S. federal income tax purposes (including any Assumed Liabilities), among the Acquired Assets in accordance with Section 1060 of the Code and the Treasury Regulations promulgated thereunder (the "Allocation") no later than 15 days prior to the Closing Date.  The Buyer shall consider in good faith any reasonable comments provided by Seller to the Allocation, and the Parties agree to use commercially reasonable efforts to reach an agreement on any and all disputed items in the draft Allocation within 15 days after receipt by Seller of such draft Allocation, after which the Allocation shall be conclusive and binding on the Parties.  If the sum of the Purchase Price and any other amounts that are treated as consideration for U.S. federal income tax purposes is adjusted following the finalization of the Allocation, a revised Allocation shall be prepared and finalized in accordance with the procedures set forth in this Section 7.1(d).  The Parties shall not, and shall not permit any of their respective Affiliates to, take any position on a Tax Return (including an Internal Revenue Service Form 8594) or in connection with an audit, examination or judicial or administrative proceeding that is inconsistent with the Allocation, as finalized in accordance with this Section 7.1(d); provided, that nothing in this Section 7.1(d) shall prevent a Party (or any of its Affiliates) from negotiating, compromising and/or settling any Tax audit, claim or similar proceeding that relates to the Allocation.

(e)    The Buyer, its Affiliates, and any other Person making a payment hereunder, shall be entitled to deduct and withhold from the consideration otherwise payable pursuant to this Agreement to Seller or any other Person such amounts as such payor is required to deduct and withhold under applicable Law with respect to the making of such payment.  To the extent that amounts are so withheld, such withheld amounts shall be treated for all purposes of this Agreement as having been paid to the Person in respect of whom such deduction and withholding was made.

(f)    Buyer and Seller agree to furnish or cause to be furnished to the other, upon request, as promptly as practicable, such information and assistance relating to the Acquired Assets, including, access to books and records, as is reasonably necessary for the filing of all Tax Returns by Buyer or Seller, the making of any election relating to Taxes, the preparation for any audit by any taxing authority and the prosecution or defense of any claim, suit or proceeding relating to any Tax. Buyer and Seller shall cooperate fully with each other in the conduct of any audit, litigation or other proceeding relating to Taxes involving the Acquired Assets or the Allocation.  Seller shall promptly notify Buyer in writing upon receipt by Seller of notice of any pending or threatened Tax audits or assessments relating to the income, properties or operations of Seller that reasonably may be expected to relate to or give rise to an Encumbrance on the Acquired Assets.  Each of Buyer and Seller shall promptly notify the other in writing upon receipt of notice of any pending or threatened Tax audit or assessment challenging the Allocation.

Section 7.2    Information; Confidentiality.

(a)    The terms of any confidentiality agreement to which Buyer (or an Affiliate of Buyer) is party in respect of Seller (or any Affiliate of Seller), including without limitation the Confidentiality Agreement, shall continue in full force and effect until the Closing, at which time Buyer's obligations under any such confidentiality agreement shall terminate, except with respect to any provisions thereof which by their terms or their nature should survive termination thereof

or the Closing. In consideration of Seller entering into this Agreement, Buyer hereby agrees and confirms that the terms of the Confidentiality Agreement binding upon ARB Gaming LLC shall apply to Buyer with equal force and effect as to any Confidential Information (as that term is defined in the Confidentiality Agreement) provided to or obtained by Buyer from Seller or ARB Gaming LLC.

(b)    From the date hereof until the Closing (or the earlier termination of this Agreement), Seller will provide Buyer and its Representatives with such information concerning the Acquired Assets and/or the Assumed Liabilities as Buyer or any of its Representatives may reasonably request. Notwithstanding anything to the contrary in this Agreement, Seller shall not be required to disclose any information to Buyer if such disclosure would (x) jeopardize any attorney-client or other privilege or (y) conflict with or violate any applicable Law or fiduciary duty; provided, that Seller shall use reasonable best efforts to disclose any information to Buyer in a manner that does not violate such applicable Law or fiduciary duty or result in the loss of such attorney-client privilege.

Section 7.3    Data Migration; Transition Services.

(a)    Seller shall use reasonable best efforts to transfer all information required to be transferred to Buyer pursuant to Section 2.1(a) as soon as possible upon the Closing, subject to any restrictions or requirements imposed by the Bankruptcy Court, and in compliance with applicable Privacy Requirements, and subject to Seller's right to retain copies of any financial information and books and records that Seller reasonably deems necessary for the winddown of the Seller's estate. Upon receiving any transferred Personal Information, Buyer shall comply with the PCH Privacy Policy until such time as Buyer provides notice of Buyer's privacy policy to the applicable Users and provides Users an opportunity to opt out or in, as applicable, in each case as required in accordance with the procedures set forth in the Sale Order.

(b)    From and after the Closing until the six-month anniversary of the Closing, (provided, if Seller determines in good faith that an extension is required to orderly wind down Seller's estate, then upon written notice by Seller to Buyer, the parties hereto shall negotiate in good faith a reasonable extension for such purpose), Buyer shall (i) provide or otherwise make available to Seller reasonable access, during normal business hours and subject to Buyer's reasonably imposed security procedures and limitations and compliance with the Confidentiality Agreement and confidentiality obligations set forth in this Agreement, to that certain computer equipment, financial information, books and records and software, in each case that constitute Acquired Assets, and (ii) at Seller's reasonable request, make available to Seller those employees of the Business employed by Seller prior to the Closing, in each case of clauses (i) and (ii), solely to the extent reasonably necessary in connection with Seller's orderly winddown of its estate (including accounts receivables collections) after the Closing; provided, however, that such requests shall not unreasonably interfere with the business or operations of Buyer or any of its Affiliates, and Seller shall reimburse Buyer for all reasonable and documented fees, costs and expenses incurred in connection with providing the services.

Section 7.4    Employee Matters. Upon Buyer's request, Seller shall provide to Buyer a list of employees of Seller or its Affiliates whose services primarily relate to the Acquired Assets, which list shall include for each employee, to the extent applicable: name or employee

identification number, title or position, base salary or wage rate, bonus opportunity, and work location.    All such information shall constitute "Confidential Information" under the Confidentiality Agreement.  Buyer, in its sole discretion, may offer employment to any employees of Seller on terms and conditions determined by Buyer and effective upon or following the Closing Date, and shall offer employment to no fewer than fifty percent (50%) of such employees at such rates of pay and on such terms and conditions as are no less favorable in the aggregate than either those provided by Seller prior to the Closing Date or those of similarly situated employees of Buyer, provided that Buyer determines in its sole discretion that (x) such employees are necessary to the Business, (y) such employees are qualified to fill their respective positions and (z) such pay and terms and conditions are appropriate and consistent with market conditions. Seller shall take all actions reasonably requested by Buyer to facilitate Buyer's offers of employment to any such employees.

Section 7.5    Insurance.  To the extent Buyer or its Affiliates desires to obtain access to coverage under Seller's or its Affiliates' occurrence-based insurance policies in existence on the date hereof for claims asserted in respect of the Acquired Assets or the Assumed Liabilities related to events or circumstances in existence or that occurred on or prior to Closing, other than in respect of the Pett Claims (if any), Seller shall, and shall cause its Affiliates to, upon Buyer's request, use reasonable best efforts to assist Buyer, its Affiliates and its and their respective Representatives in connection with pursuing any available coverage under such occurrence-based insurance policies (including by submitting claims and paying any insurance proceeds received in respect thereof to Buyer and its Affiliates).

Section 7.6    Post-Closing Access. From and after the Closing until the fifth anniversary of the Closing, Buyer shall, and shall cause its representatives to, provide Seller with reasonable access (for the purpose of examining and copying), during normal business hours, upon reasonable notice, at Seller's sole cost and expense, to the books and records related to the Business that constitute Acquired Assets pursuant to Section 2.1(f) with respect to periods or occurrences prior to or on the Closing Date, to the extent reasonably required in connection with Seller's orderly winddown of its estate or in connection with any *bona fide* Tax audits, legal compliance or financial reporting obligations of Seller post-Closing (collectively, the "Books and Records") without undue interference to the business operations of Buyer and its affiliates.  Unless otherwise consented to in writing (not to be unreasonably withheld, conditioned or delayed) by Seller, the Buyer shall not, for a period of five years following the Closing Date, destroy, alter or otherwise dispose of such Books and Records for any period prior to the Closing Date without first giving reasonable prior notice to Seller (who may, at its sole cost and expense, make copies of such Books and Records prior to Buyer's disposition).

Section 7.7    Topix Patents. Prior to Closing, Seller shall use its commercially reasonable efforts to (a) effectuate the transfer to Seller of the Topix Patents to the extent Seller does not pursuant to applicable Law solely own the Topix Patents as of the date hereof, and (b) execute, obtain and file with the United States Patent and Trademark Office such instruments and documents as Buyer may reasonably request in order to more effectively transfer to Seller (or to record or evidence the same) sole ownership of the Topix Patents, provided, that Buyer shall reimburse Seller for any reasonable, documented and out-of-pocket costs and expenses incurred by Seller in connection with such transfer.  If, despite using its commercially reasonable efforts, Seller is unable to complete any of the foregoing, following Closing, Seller will (i) work in good

faith with Buyer to achieve all of the foregoing and (ii) if the foregoing cannot be achieved, use its commercially reasonable efforts to execute and deliver such instruments and documents and take such other actions in order to effectuate (and/or to record or evidence) the transfer to Buyer of sole ownership of the Topix Patents.

## ARTICLE VIII

### CONDITIONS PRECEDENT TO THE OBLIGATION OF BUYER TO CLOSE

Buyer's obligation to consummate the transactions contemplated by this Agreement is subject to the satisfaction or waiver by Buyer (to the extent waivable), at or prior to the Closing, of each of the following conditions:

Section 8.1    Accuracy of Representations and Warranties.  (a) The representations and warranties of Seller contained in Section 4.1, Section 4.2, Section 4.4 and Section 4.8 shall be true and correct in all respects (except for *de minimis* inaccuracies) as of the date hereof and as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties addressing matters as of a particular date shall be true and correct (except for *de minimis* inaccuracies) as of the such date); and (b) the other representations and warranties of Seller contained in Article IV (that are not otherwise addressed in the immediately preceding clause (a)) shall be true and correct as of the date hereof and as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties addressing matters as of a particular date shall be true and correct as of such date), except for any failure of such representations and warranties to be true and correct (without giving effect to any limitation as to "materiality" or "Material Adverse Effect" set forth therein), which individually or in the aggregate, has not had and would not reasonably be expected to have a Material Adverse Effect.

Section 8.2    No Order.   No Governmental Authority shall have enacted, issued, promulgated or entered any Order which is in effect and has the effect of making illegal or otherwise prohibiting, preventing or otherwise enjoining the consummation of the transactions contemplated by this Agreement (a "Closing Legal Impediment").

Section 8.3    Seller's Deliveries.  Each of the deliveries required to be made to Buyer pursuant to Section 3.6 shall have been so delivered.

Section 8.4    User Data.   Seller shall have commenced the transfer of information pursuant to Section 7.3.

Section 8.5    Bankruptcy Court Approvals.  (a) The Bankruptcy Court shall have entered the Sale Order and (b) the Sale Order shall be a Final Order.

Section 8.6    Covenants.  Seller shall have performed or satisfied in all material respects on or prior to the Closing Date, all obligations, covenants, agreements and conditions contained in this Agreement to be performed or complied with by Seller on or prior to the Closing Date.

Section 8.7    No Material Adverse Effect.   No Material Adverse Effect shall have occurred from the date hereof to Closing.

Section 8.8     Assigned Contracts.  All Assigned Contracts (for the avoidance of doubt, including any Contracts that relate to the Business that were added to Schedule 2.1(c) pursuant to Section 6.1(c)) shall have been transferred and assigned to Buyer and all third party consents (if any) that are required in connection with or to effectuate such transfer and assignment shall have been obtained in form and substance satisfactory to Buyer, subject to Section 2.5.

## ARTICLE IX

## CONDITIONS PRECEDENT TO THE OBLIGATION OF SELLER TO CLOSE

Seller's obligation to consummate the transactions contemplated by this Agreement is subject to the satisfaction or waiver by Seller (to the extent waivable), at or prior to the Closing, of each of the following conditions:

Section 9.1     Accuracy of Representations and Warranties.  (a) The representations and warranties of Buyer contained in Section 5.1, Section 5.2 and Section 5.6 shall be true and correct in all respects (except for *de minimis* inaccuracies) as of the date hereof and as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties addressing matters only as of a particular date shall be true and correct (except for *de* minimis inaccuracies) as of such date); and (b) the other representations and warranties of Buyer contained in Article V (that is not otherwise addressed in the immediately preceding clause (a)) shall be true and correct as of the date hereof and as of the Closing Date as though made on and as of the Closing Date (except that those representations and warranties addressing matters as of a particular date shall be true and correct as of such date), except for any failure of such representations and warranties to be true and correct (without giving effect to any limitation as to "materiality" set forth therein) which would not reasonably be expected to, individually or in the aggregate, prevent or materially impair the ability of Buyer to consummate the transactions contemplated by this Agreement.

Section 9.2     No Order.  No Closing Legal Impediment shall be in effect.

Section 9.3     Buyer's Deliveries.  Each of the deliveries required to be made to Seller pursuant to Section 3.5 shall have been so delivered.

Section 9.4     Bankruptcy Court Approvals.  (a) The Bankruptcy Court shall have entered the Sale Order and (b) the Sale Order shall be a Final Order.

Section 9.5     Covenants.  Buyer shall have performed or satisfied in all material respects on or prior to the Closing Date, all obligations, covenants, agreements and conditions contained in this Agreement to be performed or complied with by Buyer on or prior to the Closing Date.

## ARTICLE X

## TERMINATION

Section 10.1     Termination Events.     Notwithstanding anything contained in this Agreement to the contrary (other than as provided in the last sentence of this Section 10.1), this Agreement may be terminated at any time prior to the Closing Date:

(a)    by mutual written consent of Seller and Buyer; or

(b)    by either Seller or Buyer:

(i)    if the Bankruptcy Court does not approve this Agreement for any reason or if a Governmental Authority issues a final, non-appealable ruling or Final Order permanently prohibiting the transactions contemplated hereby, provided, however, that the right to terminate this Agreement pursuant to this Section 10.1(b)(i) shall not be available to any Party whose breach of any of its representations, warranties, covenants or agreements contained herein results in such failure to approve such ruling or Final Order;

(ii)    if the Closing shall not have occurred by the close of business on July 15, 2025 (such date, as it may be extended pursuant to the last proviso of this Section 10.1(b)(ii), the "Outside Date"); provided, however, that the right to terminate this Agreement pursuant to this Section 10.1(b)(ii) shall not be available to any Party whose breach of any of such Party's representations, warranties, covenants, or agreements contained herein results in the failure of the Closing to be consummated by such time;

(iii)    the Bankruptcy Court has not entered the Sale Order on or before July 3, 2025; provided, however, if approval of Sale Order is delayed due to the Bankruptcy Court's unavailability, then such date shall be deemed to be the next Business Day on which the Bankruptcy Court is available;

(iv)    if the Sale Order is vacated;

(v)    if Seller enters into a definitive agreement with respect to an Alternative Transaction;

(vi)    Seller consummates an Alternative Transaction; or

(c)    by Buyer:

(i)    in the event of any breach by Seller of any of Seller's agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Article VIII to be satisfied, and in the case of a breach that is capable of being cured, the failure of Seller to cure such breach by the earlier of (A) the Outside Date and (B) the date that is 15 days after receipt of the Buyer Termination Notice; provided, however, that (1) Buyer is not in breach of any of Buyer's representations, warranties, covenants or agreements contained herein in a manner that would result in the failure of a condition set forth in Article IX to be satisfied, (2) Buyer notifies Seller in writing (the "Buyer Termination Notice") of Buyer's intention to exercise Buyer's rights under this Section 10.1(c)(i) as a result of the breach, and (3) Buyer specifies in the Buyer Termination Notice the representation, warranty, covenant or agreement contained herein of which Seller is allegedly in breach;

(ii)    if (A) the Seller seeks to have the Bankruptcy Court enter an Order (or consents to or does not oppose entry of an Order) (1) dismissing the Bankruptcy Case or converting the Bankruptcy Case into a case under chapter 7 of the Bankruptcy Code, or (2) appointing a trustee, receiver or other Person responsible for operation or administration of

Seller or its business or assets, or a responsible officer for Seller, or an examiner with enlarged powers relating to the operation or administration of Seller or its business or assets (each, an "Appointee"); (B) an Order of dismissal of the Bankruptcy Case, conversion of the Bankruptcy Case into a case under chapter 7 of the Bankruptcy Code, or appointment of an Appointee is entered for any reason, or (C) Seller files any stand-alone plan of reorganization or liquidation, in each case, that does not contemplate consummation of the transactions contemplated by this Agreement; or

(iii)    if any conditions to the obligations of Buyer set forth in Article VIII shall have become incapable of fulfillment other than as a result of a breach by Buyer of any covenant or agreement contained in this Agreement; or

(d)    by Seller:

(i)    except as provided in Section 10.1(d)(ii), in the event of any breach by Buyer of any of Buyer's agreements, covenants, representations or warranties contained herein that would result in the failure of a condition set forth in Article IX to be satisfied, and in the case of a breach that is curable, the failure of Buyer to cure such breach by the earlier of (A) the Outside Date and (B) the date that is 15 days after receipt of the Seller Termination Notice; provided, however, that  (1) Seller is not itself in breach of any of Seller's representations, warranties, covenants or agreements contained herein in a manner that would result in the failure of a condition set forth in Article VIII to be satisfied, (2) Seller notifies Buyer in writing (the "Seller Termination Notice") of Seller's intention to exercise Seller's rights under this Section 10.1(d)(i) as a result of the breach, and (3) Seller specifies in the Seller Termination Notice the representation, warranty, covenant or agreement contained herein of which Buyer is allegedly in breach; or

(ii)    if the Sale Order with respect to the transactions contemplated by this Agreement has been entered and is not subject to any stay on enforcement and (A) Seller has provided Buyer with written notice that Seller is prepared to consummate the transactions contemplated by this Agreement, (B) the conditions to Closing in Article VIII have been satisfied (or waived by Buyer), other than those conditions that by their nature can only be satisfied at Closing, and (C) the Closing Date does not occur within three Business Days of Seller providing Buyer with such notice.

Section 10.2    Effect of Termination and Liquidated Damages.  If this Agreement is validly terminated by Seller pursuant to Section 10.1(d)(i) or Section 10.1(d)(ii), the Deposit (including, for the avoidance of doubt, all interest and other earnings accrued and earned thereon) shall be retained by Seller as damages specifically (and the Parties shall cause KWJSS to disburse the Deposit to Seller), and the retention thereof shall, except in the case of any actual or knowing fraud by Buyer, constitute the sole and exclusive remedy of Seller in the event of such a termination hereunder.  The Seller and Buyer agree that the Deposit constitutes liquidated damages due to the difficulty and inconvenience of measuring actual damages and the uncertainty thereof, and Seller and Buyer agree that such amount would be a reasonable estimate of Seller's loss in the event of any such breach or failure to perform by Buyer.  Notwithstanding anything to the contrary herein or otherwise, the maximum aggregate liability of Buyer under this Agreement (including in connection with any termination of this Agreement (including any Liability on account of intentional breach or violation of this Agreement, the Sale Order or any of the other Transaction

Documents) or the transactions contemplated by this Agreement or any of the other Transaction Documents or the failure of such transactions to be consummated), in the absence of actual or knowing fraud by Buyer of any of the representations and warranties of Buyer set forth in Article V hereof, shall in no event exceed the amount of the Deposit and shall in all respects be solely satisfied through the forfeiture of the Deposit to Seller in accordance with the provisions hereof, provided, that in the event Buyer has intentionally breached or violated this Agreement prior to Closing, Seller shall be entitled to, in addition to the forfeiture of the Deposit to Seller, seek damages against Buyer (which shall not exceed $250,000). If this Agreement is terminated pursuant to any other provision of Article X (i.e., except as described in the first sentence of this Section 10.2), Seller shall promptly (but in any event within two Business Days of such termination) instruct and cause KWJSS to return the Deposit (including, for the avoidance of doubt, all interests and other earnings accrued and earned thereon) to Buyer by wire transfer of immediately available funds, and except in the case of any actual or knowing fraud by Seller or any intentional breach or violation of this Agreement, the Sale Order or any of the other Transaction Documents by Seller, the return thereof shall constitute the sole and exclusive remedy of Buyer in the event of such a termination hereunder. Nothing in this Section 10.2, however, but subject to the applicable limitations on Buyer's liability set forth in this Section 10.2, shall (1) relieve Seller or Buyer from any Liability on account of actual or knowing fraud or (2) be deemed to impair the right of any Party to compel specific performance by another Party of its obligations under this Agreement. For the avoidance of doubt, (x) a Party shall not be entitled to both specific performance and damages (for the avoidance of doubt, including the Deposit, to the extent the Deposit is payable to Seller hereunder in connection with any termination of this Agreement in accordance with its terms), (y) in the event Seller has intentionally breached or violated this Agreement, the Sale Order or any of the other Transaction Documents, Buyer is entitled to a return of the Deposit (including, for the avoidance of doubt, all interests and other earnings accrued and earned thereon) and to seek damages (which shall not exceed $710,000) and (z) actual or knowing fraud shall not be subject to any cap or limit on liability. The Parties acknowledge and agree that the Confidentiality Agreement, Article XI (other than Section 11.12) and the provisions of this Section 10.2 shall survive any termination of this Agreement pursuant to Article X.

## ARTICLE XI

## GENERAL PROVISIONS

Section 11.1   Notices. Any notice, consent or other communication required or permitted under this Agreement shall be in writing and shall be delivered (a) in person, (b) by a nationally recognized courier for overnight delivery service, or (c) by email or other electronic means to the persons indicated below. A notice or communication shall be deemed to have been effectively given (i) if in person, upon personal delivery to the Party to whom the notice is directed, (ii) if by nationally recognized courier, one Business Day after delivery to such courier, and (iii) if by email or other electronic means, when sent unless the sender receives a "bounce back" or similar indication that the e-mail was not delivered to the recipient. Any such notice, election, demand, request, response or other communication shall be addressed as follows:

(a)        If to Buyer, then to:

ARB Interactive Inc.
601 Brickell Key Dr.
#600
Miami, FL 33131
Attn:   Junwei Ye (junwei@arbinteractive.com)
        Dan Marks (dan@arbinteractive.com)

With a copy (which shall not constitute notice) to:

Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Attn:   Adam Goldberg (adam.goldberg@lw.com)
        Daniel Mun (daniel.mun@lw.com)


(b)    If to Seller, then to:

Publishers Clearing House LLC
7 West 22nd Street
New York, NY 10010
Attn:   Harold Low (blow@pch.com)
        Christopher Irving (cirving@pch.com)
        Erica Zaragoza (ezaragoza@pch.com)

and

Getzler Henrich & Associates LLC
295 Madison Avenue, 20th Floor
New York, New York 10017
Attn:   William H. Henrich (whenrich@getzlerhenrich.com)
        Laurence Sax (lsax@getzlerhenrich.com)

with a copy (which shall not constitute notice) to:

Klestadt Winters Jureller Southard & Stevens, LLP
200 West 41st Street, 17th Floor
New York, New York 10036
Attention: Tracy L. Klestadt (tklestadt@klestadt.com)
        Lauren C. Kiss (lkiss@klestadt.com)
        Stephanie R. Sweeney (sweeney@klestadt.com)

Section 11.2    Amendment; Waiver.  No amendment, modification or discharge of this Agreement, and no waiver hereunder, shall be valid or binding unless set forth in writing and duly executed by the Party(ies) against whom enforcement of such amendment, modification, discharge or waiver is sought and such amendment, modification, discharge or waiver is delivered substantially contemporaneously to each other Party.  Any such waiver shall constitute a waiver only with respect to the specific matter described in such writing and shall in no way impair the

rights of the Party granting such waiver in any other respect or at any other time. Neither the waiver by any of the Parties of a breach of or a default under any of the provisions of this Agreement, nor the failure by any of the Parties, on one or more occasions, to enforce any of the provisions of this Agreement or to exercise any right or privilege hereunder shall be construed as a waiver of any other breach or default of a similar nature, or as a waiver of any of such provisions, rights or privileges hereunder. No course of dealing between or among the Parties shall be deemed effective to modify, amend or discharge any part of this Agreement or any rights to payment of any Party under or by reason of this Agreement.

Section 11.3    Entire Agreement.    This Agreement (including the Schedules), the Confidentiality Agreement and the other Transaction Documents constitute the entire agreement between the Parties relating to the subject matter of this Agreement and supersede all prior and contemporaneous agreements, understandings, negotiations, correspondence, undertakings and communications of the Parties or their representatives, oral or written, respecting such subject matter.

Section 11.4    No Presumption as to Drafting.    Each of the Parties acknowledges that it has been represented by legal counsel in connection with this Agreement and the other Transaction Documents and the transactions contemplated hereby and thereby. Accordingly, any rule of law or any legal decision that would require interpretation of any claimed ambiguities in this Agreement or the Transaction Documents against the drafting party has no application and is expressly waived.

Section 11.5    Assignment.    The provisions of this Agreement shall be binding upon and inure to the benefit of the Parties and their respective successors and assigns. This Agreement, and the rights, interests and obligations hereunder, shall not be assigned by any Party without the express written consent of the other Party (which consent may be granted or withheld in the sole discretion of such other Party); provided, however, that Buyer shall be permitted, upon prior notice to Seller, to assign all or part of Buyer's rights or obligations hereunder to (a) an Affiliate who is subject to the same obligations of Buyer hereunder and under the Sale Order or (b) after the Closing, any Person that acquires (whether by merger, purchase of stock, purchase of assets or otherwise), or is the successor or surviving entity in any merger, purchase of stock or other transaction involving, the Acquired Assets and Assumed Liabilities, in each case without the express written consent of Seller, but no such assignment shall relieve Buyer of Buyer's obligations under this Agreement or any Order of the Bankruptcy Court.

Section 11.6    Severability.    The provisions of this Agreement shall be deemed severable, and the invalidity or unenforceability of any provision shall not affect the validity or enforceability of the other provisions hereof. If any provision of this Agreement, or the application thereof to any Person or any circumstance, is invalid or unenforceable, (a) a suitable and equitable provision mutually agreed by the Parties shall be substituted therefor in order to carry out, so far as may be valid and enforceable, the intent and purpose of such invalid or unenforceable provision and (b) the remainder of this Agreement and the application of such provision to other Persons or circumstances shall not be affected by such invalidity or unenforceability.

Section 11.7    Governing Law; Consent to Jurisdiction and Venue; Jury Trial Waiver.

(a)    Except to the extent the mandatory provisions of the Bankruptcy Code apply, this Agreement and all claims or causes of action (whether in contract, tort or otherwise) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement) shall be governed by, and construed in accordance with, the laws of the State of New York applicable to Contracts made and to be performed entirely in such state without regard to principles of conflicts or choice of laws or any other law that would make the laws of any other jurisdiction other than the State of New York applicable hereto.

(b)    Without limitation of any Party's right to appeal any Order of the Bankruptcy Court, (i) the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, or the transactions contemplated hereby and (ii) any and all claims relating to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the Parties hereby consent and submit to the exclusive jurisdiction and venue of the Bankruptcy Court and irrevocably waive the defense of an inconvenient forum to the maintenance of any such Proceeding; provided, however, that, if the Bankruptcy Case is closed, all Proceedings arising out of or relating to this Agreement shall be heard and determined in the United States District Court for the Southern District of New York, and the Parties hereby (A) irrevocably and unconditionally submit to the exclusive jurisdiction of the United States District Court for the Southern District of New York; (B) agree that all claims with respect to any such Proceeding shall be heard and determined in such courts and agrees not to commence any Proceeding relating to this Agreement or the transactions contemplated hereby (whether based on contract, tort or other theory) except in such courts; (C) irrevocably and unconditionally waive any objection to the laying of venue of any Proceeding arising out of this Agreement or the transactions contemplated hereby and irrevocably and unconditionally waives the defense of an inconvenient forum; and (D) agree that a final judgment in any such Proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by Law. The Parties agree that any violation of this Section 11.7(b) shall constitute a material breach of this Agreement and shall constitute irreparable harm.

(c)    EACH PARTY HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT OR THE TRANSACTIONS CONTEMPLATED HEREBY (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) EACH PARTY (A) CERTIFIES THAT NO REPRESENTATIVE, AGENT OR ATTORNEY OF ANY OTHER PARTY HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT SUCH OTHER PARTY WOULD NOT, IN THE EVENT OF LITIGATION, SEEK TO ENFORCE THE FOREGOING WAIVER AND (B) ACKNOWLEDGES THAT IT AND THE OTHER PARTY HAVE BEEN INDUCED TO ENTER INTO THIS AGREEMENT BY, AMONG OTHER THINGS, THE MUTUAL WAIVERS AND CERTIFICATIONS IN THIS SECTION 11.7.

Section 11.8    Counterparts.    This Agreement may be executed in any number of counterparts (including DocuSign, electronic transmission in portable document format (pdf) or other electronic means) with the same effect as if the signatures to each counterpart were upon a

single instrument, and all such counterparts together shall be deemed an original of this Agreement. This Agreement shall become effective when, and only when, each Party shall have received a counterpart hereof signed by the other Party. Delivery of an executed counterpart hereof by means of DocuSign, electronic transmission in portable document format (pdf) or other electronic means shall have the same effect as delivery of an original physically executed counterpart in person.

Section 11.9    Parties in Interest; No Third Party Beneficiaries.    Except for the beneficiaries of Section 11.10 who shall be express third party beneficiaries of Section 11.10 with the full power to enforce the terms of Section 11.10 as if they were parties to this Agreement for such purpose, nothing in this Agreement shall confer any rights, benefits, remedies, obligations, liabilities or claims hereunder upon any Person not a Party or a permitted assignee of a Party.

Section 11.10    Non-Recourse.    Other than in the case of actual or knowing fraud, all claims, obligations, liabilities or causes of action (whether in contract or in tort, in law or in equity or granted by statute) that may be based upon, in respect of, arise under, out or by reason of, be connected with or relate in any manner to this Agreement, the negotiation, execution or performance of this Agreement (including any representation or warranty made in connection with or as an inducement to this Agreement) or the transactions contemplated hereby may be made only against (and are those solely of) the Persons that are expressly identified as Parties to this Agreement. No other Person, including any of their Affiliates or Representatives or lenders to any of the foregoing shall have any liabilities (whether in contract or in tort, in law or in equity, or granted by statute) for any claims, causes of action, obligations or liabilities arising under, out of, in connection with, or related in any manner to, this Agreement or based on, in respect of, or by reason of, this Agreement or its negotiation, execution, performance or breach.

Section 11.11    Schedules; Materiality.    The inclusion of any matter in any Schedule shall be deemed to be an inclusion for all purposes of this Agreement, to the extent the applicability of the disclosure of such matter to such other Section or subsection is readily apparent on the face of such disclosure without need for a cross-reference, but inclusion therein shall not be deemed to constitute an admission, or otherwise imply, that any such matter is material or creates a measure for materiality for purposes of this Agreement. The disclosure of any particular fact or item in any Schedule shall not be deemed an admission as to whether the fact or item is "material" or would constitute a "Material Adverse Effect."

Section 11.12    Specific Performance.    The Parties acknowledge and agree that irreparable injury, for which monetary damages, even if available, would not be an adequate remedy, will occur in the event that any of the provisions of this Agreement are not performed in accordance with the specific terms hereof or are otherwise breached, and a Party shall be entitled, in addition to any other remedies that may be available, to obtain (without the posting of any bond) specific performance of the terms of this Agreement, provided that, neither Party shall be required or compelled to consummate the Closing unless and until (i) all conditions to Closing set forth in Article VIII or Article IX, as the case may be, have been satisfied or waived (excluding conditions that, by their terms, cannot be satisfied until the Closing, but subject to the satisfaction or, to the extent permitted by applicable Law, waiver of such conditions at the Closing), (ii) the other Party has confirmed to such first Party by irrevocable written notice that such other Party is ready, willing and able to effect the Closing on such date of notice and at all times during the three (3)

Business Day period immediately thereafter, and (iii) such first Party has failed to consummate the Closing within three (3) Business Days following receipt of such irrevocable written notice from such other Party described in the immediately preceding clause (ii).

Section 11.13 <u>No Survival</u>.  None of the representations and warranties or covenants which require performance prior to the Closing ("<u>Pre-Closing Covenants</u>") contained in this Agreement, any Transaction Document or in any certificate or schedule delivered pursuant to hereto or thereto shall survive the Closing.  In furtherance, and not in limitation, of the foregoing, the Parties, intended to contractually shorten any otherwise applicable statute of limitations, hereby agree that: (a) the representations and warranties herein are intended solely to facilitate disclosure and to give effect to the closing conditions set forth in <u>Articles VIII</u> and <u>IX</u>, (b) the Pre-Closing Covenants are intended solely to give effect to the closing conditions set forth in <u>Articles VIII</u> and <u>IX</u> and (c) no claim of any kind based on the failure of any representation or warranty to have been true and correct, or based on the failure of any Pre-Closing Covenant to have been performed or complied with, may be brought at any time after the Closing, except in the case of actual or knowing fraud.  All covenants and agreements contained herein that by their terms are to be performed in whole or in part, or which prohibit actions, subsequent to the Closing shall survive the Closing in accordance with their terms.  Notwithstanding the foregoing, to the extent any Pre-Closing Covenant that requires delivery of any item in connection with Closing is not performed at or prior to the Closing, <u>Section 2.6</u> shall apply in respect thereof and the non-performing Party shall be required to deliver such item pursuant to <u>Section 2.6</u> as promptly as reasonably practicable to the other Party following the Closing.

Section 11.14 <u>Publicity</u>.  Neither Party nor any of their respective Representatives may make any press release or other public disclosure regarding the existence of this Agreement or the other Transaction Documents, its or their contents, or the transactions contemplated by this Agreement or the other Transaction Documents without the written consent of the other Party, in any case, as to the form, content, and timing and manner of distribution or publication of such press release or other public disclosure (which consent may not be unreasonably withheld, conditioned, or delayed); <u>provided</u> that following the Closing, Buyer shall be permitted to make one or more public statements that it has acquired the Acquired Assets and the Assumed Liabilities. Notwithstanding the foregoing, nothing in this <u>Section 11.14</u> will prevent either Party or its Representatives from making any press release or other disclosure required by Law (including the filing of this Agreement or a summary or other description thereof with the Bankruptcy Court in connection with the Bankruptcy Case or Sale Motion) or the rules of any stock exchange, in which case the Party required to make such press release or other disclosure shall use commercially reasonable efforts to allow the other Party reasonable time to review and comment on such release or disclosure in advance of its issuance.  To the extent that this Agreement or a summary or other description thereof is filed publicly with the Bankruptcy Court, Buyer shall be permitted, without the written consent of Seller, to make any press release or other public disclosure that is consistent with such public filings.

Section 11.15 <u>Privileged Information</u>. The Parties acknowledge and agree that any attorney-client privilege with respect to the Acquired Assets described in <u>Section 2.1</u> to the extent first arising prior to the Closing shall belong exclusively to Seller until the consummation of Seller's orderly winddown of its estate, and that such privilege shall be retained and controlled exclusively by Seller, and may be waived, if at all, only with Seller's consent until the

consummation of Seller's orderly winddown of its estate. The Parties further acknowledge and agree that the foregoing privilege shall not be controlled, owned, used, or waived by Buyer following the consummation of the Transaction until the completion of the orderly winddown of Seller's estate. The Parties further acknowledge and agree that any disclosure or provision by Seller to Buyer or its Representatives or Affiliates of any such attorney-client privilege is inadvertent and is not intended to be, and is not in fact, a waiver of any such privilege. Notwithstanding the foregoing, (i) in the event of any Proceeding arising between Buyer or any of its Representatives and Affiliates, on the one hand, and a third party, on the other hand, each of Buyer and its Representatives and Affiliates, as applicable, shall have the right to assert (and upon written request of Seller or its Affiliates or Representatives shall assert) the privilege or protection to prevent disclosures of such information to such third party, or upon the written request of Buyer or its Affiliates, as applicable, Seller shall, assert (and not waive), such privilege or protection, and (ii) in the event of any dispute between Buyer or its Representatives or Affiliates, on the one hand, and Seller or its Affiliates or Representatives, on the other hand, no communications, documents or other information received by Buyer or its Affiliates or Representatives in connection with the transactions contemplated hereby that is subject to the privilege or protection shall be admissible by Buyer or its Affiliates or Representatives for any purpose.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, all as of the Effective Date.

<u>**BUYER**</u>:

ARB Interactive Inc.

By:_____
Name: Junwei Ye
Title:   President


<u>**SELLER**</u>:

Publishers Clearing House LLC



By:_____
Name:  William H. Henrich
Title: Co-Chief Restructuring Officer

*[Signature Page to Asset Purchase Agreement]*

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, respectively, all as of the Effective Date.

**BUYER**:

ARB Interactive Inc.

By:_____
Name: Junwei Ye
Title:   President

**SELLER**:

Publishers Clearing House LLC

By:_____
Name:   William H. Henrich
Title:  Co-Chief Restructuring Officer

*[Signature Page to Asset Purchase Agreement]*

Schedule 1.1

Permitted Encumbrances

Prior to the Closing Date, the liens of Prestige Capital Finance, LLC granted pursuant to Order of the Bankruptcy Court [Docket No. 61].

Schedule 2.1(c)

Assigned Contracts

See attached.

| Name of Counterparty | Nature and Description of Executory Agreement |
|---|---|
| Akami Technologies Inc. | IT Technology |
| Cablevision Lightpath, Inc. | IT Technology |
| Crown Castle International | IT Technology |
| I Component Software | IT Contract Labor to maintain apps |
| Marigold USA Inc | IT Technology |
| Moengage Inc | Marketing Technology |
| Ntirety Inc | Web Hosting |
| Sada Systems Inc | IT Technology |
| Amazon.com | Advertiser |
| Google LLC | Advertiser |
| Google LLC | User Acquisition and Ad Serving |
| Meta Platforms Inc | Advertiser |
| Meta Platforms Inc | User Acquisition |
| American Registry For Internet Numbers | IT Technology |
| Appsflyer | Mobile app attribution |
| Blockthrough Us LLC | Adblock recovery Technology |
| Browserstack Inc | IT Technology |
| Commission Junction Inc | User Acquisition |
| Darktrace Limited | IT Technology |
| Digicert Inc | IT Technology |
| Docusign Inc | PCH Media Ad Ops - contract repository and digital signature |
| Duo Security Inc | IT Technology |
| Figma Inc | IT Technology |
| George Mantzoutsos | Consultant |
| JAMF Software, LLC | IT Technology |
| Liveintent, Inc. | Advertising IT support |
| Liveramp Inc | Marketing |
| Microsoft Services | IT Technology |
| Mixpanel Inc | IT Technology |
| Monday.Com Ltd | Creative Work Tool |
| New Relic, Inc. | IT Technology |
| Okta Inc | IT Technology |
| Optizmo Technologies Llc | IT Technology |
| Oracle America Inc | IT Technology |
| Osano Inc A Public Benefit | WireWheel - IT Technology |
| Palo Alto Networks Inc | IT Technology |
| Park Place Technologies | IT Technology |
| Particular Software Inc | IT Technology |
| Pickfu Inc | Creative Tool |
| Prebid.Org Inc | Boosts programmatic hearer bidding |
| Precisely Software Inc | IT Technology |
| Progress Software Corporation | IT Technology |
| Redis Labs Inc | IT Technology |
| Salesforce.Com, Inc. | PCH Media Ad Ops |
| Shutterstock, Inc. | Creative Images |
| Sourcepoint Technologies Inc | IT Technology |
| Staq Inc | IT Technology |
| Sumologic Inc | IT Technology |
| Tealium Inc | IT Technology |
| Teneo Inc | IT Technology |
| TMT Digital Inc | PCH Media Ad Ops |
| Tune Inc. | PCH Media Ad Ops |
| Validity, Inc. | IT Technology |
| Zoho Corporation | IT Technology |
| Index Exchange, Inc. | Online media and technology company |
| Ogury Ltd. | Advertising platform |
| Mintegral North America Inc. | Advertising platform |
| Digital Turbine Media, Inc. | Advertising platform |
| Liftoff Mobile, Inc. | Advertising platform |
| Hyprmx Mobile, LLC | Advertising platform |
| Pubmatic, Inc. | Advertising platform |
| System1 Opco, LLC (Fka System1 LLC And Infospace) | Search engine and optimization platform |
| Taboola, Inc. | Advertising platform |
| Applovin Corporation | Advertiser |
| Triplelift, Inc. | Advertising platform |
| Xandr Inc. (Fka Appnexus) | Advertising platform |
| Lucid Holdings, LLC | Survey marketplace platform provider |
| 5 Axis Health | Advertiser |
| Adquire | Advertising platform |
| Aragon Advertising | Advertiser |
| Boost Health Insurance | Advertiser |
| Cadent | Advertiser |
| Carshield | Advertiser |
| Civicscience | Survey Business |
| Clear Link Technologies, LLC | Advertiser |
| Criteo | Advertiser |

| | |
|---|---|
| Decide Technologies Inc. | Advertiser |
| Digital Turbine | Advertising platform |
| Epsilon Data Management | Advertiser |
| Equativ | Advertiser |
| Ethos Technologies, Inc. | Advertiser |
| Exist 42 LTD | Advertiser |
| Experian Marketing Solution | Data acquisition |
| Experian Marketing Solution | Advertiser |
| Financial Insight Technology, Inc. | Advertiser |
| Flowplay, LLC | Advertiser |
| Fluent / Affluent | Advertiser |
| General Research Laboratory Inc | Survey Partner |
| Globe Marketing & Advertising Distributo | Advertiser |
| Gumgum | Advertiser |
| Harvest Direct Limited | Advertiser |
| Healthcare.Com | Advertiser |
| Huuuge Global Ltd | Advertiser |
| Infolinks Media, LLC | Provides exclusive advertisers from premium direct brands |
| Inmobi | Advertiser |
| Insurify Inc | Advertiser |
| Interest Media, Inc. | Advertiser |
| J.D. Power Company | Advertiser |
| Kueez | Advertiser |
| Ladder Financial Inc. | Advertiser |
| Launch Media Solutions, LLC | Advertiser |
| Lotame | Data platform |
| Magnite | Advertising |
| Make Opinion GMBH | Advertiser |
| Matrix Point Consulting | Advertiser |
| Mediaweb Limited | Advertiser |
| Modaramo Media | Advertiser |
| Momentscience (Fka Adspostx) | Advertiser |
| Nativo | Advertiser: Supply Side Demand Platform |
| Ogury | Adtech/advertising |
| OMD NY | Advertiser |
| Openx | Programmatic Ads |
| Outbrain | Advertising platform |
| Pinchme | Advertiser |
| Playbuzz (EX.CO) | Advertiser |
| Powerinbox | Advertiser |
| Premium Ads | Advertiser |
| Pulsepoint | Advertiser |
| Purespectrum | Platform to connect survey providers to audiences |
| Red Ventures LLC | Advertiser |
| Research For Good (RFG) | Advertiser |
| Rise | Advertising |
| SBG Media Inc / Fireclick Media | Advertiser |
| Schlesinger Group/Sago | Research |
| Sesam Limited | |
| Sharethrough Inc | Advertiser/Header Integration |
| She Media | Advertiser |
| SMZ | |
| Social Concepts | Social media /Gaming |
| Sovrn | Advertiser |
| Sportority Inc (Minute Media) | Advertiser |
| Start.Io | Mobile marketing |
| Superplay | Advertiser (co-branded experiences under game Dice Dreams) |
| The Kaija Group, LLC | Advertiser |
| Unruly | |
| Upwave | Analytics |
| Vidazoo | Advertising tool |
| What If Media Group | Advertiser |
| Wunderkind | Advertiser |
| Yieldmo | Advertiser |
| Infotrust | Reseller of GA |
| SoftwareOne, Inc. | Software Reseller |
| Alchemer | Survey platform |
| E-Plus | HW and Software Reseller |
| Imperva | Security |
| Adobe | Software |
| Easydmark | Email delivery tool |
| Salesforce.COM, INC. - Tableau | PCH Media Ad Ops |
| Lucid Charts | Software tool |
| Lucid Holdings, LLC | Survey marketplace platform provider |
| Device Atlas Limited | IT Technology |
| LASHBACK | IT Technology |

| | |
|---|---|
| DAA/ Digital Advertising Aliant | Compliance |
| Veeam | Backup software |
| Kemp Load Balancer | IT Technology |
| Landesk/Ivanti | IT Technology |
| Filemaker | IT Technology |
| Arbor Energy | |
| Atwave | Advertiser |
| B2Direct | Advertiser |
| B452 | Advertiser |
| Kandinsky & Partners Limited | |
| Blue Butterfly | Advertiser |
| Citadel Marketing Group (CMG) | Advertiser |
| Exact Customer | Advertiser |
| GoodRx | Advertiser |
| Golden Hippo (Cali Pet Nutrients) | Advertiser |
| In Box Specialists | Advertiser |
| MarketSmith | |
| MediaForce | Advertiser |
| Money Group | Advertiser |
| Mountain View Publishers | Advertiser |
| Partner Centric | Advertiser |
| Playstudios | Advertiser |
| Rainmaker | Advertiser |
| Renewal By Andersen | Advertiser |
| Tanventure, LLC (Invention Marketing Solutions) | Advertiser |
| VGW | Advertiser |
| Network Solutions | Registrar |
| Exacthosting | Registrar |
| Whirlygig | App Development |
| Email on Acid | Email tool |
| CASHstar/BlackHawk | Gift card fulfilment |
| Comscore Proximic | Data Partnership |
| Rubrik | Data Backup |
| AdMediary | Advertiser |
| Almeida GmbH | Advertiser |
| Careington International Corporation | Advertiser |
| Credique | Advertiser |
| Equoto | Advertiser |
| Fizzy Labs | Advertiser |
| Ignite Media Group, LLC | Advertiser |
| Lucky Day | Advertiser |
| Motive Interactive, Inc. | Advertiser |
| Plato Web Design (DBA BetterBuck) | Advertiser |
| Pushnami LLC | Advertiser |
| Radiant Technologies (DBA SpringServe) | Advertiser |
| RevOptimal | Audience Partner |
| Shift44 | Advertiser |
| Sonder Data Group | Advertiser |
| The Lotter | Advertiser |
| Vivint Smart Home | Advertiser |
| Walla Media, LLC | Advertiser |
| Zeeto | Advertiser |
| AdSwapper | Advertiser |
| Marrone Software | IT Consultant |
| Pikoya Ltd. | |

Schedule 2.1(e)

Other Acquired Assets

---

**Digital Media Platform**

- Email/push/SMS lifecycle campaigns
- Marketing automation logic (rewards-based reactivation, inactivity suppression)
- Content libraries (ad creatives, entry funnel templates)
- ESP delivery via Marigold and in-house rules-based segmentation

---

**Style Guide and Brand Guidelines**

---

**Gaming Apps & SDK Infrastructure**

- Games: Treasure Match, PCH+, PCH Slots, PCH Keno, PCH Blackjack
- App developer accounts (iOS, Google Play)
- SDK ad integrations: Unity Ads, AppLovin, Vungle, Liftoff
- Push notification databases

---

**SEO/SEM assets (metadata, performance data, authority scores)**

---

**Engagement Mechanics (Onsite Modules)**

- Front-end modules: scratchers, spin-to-win, entry countdowns, daily bonuses
- Token exchange interface (including "instant reward" popups)
- Boost mechanics: multipliers, win streaks, entry ladders

---

**Targeting Logic & Segmentation Engine**

- 1st-party targeting engine rules (vertical classification by engagement & product intent)
- 1,000+ audience segments (e.g., bingo players, contest clickers, coupon collectors, big prize chasers)
- Suppression lists and blocklist mapping
- Advertiser-category vertical tagging (as defined in "advertiser mapping" and "blacklist segment" files)
- Machine-learning enhanced custom tag rules (cohort overlap scoring, lookalike logic)

---

**AdTech Stack**

- DMP (Data Management Platform)
- Campaign engine (rules-based + predictive ML logic)
- Ad serving system (GAM)

- Attribution logs and partner reports
- Segment insights engine and advertiser mapping

**Ad Performance Data**

- Click/impression logs by advertiser, vertical, and segment (historical and last 30 days)
- GAM (Google Ad Manager) revenue share reports
- UA campaign effectiveness by channel (email, search, push)
- Suppression logic and segment response rates

**Survey & Consumer Insight Tools**

- 3M+ annual first-party survey responses
- Segmentation and tagging engine
- B2B insights APIs and advertiser compatibility tools
- Campaign performance tracking (survey conversion, interest scoring)

**Technical Infrastructure**

- Sweepstakes backend engine (API-based entry system, prize drawing logic)
- Loyalty & token logic (XP systems, mission control, tier rewards)
- Hosting/DB setup and cloud pipeline
- Customer support tools and backend admin panel (internal ops dashboard, fraud/suppression flags)

All tangible assets set forth on Annex 2.1(e) attached hereto.

| CO+Asset Group | Description | In Service Date | Life | Book Basis | Life-to-Date Depreciation - 7/15/25 | NBV at 7/15/25 |
|---|---|---|---|---|---|---|
| COMP EQUIP | Netapp FAS8200-Header | 1/1/2018 | 60 | 176,798.05 | 176,798.05 | - |
| COMP EQUIP | HP 300GB and 4TB HD and 2TB HD | 2/1/2018 | 60 | 1,550.37 | 1,550.37 | - |
| COMP EQUIP | HP ETH 10GETH 2P 530T ADPT | 3/1/2018 | 60 | 1,117.82 | 1,117.82 | - |
| COMP EQUIP | HP HPE FOUNDATION CARE NBD W/D | 8/1/2018 | 60 | 3,138.14 | 3,138.14 | - |
| COMP EQUIP | 201800005 Cisco 6296 Fabric In | 9/1/2018 | 60 | 22,658.44 | 22,658.44 | - |
| COMP EQUIP | 201800005 Cisco SNTC Fabric In | 9/1/2018 | 60 | 20,795.78 | 20,795.78 | - |
| COMP EQUIP | HP 800ED G3 I5/2.5 8GB | 9/1/2018 | 60 | 1,224.84 | 1,224.84 | - |
| COMP EQUIP | HP HPE M6710 | 9/1/2018 | 60 | 65,484.34 | 65,484.34 | - |
| COMP EQUIP | 201800005 CISCO NEXUS 92160YC | 11/1/2018 | 60 | 9,508.49 | 9,508.49 | - |
| COMP EQUIP | HP 8GB DDR4-2666 | 2/1/2019 | 60 | 787.93 | 787.93 | - |
| COMP EQUIP | 201800005 Cisco UCS C220 M5 | 7/1/2019 | 60 | 16,298.27 | 16,298.27 | - |
| COMP EQUIP | Cisco 64GB DDR4 & Equipment | 9/1/2019 | 60 | 38,179.82 | 38,179.82 | - |
| COMP EQUIP | Cisco 64GB DDR4 & Equipment | 9/1/2019 | 60 | 80,869.91 | 80,869.91 | - |
| COMP EQUIP | Various Cisco Server Equipment | 10/1/2019 | 60 | 81,471.91 | 81,471.91 | - |
| COMP EQUIP | Various HP Server Equipment (M | 10/1/2019 | 60 | 50,620.11 | 50,620.11 | - |
| COMP EQUIP | Various HP Server Equipment (M | 10/1/2019 | 60 | 16,731.41 | 16,731.41 | - |
| COMP EQUIP | (New Mr Black) HP Server, Batt | 11/1/2019 | 60 | 16,590.97 | 16,590.97 | - |
| COMP EQUIP | (Citrix Upgrade) Cisco Equipme | 11/1/2019 | 60 | 40,735.96 | 40,735.96 | - |
| COMP EQUIP | ThinkPad Docking Station & War | 1/1/2020 | 60 | 2,188.67 | 2,188.67 | - |
| COMP EQUIP | 8GB DDR Memory | 6/1/2020 | 60 | 1,433.85 | 1,433.85 | - |
| COMP EQUIP | Server Hardware | 8/1/2020 | 60 | 36,839.82 | 36,532.83 | 306.99 |
| COMP EQUIP | ThinkPad P14s Mobile Workstati | 12/1/2020 | 60 | 18,155.58 | 16,793.91 | 1,361.67 |
| COMP EQUIP | Macbook Pro | 1/1/2021 | 60 | 349.77 | 317.72 | 32.05 |
| COMP EQUIP | Macbook Pro | 1/1/2021 | 60 | 3,938.74 | 3,577.69 | 361.05 |
| COMP EQUIP | ThankPads | 1/1/2021 | 60 | 31,197.11 | 28,337.37 | 2,859.75 |
| COMP EQUIP | Western Digital 8TB Red Pro | 2/1/2021 | 60 | 2,525.27 | 2,251.72 | 273.56 |
| COMP EQUIP | Drobo B810I Plus RAID Storage | 2/1/2021 | 60 | 2,012.18 | 1,794.20 | 217.99 |
| COMP EQUIP | Microsoft Surface Pro 7 & Peri | 2/1/2021 | 60 | 3,419.60 | 3,049.14 | 370.47 |
| COMP EQUIP | Macbook Pro | 2/1/2021 | 60 | 3,177.28 | 2,833.08 | 344.21 |
| COMP EQUIP | Macbook Pro | 2/1/2021 | 60 | 6,354.57 | 5,666.17 | 688.41 |
| COMP EQUIP | Macbook Pro | 2/1/2021 | 60 | 3,581.36 | 3,193.39 | 387.98 |
| COMP EQUIP | Microsoft Surface Pro Peripher | 3/1/2021 | 60 | 247.60 | 216.66 | 30.94 |
| COMP EQUIP | ThinkPad Ultra Docking Station | 3/1/2021 | 60 | 2,570.20 | 2,248.94 | 321.27 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 6,354.57 | 5,560.26 | 794.32 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 7,162.74 | 6,267.41 | 895.33 |
| COMP EQUIP | ThinkPad Ultra Docking Station | 3/1/2021 | 60 | 3,041.39 | 2,661.23 | 380.17 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 6,597.89 | 5,773.15 | 824.74 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 3,177.28 | 2,780.12 | 397.17 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 27,731.97 | 24,265.48 | 3,466.49 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 27,731.97 | 24,265.48 | 3,466.49 |
| COMP EQUIP | MacBook Pro & Peripherals | 3/1/2021 | 60 | 3,581.36 | 3,133.70 | 447.67 |
| COMP EQUIP | Pegasus 32 R8 Box | 3/1/2021 | 60 | 5,194.12 | 4,544.87 | 649.26 |
| COMP EQUIP | Lenovo X1 Nano Laptops | 3/1/2021 | 60 | 4,164.49 | 3,643.95 | 520.55 |
| COMP EQUIP | Macbook Pro | 4/1/2021 | 60 | 15,886.40 | 13,635.82 | 2,250.59 |
| COMP EQUIP | Lenovo ThinkPad 14s | 4/1/2021 | 60 | 11,568.02 | 9,929.21 | 1,638.81 |
| COMP EQUIP | Lenovo Thinkpad X1 Carb G9 | 4/1/2021 | 60 | 2,540.74 | 2,180.80 | 359.94 |
| COMP EQUIP | Lenovo ThinkPad P14s Mobile Wo | 5/1/2021 | 60 | 17,612.46 | 14,823.81 | 2,788.65 |
| COMP EQUIP | Apple MacBook Pro | 5/1/2021 | 60 | 3,177.28 | 2,674.21 | 503.08 |
| COMP EQUIP | Apple MacBook Pro | 5/1/2021 | 60 | 3,177.28 | 2,674.21 | 503.08 |
| COMP EQUIP | Apple MacBook Pro | 5/1/2021 | 60 | 3,177.28 | 2,674.21 | 503.08 |
| COMP EQUIP | Apple Peripheral Sets (Adapter | 5/1/2021 | 60 | 1,081.91 | 910.60 | 171.32 |
| COMP EQUIP | Apple Peripheral Set (Adapter/ | 5/1/2021 | 60 | 270.48 | 227.67 | 42.82 |
| COMP EQUIP | Apple MacBook Pros | 5/1/2021 | 60 | 5,546.40 | 4,668.22 | 878.18 |

| | | | | | | |
|---|---|---|---|---|---|---|
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 2,773.19 | 2,287.89 | 485.30 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 3,177.28 | 2,621.26 | 556.03 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 3,177.28 | 2,621.26 | 556.03 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 3177.28 | 2,621.26 | 556.03 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 3581.36 | 2,954.63 | 626.74 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 1762.98 | 1,454.45 | 308.53 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 2,773.19 | 2,287.89 | 485.30 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 9,127.76 | 7,530.41 | 1,597.36 |
| COMP EQUIP | MacBook Pro | 6/1/2021 | 60 | 5,950.47 | 4,909.14 | 1,041.34 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 3,581.36 | 2,894.94 | 686.43 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 3,581.36 | 2,894.94 | 686.43 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 3,581.36 | 2,894.94 | 686.43 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 13,865.98 | 11,208.34 | 2,657.64 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 15,886.40 | 12,841.50 | 3,044.91 |
| COMP EQUIP | LENOVO Add-ons | 7/1/2021 | 60 | 1,810.02 | 1,463.12 | 346.91 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 16,072.15 | 12,991.67 | 3,080.49 |
| COMP EQUIP | Macbook Pro | 7/1/2021 | 60 | 13,865.98 | 11,208.34 | 2,657.64 |
| COMP EQUIP | ThinkPad Docking Stations | 7/1/2021 | 60 | 2,961.32 | 2,393.74 | 567.59 |
| COMP EQUIP | Magic Mouse & Magic Keyboard S | 8/1/2021 | 60 | 4,062.58 | 3,216.22 | 846.37 |
| COMP EQUIP | Macbook Pro | 8/1/2021 | 60 | 8,723.68 | 6,906.25 | 1,817.44 |
| COMP EQUIP | Macbook Pro | 8/1/2021 | 60 | 3,177.28 | 2,515.35 | 661.94 |
| COMP EQUIP | Macbook Pro | 8/1/2021 | 60 | 5,546.40 | 4,390.90 | 1,155.50 |
| COMP EQUIP | Macbook Pro | 8/1/2021 | 60 | 5,546.40 | 4,390.90 | 1,155.50 |
| COMP EQUIP | Macbook Pro | 8/1/2021 | 60 | 2,773.19 | 2,195.45 | 577.74 |
| COMP EQUIP | Macbook Pro | 8/1/2021 | 60 | 3,893.12 | 3,082.05 | 811.07 |
| COMP EQUIP | Microsoft Surface Pro 7 | 8/1/2021 | 60 | 2,162.69 | 1,712.13 | 450.56 |
| COMP EQUIP | Microsoft Surface Pro 7 | 8/1/2021 | 60 | 2,162.69 | 1,712.13 | 450.56 |
| COMP EQUIP | ThinkPad Ultra Docking Station | 8/1/2021 | 60 | 5,887.26 | 4,660.74 | 1,226.52 |
| COMP EQUIP | ThinkPad P14s Mobile Workstati | 8/1/2021 | 60 | 16,091.71 | 12,739.27 | 3,352.45 |
| COMP EQUIP | ThinkPad P14s Mobile Workstati | 8/1/2021 | 60 | 34,249.47 | 27,114.16 | 7,135.31 |
| COMP EQUIP | USB-C Digital AV Multiport Ada | 8/1/2021 | 60 | 1,683.69 | 1,332.92 | 350.77 |
| COMP EQUIP | Apple USB-C Power Adapter | 9/1/2021 | 60 | 1,542.48 | 1,195.44 | 347.05 |
| COMP EQUIP | MacBook Pro | 9/1/2021 | 60 | 10,743.02 | 8,325.84 | 2,417.19 |
| COMP EQUIP | MacBook Pro | 9/1/2021 | 60 | 2,148.61 | 1,665.17 | 483.45 |
| COMP EQUIP | MacBook Pro | 9/1/2021 | 60 | 3,177.28 | 2,462.39 | 714.90 |
| COMP EQUIP | Apple USB-C Adapters | 9/1/2021 | 60 | 1,933.53 | 1,498.49 | 435.04 |
| COMP EQUIP | Lenovo Add-Ons | 9/1/2021 | 60 | 1,765.59 | 1,368.34 | 397.25 |
| COMP EQUIP | Lenovo Docking Station | 9/1/2021 | 60 | 2,802.42 | 2,171.88 | 630.54 |
| COMP EQUIP | Lenovo Docking Station | 10/1/2021 | 60 | 2,961.33 | 2,245.68 | 715.66 |
| COMP EQUIP | Computer hardware (Processors, | 10/1/2021 | 60 | 26,875.37 | 20,380.47 | 6,494.90 |
| COMP EQUIP | Lenovo Thinkpad | 10/1/2021 | 60 | 20,624.51 | 15,640.24 | 4,984.27 |
| COMP EQUIP | Lenovo Thinkpad and Docking St | 10/1/2021 | 60 | 23,585.83 | 17,885.94 | 5,699.89 |
| COMP EQUIP | Pegasus External hard drive | 10/1/2021 | 60 | 5,533.10 | 4,195.95 | 1,337.15 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 3,177.28 | 2,409.44 | 767.85 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 3,177.28 | 2,409.44 | 767.85 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 3,177.28 | 2,409.44 | 767.85 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 2,773.19 | 2,103.01 | 670.18 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 4,297.21 | 3,258.71 | 1,038.50 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 11,092.79 | 8,412.04 | 2,680.75 |
| COMP EQUIP | Apple Macbook Pro | 10/1/2021 | 60 | 22,185.57 | 16,824.06 | 5,361.51 |
| COMP EQUIP | Ethernet base | 10/1/2021 | 60 | 5,460.17 | 4,140.61 | 1,319.56 |
| COMP EQUIP | Apple Macbook pro | 11/1/2021 | 60 | 15,413.88 | 11,431.98 | 3,981.90 |
| COMP EQUIP | Lenovo ThinkPad P14 | 11/1/2021 | 60 | 20,492.10 | 15,198.31 | 5,293.80 |
| COMP EQUIP | Apple Macbook Pro 14.2 | 12/1/2021 | 60 | 3,623.73 | 2,627.21 | 996.53 |

| | | | | | | |
|---|---|---|---|---|---|---|
| COMP EQUIP | Apple Macbook Pro 16.2 | 12/1/2021 | 60 | 8,338.06 | 6,045.11 | 2,292.96 |
| COMP EQUIP | Apple AV adapter | 1/1/2022 | 60 | 673.48 | 477.05 | 196.43 |
| COMP EQUIP | Apple Magic Mouse | 1/1/2022 | 60 | 771.24 | 546.30 | 224.95 |
| COMP EQUIP | Lenovo Thinkpad T14 | 2/1/2022 | 60 | 18,462.77 | 12,770.07 | 5,692.71 |
| COMP EQUIP | Lenovo Thinkpad Slim AC Adapte | 2/1/2022 | 60 | 1,036.07 | 716.63 | 319.45 |
| COMP EQUIP | Apple Mac Mini + Apple TV | 2/1/2022 | 60 | 6,274.19 | 4,339.66 | 1,934.54 |
| COMP EQUIP | Apple 16 in Macbook Pro | 3/1/2022 | 60 | 15,413.88 | 10,404.38 | 5,009.50 |
| COMP EQUIP | Apple 16 in Macbook Pro | 3/1/2022 | 60 | 15,413.88 | 10,404.38 | 5,009.50 |
| COMP EQUIP | HDMI Cables/Connectors | 3/1/2022 | 60 | 3,594.89 | 2,426.56 | 1,168.34 |
| COMP EQUIP | Lenovo USB-C  AC adapter | 3/1/2022 | 60 | 1,634.38 | 1,103.21 | 531.17 |
| COMP EQUIP | Apple 16 in Macbook Pro | 3/1/2022 | 60 | 15,413.88 | 10,404.38 | 5,009.50 |
| COMP EQUIP | Apple 16 in Macbook Pro | 3/1/2022 | 60 | 3,089.88 | 2,085.68 | 1,004.20 |
| COMP EQUIP | Apple 16 in Macbook Pro | 3/1/2022 | 60 | 6,179.74 | 4,171.33 | 2,008.42 |
| COMP EQUIP | Apple 16 in Macbook Pro | 3/1/2022 | 60 | 6,165.56 | 4,161.75 | 2,003.81 |
| COMP EQUIP | Cisco memory add on | 4/1/2022 | 60 | 6,098.65 | 4,014.94 | 2,083.71 |
| COMP EQUIP | Apple magic mouse | 4/1/2022 | 60 | 1,156.86 | 761.59 | 395.27 |
| COMP EQUIP | Apple magic keyboard | 4/1/2022 | 60 | 1,890.08 | 1,244.30 | 645.78 |
| COMP EQUIP | Lenovo Thunderbolt dock | 4/1/2022 | 60 | 3,044.34 | 2,004.20 | 1,040.14 |
| COMP EQUIP | Lenovo 14in ThinkPad | 4/1/2022 | 60 | 22,775.95 | 14,994.17 | 7,781.78 |
| COMP EQUIP | Lenovo Thunderbolt dock | 4/1/2022 | 60 | 2,845.87 | 1,873.53 | 972.35 |
| COMP EQUIP | USB-C AV multiport adapter | 4/1/2022 | 60 | 2,020.43 | 1,330.11 | 690.33 |
| COMP EQUIP | HDMI to DVI cable | 5/1/2022 | 60 | 165.70 | 106.31 | 59.39 |
| COMP EQUIP | Lenovo USB mouse | 5/1/2022 | 60 | 686.05 | 440.21 | 245.85 |
| COMP EQUIP | Dell UltraSharp 24in monitor | 5/1/2022 | 60 | 2,972.75 | 1,907.52 | 1,065.23 |
| COMP EQUIP | HDR Cables | 5/1/2022 | 60 | 594.95 | 381.77 | 213.19 |
| COMP EQUIP | Lenovo ThinkPad | 5/1/2022 | 60 | 22,092.92 | 14,176.29 | 7,916.64 |
| COMP EQUIP | Macbook Pro | 6/1/2022 | 60 | 15,413.88 | 9,633.69 | 5,780.19 |
| COMP EQUIP | Macbook Pro Special configurat | 6/1/2022 | 60 | 5,038.01 | 3,148.79 | 1,889.25 |
| COMP EQUIP | Lenovo Thinkpad P14s | 6/1/2022 | 60 | 17,492.59 | 10,932.86 | 6,559.73 |
| COMP EQUIP | Macbook Pro Special configurat | 6/1/2022 | 60 | 18,672.63 | 11,670.40 | 7,002.24 |
| COMP EQUIP | USB-C AV Multiport adapter | 6/1/2022 | 60 | 1,346.95 | 841.85 | 505.11 |
| COMP EQUIP | Microsoft Surface | 6/1/2022 | 60 | 2,114.22 | 1,321.40 | 792.82 |
| COMP EQUIP | Lenovo Thinkpad P14s | 6/1/2022 | 60 | 22,987.77 | 14,367.36 | 8,620.42 |
| COMP EQUIP | Lenovo TBOLT dock | 7/1/2022 | 60 | 3,030.90 | 1,843.80 | 1,187.11 |
| COMP EQUIP | Lenovo Thinkpad P14s | 7/1/2022 | 60 | 23,152.33 | 14,084.33 | 9,068.01 |
| COMP EQUIP | Apple Macbook Pro 14.2 | 7/1/2022 | 60 | 2,971.98 | 1,807.95 | 1,164.04 |
| COMP EQUIP | Macbook Pro 16in | 8/1/2022 | 60 | 15,413.88 | 9,119.89 | 6,293.99 |
| COMP EQUIP | Lenovo ThinkPad 14in | 8/1/2022 | 60 | 2,215.08 | 1,310.60 | 904.48 |
| COMP EQUIP | Lenovo ThinkPad 14in | 8/1/2022 | 60 | 10,374.23 | 6,138.08 | 4,236.15 |
| COMP EQUIP | Lenovo ThinkPad 14in | 8/1/2022 | 60 | 10,374.23 | 6,138.08 | 4,236.15 |
| COMP EQUIP | Lenovo ThinkPad 14in | 8/1/2022 | 60 | 7,501.10 | 4,438.16 | 3,062.94 |
| COMP EQUIP | Custom Macbook Pro 16in | 8/1/2022 | 60 | 18,414.12 | 10,895.01 | 7,519.11 |
| COMP EQUIP | Apple USB-C adapter | 9/1/2022 | 60 | 1,156.86 | 665.18 | 491.68 |
| COMP EQUIP | 16 in Macbook Pro custom | 9/1/2022 | 60 | 7,469.06 | 4,294.70 | 3,174.36 |
| COMP EQUIP | 16 in Macbook Pro custom | 9/1/2022 | 60 | 3,734.53 | 2,147.34 | 1,587.19 |
| COMP EQUIP | Lenovo Thinkpad | 9/1/2022 | 60 | 10,374.23 | 5,965.18 | 4,409.05 |
| COMP EQUIP | Microsoft Surface laptop | 9/1/2022 | 60 | 2,806.77 | 1,613.89 | 1,192.88 |
| COMP EQUIP | Apple Macbook Pro 16in special | 10/1/2022 | 60 | 3,734.53 | 2,085.10 | 1,649.43 |
| COMP EQUIP | Apple Macbook Pro 16in special | 10/1/2022 | 60 | 11,203.59 | 6,255.35 | 4,948.24 |
| COMP EQUIP | Lenovo Thinkpad 14 in | 10/1/2022 | 60 | 20,896.74 | 11,667.36 | 9,229.38 |
| COMP EQUIP | Microsoft surface laptop 4 | 10/1/2022 | 60 | 2,710.64 | 1,513.46 | 1,197.18 |
| COMP EQUIP | Lenovo Thinkpad docking statio | 10/1/2022 | 60 | 2,769.83 | 1,546.48 | 1,223.35 |
| COMP EQUIP | Macbook Pro 16 in | 2/1/2023 | 60 | 16,500.13 | 8,112.55 | 8,387.58 |
| COMP EQUIP | Lenovo Thinkpad workstation do | 2/1/2023 | 60 | 7,838.16 | 3,853.76 | 3,984.41 |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| COMP EQUIP | Lenovo Thinkpad 14in | 2/1/2023 | 60 | 18,154.07 | | 8,925.77 | 9,228.31 |
| COMP EQUIP | Lenovo Thinkpad Thunderbolt 3 | 3/1/2023 | 60 | 1,509.90 | | 717.20 | 792.70 |
| COMP EQUIP | Macbook Pro & Accessories | 3/1/2023 | 60 | 16,282.88 | | 7,734.36 | 8,548.52 |
| COMP EQUIP | Microsoft Surface Pro | 4/1/2023 | 60 | 2,865.98 | | 1,313.58 | 1,552.40 |
| COMP EQUIP | Apple Macbook Pro 16in | 4/1/2023 | 60 | 18,496.66 | | 8,477.65 | 10,019.01 |
| COMP EQUIP | Lenovo ThinkPad Thunderbolt wo | 4/1/2023 | 60 | 1,959.54 | | 898.13 | 1,061.41 |
| COMP EQUIP | Lenovo ThinkPad P14s | 5/1/2023 | 60 | 10,151.88 | | 4,483.76 | 5,668.12 |
| COMP EQUIP | Apple Macbook Peo 16in | 5/1/2023 | 60 | 21,579.44 | | 9,530.94 | 12,048.50 |
| COMP EQUIP | Lenovo ThinkPad P14s | 5/1/2023 | 60 | 10,070.68 | | 4,447.88 | 5,622.80 |
| COMP EQUIP | Apple MacBook Pro 16in with ac | 6/1/2023 | 60 | 11,940.07 | | 5,074.52 | 6,865.55 |
| COMP EQUIP | Lenovo Thinkpad Thunderbolt 4 | 6/1/2023 | 60 | 3,727.90 | | 1,584.35 | 2,143.56 |
| COMP EQUIP | Lenovo Thinkpad 14in | 6/1/2023 | 60 | 19,763.56 | | 8,399.50 | 11,364.07 |
| COMP EQUIP | Microsoft Surface laptop with | 6/1/2023 | 60 | 2,817.55 | | 1,197.46 | 1,620.09 |
| COMP EQUIP | Lenovo Thinkpad Thunderbolt 4 | 6/1/2023 | 60 | 1,720.57 | | 731.25 | 989.33 |
| COMP EQUIP | Apple Macbook Pro | 7/1/2023 | 60 | 15,413.88 | | 6,294.02 | 9,119.86 |
| COMP EQUIP | Lenovo ThinkPad | 8/1/2023 | 60 | 1,988.06 | | 778.65 | 1,209.42 |
| COMP EQUIP | Lenovo Thinkpad/Thunderbolt Do | 8/1/2023 | 60 | 11,250.23 | | 4,406.33 | 6,843.90 |
| COMP EQUIP | Lenovo Thinkpad | 9/1/2023 | 60 | 10,301.72 | | 3,863.15 | 6,438.58 |
| COMP EQUIP | USB-C Cables and adapters | 10/1/2023 | 60 | 1,151.97 | | 412.79 | 739.18 |
| COMP EQUIP | Lenovo thinkpad P14s | 1/1/2024 | 60 | 9,636.67 | | 2,971.30 | 6,665.38 |
| COMP EQUIP | Microsoft Surface Pro 9 | 2/1/2024 | 60 | 2,781.81 | | 811.35 | 1,970.46 |
| COMP EQUIP | Microsoft Surface Pro 11 | 9/1/2024 | 60 | 2,310.07 | | 404.25 | 1,905.82 |
| COMP EQUIP | Microsoft Surface Pro 9 with k | 11/1/2024 | 60 | 1,448.00 | | 205.13 | 1,242.88 |
| | | | | 1,960,399.15 | | **Total Tangibles NBV** | **397,431.60** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| INT DEVEL | Survey Project | 1/1/2023 | 36 | 353,710.00 | | 299,670.99 | 54,039.01 |
| | | | | | | **Total Intangible NBV** | **54,039.01** |

Schedule 4.6

Compliance with Laws

Allegations made in connection with the matter captioned *FTC v. PCH*, Case No. 23-cv-4735 (E.D.N.Y. June 30, 2023) resulting in the consent decree entered into in connection therewith

Schedule 4.8

Brokers and Finders

SSG Capital Advisors, LLC

Schedule 4.9

Contracts

See attached.

| Name | Description | Notes Regarding Rejection |
|------|-------------|---------------------------|
| 5 Axis Health | Advertiser | |
| A DEL PIANO | Consultant | |
| ADOMIK INC. | PCH Media Ad Ops - technology solutions to optimize digital advertising | |
| ADP, Inc. | ADP portal license and service agreement  Payroll and HR Software & Services | |
| AdQuire (fka Permission Data) | advertising platform (co-registration experience) | |
| ADZERK INC | PCH Media Ad Ops - online ad serving and related administrative advertising services. | |
| AETNA LIFE & CASUALTY (BERMUDA) LTD | Employee Benefits Consultant | |
| AKAMAI TECHNOLOGIES, INC. | IT Technology | |
| AMAZON.COM | Advertiser | |
| AMERICAN REGISTRY FOR INTERNET NUMBERS | IT Technology | |
| Andrew C. Goldberg | Employment agreement effective September 1, 2007 | |
| Anita Goldstein | Consulting Services Agreement  Effective September 3, 2024 | |
| Aon Investment USA Inc. | 401k Plan Consultant | |
| Appextremes, LLC d/b/a Conga | Service and support level agreement | |
| AppLovin Corporation | Advertiser | |
| Aragon Advertising | Advertiser | |
| Asset Enhancement Solutions, LLC | Advisory services | |
| AT&T MOBILITY | IT Technology | |
| BLOCKTHROUGH US LLC | PCH Media Ad Ops - Adblock recovery technology and related ad services. | |
| Boost Health Insurance | Advertiser | |
| Botify Corp. | Software service agreement | Contract rejected as of April 29, 2025 pursuant to Order at Docket No. 130. |
| BROWSERSTACK INC | IT Technology - app testing | |
| CABLEVISION LIGHTPATH, INC. | IT Technology | |
| Cadent | Advertiser | |
| CarShield | Advertiser | |
| CASHSTAR, INC. | Digital Gift Card Fulfillment Agreement | |
| CATALOGIC SOFTWARE INC | IT Technology | |
| CDS Global, Inc. | Remittance processing agreement  Consumer Payment Lockbox | |
| Christopher L. Irving | Employment agreement effective September 1, 2007 | |
| CHRISTOPHER T. O'CONNOR | Consultant | |
| Cigna Health and Life Insurance Company | Group hospital indemnity policy; Employee Healthcare | |
| CivicScience | Advertiser | |
| CLAS INFORMATION SERVICES | Registered Agent | |
| Clear Link Technologies, LLC | Advertiser | |
| COMMISSION JUNCTION INC | User Acquisition | |
| COMMITTEE FOR DIGITAL ADVERTISING | IT Technology | |
| COMSCORE, INC. | PCH Media Ad Ops | Contract rejected as of April 29, 2025 pursuant to Order at Docket No. 130. |
| CONCUR TECHNOLOGIES, INC. | IT Technology | |
| Craig S. Anderson | Employment agreement effective September 1, 2007 | |
| Criteo Corp. | Advertiser | |
| CROWN CASTLE INTERNATIONAL | IT Technology | |
| CX360 INC | MosaicX - Customer Service Technology - IVR | Subject to a pending motion by the Seller to reject the contract as of May 23, 2025 [Docket No. 169] |
| DARKTRACE LIMITED | IT Technology | |
| David Matthews | Employment agreement effective November 11, 2024 | |
| DAVID SAYER | expense reimbursement; prize patrol consultant | |
| Decide Technologies Inc. | Advertiser | |
| DEVICEATLAS LIMITED | IT Technology | |
| DIGICERT INC | IT Technology | |
| Digital Turbine Media, Inc. | Advertising platform | |
| Diligent Board Members Services, Inc. | Uploading of client's data in encrypted format to the Debtor's Boardbooks Site | |
| DILIGENT CORPORATION | IT Technology | |
| Direct Fulfillment, LLC | Printing and lettershop services | |
| DOCUSIGN INC | PCH Media Ad Ops - contract repository and digital signature. | |
| Duality Holdings LLC | Lease for 7 West 22nd Street, New York, New York  NYC Office Sublandlord | |
| DUN & BRADSTREET, Inc. | Finance analytics contract | |
| DUO SECURITY INC | IT Technology | |
| Eastern Vision Service Plan, Inc. | Client vision care policy; Employee Benefits | |
| EICHEN & DIMEGLIO, P.C. | 401k Audit Firm | |
| Epsilon Data Management | Advertiser | |
| Equativ | Advertiser | |
| eScreen, Inc. | Arrange workplace testing products and services | |
| Ethos Technologies, Inc. | Advertiser | |
| Exit 42 LTD | Advertiser | |
| EXPERIAN MARKETING SOLUTION | Advertiser | |
| EXPERIAN Services Corp | data and graphics | |
| FIDELITY | Employees 401k | |
| FIGMA INC | IT Technology | |
| Financial Insight Technology, Inc. | Advertiser | |

| | | |
|---|---|---|
| FLEX MARKETING GROUP, LLC | Advertiser | |
| Flowplay, LLC | Advertiser | |
| Fluent / Affluent | Advertiser | |
| Fulfillment Distribution Center, Inc. | Product fulfillment, response mail processing, and manual contest qualification processing services | |
| General Research Laboratory Inc | Software development agency | |
| GEORGE MANTZOUTSOS | Consultant | |
| GET PROPULSION LLC | Human Resources Technology and Account-Based Sales Development | |
| Globe Marketing & Advertising Distributo | Advertiser | |
| GOOGLE LLC | Advertiser | |
| GumGum | Advertiser | |
| HANLEIGH MANAGEMENT, INC. | Employee Life Insurance | |
| Harold W. Low | Employment agreement effective September 1, 2007 | |
| HARTFORD LIFE & ACCIDENT | Employee Life Insurance and Disability Claims | |
| Harvest Direct Limited | Advertiser | |
| HealthCare.com | Advertiser | |
| Huuuge Global LTD | Advertiser | |
| HVAC Cycle LLC | Maintenance contract for HVAC system in NYC office | |
| HyprMX Mobile, LLC | Advertising platform | |
| I COMPONENT SOFTWARE | IT Contract Labor to maintain apps | |
| Index Exchange, Inc. | Online media and technology company providing access to online media inventory | |
| INDUSTRIAL CARTING | NYC rubbish removal | |
| Infolinks Media, LLC | Provides exclusive advertisers from premium direct brands | |
| INFOR (US) INC. | IT Technology | Contract rejected as of April 29, 2025 pursuant to Order at Docket No. 130. |
| InMobi | Advertiser | |
| Insurify Inc | Advertiser | |
| INTEGRAL AD SCIENCE INC | PCH Media Ad Ops - a third-party verification partner that measured viewability of advertisements on PCH websites. | Contract rejected as of April 23, 2025 pursuant to Order at Docket No. 130. |
| INTERACTIVE ADVERTISING BUREAU | PCH Media Ad Ops | |
| Interest Media, Inc. | Advertiser | |
| ironSource Mobile Ltd. | Ad serving technology for mobile Apps | |
| IVANTI INC | IT Technology | |
| J.D. Power Company | Advertiser | |
| JAMF SOFTWARE, LLC | IT Technology | |
| JOSEPH ZITO | Consultant | |
| Kevin Prinz | Accepted Offer Letter effective December 17, 2008 | |
| Khoros, LLC | Subscription services | |
| Kueez | Advertiser | |
| KUNJ CORPORATION | IT Contract Labor | |
| Ladder Financial Inc. | Advertiser | |
| Launch Media Solutions, LLC | Advertiser | |
| Level 3 Communications LLC (dba Lumen) | Customer Service Support | Subject to a pending motion by the Seller to reject the contract as of May 23, 2025 [Docket No. 169] |
| LEVEN LABS INC | PCH Media Ad Ops | |
| Liftoff Mobile, Inc. | Advertising platform | |
| Linkedin Corporation | Career pages, reservred job postings and recruiter account | |
| LIVEINTENT, INC. | Services provides the ability to buy advertising inventory for display on PCH websites, including within PCH emails. | |
| LIVERAMP INC | Services allow PCH to access and analyze consumer data across various channels to enhance marketing and allow for secure data partnerships | |
| Lotame | Advertiser | |
| Lucid Holdings, LLC | Survey marketplace platform provider | |
| Magnite | Advertiser | |
| Make Opinion GmbH | Advertiser | |
| Marigold USA Inc | IT Technology | |
| Mastech Info Trellis, Inc. | Advisory services for production support, training, enhancements and customizations for Oracle Service Cloud and Oracle Digital Assistant applications | |
| Matrix Point Consulting | Advertiser | |
| MEDIARADAR, INC. | Advertiser | |
| Mediaweb Limited | Advertiser | |
| MERCER HEALTH & BENEFITS LL | Employee Benefits Consultant | |
| META PLATFORMS INC | Advertiser | |
| Michael E. Cooper | Employment agreement effective September 1, 2008 | |
| MICROSOFT SERVICES | IT Technology | |
| Mintegral North America Inc. | Advertising platform | |
| MIXPANEL INC | IT Technology | |
| Modaramo Media | Advertiser | |
| MOENGAGE INC | Marketing Technology | |
| MomentScience (fka AdsPostX) | Advertiser | |
| MONDAY.COM LTD | Creative Work Tool | |
| MOTIVE INTERACTIVE, INC. | Advertiser | |

| | | |
|---|---|---|
| NASSAU COUNTY INDUSTRIAL DEVELOP. AGENCY | IDA Benefits | |
| Nativo, Inc. | Advertiser: Supply Side Demand Platform | |
| Net Tel USA, Inc. | Collection of unpaid customer accounts | |
| NEW RELIC, INC. | IT Technology | |
| North Shore Agency, Inc. | Collection of unpaid customer accounts | |
| NTIRETY INC | Web Hosting | |
| Ogury Ltd. | Advertising platform | |
| OKTA INC | IT Technology | |
| OMD NY | Advertiser | |
| OpenX Technologies, Inc. | Programmatic Ads | |
| OPTIZMO TECHNOLOGIES LLC | IT Technology | |
| OPTUM BANK INC | Employee Healthcare HSA  - EE Contributions | |
| Optum Financial, Inc. | Administrative services agreement  Employee HSA - fees | |
| ORACLE AMERICA INC | IT Technology | |
| OSANO INC A PUBLIC BENEFIT | WireWheel - IT Technology | |
| Outbrain Inc. | Header Bidding | |
| OUTREACH CORPORATION | AI tool to improve sales performance | |
| PALO ALTO NETWORKS INC | IT Technology | |
| PARK PLACE TECHNOLOGIES | IT Technology | |
| PARTICULAR SOFTWARE INC | IT Technology | |
| PEBBLEPOST INC | User Acquisition | Contract rejected as of April 29, 2025 pursuant to Order at Docket No. 130.  Note that new agreement was executed post-petition. |
| Penn Credit Corporation | Collection services agreement | |
| Penn Credit Corporation | Mutual compliance agreement | |
| PERFORMLINE INC | IT Technology | |
| PERMISSION DATA LLC | PCH Media Ad Ops | |
| PICKFU INC | Creative Tool | |
| Pierpont Mechanical Corp. | HVAC maintenance and service agreement | |
| PINCHme | Advertiser | |
| Pitney Bowes Presort Services, Inc. | First-class letter and postcard mail processing services | |
| Playbuzz (EX.CO) | Advertiser | |
| POWERINBOX | Advertiser | |
| PREBID.ORG INC | Boosts programmatic hearer bidding | |
| PRECISELY SOFTWARE INC | IT Technology | |
| Premium Ads Pte, Ltd. | Advertiser | |
| PricewaterhouseCoopers LLP | Audit of the consolidated financial statements for tax year 2024 | |
| PROGRESS SOFTWARE CORPORATION | IT Technology | |
| PubMatic, Inc. | Advertising platform | |
| PulsePoint | Advertiser | |
| PureSpectrum | Platform to connect survey providers to audiences | |
| PwC US Tax LLP | Abandoned and unclaimed property services | |
| QLIKTECH INC | IT Technology | |
| Quadient Leasing USA, Inc. | Equipment Lease | |
| Radiant Technologies DBA SpringServe | Advertiser | |
| Red Ventures LLC | Advertiser | |
| REDIS LABS INC | IT Technology | |
| Research for Good (RFG) | Advertiser | |
| Roey Franco | Employment letter effective March 25, 2024 | |
| SADA SYSTEMS INC | IT Technology | |
| SAFEGUARD PRIVACY INC | IT Technology | |
| Safety Facility Services | Cleaning services for Jericho premises | |
| SALESFORCE.COM, INC. | PCH Media Ad Ops | |
| SBG Media Inc / Fireclick Media | Advertiser | |
| Senior Midwest Direct Inc. d/b/a | Provider of lettershop services to the Debtor for first class and third class mailing programs | |
| Sharethrough Inc | Advertiser/Header Integration | |
| SHE Media | Advertiser | |
| SHUTTERSTOCK, INC. | Creative Images | |
| SilkRoad Technology, Inc. | Human resources management | |
| Skybridge Americas, Inc. | Out-sourced customer contact and management services | |
| SOFTCRYLIC, LLC | IT Contract Labor | |
| SOFTWAREONE, INC. | IT Technology | |
| SOURCEPOINT TECHNOLOGIES INC | IT Technology | |
| Sovrn, Inc. | Advertising | |
| Sportority Inc (Minute Media) | Advertiser | |
| STAQ INC | IT Technology | |
| Steel One, LLC | Lease for storage facility located at 1-15 Grumman Road West, Bethpage, New York 11714 | |
| SUMOLOGIC INC | IT Technology | |
| Sunrise Credit Services, Inc. | Collection of unpaid customer accounts | |
| Superplay | Advertiser (co-branded experiences under game Dice Dreams) | |
| SVAM INTERNATIONAL INC | IT Contract Labor | |
| System1 OpCo, LLC | Search engine and optimization platform | |
| Taboola, Inc. | Advertising platform | |
| TALEND INC (QLIKTECH INC) | IT Technology | |

| | | |
|---|---|---|
| TEALIUM INC | IT Technology | |
| TENEO INC | IT Technology | |
| The Kaija Group, LLC | Advertiser | |
| TMT DIGITAL INC | PCH Media Ad Ops | |
| Top Down Systems Corporation | Software service license agreement | |
| TripleLift, Inc. | Audience supported advertising platform | |
| TROVATA INC | Cash Management Software | |
| TUNE INC. | PCH Media Ad Ops | |
| TypeA Holdings Ltd. (dba Rise) | Advertiser | |
| United Fire Protection Corporation | Inspection/service rates contract | |
| United Parcel Service, Inc. | UPS small package transportation agreement | |
| UNUM PROVIDENT | Employee Benefits | |
| UPS Expedited Mail Services, Inc. | Expedited mail services agreement | |
| VALIDITY, INC. | IT Technology | |
| Vertex | Managed services outsourcing | |
| VERTEX INC | Managed tax services for returns processing offering | |
| Wells Fargo Bank, National Association | Wells Fargo mastercard multicard agreement | |
| What If Media Group | Advertiser | |
| Wunderkind Corporation | Advertiser | |
| Xandr Inc. (fka AppNexus) | Advertising platform | |
| YieldMo, Inc. | Advertiser | |
| ZEUS JOINTCO HOLDCO LLC | Khoros - IT Technology - Customer Service | |
| Ziegler Power Systems | Customer Support Agreement | |
| ZOHO CORPORATION | IT Technology | |
| ZOOMINFO MIDCO LLC | Streamline and automate business processes | |
| AdMediary | | |
| Adobe | | |
| Alchemer | | |
| Almedia GmbH | | |
| AppsFlyer | | |
| Arbor Energy | | |
| Atwave | | |
| B2Direct | | |
| B452 | | |
| Blue Butterfly | | |
| Careington International Corporation | | |
| CASHstar/BlackHawk | | |
| Citadel Marketing Group (CMG) | | |
| Comscore Proximic | | |
| Credique | | |
| DAA/Digital Advertising Aliant | | |
| Digital Turbine | | |
| EasyDMark | | |
| Email on Acid | | |
| E-Plus | | |
| Equoto | | |
| Exact Customer | | |
| Exacthosting | | |
| FileMaker | | |
| Fizzy Labs | | |
| Flatiron Media, LLC | | |
| Golden Hippo (Cali Pet Nutrients) | | |
| GoodRx | | |
| Google G-suite | | |
| Ignite Media Group, LLC | | |
| Imperva | | |
| In Box Specialists | | |
| Info Trust | | |
| Kandinksy & Partners Limited | | |
| Kemp Load Balancer | | |
| Landesk/Ivanti | | |
| Lashback | | |
| Lucid Charts | | |
| Lucky Day | | |
| MarketSmith | | |
| MediaForce | | |
| Money Group | | |
| Mountain View Publishers | | |
| Network Solutions | | |
| Ogury | | |
| Partner Centric | | |
| Plato Web Design (DBA BetterBuck) | | |
| Playstudios | | |
| Pushnami LLC | | |
| Rainmaker | | |
| Renewal By Andersen | | |

| | | |
|---|---|---|
| RevOptimal | | |
| Rise | | |
| Rubrik | | |
| SalesFORCE.COM, INC. - Tableau | | |
| Schlesinger Group/Sago | | |
| Sesam Limited | | |
| Shift44 | | |
| SMZ | | |
| Social Concepts | | |
| Sonder Data Group | | |
| Start.io | | |
| Tanventure, LLC (Invention Marketing Solutions) | | |
| The Lotter | | |
| Unruly | | |
| Upwave | | |
| Veeam | | |
| VGW | | |
| Vidazoo | | |
| Vivint Smart Home | | |
| Walla Media, LLC | | |
| Whirlygig | | |
| Pikoya Ltd. | | |
| Jetbrains | | |

<u>Schedule 4.10(a)(i)</u>

<u>Intellectual Property</u>

**Patents and Patent Applications**:

Please see Annex 4.10(a)(i)(A) attached hereto for a list of all Patents that were owned by Seller's wholly-owned Subsidiary, PCH Topix, LLC, as of the date of its dissolution (collectively, the "<u>Topix Patents</u>").

**Trademark and Service Mark Registrations and Applications**:

Please see Annex 4.10(a)(i)(B) attached hereto.

**Copyright Registrations and Applications**:

Please see Annex 4.10(a)(i)(C) attached hereto.

[2]**Domain Name Registrations**:

Please see Annex 4.10(a)(i)(D) attached hereto.

**Social Media Handles**:

FB Main Page: https://www.facebook.com/pch
FB Prize Patrol Page: https://www.facebook.com/pchprizepatrol
FB Treasure Match: https://www.facebook.com/pchtreasurematch
FB PCH Wordmania: https://www.facebook.com/PCHWordmania
FB Quizzes: https://www.facebook.com/PCHquizzes
FB Games: https://www.facebook.com/pchgames
IG Main: https://www.instagram.com/pchofficial/
IG Wordmania: https://www.instagram.com/officialpchwordmania/
IG Treasure Match: https://www.instagram.com/pchtreasurematch/
TikTok: https://www.tiktok.com/@pchofficial
YouTube: https://www.youtube.com/@PCHOfficial
X Main: https://x.com/pchdotcom
X Treasure Match: https://x.com/treasure_match
X Wordmania: https://x.com/PCHWordmania
Pinterest: https://www.pinterest.com/pchdotcom/?actingBusinessId=221239537853008183
LinkedIn (PCH): https://www.linkedin.com/company/publishers-clearing-house/posts/?feedView=all
LinkedIn (Media): https://www.linkedin.com/company/pchmedia/posts/?feedView=all

---

[2] <u>Note to Draft</u>: Annex to note: "List of Copyrights will be provided by Seller prior to Closing."

**Material Unregistered Marks**: [3]

[WIN FOR LIFE

PCH Classic (including stylized versions thereof) and related logo

PCH + (including stylized versions thereof) and related logo

Wordmania (including stylized versions thereof) and related logo

Treasure Mania  (including stylized versions thereof) and related logo]

[  ]

**Proprietary Software**:

PCH Plus APP
PCH Classic APP
Lotto APP
Wordmania APP
Treasure Match App

PCH Website
Lotto Website
Front Page Website
Search&Win Website
Answer&Win Website
Rewards Website
Games Website
PCH Quizzes Website

Token Banks Platform
Instant Win Platform
VIP Platform
Promo Platform
Sweeps, Lotto and Keno drawing Engines
GPS contest Platform
Survey Recommendation Engine

All other Systems/Software built to support the PCH business as a whole as to which related source
code is stored in centralized depositories.

---

[3] <u>Note to Draft</u>: Seller to confirm this list and add any other material unregistered marks.

| Trademark | Image | Country/Status | Owner | App No | App Date | Reg No | Reg Date | Class | Goods | Next Action |
|---|---|---|---|---|---|---|---|---|---|---|
| "FOREVER" | | United States of America / Registered | Publishers Clearing House LLC | 85665895 | 29-Jun-2012 | 4235335 | 13-Nov-2012 | 41 Int. | Sweepstakes services. | Renewal- Opening date - 13-Nov-2031 - Due Date |
| @DESIGN INNOVATIVE.FUNCTIONAL Plus Light Bulb Design |  | United States of America / Registered | Publishers Clearing House LLC | 88023018 | 2-Jul-18 | 6866541 | 4-Oct-22 | 09 Int., 14 Int. | Magnifiers, namely, magnifying glasses; electrical outlets; electrical plugs; pocket radios; USB hubs; cell phone holders for automobiles; cell phone battery chargers for automobiles; cell phone stands; cell phone holders; tablet computer stands; stands adapted for computers, namely, tablet computer holders.; Clocks. | Aff of Use - 5 Year - 04-Oct-2027 - Due Date |
| 11 PCHKENO Plus Design | | United States of America / Registered | Publishers Clearing House LLC | 87333172 | 13-Feb-17 | 5465664 | 8-May-18 | 41 Int. | Providing on-line keno games and other games of chance. | Renewal- Opening date - 08-May-2027 - Due Date |
| PCHKENO | | United States of America / Registered | Publishers Clearing House LLC | 87317995 | 30-Jan-17 | 5465608 | 8-May-18 | 41 Int. | Providing on-line keno games and other games of chance. | Renewal- Opening date - 08-May-2027 - Due Date |
| 11 PCHKENO PUBLISHERS CLEARING HOUSE Plus Design | | United States of America / Registered | Publishers Clearing House LLC | 87333175 | 13-Feb-2017 | 5465665 | 08-May-2018 | 41 Int. | Providing on-line keno games and other games of chance. | Renewal- Opening date - 08-May-2027 - Due Date |
| PCHLOTTO | | United States of America / Registered | Publishers Clearing House LLC | 87316385 | 27-Jan-17 | 5246479 | 18-Jul-17 | 41 Int. | sweepstakes services | Renewal- Opening date - 18-Jul-2026 - Due Date |
| 6 42 PCHLOTTO Plus Design | | United States of America / Registered | Publishers Clearing House LLC | 87333163 | 13-Feb-2017 | 5246513 | 18-Jul-2017 | 41 Int. | sweepstakes services | Renewal- Opening date - 18-Jul-2026 - Due Date |

| Mark | Country | Status | Owner | App No. | App Date | Reg No. | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| 6 42 PCHLOTTO PUBLISHERS CLEARING HOUSE Plus Design  | United States of America | Registered | Publishers Clearing House LLC | 87435507 | 07/05/2017 | | | | Interactive games | Renewal- Opening date - 18-Jul-2026 - Due Date |
| CANDYSTAND | Australia | Registered | Funtank LLC | 1234278 | 08-Apr-2008 | 1234278 | 08-Apr-2008 | 41 Int. | Entertainment services, including providing a web-site containing articles, puzzles, games and activities intended for adults and children. | Next Renewal - 08-Apr-2028 - Ren/Due |
| CANDYSTAND | European Union (Community) | Registered | Funtank LLC | 6491534 | 06-Dec-2007 | 6491534 | 06-Nov-2008 | 41 Int. | Providing a website containing articles, puzzles, games and activities of an educational nature intended for adults and children. | Next Renewal - 06-Dec-2027 - Ren/Due |
| CANDYSTAND | India | Registered | Funtank LLC | 1674775 | 10-Apr-2008 | 1104046 | 24-Jun-2013 | 41 Int. | Providing a web-site containing articles, puzzles, games and activities intivites intended for adults and children. | Next Renewal - 10-Apr-2028 - Ren/Due |
| CANDYSTAND | United Kingdom | Registered | Funtank LLC | UK00906491534 | 06-Dec-2007 | UK00906491534 | 06-Nov-2008 | 41 Int. | Providing a website containing articles, puzzles, games and activities of an educational nature intended for adults and children. | Next Renewal - 06-Dec-2027 - Ren/Due |
| CANDYSTAND | United States of America | Registered | Funtank, LLC | 75288373 | 08-May-1997 | 2139232 | 24-Feb-1998 | 41 Int. | Providing a web-site containing articles, puzzles, games and activities of an educational nature intended for adults and children. | Renewal- Opening date - 24-Feb-2027 - Due Date |
| CANYON SKY A SOUTHWEST INSPIRATION logo  | United States of America | Registered | Publishers Clearing House LLC | 87069017 | 13-Jun-2016 | 6463738 | 24-Aug-2021 | 11 Int., 14 Int., 18 Int., 20 Int., 21 Int., 24 Int., 25 Int., 27 Int. | Decorative home accents, namely, lamps, nightlights, battery operated electric candles.; Costume jewelry; jewelry made with semi-precious gems or stones; watches.; Handbags; wallets; garment bags for travel.; Decorative home accents, namely, wind chimes, birdhouses, figurines made of cold cast resin.; Household storage containers made of plastic and for household use; servingware, namely, bowls; insulated carriers for food.; Bath towels; throws.; Caftans; gloves.; Decorative wall hangings made of resin. | Aff of Use - 5 Year - 24-Aug-2026 - Due Date |
| CANYON SKY A SOUTHWEST INSPIRATION logo  | United States of America | Registered | Publishers Clearing House LLC | 90118045 | 17-Aug-2020 | 7316582 | 27-Feb-2024 | 24 Int., 25 Int. | Shower curtains; blankets for beds; sheets for beds; Gloves | Aff of Use - 5 Year - 27-Feb-2029 - Due Date |

| Mark | | Country | Status | Owner | App No. | App Date | Reg No. | Reg Date | Int. Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FUNTANK | | United States of America | Registered | FunTank LLC | 77/963133 | 18-Mar-2008 | 4004085 | 04-Jan-2011 | 35 Int., 41 Int., 42 Int. | ...ation services; online games for computers, cell phones and hand-held electronic personal devices.; Advertising agency services and marketing communications consulting services.; Entertainment services, namely, providing online computer games; online journals, namely, blogs, in the fields of games and general interest.; Multimedia design services for others, namely, digital commercial artwork design, game development services for others, graphic art design, website design, website hosting on a computer server for a global computer network; programming and implementation of multimedia applications for others; custom design of computer software in multiple fields for others. | Renewal- Opening date - 04-Jan-2030 - Due Date |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | Canada | Registered | Publishers Clearing House LLC | 1383190 | 07-Feb-2008 | TMA779468 | 08-Oct-2010 | 07 Int., 08 Int., 09 Int., 11 Int., 21 Int. | Small kitchen appliances, namely, electric food blenders and mixers.; Cutleryand flatware, namely knives, forks and spoons; scissors; electric irons; small kitchen appliances, namely electric griddles, electric frying pans, crock pots, steamers, and waffle irons; Cookware, namely, pots and pans; stir-fryers; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders | First Renewal - 08-Oct-2025 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | Canada | Registered | Publishers Clearing House LLC | 1416931 | 27-Oct-2008 | TMA808677 | 11-Oct-2011 | 09 Int., 18 Int., 24 Int. | Sunglasses.; Gift sets consisting of a wallet and key chain.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets, namely blanket throws for household use; table runners; pillows | First Renewal - 11-Oct-2026 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | Canada | Registered | Publishers Clearing House LLC | 1416930 | 27-Oct-2008 | TMA802741 | 21-Jul-2011 | NC No Class | Slippers; bath mats; bath rugs. | First Renewal - 21-Jul-2026 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | European Union (Community) | Registered | Publishers Clearing House LLC | 006652515 | 07-Feb-2008 | 006652515 | 22-Jan-2009 | 07 Int., 08 Int., 09 Int., 11 Int., 21 Int. | Small kitchen appliances, namely, electric food blenders and mixers.; Cutlery and flatware, namely, knives, forks and spoons; scissors.; Electric irons.; Small kitchen appliances, namely, electric griddles, electric frying pans, crock pots, steamers and waffle irons.; Cookware, namely, pots and pans; stir-fryers; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders. | Next Renewal - 07-Feb-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | European Union (Community) | Registered | Publishers Clearing House LLC | 007350812 | 28-Oct-2008 | 007350812 | 29-Jul-2009 | 09 Int., 18 Int., 20 Int., 24 Int., 25 Int., 27 Int. | Sunglasses.; Gift sets consisting of a wallet and key chain.; Pillows.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets; table runners.; Slippers.; Bath mats; bath rugs. | Next Renewal - 28-Oct-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | United Kingdom | Registered | Publishers Clearing House LLC | UK00906652515 | 07-Feb-2008 | UK00906652515 | 22-Jan-2009 | 07 Int., 08 Int., 09 Int., 11 Int., 21 Int. | Small kitchen appliances, namely, electric food blenders and mixers.; Cutlery and flatware, namely, knives, forks and spoons; scissors.; Electric irons.; Small kitchen appliances, namely, electric griddles, electric frying pans, crock pots, steamers and waffle irons.; Cookware, namely, pots and pans; stir-fryers; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders. | Next Renewal - 07-Feb-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD⊛COAST always in style | United Kingdom | Registered | Publishers Clearing House | 2474381 | 28-Feb-2007 | 2474381 | 17-Oct-2008 | 14 Int., 18 Int., 25 Int. | Jewelry.; Handbags, wallets and umbrellas.; Belts, scarves, rainwear and lingerie. | Next Renewal - 28-Feb-2027 - Ren/Due |

| Mark | Country | Status | Owner | Serial No. | Filing Date | Reg. No. | Reg. Date | Classes | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| GOLD COAST ALWAYS IN STYLE & Design | United Kingdom | Registered | Publishers Clearing House LLC | UK00003739713 | 10-Oct-2008 | UK00003739713 | 29-Jul-2009 | 09 Int., 18 Int., 20 Int., 24 Int., 25 Int., 27 Int. | consisting of a wallet and key chain.; Pillows.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets; table runners.; Slippers.; Bath mats; bath rugs. | Next Renewal - 28-Oct-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | United States of America | Registered | Publishers Clearing House | 77596273 | 20-Oct-2008 | 3755715 | 02-Mar-2010 | 25 Int., 27 Int. | slippers; bath mats; bath rugs | Renewal- Opening date - 02-Mar-2029 - Due Date |
| GOLD COAST ALWAYS IN STYLE & Design | United States of America | Registered | Publishers Clearing House | 77596267 | 20-Oct-2008 | 3626747 | 26-May-2009 | 09 Int., 18 Int., 20 Int., 24 Int. | Sunglasses.; Gift sets consisting of a wallet and may also include a leather, imitation leather , or metal key chain.; Pillows.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets; throw; fabric  table runners. | Renewal- Opening date - 26-May-2028 - Due Date |
| GOLD COAST ALWAYS IN STYLE & Design | United States of America | Registered | Publishers Clearing House LLC | 77977740 | 05-Feb-2008 | 3694131 | 06-Oct-2009 | 21 Int. | Cookware, namely, pots and pans; non-electric stir frying pans; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders. | Renewal- Opening date - 06-Oct-2028 - Due Date |
| GOLD COAST ALWAYS IN STYLE Plus Design | United States of America | Registered | Publishers Clearing House | 77000673 | 15-Sep-2006 | 3496361 | 02-Sep-2008 | 18 Int., 25 Int. | Handbags, wallets and umbrellas.; Belts, scarves, rainwear and lingerie. | Renewal- Opening date - 02-Sep-2027 - Due Date |
| HOUSE/ENVELOPE Design | Canada | Registered | Publishers Clearing House LLC | 515241 | 16-Jan-1984 | TMA297580 | 30-Nov-1984 | NC No Class | magazine subscription services | Next Renewal - 30-Nov-2029 - Ren/Due |
| House/Envelope Design | European Union (Community) | Registered | Publishers Clearing House LLC | 009709254 | 03-Feb-2011 | 009709254 | 30-Aug-2011 | 35 Int., 36 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others.; Services in relation to the operation and management of sweepstakes and prize draws.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting contests, sweepstakes and prize draws over a global computer network; casino on-line services | Next Renewal - 03-Feb-2031 - Ren/Due |
| House/Envelope Design | United Kingdom | Registered | Publishers Clearing House LLC | 2571068 | 03-Feb-2011 | 2571068 | 26-Aug-2011 | 35 Int., 38 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others.; Providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; Entertainment services, | Next Renewal - 03-Feb-2031 - Ren/Due |

| Trademark | | Country | Status | Owner | App. No. | App. Date | Reg. No. | Reg. Date | Class | Goods/Services | Next Action |
|---|---|---|---|---|---|---|---|---|---|---|---|
| House/Envelope Design |  | United States of America | Registered | Publishers Clearing House LLC | 78718431 | 22-Sep-2005 | 3141742 | 12-Sep-2006 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services; Sweepstake services provided over a global computer network | Next Renewal - 12-Sep-2026 - Ren/Due |
| identifi Plus Design |  | United States of America | Pending | Publishers Clearing House LLC | 97566490 | 26-Aug-22 | | | 35 Int. | Digital marketing services, namely, providing identity resolution solutions to find relevant verified audiences for advertisers | In December 2024, PCH instructed us to allow this application to lapse. No Statement of Use or extension request was filed by the 12/26/2024 deadline, so the application will be... |
| IT'S ALL ABOUT WINNING | | Canada | Registered | Publishers Clearing House LLC | 1063291 | 14-Jun-2000 | TMA566029 | 19-Aug-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35. | Next Renewal - 19-Aug-2032 - Ren/Due |
| IT'S ALL ABOUT WINNING | | United States of America | Registered | Publishers Clearing House LLC | 78718443 | 22-Sep-2005 | 3132956 | 22-Aug-2006 | 41 Int. | Sweepstake services provided over a global computer network | Next Renewal - 22-Aug-2026 - Ren/Due |
| Owl Design |  | Canada | Registered | Publishers Clearing House LLC | 1581896 | 31-May-2012 | TMA906001 | 11-Jun-2015 | NC No Class | Sweepstakes services provided over a global computer network; Computer services, namely providing search engines for obtaining data on a global computer network | First Renewal - 11-Jun-2030 - Ren/Due |
| PCH | | Canada | Registered | Publishers Clearing House LLC | 750794 | 28-Mar-1994 | TMA474716 | 14-Apr-1997 | NC No Class | Promoting the sale of magazine subscriptions for others. mail order services in the field of general merchandise; services in relation to the operation and management of sweepstakes and prize draws | Next Renewal - 14-Apr-2027 - Ren/Due |
| PCH | | United States of America | Registered | Publishers Clearing House LLC | 78718436 | 22-Sep-2005 | 3141743 | 12-Sep-2006 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services; Sweepstake services provided over a global computer network | Next Renewal - 12-Sep-2026 - Ren/Due |
| PCH | | United States of America | Registered | Publishers Clearing House LLC | 73483836 | 06-Jun-1984 | 1371841 | 19-Nov-1985 | 42 Int. | Selling magazines on a subscription basis for others, in Class 42 | Next Renewal - 19-Nov-2025 - Ren/Due |

| Mark | | Country | Status | Owner | Application No | Filing Date | Registration No | Registration Date | Class | Goods/Services | Next Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PCH.COM | | Canada | Registered | Publishers Clearing House LLC | 1063290 | 14-Jun-2000 | TMA565831 | 13-Aug-2003 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35. | Next Renewal - 19-Aug-2032 - Ren/Due |
| PCH.COM | | United States of America | Registered | Publishers Clearing House LLC | 78718448 | 22-Sep-05 | 3141744 | 12-Sep-06 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services provided over a global computer network. | Renewal- Opening date - 12-Sep-2025 - Due Date |
| PCH.COM | | United States of America | Registered | Publishers Clearing House LLC | 75871694 | 15-Dec-99 | 2716049 | 13-May-03 | 35 Int. | On-line retail services featuring general merchandise; offering magazines on a subscription basis for others via a global computer network; promoting the goods of others through promotional contests on a global computer network. | Renewal- Opening date - 13-May-2032 - Due Date |
| PCH.COM Plus House Design |  | Canada | Registered | Publishers Clearing House LLC | 1063289 | 14-Jun-2000 | TMA565927 | 16-Aug-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35. | Next Renewal - 16-Aug-2032 - Ren/Due |
| PCH.COM Plus House Design | | European Union (Community) | Registered | Publishers Clearing House LLC | 1704717 | 13-Jun-2000 | 1704717 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM Plus House/Envelope Design | | United States of America | Registered | Publishers Clearing House LLC | 78718452 | 22-Sep-05 | 3132957 | 22-Aug-06 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services provided over a global computer network | Next Renewal - 22-Aug-2026 - Ren/Due |
| PCH.COM Plus House Design | | United Kingdom | Registered | Publishers Clearing House LLC | UK00901704717 | 13-Jun-2000 | UK00901704717 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | | Canada | Registered | Publishers Clearing House LLC | 1063288 | 14-Jun-2000 | TMA576770 | 03-Mar-2003 | 35 Int. | On-line retail services offered via a global computer network featuring a variable stock of general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network. | Next Renewal - 03-Mar-2033 - Ren/Due |

pch.com
PUBLISHERS CLEARING HOUSE

| Trademark | Country | Status | Owner | App No. | App Date | Reg No. | Reg Date | Class | Goods/Services | Renewal/Due |
|---|---|---|---|---|---|---|---|---|---|---|
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | European Union (Community) | Registered | Publishers Clearing House LLC | | 13-Jun-2000 | | 03-Apr-2002 | 35 Int. | ...uring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | United Kingdom | Registered | Publishers Clearing House LLC | UK00901704998 | 13-Jun-2000 | UK00901704998 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House/Envelope Design | United States of America | Registered | Publishers Clearing House LLC | 78718455 | 22-Sep-05 | 3132958 | 8/22/2006 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services provided over a global computer network. | Renewal- Opening date - 12-Sep-2025 - Due Date |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | United States of America | Registered | Publishers Clearing House LLC | 75871695 | 15-Dec-1999 | 2719631 | 27-May-2003 | 35 Int. | ON-LINE RETAIL SERVICES FEATURING GENERAL MERCHANDISE; OFFERING MAGAZINES ON A SUBSCRIPTION BASIS FOR OTHERS VIA A GLOBAL COMPUTER NETWORK; PROMOTING THE GOODS OF OTHERS THROUGH PROMOTIONAL CONTESTS ON A GLOBAL COMPUTER NETWORK | Renewal- Opening date - 27-May-2032 - Due Date |
| PCHANSWER&WIN | United States of America | Registered | Publishers Clearing House LLC | 98617324 | 25-Jun-24 | | | 35 Int.; 41 Int. | Promotional marketing services, namely, arranging and conducting incentive reward programs to promote consumer participation in third-party marketing surveys; Sweepstakes services; sweepstakes services provided over a global computer network | Publication Approval - 05-Aug-2025 - Due Date |
| PCHFRONTPAGE Logo | United States of America | Registered | Publishers Clearing House LLC | 87337986 | 16-Feb-17 | 5711996 | 2-Apr-19 | 35 Int., 39 Int., 41 Int., 42 Int., 43 Int., 44 Int., 45 Int. | Providing news and information in the fields of business and politics.; Providing news and information in the field of travel.; Sweepstakes services; providing news and information in the fields of entertainment, sports, and lottery results; providing news and information regarding parenting concerning education and entertainment of children.; Computer services, namely, providing search engines for obtaining data on a global computer network; providing news and information in the field of weather; providing news and information regarding home interior decorating.; Providing food preparation and recipe news and information.; Providing news and information in the field gardening and garden care; providing news and information relating to pet grooming, feeding and nutrition.; Providing news and information in the field of horoscopes; providing news and information in the field of fashion. | Aff of Use Follow Up Date - 25-Sep-2025 - Due Date |
| PCHFRONTPAGE | United States of America | Registered | Publishers Clearing House LLC | 87337990 | 16-Feb-17 | 5553000 | 4-Sep-18 | 41 Int. | Providing news and information in the fields of lottery results | Renewal- Opening date - 04-Sep-2027 - Due Date |
| PCHGAMES | United States of America | Registered | Publishers Clearing House LLC | 87391832 | 30-Mar-17 | 5286343 | 12-Sep-17 | 41 Int. | Entertainment services, namely, providing online computer games; sweepstakes services. | Renewal- Opening date - 12-Sep-2026 - Due Date |

| Mark | Country | Status | Owner | App/Serial No. | Filing Date | Reg. No. | Reg. Date | Classes | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| PCHPLAY&WIN | United States of America | Registered | Publishers Clearing House LLC | 77655... | 13-Oct-2009 | ... | 19-Oct-2010 | ... | sweepstakes services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching. | Next Renewal - 13-Jul-2030 - Ren/Due |
| pchprizes | European Union (Community) | Registered | Publishers Clearing House LLC | 009765967 | 25-Feb-2011 | 009765967 | 27-Sep-2011 | 35 Int., 36 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; Services in relation to the operation and management of sweepstakes and prize draws; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting contests, sweepstakes and prize draws over a global computer network; casino... | Next Renewal - 25-Feb-2031 - Ren/Due |
| pchprizes | United Kingdom | Registered | Publishers Clearing House LLC | 2573360 | 25-Feb-2011 | 2573360 | 25-Feb-2011 | 35 Int., 36 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others.; Services in relation to the operation and management of sweepstakes and prize draws.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting contests, sweepstakes and prize draws over a global computer network; casino on-line services... | Next Renewal - 25-Feb-2031 - Ren/Due |
| PCHSEARCH&WIN | United States of America | Registered | Publishers Clearing House LLC | 87771691 | 26-Jan-2018 | 5550652 | 28-Aug-2018 | 41 Int., 42 Int. | sweepstakes services; computer services, namely providing search engines for obtaining data on a global computer network | Renewal- Opening date - 28-Aug-2027 - Due Date |
| PCHSEARCH&WIN | United States of America | Registered | Publishers Clearing House LLC | 87771695 | 26-Jan-2018 | 5550653 | 28-Aug-2018 | 41 Int., 42 Int. | sweepstakes services; computer services, namely providing search engines for obtaining data on a global computer network | Response due - 09-Oct-2025 - Final |
| PCHSLOTS | United States of America | Registered | Publishers Clearing House LLC | 87362851 | 08-Mar-2017 | 5246560 | 18-Jul-2017 | 41 Int. | Entertainment services, namely, providing online slot games; sweepstakes services. | Renewal- Opening date - 18-Jul-2026 - Due Date |
| PCHSLOTS Plus Design | United States of America | Registered | Publishers Clearing House LLC | 87362850 | 08-Mar-2017 | 5246559 | 18-Jul-2017 | 41 Int. | Entertainment services, namely, providing online slot games; sweepstakes services. | Renewal- Opening date - 18-Jul-2026 - Due Date |
| POWERPRIZE | Canada | Registered | Publishers Clearing House LLC | 1797242 | 18-Aug-2016 | TMA995567 | 30-Apr-2018 | 41 Int. | Sweepstakes services. | First Renewal - 30-Apr-2033 - Ren/Due |

| Mark | Country | Status | Owner | App No. | App Date | Reg No. | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| POWERPRIZE | United States of America | Registered | Publishers Clearing House LLC | 86861311 | 30-Dec-2015 | 5158031 | 07-Mar-2017 | 35 Int. | Sweepstakes services | Renewal- Opening date - 02-May-2026 - Due Date |
| PRIZE PATROL | Canada | Registered | Publishers Clearing House LLC | 1295512 | 20-Mar-2006 | TMA696412 | 13-Sep-2007 | 35 Int., 41 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Sweepstake services; sweepstake services provided over a global computer network. | Next Renewal - 13-Sep-2032 - Ren/Due |
| PRIZE PATROL | European Union (Community) | Registered | Publishers Clearing House LLC | 005148770 | 05-Jun-2006 | 005148770 | 14-Jun-2007 | 35 Int., 41 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Sweepstake services; sweepstake services provided over a global computer network. | Next Renewal - 05-Jun-2026 - Ren/Due |
| PRIZE PATROL | United Kingdom | Registered | Publishers Clearing House LLC | UK00905148770 | 05-Jun-2006 | UK00905148770 | 14-Jun-2007 | 35 Int., 41 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Sweepstake services; sweepstake services provided over a global computer network. | Next Renewal - 05-Jun-2026 - Ren/Due |
| PRIZE PATROL | United States of America | Registered | Publishers Clearing House LLC | 74006166 | 30-Nov-1989 | 1644581 | 14-May-1991 | 35 Int. | promoting the sale of goods and services of others through the distribution of printed materials and promotional contests, in Class 35 | Renewal- Opening date - 14-May-2030 - Due Date |
| PRIZE PATROL | United States of America | Registered | Publishers Clearing House LLC | 78715356 | 19-Sep-2005 | 3200959 | 23-Jan-2007 | 41 Int. | Sweepstake services; Sweepstake services provided over a global computer network | Renewal- Opening date - 23-Jan-2026 - Due Date |
| PRIZE PATROL (Stylized) PRIZE PATROL | United States of America | Registered | Publishers Clearing House LLC | 74011021 | 12-Dec-1989 | 1642239 | 23-Apr-1991 | 35 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests in Class 35; | Renewal- Opening date - 23-Apr-2030 - Due Date |
| PRIZE PATROL (Stylized) PRIZE PATROL | United States of America | Registered | Publishers Clearing House LLC | 78715358 | 19-Sep-2005 | 3198313 | 16-Jan-2007 | 41 Int. | Sweepstake services; sweepstake services provided over a global computer network. | Renewal- Opening date - 16-Jan-2026 - Due Date |

| Mark | Country | Status | Owner | App No | App Date | Reg No | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| PUBLISHERS CLEARING HOUSE | Canada | Registered | Publishers Clearing House LLC | 738050 | 16-Feb-1994 | TMA478458 | 24-Jun-1997 | NICAS Class | ...magazine subscriptions for others; mail order services in the field of general merchandise; services in relation to the operation and management of sweepstakes and prize draws. | Next Renewal - 06-Aug-2028 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | European Union (Community) | Registered | Publishers Clearing House LLC | 1014992 | 11-Dec-1998 | 1014992 | 22-Nov-2001 | 35 Int., 36 Int., 41 Int., 42 Int. | Selling magazines on a subscription basis for others; administrative processing of orders in connection with services featuring general merchandise and rendered by a mail order company; business management consultancy, including assistance and advising in the establishment and management of electronic retailing via a computer in the field of general merchandise.; Services in relation to the operation and management of sweepstakes and prize draws, in Class.; Services in relation to the operation and management of sweepstakes and prize draws.; Technical consultancy and advising in the establishment of electronic retailing via a computer in the field of general merchandise. | Next Renewal - 11-Dec-2028 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | European Union (Community) | Registered | Publishers Clearing House LLC | 009708876 | 03-Feb-2011 | 009708876 | 15-Aug-2011 | 35 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; promotion services relating to the sale of goods and services.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting contests, sweepstakes and prize draws, over a global computer network; casino on-line services featuring interactive bingo. | Next Renewal - 03-Feb-2031 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United Kingdom | Registered | Publishers Clearing House LLC | UK00901014992 | 11-Dec-1998 | UK00901014992 | 22-Nov-2001 | 35 Int., 36 Int., 41 Int., 42 Int. | Selling magazines on a subscription basis for others; administrative processing of orders in connection with services featuring general merchandise and rendered by a mail order company; business management consultancy, including assistance and advising in the establishment and management of electronic retailing via a computer in the field of general merchandise.; Services in relation to the operation and management of sweepstakes and prize draws, in Class.; Services in relation to the operation and management of sweepstakes and prize draws.; Technical consultancy and advising in the establishment of electronic retailing via a computer in the field of general merchandise. | Next Renewal - 11-Dec-2028 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United Kingdom | Registered | Publishers Clearing House LLC | 2571067 | 03-Feb-2011 | 2571067 | 26-Aug-2011 | 35 Int., 38 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; promotion services relating to the sale of goods and services.; Providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on | Next Renewal - 03-Feb-2031 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United States of America | Registered | Publishers Clearing House LLC | 73460446 | 11-Jan-1984 | 1440245 | 19-May-1987 | 42 Int. | Selling magazines on a subscription basis for others. | Next Renewal - 19-May-2027 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United States of America | Registered | Publishers Clearing House LLC | 74006160 | 30-Nov-1989 | 1611504 | 28-Aug-1990 | 35 Int. | Promoting the sale of goods and services of others through the distribution of printed material and promotional contests. | Renewal- Opening date - 28-Aug-2029 - Due Date |
| PUBLISHERS CLEARING HOUSE | United States of America | Registered | Publishers Clearing House LLC | 74006156 | 30-Nov-1989 | 1611700 | 28-Aug-1990 | 42 Int. | retail outlet and mail order services in the field of general merchandise sets | Renewal- Opening date - 28-Aug-2029 - Due Date |

| Name | | Country | Status | Owner | Serial No. | Filing Date | Reg. No. | Reg. Date | Class | Goods/Services | Next Deadline |
|------|---|---------|--------|-------|-----------|------------|----------|-----------|-------|----------------|---------------|
| PUBLISHERS CLEARING HOUSE | | United States of America | Registered | Publishers Clearing House LLC | 78847948 | 14-Oct-2005 | 3436766 | 29-May-2008 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services; Sweepstake services provided over a global computer network | Renewal- Opening date - 05-Sep-2025 - Due Date |
| PUBLISHERS CLEARING HOUSE SUPER DEAL! SPECIAL VALUE OPPORTUNITY Plus Design |  | United States of America | Registered | Publishers Clearing House LLC | 76324018 | 11-Oct-2001 | 2727966 | 17-Jun-2003 | 35 Int. | [OFFERING MAGAZINES ON A SUBSCRIPTION BASIS FOR OTHERS; MAIL ORDER SERVICES IN THE FIELD OF GENERAL MERCHANDISE;] ELECTRONIC RETAILING SERVICES VIA A COMPUTER IN THE FIELD OF GENERAL MERCHANDISE; AND PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE DISTRIBUTION OF PRINTED MATERIALS, IN CONNECTION WITH PROMOTIONAL CONTESTS, AND ON WEBSITES ON A GLOBAL COMPUTER NETWORK | Renewal- Opening date - 17-Jun-2032 - Due Date |
| PUBLISHERS CLEARING HOUSE SUPER DEAL! SPECIAL VALUE OPPORTUNITY Plus Design |  | United States of America | Registered | Publishers Clearing House LLC | 77896932 | 18-Dec-2009 | 3924064 | 22-Feb-2011 | 35 Int. | Offering magazines on a subscription basis for others; mail order services in the field of general merchandise. | Renewal- Opening date - 22-Feb-2030 - Due Date |
| SMART HOME ESSENTIALS FOR LIVING (stylized) |  | United States of America | Registered | Publishers Clearing House LLC | 90980277 | 28-Jul-2021 | 7208361 | 31-Oct-2023 | 21 Int. | Non-electronic sprayers for garden hoses | Aff of Use - 5 Year - 31-Oct-2028 - Due Date |
| SMART HOME ESSENTIALS FOR LIVING Plus House Design |  | Canada | Registered | Publishers Clearing House LLC | 1630342 | 06-Jun-2013 | TMA1024627 | 11-Jun-2019 | 01 Int. | Electric and battery-operated can openers; electric and battery-operated peelers; electric and battery-operated choppers; handheld sewing machines; electric soldering apparatus; electric hammers; bits for power drills; cordless screwdrivers; car vacuum cleaners; tableware, namely knives; non-electric can openers; non-electric peelers; non-electric choppers; scissors; hand tools, namely wrenches, screwdrivers, clamps, hammers, pliers, hex keys wrenches, socket sets; shovels; bulb planters; lighted screwdrivers; axes; vises; rakes; trowels; hoes; saws; telescopic garden tools; loppers, prunors; folding shovels; push lawn mowers; cultivators; washers; electric power strips and surge protectors; measuring cups and measuring spoons; measuring tape; emergency automobile kits; tire pressure gauges; calculators; magnifying glasses and lenses; thermometers; laser levels; electric devices for killing insects, namely, bug zappers; storage | First Renewal - 11-Jun-2034 - Ren/Due |
| SMART HOME ESSENTIALS FOR LIVING Plus House Design |  | United States of America | Registered | Publishers Clearing House LLC | 85984049 | 31-May-2013 | 4932804 | 05-Apr-2016 | 21 Int. | Mops; brooms; microfiber cloths for cleaning; scouring pads; dusters; window cleaners in the nature of a combination squeegee and scrubber; window cleaners in the nature of cleaning cloths and mitts; plastic food storage containers for household use; glass food storage containers for household use; canisters sold empty for household use; household utensils, namely, graters, spatulas; brushes and scrubbers for cleaning automobiles | Renewal due in 6 mos. - 05-Oct-2025 - Due Date |
| SMART HOME ESSENTIALS FOR LIVING Plus House Design |  | United States of America | Registered | Publishers Clearing House LLC | 85984050 | 31-May-2013 | 4932805 | 05-Apr-2016 | 24 Int. | Mattress pads; kitchen towels; pet blankets. | Renewal due in 6 mos. - 05-Oct-2025 - Due Date |
| SUNFLOWER GARDEN DESIGNS OF FAITH Logo |  | United States of America | Registered | Publishers Clearing House LLC | 88578955 | 14-Aug-2019 | 7242876 | 12-Dec-2023 | 04 Int., 06 Int., 08 Int., 09 Int., 11 Int., 12 Int., 14 Int., 16 Int., 18 Int., 19 Int., 20 Int., 21 Int., 24 Int., 25 Int., 27 Int., 28 Int. | candles; metal garden stakes; decorative wall accents, namely, non-luminous and non-mechanical signs, plaques and crosses made of common metal; nail files and manicure sets; thermometers not for medical purposes; decorative magnets; refrigerator magnets; pre-recorded CDs and DVDs featuring religious and inspirational subject matter; decorative lighting for patio and garden, namely, a solar powered light fixture comprised primarily of a garden statue and solar powered lights; automobile windshield sunshades; necklaces; bracelets; earrings; watches; clocks; coloring books; puzzle books; devotional books; prayer books; children's books; book covers; checkbook covers; bookmarks; memo pads; stationery note paper; pens greeting cards; tote bags; wallets; stepping stones made of plastic or polyresin; decorative wall accents, namely, signs, plaques and crosses made of plastic, resin or wood; statues and figurines made of plastic, | Aff of Use - 5 Year - 12-Dec-2028 - Due Date |

| Mark | Design | Country | Status | Owner | App No | App Date | Reg No | Reg Date | Classes | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SUPERPRIZE | | United States of America | Registered | Publishers Clearing House LLC | 78091942 | 05-Nov-1996 | 2519420 | 18-Dec-2001 | 35 Int., 42 Int. | Promoting the sale of magazine subscriptions for others; promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Mail order services in the field of general merchandise. | Next Renewal - 25-Aug-2027 - Ren/Due |
| SWEEPSMARTS | | Canada | Registered | Publishers Clearing House LLC | 1040440 | 20-Dec-1999 | TMA585307 | 16-Jul-2003 | NC No Class | Educational programs namely, conducting workshops and seminars regarding promotional contest programs; telephone hotline counseling namely, offering advice regarding promotional contest programs and consulting services in the field of promotional contest programs | Next Renewal - 16-Jul-2033 - Ren/Due |
| SWEEPSMARTS | | United States of America | Registered | Publishers Clearing House LLC | 75741986 | 01-Jul-1999 | 2333348 | 21-Mar-2000 | 41 Int., 42 Int. | Educational programs, namely, conducting workshops and seminars regarding promotional contest programs, in Class 41; Telephone hotline counseling, namely, offering advice regarding promotional contest programs; and consulting services in the field of promotional contest programs, in Class 42 | Renewal- Opening date - 21-Mar-2029 - Due Date |
| THE CLEARING HOUSE | | Canada | Registered | Publishers Clearing House LLC | 750945 | 28-Mar-1994 | TMA546022 | 01-Jun-2001 | 35 Int. | Promoting the sale of magazine subscriptions for others; mail order services in the field of general merchandise; services in relation to the operation and management of sweepstakes and prize draws, in Class 35 | Next Renewal - 01-Jun-2031 - Ren/Due |
| THE CLEARING HOUSE | | United States of America | Registered | Publishers Clearing House LLC | 73483835 | 06=Jun-1984 | 1444545 | 23-Jun-87 | 42 Int. | SELLING MAGAZINES ON A SUBSCRIPTION BASIS FOR OTHERS | Next Renewal - 06-Jun-2027 - Ren/Due. In March 2023 PCH instructed us to allow this registration to lapse by non-renewal. |
| THE SKYLINE COLLECTION STEP INTO STYLE Plus Skyline Design |  | Canada | Registered | Publishers Clearing House LLC | 1691317 | 22-Aug-2014 | TMA989505 | 29-Jan-2018 | 14 Int. | Costume jewelry. | First Renewal - 29-Jan-2033 - Ren/Due |
| THE SKYLINE COLLECTION STEP INTO STYLE Plus Skyline Design |  | United States of America | Registered | Publishers Clearing House LLC | 86368203 | 15-Aug-2014 | 4833261 | 13-Oct-2015 | 14 Int. | Costume jewelry | Next Renewal - 13-Oct-2025 - Ren/Due. In May 2025 PCH instructed us to allow this registration to lapse. |
| WOODLAND CREEK BE OUTDOOR READY Plus Design |  | United States of America | Registered | Publishers Clearing House LLC | 87519148 | 07-Jul-2017 | 6380529 | 08-Jun-2021 | 08 Int., 11 Int., 18 Int., 20 Int., 21 Int., 24 Int., 25 Int., 27 Int., 28 Int., 29 Int. | Flatware, namely, forks, knives and spoons; pocket knives; multi-function hand tools comprised of knives, scissors, bottle openers, saws, screwdrivers, pliers, can openers, hammers, glass breakers, seat belt cutters, files, wire cutter/strippers, fire starters, fishing hooks, compasses, utensil multi tool, fish scalers, magnifiers, carabiners.; Battery operated lanterns; solar powered lanterns; flashlights.; Wallets; luggage; handbags; pet leashes.; Bed pillows; decorative pillows.; Melamine dishes; drinkware; pet feeding and drinking bowls; vinyl place mats; non-electric portable coolers; cooking vessels, namely, pots and pans; barbeque grill tools, namely, two-prong forks, spatulas, tongs, basting brushes, grill cleaning brushes for barbeque grills, and storage cases for barbeque grill tools.; Kitchen towels, bath towels; bed sheets; bed blankets; pillows; throws; polyester place mats; Hats, t-shirts; pants; scarves; gloves; socks; slippers; | Aff of Use - 5 Year - 08-Jun-2026 - Due Date |

Schedule 4.10(a)(ii)

Intellectual Property Fees, Filings and Actions

Trademarks

| Mark | Registration No. | Country | Action Due | Due Date |
|------|------------------|---------|------------|----------|
| GOLD COAST ALWAYS IN STYLE Plus Design | TMA779468 | Canada | Renewal | October 8, 2025 |
| PCHSEARCH&WIN | 5550653 | United States | Post-Registration Office Action Response | October 9, 2025 |
| PCH | 1371841 | United States | Renewal | November 19, 2025 |
| THE SKYLINE COLLECTION STEP INTO STYLE Plus Design | 4833261 | United States | Renewal | October 13, 2025 |

Patents

4

---

[4] **Note to Draft**: Seller to confirm list of specific fees/filings due within the next 6 months.

Annex 4.10(a)(i)(C)


List of Copyrights to be provided by Seller prior to Closing

<u>Schedule 4.10(b)</u>

<u>Ownership Exceptions</u>

The Topix Patents were not assigned in writing to Seller prior to dissolution of PCH Topix, LLC.

Schedule 4.10(d)

Threatened IP Infringement

Letter dated May 6, 2025 from Peter T. Holt, Esq. with respect to alleged infringement by Seller of copyright of Darwin Wiggett, claiming Seller commercially displayed and used Mr. Wiggett's photograph without authorization (the "Copyright Infringement Claim"). The image has been removed from all Acquired Assets.

<u>Exhibit A</u>

<u>North American Trademark Assignment</u>

See attached.

**Exhibit A**

**[Form of] North American Trademark Assignment**

This ASSIGNMENT OF UNITED STATES AND CANADIAN TRADEMARKS (this "Assignment") is made effective as of [ ● ], 2025 by Publishers Clearing House LLC, a New York limited liability company ("Assignor"), to ARB Interactive, Inc., a Delaware corporation ("Assignee").

WHEREAS, Assignor owns the trademarks and service marks (whether or not registered), including the registrations and applications for registration thereof set forth on Schedule I attached hereto and incorporated by reference herein, which are registered in, or for which application for registration has been filed in, the United States Patent and Trademark Office or Canadian Intellectual Property Office, together with all renewals thereof, and all goodwill associated with any of the foregoing (collectively, the "Transferred Marks");

WHEREAS, Assignor and Assignee are parties to that certain Asset Purchase Agreement, dated as of June [ ● ], 2025 (the "Agreement"), pursuant to which Assignor sold, transferred, assigned and conveyed to Assignee, and Assignee purchased and accepted from Assignor, all of Assignor's right, title, and interest in and to, among other things, the Transferred Marks; and

WHEREAS, pursuant to the Agreement, Assignor and Assignee are required to execute this Assignment.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, Assignor hereby agrees as follows:

1.      Assignment.  Assignor does hereby irrevocably transfer, assign, convey and deliver to Assignee all of Assignor's right, title, and interest in and to the Transferred Marks, together with (i) all past, present and future claims or causes of actions arising out of or relating to any infringement, dilution or other violation or impairment of any of the foregoing, and the right to sue and/or otherwise recover therefor (and to retain any damages or other amounts recovered), and (ii) all proceeds of the foregoing, including license fees, royalties, income, damages, proceeds of suit and other payments now or hereafter due and/or payable with respect the any of the foregoing.

2.      Counterparts.  This Assignment may be executed in any number of counterparts (including DocuSign, electronic transmission in portable document format (pdf) or other electronic means) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Assignment.  Delivery of an executed counterpart hereof by means of DocuSign, electronic transmission in portable document format (pdf) or other electronic means shall have the same effect as delivery of an original physically executed counterpart in person.

IN WITNESS WHEREOF, each of Assignor and Assignee has caused this Assignment to be executed and delivered by its duly authorized representative as of the date first written above.

**PUBLISHERS CLEARING HOUSE LLC**

By: _____
     Name:  William H. Henrich
     Title: Co-Chief Restructuring Officer

**ARB INTERACTIVE INC.**

By: _____
     Name: Junwei Ye
     Title:   President

**<u>Schedule I</u>**

**U.S. and Canadian Trademark and Service Mark Registrations and Applications**

<u>Exhibit B</u>

<u>Other Trademark Assignment</u>

See attached.

**Exhibit B**

**[Form of] Trademark Assignment**

This ASSIGNMENT OF TRADEMARKS (this "Assignment") is made effective as of [ ● ], 2025 (the "Effective Date") by Publishers Clearing House LLC, a New York limited liability company ("Assignor"), to ARB Interactive, Inc., a Delaware corporation ("Assignee").

WHEREAS, Assignor owns the trademarks and service marks (whether or not registered), including the registrations and applications for registration thereof set forth on Schedule I attached hereto and incorporated by reference herein, which are registered in, or for which application for registration has been filed in, the relevant filing offices of certain jurisdictions as set forth on Schedule I, together with all renewals thereof, and all goodwill associated with any of the foregoing (collectively, the "Transferred Marks");

WHEREAS, Assignor and Assignee are parties to that certain Asset Purchase Agreement, dated as of June [ ● ], 2025 (the "Agreement"), pursuant to which Assignor sold, transferred, assigned and conveyed to Assignee, and Assignee purchased and accepted from Assignor, all of Assignor's right, title, and interest in and to, among other things, the Transferred Marks; and

WHEREAS, pursuant to the Agreement, Assignor and Assignee are required to execute this Assignment.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, Assignor hereby agrees as follows:

1.      Assignment.  Assignor does hereby irrevocably transfer, assign, convey and deliver to Assignee all of Assignor's right, title, and interest in and to the Transferred Marks, together with (i) all past, present and future claims or causes of actions arising out of or relating to any infringement, dilution or other violation or impairment of any of the foregoing, and the right to sue and/or otherwise recover therefor (and to retain any damages or other amounts recovered), and (ii) all proceeds of the foregoing, including license fees, royalties, income, damages, proceeds of suit and other payments now or hereafter due and/or payable with respect the any of the foregoing.

2.      Recordation and Further Assurances.  Assignor hereby authorizes the officials of the patent offices or agencies or similar authorities in any applicable jurisdictions to record and register this Assignment upon request by or on behalf of Assignee. Following the Effective Date, Assignor shall promptly execute and deliver such documents and instruments and take such other actions as Assignee may reasonably request in order to more effectively sell, transfer, assign, convey and deliver to Assignee (or to record or evidence the same), and to put Assignee in actual possession and control of, the Transferred Marks.

3.      Counterparts.  This Assignment may be executed in any number of counterparts (including DocuSign, electronic transmission in portable document format (pdf) or other electronic means) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Assignment.  Delivery of an executed counterpart hereof by means of DocuSign, electronic transmission in portable document format (pdf) or other electronic means shall have the same effect as delivery of an original physically executed counterpart in person.

IN WITNESS WHEREOF, each of Assignor and Assignee has caused this Assignment to be executed and delivered by its duly authorized representative as of the Effective Date.

**PUBLISHERS CLEARING HOUSE LLC**


By: _____
      Name:  William H. Henrich
      Title: Co-Chief Restructuring Officer


**ARB INTERACTIVE INC.**


By: _____
      Name: Junwei Ye
      Title:   President

## Schedule I

**Trademark and Service Mark Registrations and Applications**

<u>Exhibit C</u>

<u>Patent Assignment</u>

See attached.

**Exhibit C**

**[Form of] Patent Assignment**

This ASSIGNMENT OF UNITED STATES PATENTS (this "<u>Assignment</u>") is made effective as of [ ● ], 2025 by Publishers Clearing House LLC, a New York limited liability company ("<u>Assignor</u>"), to ARB Interactive, Inc., a Delaware corporation ("<u>Assignee</u>").

WHEREAS, Assignor owns the patents and patent applications set forth on <u>Schedule I</u> attached hereto and incorporated by reference herein, which are issued by, or for which application for issuance has been filed in, the United States Patent and Trademark Office, together with all divisionals, continuations, continuations in part, reissues, re-examinations, renewals and extensions thereof, and all priority rights resulting from any of the foregoing (collectively, the "<u>Transferred Patents</u>");

WHEREAS, Assignor and Assignee are parties to that certain Asset Purchase Agreement, dated as of June [ ● ], 2025 (the "<u>Agreement</u>"), pursuant to which Assignor sold, transferred, assigned and conveyed to Assignee, and Assignee purchased and accepted from Assignor, all of Assignor's right, title, and interest in and to, among other things, the Transferred Patents; and

WHEREAS, pursuant to the Agreement, Assignor and Assignee are required to execute this Assignment.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, Assignor hereby agrees as follows:

1.    <u>Assignment</u>.  Assignor does hereby irrevocably transfer, assign, convey and deliver to Assignee all of Assignor's right, title, and interest in and to the Transferred Patents, together with (i) all tangible embodiments of the foregoing (in whatever form or medium), (ii) all past, present and future claims or causes of actions arising out of or relating to any infringement or other violation or impairment of any of the foregoing, and the right to sue and/or otherwise recover therefor (and to retain any damages or other amounts recovered), and (iii) all proceeds of the foregoing, including license fees, royalties, income, damages, proceeds of suit and other payments now or hereafter due and/or payable with respect the any of the foregoing.

2.    <u>Counterparts</u>.  This Assignment may be executed in any number of counterparts (including DocuSign, electronic transmission in portable document format (pdf) or other electronic means) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Assignment.  Delivery of an executed counterpart hereof by means of DocuSign, electronic transmission in portable document format (pdf) or other electronic means shall have the same effect as delivery of an original physically executed counterpart in person.

IN WITNESS WHEREOF, each of Assignor and Assignee has caused this Assignment to be executed and delivered by its duly authorized representative as of the date first written above.

**PUBLISHERS CLEARING HOUSE LLC**

By: _____
    Name:  William H. Henrich
    Title: Co-Chief Restructuring Officer

**ARB INTERACTIVE INC.**

By: _____
    Name: Junwei Ye
    Title:   President

## Schedule I

**U.S. Patents and Patent Applications**

<u>Exhibit D</u>

<u>Copyright Assignment</u>

See attached.

**Exhibit D**

**[Form of] Copyright Assignment**

This ASSIGNMENT OF UNITED STATES COPYRIGHTS (this "<u>Assignment</u>") is made effective as of [ ● ], 2025 by Publishers Clearing House LLC, a New York limited liability company ("<u>Assignor</u>"), to ARB Interactive, Inc., a Delaware corporation ("<u>Assignee</u>").

WHEREAS, Assignor owns copyrights (whether or not registered), including the registrations and applications for registration thereof set forth on <u>Schedule I</u> attached hereto and incorporated by reference herein, which are registered in, or for which application for registration has been filed in, the United States Copyright Office, together with all reversions, extensions and renewals thereof (collectively, the "<u>Transferred Copyrights</u>");

WHEREAS, Assignor and Assignee are parties to that certain Asset Purchase Agreement, dated as of June [ ● ], 2025 (the "<u>Agreement</u>"), pursuant to which Assignor sold, transferred, assigned and conveyed to Assignee, and Assignee purchased and accepted from Assignor, all of Assignor's right, title, and interest in and to, among other things, the Transferred Copyrights; and

WHEREAS, pursuant to the Agreement, Assignor and Assignee are required to execute this Assignment.

NOW, THEREFORE, in consideration of the foregoing, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and intending to be legally bound hereby, Assignor hereby agrees as follows:

1.    <u>Assignment</u>.  Assignor does hereby irrevocably transfer, assign, convey and deliver to Assignee all of Assignor's right, title, and interest in and to the Transferred Copyrights, together with (i) all past, present and future claims or causes of actions arising out of or relating to any infringement or other violation or impairment of any of the foregoing, and the right to sue and/or otherwise recover therefor (and to retain any damages or other amounts recovered), and (ii) all proceeds of the foregoing, including license fees, royalties, income, damages, proceeds of suit and other payments now or hereafter due and/or payable with respect the any of the foregoing.

2.    <u>Counterparts</u>.  This Assignment may be executed in any number of counterparts (including DocuSign, electronic transmission in portable document format (pdf) or other electronic means) with the same effect as if the signatures to each counterpart were upon a single instrument, and all such counterparts together shall be deemed an original of this Assignment.  Delivery of an executed counterpart hereof by means of DocuSign, electronic transmission in portable document format (pdf) or other electronic means shall have the same effect as delivery of an original physically executed counterpart in person.

IN WITNESS WHEREOF, each of Assignor and Assignee has caused this Assignment to be executed and delivered by its duly authorized representative as of the date first written above.

**PUBLISHERS CLEARING HOUSE LLC**

By: _____
    Name:  William H. Henrich
    Title: Co-Chief Restructuring Officer

**ARB INTERACTIVE INC.**

By: _____
    Name: Junwei Ye
    Title:   President

## Schedule I

**U.S. Copyright Registrations and Applications**

# AMENDMENT NO. 1 TO

# ASSET PURCHASE AGREEMENT

This Amendment No. 1 to Asset Purchase Agreement (this "Amendment") is made as of July 14, 2025 between PCH Digital LLC, a Delaware limited liability company ("NewCo") and Publishers Clearing House LLC, a New York limited liability company (the "Seller" or the "Debtor"). Capitalized terms used and not otherwise defined herein have the meaning set forth in the Purchase Agreement.

## RECITALS

WHEREAS, ARB Interactive, Inc., a Delaware corporation (the "Buyer") and the Seller have entered into an Asset Purchase Agreement, dated as of June 18, 2025 (the "Purchase Agreement"), pursuant to which Buyer purchased from Seller all of the Acquired Assets and assumed all of the Assumed Liabilities.

WHEREAS, on June 30, 2025, the Purchase Agreement was approved by the Bankruptcy Court pursuant to that certain *Order (A) Authorizing Sale of All or Substantially All of the Debtor's Assets Free and Clear of Liens, Claims, Encumbrances and Other Interests; and (B) Granting Related Relief* [Docket No. 177] (the "Sale Order").

WHEREAS, pursuant to an Assignment Notice, dated as of July 9, 2025, Buyer assigned all of its rights and obligations under the Purchase Agreement to acquire the Acquired Assets and assume the Assumed Liabilities to NewCo.

WHEREAS, pursuant to Section 11.2 of the Purchase Agreement and paragraph 27 of the Sale Order, NewCo and Seller have agreed to amend certain provisions of the Purchase Agreement as set forth below.

NOW, THEREFORE, in consideration of the premises and the mutual promises herein made, and other good and valuable consideration the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1.    Definitions. The following defined term is hereby added to Section 1.1 of the Purchase Agreement in the appropriate alphabetical order:

"NewCo" means PCH Digital LLC, a Delaware limited liability company.

2.    Assumed Liabilities.  The proviso in Section 2.3 of the Purchase Agreement is hereby amended and restated as follows:

"provided, however, that, notwithstanding anything to the contrary herein or otherwise, the Assumed Prize Liabilities assumed by Buyer hereunder shall not exceed in any event $3,475,000 in the aggregate and shall be subject to the sub-caps set forth on Schedule 2.3, and"

3.    Employee Matters.  Section 7.4 of the Purchase Agreement is hereby amended and restated to include the following language at the end of Section 7.4:

"NewCo will assume all of the employment, benefits and compensation obligations, liabilities, and undertakings of Seller with respect to all employees of Seller as of immediately prior to the Closing (i) that are in possession of H-1B visas, (ii) to whom NewCo offers employment and (iii) who accept such offer of employment and transfer from Seller to NewCo in connection with the transactions contemplated by this Agreement (such employees, "H-1B Employees"). NewCo shall succeed to the interests and obligations of Seller, the original petitioning employer, in terms of the employment of any and all H-1B Employee(s). The terms and conditions of employment of the H-1B Employee(s) at NewCo shall remain the same, but for the identity of the petitioner in accordance with the Immigration and Nationality Act ("INA") §214(c)(10), 8 U.S.C. §1184(c)(10)."

4.      Taxes.  Section 7.1(d) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

(d)      "To the extent required by applicable Law, the Buyer shall prepare and deliver to Seller the allocation of the Purchase Price, together with any other items that are treated as consideration for U.S. federal income tax purposes (including any Assumed Liabilities), among the Acquired Assets in accordance with Section 1060 of the Code and the Treasury Regulations promulgated thereunder (the "Allocation") no later than 60 days after the Closing Date.  The Buyer shall consider in good faith any reasonable comments provided by Seller to the Allocation, and the Parties agree to use commercially reasonable efforts to reach an agreement on any and all disputed items in the draft Allocation within 15 days after receipt by Seller of such draft Allocation, after which the Allocation shall be conclusive and binding on the Parties.  If the sum of the Purchase Price and any other amounts that are treated as consideration for U.S. federal income tax purposes is adjusted following the finalization of the Allocation, a revised Allocation shall be prepared and finalized in accordance with the procedures set forth in this Section 1.1(d).  The Parties shall not, and shall not permit any of their respective Affiliates to, take any position on a Tax Return (including an Internal Revenue Service Form 8594) or in connection with an audit, examination or judicial or administrative proceeding that is inconsistent with the Allocation, as finalized in accordance with this Section 1.1(d); provided, that nothing in this Section 1.1(d) shall prevent a Party (or any of its Affiliates) from negotiating, compromising and/or settling any Tax audit, claim or similar proceeding that relates to the Allocation. Notwithstanding the foregoing, the Parties recognize that certain allocations of purchase price may be necessary prior to the schedule set forth above, such as in the case of any Transfer Tax filings, and the Parties agree to reasonably cooperate in determining the appropriate allocation in a timely manner in advance of such filings and the payment of Transfer Taxes."

5.      Schedule 2.3.  Schedule 2.3 of the Purchase Agreement is hereby amended and restated in its entirety as follows:

Schedule 2.3

Assumed Prize Liabilities

1.   Prizes in respect of any contests launched by Seller following the Petition Date.

2. Two outstanding super-prizes, not to exceed $2,500,000 in the aggregate.

3. One super-prize awarded on May 31, 2025, not to exceed $975,000 in the aggregate.

6. <u>Schedule 4.10(a)(i)</u>. Schedule 4.10(a)(i) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

Schedule 4.10(a)(i)

Intellectual Property

**Patents and Patent Applications**:

Please see Annex 4.10(a)(i)(A) attached hereto for a list of all Patents that (subject to the matters described on <u>Schedule 4.10(b)</u>) were owned by Seller's wholly-owned Subsidiary, PCH Topix, LLC, as of the date of its dissolution (collectively, the "<u>Topix Patents</u>").

**Trademark and Service Mark Registrations and Applications**:

Please see Annex 4.10(a)(i)(B) attached hereto. The marks therein listed with an asterisk in the "Owner Name" column were owned by Funtank LLC as of the signing of this Agreement and will be assigned to Seller prior to Closing. An instrument of assignment will be filed with the United States Patent and Trademark Office ("<u>USPTO</u>") prior to Closing.

**Copyright Registrations and Applications**:

Please see Annex 4.10(a)(i)(C) attached hereto.

**Domain Name Registrations**:

Please see Annex 4.10(a)(i)(D) attached hereto.

**Social Media Handles**:

FB Main Page: https://www.facebook.com/pch
FB Prize Patrol Page: https://www.facebook.com/pchprizepatrol
FB Treasure Match: https://www.facebook.com/pchtreasurematch
FB PCH Wordmania: https://www.facebook.com/PCHWordmania
FB Quizzes: https://www.facebook.com/PCHquizzes
FB Games: https://www.facebook.com/pchgames
IG Main: https://www.instagram.com/pchofficial/
IG Wordmania: https://www.instagram.com/officialpchwordmania/
IG Treasure Match: https://www.instagram.com/pchtreasurematch/
TikTok: https://www.tiktok.com/@pchofficial
YouTube: https://www.youtube.com/@PCHOfficial

X Main: https://x.com/pchdotcom
X Treasure Match: https://x.com/treasure_match
X Wordmania: https://x.com/PCHWordmania
Pinterest: https://www.pinterest.com/pchdotcom/?actingBusinessId=221239537853008183
LinkedIn (PCH): https://www.linkedin.com/company/publishers-clearing-house/posts/?feedView=all
LinkedIn (Media): https://www.linkedin.com/company/pchmedia/posts/?feedView=all

**Material Unregistered Marks**:

WIN FOR LIFE
PCH Classic (including stylized versions thereof) and related logo
PCH + (including stylized versions thereof) and related logo
Wordmania (including stylized versions thereof) and related logo
Treasure Mania  (including stylized versions thereof) and related logo
PCHQuizzes
Poncho (Treasure Match)
Where America Plays to Win
PCHRewards
VIP/VIP Elite
Seller's trade dress rights related to Prize Patrol

**Proprietary Software**:

PCH Plus APP
PCH Classic APP
Lotto APP
Wordmania APP
Treasure Match App

PCH Website
Lotto Website
Front Page Website
Search&Win Website
Answer&Win Website
Rewards Website
Games Website
PCH Quizzes Website

Token Banks Platform
Instant Win Platform
VIP Platform
Promo Platform
Sweeps, Lotto and Keno drawing Engines
GPS contest Platform
Survey Recommendation Engine

**Annex 4.10(a)(i)(A)**
**Patents and Patent Applications**

| Matter ID | Title | Type | Application Number | Filing Date | Publication Number | Publication Date | NonPublication Filed? | Patent Number | Issue Date | Status | Event Due | Due Date | Priority Date for Calculation | 20 Year Date | PTA | Expiration |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ZAND.P101 | SYSTEM AND METHOD FOR AUTOMATING CATEGORIZATION AND AGGREGATION OF CONTENT FROM NETWORK SITES | Utility: Non-Provisional | 10/888,787 | 7/9/2004 | | | YES | 8,271,495 | 9/18/2012 | In Force | All maintenance fees paid. | | 7/9/2004 | 7/9/2024 | 1445 days | 6/23/2028 |
| ZAND.P101D1 | SYSTEM AND METHOD FOR AUTOMATING CATEGORIZATION AND AGGREGATION OF CONTENT FROM NETWORK SITES | Utility: Divisional | 13/587,787 | 8/16/2012 | 2012-0311434 | 12/6/2012 | NO | 8,645,385 | 2/4/2014 | Expired | | | 7/9/2004 | 7/9/2024 | 0 | 7/9/2024 |
| ZAND.P101D1C1 | SYSTEM AND METHOD FOR AUTOMATING CATEGORIZATION AND AGGREGATION OF CONTENT FROM NETWORK SITES | Utility: Continuation | 14/160,063 | 1/21/2014 | 2014-0236954 | 8/21/2014 | NO | | | Abandoned | | | | | | |
| ZAND.P103 | USER-INTERFACE FEATURE AND TECHNIQUE FOR PROVIDING USERS OF A NETWORK SITE LINKS THAT HAVE BEEN DETERMINED TO BE OF INTEREST TO THE USER | Utility: Non-Provisional | 11/281,185 | 11/15/2005 | | | YES | | | Abandoned | | | | | | |
| ZAND.P103C1 | USER-INTERFACE FEATURE AND TECHNIQUE FOR PROVIDING USERS OF A NETWORK SITE LINKS THAT HAVE BEEN DETERMINED TO BE OF INTEREST TO THE USER | Utility: Continuation | 12/435,383 | 5/4/2009 | | | YES | 8,185,514 | 5/22/2012 | In Force | All maintenance fees paid. | | 11/15/2005 | 11/15/2025 | 0 | 11/15/2025 |
| ZAND.P103C2 | USER-INTERFACE FEATURE AND TECHNIQUE FOR PROVIDING USERS OF A NETWORK SITE LINKS THAT HAVE BEEN DETERMINED TO BE OF INTEREST TO THE USER | Utility: Continuation | 13/764,615 | 2/11/2013 | 2013-0191710 | 7/25/2013 | NO | | | Abandoned | | | | | | |
| ZAND.P104 | SYSTEM AND METHOD FOR SELECTING PICTURES FOR PRESENTATION WITH TEXT CONTENT | Utility: Non-Provisional | 11/299,712 | 12/11/2005 | 2007-0136680 | 6/14/2007 | NO | 7,930,647 | 4/19/2011 | In Force | All maintenance fees paid. | | 12/11/2005 | 12/11/2025 | 178 days | 6/7/2026 |
| ZAND.P105 | SYSTEM AND METHOD FOR CONDUCTING AN ELECTRONIC MESSAGE FORUM | Utility: Non-Provisional | 11/464,813 | 8/15/2006 | 2008-0046511 | 2/21/2008 | NO | | | Abandoned | | | | | | |
| ZAND.P107 | CAP-SENSITIVE TEXT SEARCH FOR DOCUMENTS | Utility: Non-Provisional | 11/755,424 | 5/30/2007 | 2008-0033931 | 2/7/2008 | NO | 7,730,062 | 6/1/2010 | In Force | All maintenance fees paid. | | 5/30/2007 | 5/30/2027 | 377 days | 6/10/2028 |
| ZAND.P107C1 | CAP-SENSITIVE TEXT SEARCH FOR DOCUMENTS | Utility: Continuation | 12/763,995 | 4/20/2010 | 2010-0205175 | 8/12/2010 | NO | | | Abandoned | | | | | | |
| ZAND.P108 | SYSTEM AND METHOD FOR DISPLAYING QUOTATIONS | Utility: Non-Provisional | 11/567,691 | 12/6/2006 | | | YES | 9,405,732 | 8/2/2016 | In Force | 3rd Maintenance Fee Due | 2/2/2028 | 12/6/2006 | 12/6/2026 | 2042 days | 7/9/2032 |
| ZAND.P110 | ONLINE SYSTEM AND METHOD FOR PROVIIDNG GEOGRAPHIC PRESENTATIONS OF LOCALITIES THAT ARE PERTINENT TO A TEXT ITEM | Utility: Non-Provisional | 11/768,773 | 6/26/2007 | 2008-0243906 | 10/2/2008 | NO | | | Abandoned | | | | | | |
| ZAND.P111 | SYSTEM AND METHOD FOR DISPLAYING CONTENT BY MONITORING USER-GENERATED ACTIVITY | Utility: Non-Provisional | 11/864,859 | 9/28/2007 | 2008-0244438 | 10/2/2008 | NO | | | Abandoned | | | | | | |
| ZAND.P111C1 | SYSTEM AND METHOD FOR DISPLAYING CONTENT BY MONITORING USER-GENERATED ACTIVITY | Utility: Continuation | 15/163,635 | 5/24/2016 | | | NO | | | Abandoned | | | | | | |
| ZAND.P112 | CHRONOLOGY DISPLAY AND FEATURE FOR ONLINE PRESENTATIONS AND WEB PAGES | Utility: Non-Provisional | 11/768,832 | 6/26/2007 | 2008-0244065 | 10/2/2008 | NO | 8,250,474 | 8/21/2012 | In Force | All maintenance fees paid. | | 6/26/2007 | 6/26/2027 | 1042 days | 5/3/2030 |

| | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| ZAND.P112C1 | CHRONOLOGY DISPLAY AND FEATURE FOR ONLINE PRESENTATIONS AND WEB PAGES | Utility: Continuation | 13/554,719 | 7/20/2012 | 2012-0284629 | 11/8/2012 | NO | 8,893,011 | 11/18/2014 | Expired | Expired - Nonpayment of 2nd Maintenance Fee | | | | | 11/18/2022 |
| ZAND.P113 | SYSTEM AND METHOD FOR ENABLING SUBMISSION OF CONTENT FROM PERSONS IN THE PUBLIC ON A WEBSITE | Utility: Non-Provisional | 11/864,731 | 9/28/2007 | | | YES | | | Abandoned | | | | | | |
| ZAND.P114 | SYSTEM AND METHOD FOR PRESENTING CATEGORIZED CONTENT ON A SITE USING PROGRAMMATIC AND MANUAL SELECTION OF CONTENT ITEMS | Utility: Continuation-In-Part | 11/864,882 | 9/28/2007 | | | YES | 7,814,089 | 10/12/2010 | Expired | All maintenance fees paid. | | 7/9/2004 | 7/9/2024 | 228 days | 2/22/2025 |
| ZAND.P114C1 | SYSTEM AND METHOD FOR PRESENTING CATEGORIZED CONTENT ON A SITE USING PROGRAMMATIC AND MANUAL SELECTION OF CONTENT ITEMS | Utility: Continuation | 12/868,630 | 8/25/2010 | | | YES | 8,032,511 | 10/4/2011 | Expired | All maintenance fees paid. | | 7/9/2004 | 7/9/2024 | 0 | 7/9/2024 |
| ZAND.P114C2 | SYSTEM AND METHOD FOR PRESENTING CATEGORIZED CONTENT ON A SITE USING PROGRAMMATIC AND MANUAL SELECTION OF CONTENT ITEMS | Utility: Continuation | 13/223,547 | 9/1/2011 | 2012-0011433 | 1/12/2012 | NO | | | Abandoned | | | | | | |
| ZAND.P115 | SYSTEM AND METHOD TO SELECTIVELY UPDATE SUPPLEMENTAL CONTENT RENDERED IN PLACEMENT REGIONS OF A RENDERED PAGE | Utility: Non-Provisional | 15/688,839 | 8/28/2017 | 2019-0066163 | 2/28/2019 | NO | 10,896,445 | 1/19/2021 | In Force | 2nd Maintenance Fee Due | 7/19/2028 | 8/28/2017 | 8/28/2037 | 194 days | 3/10/2038 |
| ZAND.P115C1 | SYSTEM AND METHOD TO SELECTIVELY UPDATE SUPPLEMENTAL CONTENT RENDERED IN PLACEMENT REGIONS OF A RENDERED PAGE | Utility: Continuation | 17/150,930 | 1/15/2021 | 2022-0058696 | 2/24/2022 | NO | 11,615,443 | 3/28/2023 | In Force | First Maintenance Fee | 9/28/2026 | 8/28/2017 | 8/28/2037 | 0 | 8/28/2037 |
| ZAND.P115C2 | SYSTEM AND METHOD TO SELECTIVELY UPDATE SUPPLEMENTAL CONTENT RENDERED IN PLACEMENT REGIONS OF A RENDERED PAGE | Utility: Continuation | 18/122,094 | 3/15/2023 | 2023-0298072 | 9/21/2023 | NO | | | Pending | Respond to Non-Final Office Action (FINAL) | 7/24/2025 | | | | |

| Trademark | Image | Country | Status | Owner Name | App. No. | Filing Date | Reg. No. | Reg. Date | Class(es) | Goods | Next Action |
|---|---|---|---|---|---|---|---|---|---|---|---|
| "FOREVER" | | United States of America | Registered | Publishers Clearing House LLC | 85665895 | 29-Jun-2012 | 4242135 | 13-Nov-2012 | 41 Int. | Sweepstakes services. | Renewal- Opening date - 13-Nov-2031 - Due Date |
| @DESIGN INNOVATIVE.FUNCTIONAL Plus Light Bulb Design |  | United States of America | Registered | Publishers Clearing House LLC | 88023018 | 2-Jul-18 | 6866541 | 4-Oct-22 | 09 Int., 14 Int. | Magnifiers, namely, magnifying glasses; electrical outlets; electrical plugs; pocket radios; USB hubs; cell phone holders for automobiles; cell phone battery chargers for automobiles; cell phone stands; cell phone holders; tablet computer stands; stands adapted for computers, namely, tablet computer holders.; Clocks. | Aff of Use - 5 Year - 04-Oct-2027 - Due Date |
| 11 PCHKENO Plus Design | | United States of America | Registered | Publishers Clearing House LLC | 87333172 | 13-Feb-17 | 5465664 | 8-May-18 | 41 Int. | Providing on-line keno games and other games of chance. | Renewal- Opening date - 08-May-2027 - Due Date |
| PCHKENO | | United States of America | Registered | Publishers Clearing House LLC | 87317995 | 30-Jan-17 | 5465608 | 8-May-18 | 41 Int. | Providing on-line keno games and other games of chance. | Renewal- Opening date - 08-May-2027 - Due Date |
| 11 PCHKENO PUBLISHERS CLEARING HOUSE Plus Design | | United States of America | Registered | Publishers Clearing House LLC | 87333175 | 13-Feb-2017 | 5465665 | 08-May-2018 | 41 Int. | Providing on-line keno games and other games of chance. | Renewal- Opening date - 08-May-2027 Due Date |
| PCHLOTTO | | United States of America | Registered | Publishers Clearing House LLC | 87316385 | 27-Jan-17 | 5246479 | 18-Jul-17 | 41 Int. | sweepstakes services | Renewal- Opening date - 18-Jul-2026 - Due Date |
| 6 42 PCHLOTTO Plus Design | | United States of America | Registered | Publishers Clearing House LLC | 87333163 | 13-Feb-2017 | 5246513 | 18-Jul-2017 | 41 Int. | sweepstakes services | Renewal- Opening date - 18-Jul-2026 - Due Date |

| Mark | Logo | Country | Status | Owner | App No. | App Date | Reg No. | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| 6 42 PCHLOTTO PUBLISHERS CLEARING HOUSE Plus Design | | United States of America | Registered | Publishers Clearing House LLC | | | | | | | Renewal- Opening date - 18-Jul-2026 - Due Date |
| CANDYSTAND | | Australia | Registered | Publishers Clearing House LLC* | 1234278 | 08-Apr-2008 | 1234278 | 08-Apr-2008 | 41 Int. | Entertainment services, including providing a web-site containing articles, puzzles, games and activities intended for adults and children. | Next Renewal - 08-Apr-2028 - Ren/Due |
| CANDYSTAND | | European Union (Community) | Registered | Publishers Clearing House LLC* | 6491534 | 06-Dec-2007 | 6491534 | 06-Nov-2008 | 41 Int. | Providing a website containing articles, puzzles, games and activities of an educational nature intended for adults and children. | Next Renewal - 06-Dec-2027 - Ren/Due |
| CANDYSTAND | | India | Registered | Publishers Clearing House LLC* | 1674775 | 10-Apr-2008 | 1104046 | 24-Jun-2013 | 41 Int. | Providing a web-site containing articles, puzzles, games and activities intivites intended for adults and children. | Next Renewal - 10-Apr-2028 - Ren/Due |
| CANDYSTAND | | United Kingdom | Registered | Publishers Clearing House LLC* | UK00906491534 | 06-Dec-2007 | UK00906491534 | 06-Nov-2008 | 41 Int. | Providing a website containing articles, puzzles, games and activities of an educational nature intended for adults and children. | Next Renewal - 06-Dec-2027 - Ren/Due |
| CANDYSTAND | | United States of America | Registered | Publishers Clearing House LLC* | 75288373 | 08-May-1997 | 2139232 | 24-Feb-1998 | 41 Int. | Providing a web-site containing articles, puzzles, games and activities of an educational nature intended for adults and children. | Renewal- Opening date - 24-Feb-2027 - Due Date |
| CANYON SKY A SOUTHWEST INSPIRATION logo | | United States of America | Registered | Publishers Clearing House LLC | 87069017 | 13-Jun-2016 | 6463738 | 24-Aug-2021 | 11 Int., 14 Int., 18 Int., 20 Int., 21 Int., 24 Int., 25 Int., 27 Int. | Decorative home accents, namely, lamps, nightlights, battery operated electric candles.; Costume jewelry; jewelry made with semi-precious gems or stones; watches.; Handbags; wallets; garment bags for travel.; Decorative home accents, namely, wind chimes, birdhouses, figurines made of cold cast resin.; Household storage containers made of plastic and for household use; servingware, namely, bowls; insulated carriers for food.; Bath towels; throws.; Caftans; gloves.; Decorative wall hangings made of resin. | Aff of Use - 5 Year - 24-Aug-2026 - Due Date |
| CANYON SKY A SOUTHWEST INSPIRATION logo | | United States of America | Registered | Publishers Clearing House LLC | 90118045 | 17-Aug-2020 | 7316582 | 27-Feb-2024 | 24 Int., 25 Int. | Shower curtains; blankets for beds; sheets for beds; Gloves | Aff of Use - 5 Year - 27-Feb-2029 - Due Date |

| Mark | Logo | Country | Status | Owner | App No | App Date | Reg No | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| FUNTANK | | United States of America | Registered | Publishers Clearing House LLC* | | | | | 09 Int., 35 Int., 41 Int., 42 Int. | Downloadable computer games for computers, cell phones and hand-held electronic personal devices.; Advertising agency services and marketing communications consulting services.; Entertainment services, namely, providing online computer games; online journals, namely, blogs, in the fields of games and general interest.; Multimedia design services for others, namely, digital commercial artwork design, game development services for others, graphic art design, website design, website hosting on a computer server for a global computer network; programming and implementation of multimedia applications for others; custom design of computer software in multiple fields for others. | Renewal- Opening date - 04-Jan-2030 - Due Date |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | Canada | Registered | Publishers Clearing House LLC | 1383190 | 07-Feb-2008 | TMA779468 | 08-Oct-2010 | 07 Int., 08 Int., 09 Int., 11 Int., 21 Int. | Small kitchen appliances, namely, electric food blenders and mixers; Cutleryand flatware, namely knives, forks and spoons; scissors; electric irons; small kitchen appliances, namely electric griddles, electric frying pans, crock pots, steamers, and waffle irons; Cookware, namely, pots and pans; stir-fryers; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders | First Renewal - 08-Oct-2025 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | Canada | Registered | Publishers Clearing House LLC | 1416931 | 27-Oct-2008 | TMA808677 | 11-Oct-2011 | 09 Int., 18 Int., 24 Int. | Sunglasses.; Gift sets consisting of a wallet and key chain.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets, namely blanket throws for household use; table runners; pillows | First Renewal - 11-Oct-2026 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | Canada | Registered | Publishers Clearing House LLC | 1416930 | 27-Oct-2008 | TMA802741 | 21-Jul-2011 | NC No Class | Slippers; bath mats; bath rugs. | First Renewal - 21-Jul-2026 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | European Union (Community) | Registered | Publishers Clearing House LLC | 006652515 | 07-Feb-2008 | 006652515 | 22-Jan-2009 | 07 Int., 08 Int., 09 Int., 11 Int., 21 Int. | Small kitchen appliances, namely, electric food blenders and mixers.; Cutlery and flatware, namely, knives, forks and spoons; scissors.; Electric irons.; Small kitchen appliances, namely, electric griddles, electric frying pans, crock pots, steamers and waffle irons.; Cookware, namely, pots and pans; stir-fryers; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders. | Next Renewal - 07-Feb-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | European Union (Community) | Registered | Publishers Clearing House LLC | 007350812 | 28-Oct-2008 | 007350812 | 29-Jul-2009 | 09 Int., 18 Int., 20 Int., 24 Int., 25 Int., 27 Int. | Sunglasses.; Gift sets consisting of a wallet and key chain.; Pillows.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets; table runners.; Slippers.; Bath mats; bath rugs. | Next Renewal - 28-Oct-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | United Kingdom | Registered | Publishers Clearing House LLC | UK00906652515 | 07-Feb-2008 | UK00906652515 | 22-Jan-2009 | 07 Int., 08 Int., 09 Int., 11 Int., 21 Int. | Small kitchen appliances, namely, electric food blenders and mixers.; Cutlery and flatware, namely, knives, forks and spoons; scissors.; Electric irons.; Small kitchen appliances, namely, electric griddles, electric frying pans, crock pots, steamers and waffle irons.; Cookware, namely, pots and pans; stir-fryers; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders. | Next Renewal - 07-Feb-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design | GOLD❊COAST always in style | United Kingdom | Registered | Publishers Clearing House | 2474381 | 28-Feb-2007 | 2474381 | 17-Oct-2008 | 14 Int., 18 Int., 25 Int. | Jewelry.; Handbags, wallets and umbrellas.; Belts, scarves, rainwear and lingerie. | Next Renewal - 28-Feb-2027 - Ren/Due |

| Mark | Design | Country | Status | Owner | App No. | App Date | Reg No. | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| GOLD COAST ALWAYS IN STYLE & Design |  | United Kingdom | Registered | Publishers Clearing House LLC | UK00077596742 | 20-Oct-2008 | UK00077596742 | 19-Jul-2009 | Sunglasses.; Gift sets consisting of a wallet and key chain.; Pillows.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets; table runners.; Slippers.; Bath mats; bath rugs. | Next Renewal - 28-Oct-2028 - Ren/Due |
| GOLD COAST ALWAYS IN STYLE & Design |  | United States of America | Registered | Publishers Clearing House | 77596273 | 20-Oct-2008 | 3755715 | 02-Mar-2010 | 25 Int., 27 Int. | slippers; bath mats; bath rugs | Renewal- Opening date - 02-Mar-2029 - Due Date |
| GOLD COAST ALWAYS IN STYLE & Design |  | United States of America | Registered | Publishers Clearing House | 77596267 | 20-Oct-2008 | 3626747 | 26-May-2009 | 09 Int., 18 Int., 20 Int., 24 Int. | Sunglasses.; Gift sets consisting of a wallet and may also include a leather, imitation leather , or metal key chain.; Pillows.; Bath towels; towel sets; bath sheets; hand towels; throws; blankets; throw; fabric  table runners. | Renewal- Opening date - 26-May-2028 - Due Date |
| GOLD COAST ALWAYS IN STYLE & Design |  | United States of America | Registered | Publishers Clearing House LLC | 77977740 | 05-Feb-2008 | 3694131 | 06-Oct-2009 | 21 Int. | Cookware, namely, pots and pans; non-electric stir frying pans; ceramic cookware, namely, baking dishes and casseroles; dinnerware, namely, plates, bowls, mugs and creamer pitchers; household utensils, namely, spatulas, ladles, slotted spoons and whisks; salt and pepper shakers; napkin holders. | Renewal- Opening date - 06-Oct-2028 - Due Date |
| GOLD COAST ALWAYS IN STYLE Plus Design |  | United States of America | Registered | Publishers Clearing House LLC | 77000673 | 15-Sep-2006 | 3496361 | 02-Sep-2008 | 18 Int., 25 Int. | Handbags, wallets and umbrellas.; Belts, scarves, rainwear and lingerie. | Renewal- Opening date - 02-Sep-2027 - Due Date |
| HOUSE/ENVELOPE Design |  | Canada | Registered | Publishers Clearing House LLC | 515241 | 16-Jan-1984 | TMA297580 | 30-Nov-1984 | NC No Class | magazine subscription services | Next Renewal - 30-Nov-2029 - Ren/Due |
| House/Envelope Design | | European Union (Community) | Registered | Publishers Clearing House LLC | 009709254 | 03-Feb-2011 | 009709254 | 30-Aug-2011 | 35 Int., 36 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others.; Services in relation to the operation and management of sweepstakes and prize draws.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting | Next Renewal - 03-Feb-2031 - Ren/Due |
| House/Envelope Design | | United Kingdom | Registered | Publishers Clearing House LLC | 2571068 | 03-Feb-2011 | 2571068 | 26-Aug-2011 | 35 Int., 38 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others.; Providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording | Next Renewal - 03-Feb-2031 - Ren/Due |

| | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|
| House/Envelope Design | | United States of America | Registered | Publishers Clearing House LLC | 78718451 | 19-Dec-2005 | 3141910 | 12-Sep-2006 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services; Sweepstake services provided over a global computer network | Next Renewal - 12-Sep-2026 - Ren/Due |
| identifi Plus Design | | United States of America | Pending | Publishers Clearing House LLC | 97566490 | 26-Aug-22 | | | 35 Int. | Digital marketing services, namely, providing identity resolution solutions to find relevant verified audiences for advertisers | In December 2024, PCH instructed us to allow this application to lapse. No Statement of Use or extension request was filed by the 12/26/2024 deadline, so the |
| IT'S ALL ABOUT WINNING | | Canada | Registered | Publishers Clearing House LLC | 1063291 | 14-Jun-2000 | TMA566029 | 19-Aug-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35. | Next Renewal - 19-Aug-2032 - Ren/Due |
| IT'S ALL ABOUT WINNING | | United States of America | Registered | Publishers Clearing House LLC | 78718443 | 22-Sep-2005 | 3132956 | 22-Aug-2006 | 41 Int. | Sweepstake services provided over a global computer network | Next Renewal - 22-Aug-2026 - Ren/Due |
| Owl Design | | Canada | Registered | Publishers Clearing House LLC | 1581896 | 31-May-2012 | TMA906001 | 11-Jun-2015 | NC No Class | Sweepstakes services provided over a global computer network; Computer services, namely providing search engines for obtaining data on a global computer network | First Renewal - 11-Jun-2030 - Ren/Due |
| PCH | | Canada | Registered | Publishers Clearing House LLC | 750794 | 28-Mar-1994 | TMA474716 | 14-Apr-1997 | NC No Class | Promoting the sale of magazine subscriptions for others. mail order services in the field of general merchandise; services in relation to the operation and management of sweepstakes and prize draws | Next Renewal - 14-Apr-2027 - Ren/Due |
| PCH | | United States of America | Registered | Publishers Clearing House LLC | 78718436 | 22-Sep-2005 | 3141743 | 12-Sep-2006 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services; Sweepstake services provided over a global computer network | Next Renewal - 12-Sep-2026 - Ren/Due |
| PCH | | United States of America | Registered | Publishers Clearing House LLC | 73483836 | 06-Jun-1984 | 1371841 | 19-Nov-1985 | 42 Int. | Selling magazines on a subscription basis for others, in Class 42 | Next Renewal - 19-Nov-2025 - Ren/Due |

| Mark | Logo | Country | Status | Owner | App. No. | App. Date | Reg. No. | Reg. Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PCH.COM | | Canada | Registered | Publishers Clearing House LLC | 1063790 | 14-Jun-2000 | TMA566057 | 19-Aug-2002 | 35 Int. | ...featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35. | Next Renewal - 19-Aug-2032 - Ren/Due |
| PCH.COM | | United States of America | Registered | Publishers Clearing House LLC | 78718448 | 22-Sep-05 | 3141744 | 12-Sep-06 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services provided over a global computer network. | Renewal- Opening date - 12-Sep-2025 - Due Date |
| PCH.COM | | United States of America | Registered | Publishers Clearing House LLC | 75871694 | 15-Dec-99 | 2716049 | 13-May-03 | 35 Int. | On-line retail services featuring general merchandise; offering magazines on a subscription basis for others via a global computer network; promoting the goods of others through promotional contests on a global computer network. | Renewal- Opening date - 13-May-2032 - Due Date |
| PCH.COM Plus House Design | pch.com PUBLISHERS CLEARING HOUSE | Canada | Registered | Publishers Clearing House LLC | 1063289 | 14-Jun-2000 | TMA565927 | 16-Aug-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35. | Next Renewal - 16-Aug-2032 - Ren/Due |
| PCH.COM Plus House Design | | European Union (Community) | Registered | Publishers Clearing House LLC | 1704717 | 13-Jun-2000 | 1704717 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM Plus House/Envelope Design | | United States of America | Registered | Publishers Clearing House LLC | 78718452 | 22-Sep-05 | 3132957 | 22-Aug-06 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services provided over a global computer network | Next Renewal - 22-Aug-2026 - Ren/Due |
| PCH.COM Plus House Design | | United Kingdom | Registered | Publishers Clearing House LLC | UK00901704717 | 13-Jun-2000 | UK00901704717 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | | Canada | Registered | Publishers Clearing House LLC | 1063288 | 14-Jun-2000 | TMA576770 | 03-Mar-2003 | 35 Int. | On-line retail services offered via a global computer network featuring a variable stock of general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network. | Next Renewal - 03-Mar-2033 - Ren/Due |

| Mark | | Country | Status | Owner | App. No. | App. Date | Reg. No. | Reg. Date | Class | Goods/Services | Status/Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | | European Union (Community) | Registered | Publishers Clearing House LLC | 1704998 | 13-Jun-2000 | 1704998 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | | United Kingdom | Registered | Publishers Clearing House LLC | UK00901704998 | 13-Jun-2000 | UK00901704998 | 03-Apr-2002 | 35 Int. | On-line retail services featuring general merchandise; selling magazines on a subscription basis for others via a global computer network; promoting the sale of goods of others through promotional contests on a global computer network, in Class 35 | Next Renewal - 13-Jun-2030 - Ren/Due |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House/Envelope Design | | United States of America | Registered | Publishers Clearing House LLC | 78718455 | 22-Sep-05 | 3132958 | 8/22/2006 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services provided over a global computer network. | Renewal- Opening date - 12-Sep-2025 - Due Date |
| PCH.COM PUBLISHERS CLEARING HOUSE Plus House Design | | United States of America | Registered | Publishers Clearing House LLC | 75871695 | 15-Dec-1999 | 2719631 | 27-May-2003 | 35 Int. | ON-LINE RETAIL SERVICES FEATURING GENERAL MERCHANDISE; OFFERING MAGAZINES ON A SUBSCRIPTION BASIS FOR OTHERS VIA A GLOBAL COMPUTER NETWORK; PROMOTING THE GOODS OF OTHERS THROUGH PROMOTIONAL CONTESTS ON A GLOBAL COMPUTER NETWORK | Renewal- Opening date - 27-May-2032 - Due Date |
| PCHANSWER&WIN | | United States of America | Registered | Publishers Clearing House LLC | 98617324 | 25-Jun-24 | | | 35 Int.; 41 Int. | Promotional marketing services, namely, arranging and conducting incentive reward programs to promote consumer participation in third-party marketing surveys; Sweepstakes services; sweepstakes services provided over a global computer network | Publication Approval - 05-Aug-2025 - Due Date |
| PCHFRONTPAGE Logo | | United States of America | Registered | Publishers Clearing House LLC | 87337986 | 16-Feb-17 | 5711996 | 2-Apr-19 | 35 Int., 39 Int., 41 Int., 42 Int., 43 Int., 44 Int., 45 Int. | Providing news and information in the fields of business and politics.; Providing news and information in the field of travel.; Sweepstakes services; providing news and information in the fields of entertainment, sports, and lottery results; providing news and information regarding parenting concerning education and entertainment of children.; Computer services, namely, providing search engines for obtaining data on a global computer network; providing news and information in the field of weather; providing news and information regarding home interior decorating.; Providing food preparation and recipe news and information.; Providing news and information in the field gardening and garden care; providing news and information relating to pet grooming, feeding and nutrition.; Providing news and information in the field of horoscopes; | Aff of Use Follow Up Date - 25-Sep-2025 - Due Date |
| PCHFRONTPAGE | | United States of America | Registered | Publishers Clearing House LLC | 87337990 | 16-Feb-17 | 5553000 | 4-Sep-18 | 41 Int. | Providing news and information in the fields of lottery results | Renewal- Opening date - 04-Sep-2027 - Due Date |
| PCHGAMES | | United States of America | Registered | Publishers Clearing House LLC | 87391832 | 30-Mar-17 | 5286343 | 12-Sep-17 | 41 Int. | Entertainment services, namely, providing online computer games; sweepstakes services. | Renewal- Opening date - 12-Sep-2026 - Due Date |

| Mark | Country | Status | Owner | App. No. | App. Date | Reg. No. | Reg. Date | Int. Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| PCHPLAY&WIN | United States of America | Registered | Publishers Clearing House LLC | 77... | 13-Dec-2009 | 39... | 19-...-2012 | 41 Int. | ...sweepstakes services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching. | Next Renewal - 13-Jul-2030 - Ren/Due |
| pchprizes | European Union (Community) | Registered | Publishers Clearing House LLC | 009765967 | 25-Feb-2011 | 009765967 | 27-Sep-2011 | 35 Int., 36 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; Services in relation to the operation and management of sweepstakes and prize draws; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely,  providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting | Next Renewal - 25-Feb-2031 - Ren/Due |
| pchprizes | United Kingdom | Registered | Publishers Clearing House LLC | 2573360 | 25-Feb-2011 | 2573360 | 25-Feb-2011 | 35 Int., 36 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; Services in relation to the operation and management of sweepstakes and prize draws.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting | Next Renewal - 25-Feb-2031 - Ren/Due |
| PCHSEARCH&WIN | United States of America | Registered | Publishers Clearing House LLC | 87771691 | 26-Jan-2018 | 5550652 | 28-Aug-2018 | 41 Int., 42 Int. | sweepstakes services; computer services, namely providing search engines for obtaining data on a global computer network | Renewal- Opening date - 28-Aug-2027 - Due Date |
| PCHSEARCH&WIN | United States of America | Registered | Publishers Clearing House LLC | 87771695 | 26-Jan-2018 | 5550653 | 28-Aug-2018 | 41 Int., 42 Int. | sweepstakes services; computer services, namely providing search engines for obtaining data on a global computer network | Response due - 09-Oct-2025 - Final |
| PCHSLOTS | United States of America | Registered | Publishers Clearing House LLC | 87362851 | 08-Mar-2017 | 5246560 | 18-Jul-2017 | 41 Int. | Entertainment services, namely, providing online slot games; sweepstakes services. | Renewal- Opening date - 18-Jul-2026 - Due Date |
| PCHSLOTS Plus Design | United States of America | Registered | Publishers Clearing House LLC | 87362850 | 08-Mar-2017 | 5246559 | 18-Jul-2017 | 41 Int. | Entertainment services, namely, providing online slot games; sweepstakes services. | Renewal- Opening date - 18-Jul-2026 - Due Date |
| POWERPRIZE | Canada | Registered | Publishers Clearing House LLC | 1797242 | 18-Aug-2016 | TMA995567 | 30-Apr-2018 | 41 Int. | Sweepstakes services. | First Renewal - 30-Apr-2033 - Ren/Due |

| Trademark | | Country | Status | Owner | App. No. | App. Date | Reg. No. | Reg. Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| POWERPRIZE | | United States of America | Registered | Publishers Clearing House LLC | | | | | | | Renewal- Opening date - 02-May-2026 - Due Date |
| PRIZE PATROL | | Canada | Registered | Publishers Clearing House LLC | 1295512 | 20-Mar-2006 | TMA696412 | 13-Sep-2007 | 35 Int., 41 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Sweepstake services; sweepstake services provided over a global computer network. | Next Renewal - 13-Sep-2032 - Ren/Due |
| PRIZE PATROL | | European Union (Community) | Registered | Publishers Clearing House LLC | 005148770 | 05-Jun-2006 | 005148770 | 14-Jun-2007 | 35 Int., 41 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Sweepstake services; sweepstake services provided over a global computer network. | Next Renewal - 05-Jun-2026 - Ren/Due |
| PRIZE PATROL | | United Kingdom | Registered | Publishers Clearing House LLC | UK00905148770 | 05-Jun-2006 | UK00905148770 | 14-Jun-2007 | 35 Int., 41 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Sweepstake services; sweepstake services provided over a global computer network. | Next Renewal - 05-Jun-2026 - Ren/Due |
| PRIZE PATROL | | United States of America | Registered | Publishers Clearing House LLC | 74006166 | 30-Nov-1989 | 1644581 | 14-May-1991 | 35 Int. | promoting the sale of goods and services of others through the distribution of printed materials and promotional contests, in Class 35 | Renewal- Opening date - 14-May-2030 - Due Date |
| PRIZE PATROL | | United States of America | Registered | Publishers Clearing House LLC | 78715356 | 19-Sep-2005 | 3200959 | 23-Jan-2007 | 41 Int. | Sweepstake services; Sweepstake services provided over a global computer network | Renewal- Opening date - 23-Jan-2026 - Due Date |
| PRIZE PATROL (Stylized) | PRIZE PATROL | United States of America | Registered | Publishers Clearing House LLC | 74011021 | 12-Dec-1989 | 1642239 | 23-Apr-1991 | 35 Int. | Promoting the sale of goods and services of others through the distribution of printed materials and promotional contests in Class 35; | Renewal- Opening date - 23-Apr-2030 - Due Date |
| PRIZE PATROL (Stylized) | PRIZE PATROL | United States of America | Registered | Publishers Clearing House LLC | 78715358 | 19-Sep-2005 | 3198313 | 16-Jan-2007 | 41 Int. | Sweepstake services; sweepstake services provided over a global computer network. | Renewal- Opening date - 16-Jan-2026 - Due Date |

| Mark | Country | Status | Owner | App. No. | App. Date | Reg. No. | Reg. Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|
| PUBLISHERS CLEARING HOUSE | Canada | Registered | Publishers Clearing House LLC | 795499 | 14-Dec-1995 | TMA501518 | 30-Sep-1998 | No Class | magazine subscriptions for others; mail order services in the field of general merchandise; services in relation to the operation and management of sweepstakes and prize draws. | Next Renewal - 06-Aug-2028 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | European Union (Community) | Registered | Publishers Clearing House LLC | 1014992 | 11-Dec-1998 | 1014992 | 22-Nov-2001 | 35 Int., 36 Int., 41 Int., 42 Int. | Selling magazines on a subscription basis for others; administrative processing of orders in connection with services featuring general merchandise and rendered by a mail order company; business management consultancy, including assistance and advising in the establishment and management of electronic retailing via a computer in the field of general merchandise.; Services in relation to the operation and management of sweepstakes and prize draws, in Class.; Services in relation to the operation and management of sweepstakes and prize draws.; Technical consultancy and advising in the establishment of electronic retailing via a computer in the field of general merchandise. | Next Renewal - 11-Dec-2028 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | European Union (Community) | Registered | Publishers Clearing House LLC | 009708876 | 03-Feb-2011 | 009708876 | 15-Aug-2011 | 35 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; promotion services relating to the sale of goods and services.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching; entertainment services, namely, providing on-line computer games, conducting contests, sweepstakes and | Next Renewal - 03-Feb-2031 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United Kingdom | Registered | Publishers Clearing House LLC | UK00901014992 | 11-Dec-1998 | UK00901014992 | 22-Nov-2001 | 35 Int., 36 Int., 41 Int., 42 Int. | Selling magazines on a subscription basis for others; administrative processing of orders in connection with services featuring general merchandise and rendered by a mail order company; business management consultancy, including assistance and advising in the establishment and management of electronic retailing via a computer in the field of general merchandise.; Services in relation to the operation and management of sweepstakes and prize draws, in Class.; Services in relation to the operation and management of sweepstakes and prize draws.; Technical consultancy and advising in the establishment of electronic retailing via a computer in the field of general merchandise. | Next Renewal - 11-Dec-2028 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United Kingdom | Registered | Publishers Clearing House LLC | 2571067 | 03-Feb-2011 | 2571067 | 26-Aug-2011 | 35 Int., 38 Int., 41 Int. | Internet advertising and marketing services, namely, online advertising in the form of banner ads, click through campaigns, and affiliate programs for others; dissemination of advertising for others via the Internet, direct marketing advertising for others; preparing and placing advertising for others; promotion services relating to the sale of goods and services.; Providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and sharing on-line computer games and affording opportunities to win sweepstakes prizes based on Internet searching.; Sweepstakes and prize draw services; sweepstakes and prize draw services provided over a global computer network; entertainment services, namely, providing links to web sites featuring opportunities to win sweepstakes prizes by playing on-line computer games and | Next Renewal - 03-Feb-2031 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United States of America | Registered | Publishers Clearing House LLC | 73460446 | 11-Jan-1984 | 1440245 | 19-May-1987 | 42 Int. | Selling magazines on a subscription basis for others. | Next Renewal - 19-May-2027 - Ren/Due |
| PUBLISHERS CLEARING HOUSE | United States of America | Registered | Publishers Clearing House LLC | 74006160 | 30-Nov-1989 | 1611504 | 28-Aug-1990 | 35 Int. | Promoting the sale of goods and services of others through the distribution of printed material and promotional contests. | Renewal- Opening date - 28-Aug-2029 - Due Date |
| PUBLISHERS CLEARING HOUSE | United States of America | Registered | Publishers Clearing House LLC | 74006156 | 30-Nov-1989 | 1611700 | 28-Aug-1990 | 42 Int. | retail outlet and mail order services in the field of general merchandise sets | Renewal- Opening date - 28-Aug-2029 - Due Date |

| Trademark | Logo | Country | Status | Owner | App No. | Filing Date | Reg No. | Reg Date | Int. Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| PUBLISHERS CLEARING HOUSE | | United States of America | Registered | Publishers Clearing House LLC | 78957948 | 18-Sep-2005 | 3596286 | 25-Mar-2008 | 41 Int. | Entertainment services, namely, providing on-line computer games; Sweepstake services; Sweepstake services provided over a global computer network | Renewal- Opening date - 05-Sep-2025 - Due Date |
| PUBLISHERS CLEARING HOUSE SUPER DEAL! SPECIAL VALUE OPPORTUNITY Plus Design |  | United States of America | Registered | Publishers Clearing House LLC | 76324018 | 11-Oct-2001 | 2727966 | 17-Jun-2003 | 35 Int. | {OFFERING MAGAZINES ON A SUBSCRIPTION BASIS FOR OTHERS; MAIL ORDER SERVICES IN THE FIELD OF GENERAL MERCHANDISE;} ELECTRONIC RETAILING SERVICES VIA A COMPUTER IN THE FIELD OF GENERAL MERCHANDISE; AND PROMOTING THE GOODS AND SERVICES OF OTHERS THROUGH THE DISTRIBUTION OF PRINTED MATERIALS, IN CONNECTION WITH PROMOTIONAL CONTESTS, AND ON WEBSITES ON A GLOBAL COMPUTER NETWORK | Renewal- Opening date - 17-Jun-2032 - Due Date |
| PUBLISHERS CLEARING HOUSE SUPER DEAL! SPECIAL VALUE OPPORTUNITY Plus Design |  | United States of America | Registered | Publishers Clearing House LLC | 77896932 | 18-Dec-2009 | 3924064 | 22-Feb-2011 | 35 Int. | Offering magazines on a subscription basis for others; mail order services in the field of general merchandise. | Renewal- Opening date - 22-Feb-2030 - Due Date |
| SMART HOME ESSENTIALS FOR LIVING (stylized) |  | United States of America | Registered | Publishers Clearing House LLC | 90980277 | 28-Jul-2021 | 7208361 | 31-Oct-2023 | 21 Int. | Non-electronic sprayers for garden hoses | Aff of Use - 5 Year - 31-Oct-2028 - Due Date |
| SMART HOME ESSENTIALS FOR LIVING Plus House Design |  | Canada | Registered | Publishers Clearing House LLC | 1630342 | 06-Jun-2013 | TMA1024627 | 11-Jun-2019 | 01 Int. | Electric and battery-operated can openers; electric and battery-operated peelers; electric and battery-operated choppers; handheld sewing machines; electric soldering apparatus; electric hammers; bits for power drills; cordless screwdrivers; car vacuum cleaners; tableware, namely knives; non-electric can openers; non-electric peelers; non-electric choppers; scissors; hand tools, namely wrenches, screwdrivers, clamps, hammers, pliers, hex keys wrenches, socket sets; shovels; bulb planters; lighted screwdrivers; axes; vises; rakes; trowels; hoes; saws; telescopic garden tools; loppers, pruners; folding shovels; push lawn mowers; cultivators; washers; electric power strips and surge protectors; measuring cups and measuring spoons; measuring tape; emergency automobile kits; tire pressure gauges; calculators; magnifying glasses and lenses; | First Renewal - 11-Jun-2034 - Ren/Due |
| SMART HOME ESSENTIALS FOR LIVING Plus House Design |  | United States of America | Registered | Publishers Clearing House LLC | 85984049 | 31-May-2013 | 4932804 | 05-Apr-2016 | 21 Int. | Mops; brooms; microfiber cloths for cleaning; scouring pads; dusters; window cleaners in the nature of a combination squeegee and scrubber; window cleaners in the nature of cleaning cloths and mitts; plastic food storage containers for household use; glass food storage containers for household use; canisters sold empty for household use; household utensils, namely, graters, spatulas; brushes and scrubbers for cleaning automobiles | Renewal due in 6 mos. - 05-Oct-2025 - Due Date |
| SMART HOME ESSENTIALS FOR LIVING Plus House Design |  | United States of America | Registered | Publishers Clearing House LLC | 85984050 | 31-May-2013 | 4932805 | 05-Apr-2016 | 24 Int. | Mattress pads; kitchen towels; pet blankets. | Renewal due in 6 mos. - 05-Oct-2025 - Due Date |
| SUNFLOWER GARDEN DESIGNS OF FAITH Logo |  | United States of America | Registered | Publishers Clearing House LLC | 88578955 | 14-Aug-2019 | 7242876 | 12-Dec-2023 | 04 Int., 06 Int., 08 Int., 09 Int., 11 Int., 12 Int., 14 Int., 16 Int., 18 Int., 19 Int., 20 Int., 21 Int., 24 Int., 25 Int., 27 Int., 28 Int. | candles; metal garden stakes; decorative wall accents, namely, non-luminous and non-mechanical signs, plaques and crosses made of common metal; nail files and manicure sets; thermometers not for medical purposes; decorative magnets; refrigerator magnets; pre-recorded CDs and DVDs featuring religious and inspirational subject matter; decorative lighting for patio and garden, namely, a solar powered light fixture comprised primarily of a garden statue and solar powered lights; automobile windshield sunshades; necklaces; bracelets; earrings; watches; clocks; coloring books; puzzle books; devotional books; prayer books; children's books; book covers; checkbook covers; bookmarks; memo pads; stationery note paper; pens greeting cards; tote bags; wallets; stepping stones made of plastic or polyresin; decorative wall accents, namely, | Aff of Use - 5 Year - 12-Dec-2028 - Due Date |

| Mark | Image | Country | Status | Owner | App/Serial No | Filing Date | Reg No | Reg Date | Class | Goods/Services | Renewal |
|---|---|---|---|---|---|---|---|---|---|---|---|
| SUPERPRIZE | | United States of America | Registered | Publishers Clearing House LLC | 75097042 | 01-May-1996 | 2084487 | 29-Jul-1997 | 35 Int., 42 Int. | ...magazine subscriptions for others; promoting the sale of goods and services of others through the distribution of printed materials and promotional contests.; Mail order services in the field of general merchandise. | Next Renewal - 25-Aug-2027 - Ren/Due |
| SWEEPSMARTS | | Canada | Registered | Publishers Clearing House LLC | 1040440 | 20-Dec-1999 | TMA585307 | 16-Jul-2003 | NC No Class | Educational programs namely, conducting workshops and seminars regarding promotional contest programs; telephone hotline counseling namely, offering advice regarding promotional contest programs and consulting services in the field of promotional contest programs | Next Renewal - 16-Jul-2033 - Ren/Due |
| SWEEPSMARTS | | United States of America | Registered | Publishers Clearing House LLC | 75741986 | 01-Jul-1999 | 2333348 | 21-Mar-2000 | 41 Int., 42 Int. | Educational programs, namely, conducting workshops and seminars regarding promotional contest programs, in Class 41; Telephone hotline counseling, namely, offering advice regarding promotional contest programs; and consulting services in the field of promotional contest programs, in Class 42 | Renewal- Opening date - 21-Mar-2029 - Due Date |
| THE CLEARING HOUSE | | Canada | Registered | Publishers Clearing House LLC | 750945 | 28-Mar-1994 | TMA546022 | 01-Jun-2001 | 35 Int. | Promoting the sale of magazine subscriptions for others; mail order services in the field of general merchandise; services in relation to the operation and management of sweepstakes and prize draws, in Class 35 | Next Renewal - 01-Jun-2031 - Ren/Due |
| THE CLEARING HOUSE | | United States of America | Registered | Publishers Clearing House LLC | 73483835 | 06=Jun-1984 | 1444545 | 23-Jun-87 | 42 Int. | SELLING MAGAZINES ON A SUBSCRIPTION BASIS FOR OTHERS | Next Renewal - 06-Jun-2027 - Ren/Due. In March 2023 PCH instructed us to allow this registration to lapse by non-renewal. |
| THE SKYLINE COLLECTION STEP INTO STYLE Plus Skyline Design | | Canada | Registered | Publishers Clearing House LLC | 1691317 | 22-Aug-2014 | TMA989505 | 29-Jan-2018 | 14 Int. | Costume jewelry. | First Renewal - 29-Jan-2033 - Ren/Due |
| THE SKYLINE COLLECTION STEP INTO STYLE Plus Skyline Design | | United States of America | Registered | Publishers Clearing House LLC | 86368203 | 15-Aug-2014 | 4833261 | 13-Oct-2015 | 14 Int. | Costume Jewelry | Next Renewal - 13-Oct-2025 - Ren/Due. In May 2025 PCH instructed us to allow this registration to lapse. |
| WOODLAND CREEK BE OUTDOOR READY Plus Design | | United States of America | Registered | Publishers Clearing House LLC | 87519148 | 07-Jul-2017 | 6380529 | 08-Jun-2021 | 08 Int., 11 Int., 18 Int., 20 Int., 21 Int., 24 Int., 25 Int., 27 Int., 28 Int., 29 Int. | Flatware, namely, forks, knives and spoons; pocket knives; multi-function hand tools comprised of knives, scissors, bottle openers, saws, screwdrivers, pliers, can openers, hammers, glass breakers, seat belt cutters, files, wire cutter/strippers, fire starters, fishing hooks, compasses, utensil multi tool, fish scalers, magnifiers, carabiners.; Battery operated lanterns; solar powered lanterns; flashlights.; Wallets; luggage; handbags; pet leashes.; Bed pillows; decorative pillows.; Melamine dishes; drinkware; pet feeding and drinking bowls; vinyl place mats; non-electric portable coolers; cooking vessels, namely, pots and pans; barbeque grill tools, namely, two-prong forks, spatulas, tongs, basting brushes, grill cleaning brushes for barbeque grills, and storage cases for barbeque grill tools.; Kitchen towels, bath towels; bed sheets; bed blankets; | Aff of Use - 5 Year - 08-Jun-2026 - Due Date |

## Annex 4.10(a)(i)(C)

### Copyright Registrations and Applications

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| [On approval, S'78 N.B.]. | TX0000001201 | 1/11/1978 | Publishers Clearing House |
| [Free trial w/o price comparisons, S'78 N.B.]. | TX0000001200 | 1/11/1978 | Publishers Clearing House |
| [Standard new business package, S'78]. | TX0000001203 | 1/11/1978 | Publishers Clearing House |
| ["Economy" package, S'78 N.B.]. | TX0000001202 | 1/11/1978 | Publishers Clearing House |
| [Free trial w/o price comparison, S'78]. | TX0000001024 | 1/12/1978 | Publishers Clearing House |
| [On approval--house, Spring 1978]. | TX0000001025 | 1/12/1978 | Publishers Clearing House |
| [Standard house package, Spring 1978]. | TX0000001026 | 1/12/1978 | Publishers Clearing House |
| [$100,000 grand prize alternate version mailing package, fall '78-3.] | TX0000025476 | 3/31/1978 | Publishers Clearing House |
| [Fall 1978 big certificate standard]. | TX0000064064 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 "P & G coupon request package" N B 5]. | TX0000064065 | 7/10/1978 | Publishers Clearing House |
| New look with Mead, fall 1978. | TX0000064047 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 "bold eagle" with Mead 78-6 & N B 5]. | TX0000064063 | 7/10/1978 | Publishers Clearing House |
| 3-in-1 super sweepstakes--win up to $125,000. | TX0000110256 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 publisher affiliates Mead package 78-6 & N B 5]. | TX0000064059 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 big certificate with Mead 78-6 & N B 5]. | TX0000064060 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 double contest, 2 in 1 super sweepstakes 78-6 & N B 5]. | TX0000064058 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 "on approval modest" 78-6 & N B 5]. | TX0000064061 | 7/10/1978 | Publishers Clearing House |
| [Fall 1978 "on approval emphasized" 78-6 & N B 5]. | TX0000064062 | 7/10/1978 | Publishers Clearing House |
| Giant double giveaway :2 sets of prizes--with 2 grand prizes of $75,000 and $125,000 : one lucky entry puts in both giveaways! | TX0000086954 | 8/10/1978 | Publishers Clearing House |
| ["New look/mead standard/control" package, spring '79]. | TX0000172307 | 1/8/1979 | Publishers Clearing House |
| ["Free home trial--1st issue" package, S '79]. | TX0000172305 | 1/8/1979 | Publishers Clearing House |
| [Publishers Clearing House spring '79 edition, spring '79 "part pay--modest" package computer form]. | TX0000172192 | 1/8/1979 | Publishers Clearing House |
| ["Part-pay, emphasized" package, S '79]. | TX0000172306 | 1/8/1979 | Publishers Clearing House |
| [Publishers Clearing House spring '79 edition, spring '79 "gold seal"]. | TX0000172193 | 1/8/1979 | Publishers Clearing House |
| Publishers Clearing House new 3-in-1 super sweepstakes, win up to $125,000. | TX0000228983 | 1/9/1979 | Publishers Clearing House |
| Publishers Clearing House. | TX0000174467 | 1/10/1979 | Publishers Clearing House |
| Publishers Clearing House. | TX0000174466 | 1/10/1979 | Publishers Clearing House |
| [PCH service list, spring 1979]. | TX0000174562 | 1/10/1979 | Publishers Clearing House |
| [79-4 "Green stamp" package]. | TX0000310772 | 5/4/1979 | Publishers Clearing House |
| [Publishers Clearing House]. | TX0000388362 | 5/24/1979 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| One entry in the new Clearing House 3-in-1 sweepstakes could do it :win once! win twice! even win three times. | TX0000348368 | 7/9/1979 | Publishers Clearing House |
| Biggest super prize ever! biggest by-mail sweeps ever!. | TX0000348369 | 7/9/1979 | Publishers Clearing House |
| [79-6 & N. B. number 5 part pay package]. | TX0000332420 | 7/9/1979 | Publishers Clearing House |
| This is real, not a fantasy, make no mistake about that. | TX0000348372 | 7/9/1979 | Publishers Clearing House |
| [79-6 & N. B. number 5 new look/Mead standard/control package]. | TX0000332418 | 7/9/1979 | Publishers Clearing House |
| [79-6 144 titles package]. | TX0000332417 | 7/9/1979 | Publishers Clearing House |
| Win once, win twice, maybe win 3 times!. | TX0000348371 | 7/9/1979 | Publishers Clearing House |
| [79-6 & N. B. number 5 super prize-new look/Mead modified package]. | TX0000332421 | 7/9/1979 | Publishers Clearing House |
| From Publishers Clearing House, new $250,000 super prize. | TX0000348370 | 7/9/1979 | Publishers Clearing House |
| [79-6 & N. B. number 5 trial offer with $1 P & H package]. | TX0000332419 | 7/9/1979 | Publishers Clearing House |
| [79-6X W N L prize check preview std. package]. | TX0000301498 | 8/3/1979 | Publishers Clearing House |
| [79-6X super prize check package]. | TX0000301499 | 8/3/1979 | Publishers Clearing House |
| [Publishers Clearing House fall '79 edition 79-8 "gold seal 1403 package"]. | TX0000343313 | 10/10/1979 | Publishers Clearing House |
| [80-10 & 80-NB10 facts you should know super prize package. | TX0000523269 | 1/8/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 super prize advance announcement III. | TX0000523265 | 1/8/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 guaranteed income [r]prise package. | TX0000523267 | 1/8/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 bonanza super prize test package. | TX0000523266 | 1/8/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 new look 1403--standard package. | TX0000698582 | 1/8/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 facts you should know/triple sweeps package. | TX0000523268 | 1/8/1980 | Publishers Clearing House |
| Publishers Clearing House. | TX0000393267 | 1/11/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 part pay III--eagle stamp package]. | TX0000393214 | 1/11/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 promptness II super prize test package]. | TX0000393212 | 1/11/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 part pay II--picture stamp package]. | TX0000393213 | 1/11/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 guaranteed income/triple sweeps package]. | TX0000393211 | 1/11/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 part pay I--retest package]. | TX0000393210 | 1/11/1980 | Publishers Clearing House |
| [Publishers Clearing House]. | TX0000404927 | 1/28/1980 | Publishers Clearing House |
| Publishers Clearing House. | TX0000430585 | 3/10/1980 | Publishers Clearing House |
| Publishers Clearing House. | TX0000430586 | 3/10/1980 | Publishers Clearing House |
| Advance announcement :newest, biggest triple giveaway ever coming up! Please read carefully. | TX0000712172 | 3/17/1980 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| [80-30 blueprint prize brochure test]. | TX0000441907 | 3/28/1980 | Publishers Clearing House |
| [80-30 pinhole envelope test package]. | TX0000441908 | 3/28/1980 | Publishers Clearing House |
| [80-40 "win it/buy it" (H I) test package]. | TX0000456430 | 4/21/1980 | Publishers Clearing House |
| [80-40 "decisions" w/super prize test package. | TX0000456429 | 4/21/1980 | Publishers Clearing House |
| [80-40 gift label mailing test]. | TX0000456432 | 4/21/1980 | Publishers Clearing House |
| [80-40 green stamp/Mead std package]. | TX0000456431 | 4/21/1980 | Publishers Clearing House |
| [80-50 travellers checks test package]. | TX0000480523 | 5/27/1980 | Publishers Clearing House |
| [80-50 "blow-on seal" test package]. | TX0000480522 | 5/27/1980 | Publishers Clearing House |
| [80-60 France abonnements package. | TX0000511766 | 7/18/1980 | Publishers Clearing House |
| [Advance announcement jumbo postal card]. | TX0000511765 | 7/18/1980 | Publishers Clearing House |
| [80-60 condensed books--free offer package. | TX0000511771 | 7/18/1980 | Publishers Clearing House |
| [80-60 benchmark package. | TX0000511767 | 7/18/1980 | Publishers Clearing House |
| [80-60 golden opportunity/Mead package. | TX0000511769 | 7/18/1980 | Publishers Clearing House |
| [80-60 raffle tickets package. | TX0000511764 | 7/18/1980 | Publishers Clearing House |
| [80-60 treasury checks package. | TX0000511768 | 7/18/1980 | Publishers Clearing House |
| [80-601/3 part pay--new design package. | TX0000511770 | 7/18/1980 | Publishers Clearing House |
| [80-10 & 80-NB10 super prize advance announcement I--CM1525. | TX0000584861 | 11/5/1980 | Publishers Clearing House |
| [Publishers Clearing House spring 1980 edition, 80-10 & 80NB-10 super prize advance announcement II, CM1527] | TX0000592793 | 11/5/1980 | Publishers Clearing House |
| [Spring '81 gold bullion mailing code :HE1590T] | TX0000612692 | 1/13/1981 | Publishers Clearing House |
| [Spring '81 standard advance announcement :HC515/HC515a/HC515b] | TX0000612690 | 1/13/1981 | Publishers Clearing House |
| [Spring 1981 ten times faster promptness test :code HE1594T] | TX0000612693 | 1/13/1981 | Publishers Clearing House |
| [Spring 1981 new look superprize 1403 package :code HE1576T] | TX0000612695 | 1/13/1981 | Publishers Clearing House |
| [Spring '81 mini P C H advance announcement :HC526 form, HE1591T envelope] | TX0000612687 | 1/13/1981 | Publishers Clearing House |
| [Your name is your fortune :card test package : code HE1575T : spring 1981] | TX0000612638 | 1/13/1981 | Publishers Clearing House |
| [Spring 1981 condensed book mailing ridealong test :code HC512/HC512a computer form, HF1118 E-o card] | TX0000612694 | 1/13/1981 | Publishers Clearing House |
| [Spring 1981 advance announcement w/coupon mention :HC517/HC517a/HM1682 coupon/HE1592T envelope] | TX0000612689 | 1/13/1981 | Publishers Clearing House |
| [Spring 1981 advance announcement greeting card package :HC522/HC522a/HC522b] | TX0000612688 | 1/13/1981 | Publishers Clearing House |
| You could be a quarter-millionaire in March! | TX0000612691 | 1/13/1981 | Publishers Clearing House |
| [4-part carbon set package :code HE1597Tcg : spring '81] | TX0000612639 | 1/13/1981 | Publishers Clearing House |
| Publishers Clearing House "Mailbox" :29 sec., 12/17/80. | PAu000262001 | 1/16/1981 | Publishers Clearing House |
| [Spring 1981-80-30 document of registry] | TX0000681494 | 3/23/1981 | Publishers Clearing House |
| [Fall 1981 Std. advance announcement pkg. :code, computer form HC553 : envelope HE16347] | TX0000715401 | 6/23/1981 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| [Fall 1981 TV winner announcement package :code HF1154, HE1623T, RHT:kfd w/flap] | TX0000720662 | 6/30/1981 | Publishers Clearing House |
| [Fall 1981 part-pay emphasized package :code HC554/HC554a, HF1152, H816-99L, ... [et al.]] | TX0000720659 | 6/30/1981 | Publishers Clearing House |
| [Fall 1981 part-pay jumbo stamps package] | TX0000720787 | 6/30/1981 | Publishers Clearing House |
| [Fall 1981 "blue new look" package :code HE1625T and HC546/HC544a] | TX0000720658 | 6/30/1981 | Publishers Clearing House |
| [Fall 1981 interactive TV with ID card package :code HE1623T, HC557/HC554a/w/HC557a card] | TX0000720660 | 6/30/1981 | Publishers Clearing House |
| Publishers Clearing House, America's biggest discount variety :99 magazine values. | TX0000727919 | 6/30/1981 | Publishers Clearing House |
| [Fall '81 "house 10 x faster" standard package :code HE1623T] | TX0000720661 | 6/30/1981 | Publishers Clearing House |
| [Fall 1981 paperback books package :code CM1756, HE1623T, CM1757] | TX0000742787 | 6/30/1981 | Publishers Clearing House |
| Talking mail, number 2. | PAu000321178 | 7/28/1981 | Publishers Clearing House |
| Newstand [sic] | PAu000321179 | 7/28/1981 | Publishers Clearing House |
| Desk. | PAu000321176 | 7/28/1981 | Publishers Clearing House |
| Calendar. | PAu000321177 | 7/28/1981 | Publishers Clearing House |
| [F'81 81-70 test :8 up computer form package] | TX0000766631 | 9/16/1981 | Publishers Clearing House |
| More than 22,000 prizes being offered with this new bargain bulletin. | TX0000828958 | 1/11/1982 | Publishers Clearing House |
| [Double your prize A A test. | TX0000863726 | 1/11/1982 | Publishers Clearing House |
| [7-across stamp sheet, HC570/HC570a comp. form/prod. flyer, HF1191 E-O card, CM1803 prize brochure, CM1804 superprize insert, 821-99A4 stamp sheet, RHT kfp letter, HE1664T envelope] | TX0000829057 | 1/11/1982 | Publishers Clearing House |
| Double your prize (interactive ID card) | TX0000828784 | 1/11/1982 | Publishers Clearing House |
| S'82 update of 81-55AA. | TX0000867679 | 1/11/1982 | Publishers Clearing House |
| Money Look/Mead w/TV/WA. | TX0000867678 | 1/11/1982 | Publishers Clearing House |
| Money Look/1403 version. | TX0000867677 | 1/11/1982 | Publishers Clearing House |
| [Money look/mead w/E-O card, CC577cg/CC577Acg comp. forms, CM1805cg prize brochure, 821-99A stamp sheet, RHT kgh/KFWa/b/c letter/product flyer, HE1688Tcg envelope] | TX0000829056 | 1/11/1982 | Publishers Clearing House |
| S'82 3-part product flyer. | TX0000828778 | 1/11/1982 | Publishers Clearing House |
| [82NB-10 Std., 10X faster, PC571/PC571A computer form/product flyer, PF1182 E-O card, CM1803 prize brochure, CM1804 superprize insert, 821-99B stamp sheet, RHT hwb letter, PE1665T envelope] | TX0000829064 | 1/11/1982 | Publishers Clearing House |
| S'82 10x faster/1403. | TX0000841666 | 1/19/1982 | Publishers Clearing House |
| One of these. | PAu000370943 | 1/19/1982 | Publishers Clearing House |
| [S'82 variety-l22 titles] | TX0000833925 | 1/19/1982 | Publishers Clearing House |
| [S'82 reply envelope test] | TX0000833923 | 1/19/1982 | Publishers Clearing House |
| This one, that one :12/10/81. | PAu000366757 | 1/19/1982 | Publishers Clearing House |
| Publishers Clearing House--Saving money. | PAu000370944 | 1/19/1982 | Publishers Clearing House |
| 180 post announcement "zip-open reminder". | TX0000837457 | 1/25/1982 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 130 82-10 money look/Mead--with coupon. | TX0000837458 | 1/25/1982 | Publishers Clearing House |
| Superprize /Publishers Clearing House. | PAu000416479 | 7/2/1982 | Publishers Clearing House |
| [82-40 "credit card"/mead/directed messages computer form HC605] | TX0000932314 | 7/2/1982 | Publishers Clearing House |
| [82-50 paperback sub. test "A" :comp. form/E-O card HC609] | TX0000932315 | 7/2/1982 | Publishers Clearing House |
| [82-60 DYP-new package/mead w/stampsheet on comp. form :comp. form/E-O card/stamp sheet HC615] | TX0000955472 | 7/15/1982 | Publishers Clearing House |
| Enter the Clearing House sweepstakes. Win up to $250,000.00 all for yourself! | TX0000948147 | 7/15/1982 | Publishers Clearing House |
| [82-60 paperback stampsheet--2/$1 cash up w/choice :comp. form/E-O card HC625cg] | TX0000955469 | 7/15/1982 | Publishers Clearing House |
| [F'82 newspaper insert test :PCH envelope insert solo, brochure HM1891 w/product flyer] | TX0000955471 | 7/15/1982 | Publishers Clearing House |
| [82NB-60 upscale test pkg. "A"/1403 (non-contest) :comp. form/E-O card PF1227] | TX0000955474 | 7/15/1982 | Publishers Clearing House |
| [82-60 next generation money look/mead w/eagle (special extra prize) :comp form/E-O] | TX0000955473 | 7/15/1982 | Publishers Clearing House |
| [82-60 money Look/Mead std. :computer form/E-O card CC607cg] | TX0000955468 | 7/15/1982 | Publishers Clearing House |
| [82NB-60 upscale test pkg. B (non-contest) 1403 :comp. form/E-O card PF1229] | TX0000955470 | 7/15/1982 | Publishers Clearing House |
| 82-60 1/4 part pay, low emphasis, comp form/E-O card HC630cg, part-pay stamp sheet 826-99L11, general letter/3-part product flyer RHT-khw/KHWa/b/c, prize brochure CM1858cg, celebration sweeps insert CM1859cg, reply envelope HR256cg, co-op coupon strip CM1866, envelope HE1704Tcg. | TX0000940100 | 7/15/1982 | Publishers Clearing House |
| [82-60 lifetime sweeps/1403 :comp. form/E-O card HC619] | TX0000955475 | 7/15/1982 | Publishers Clearing House |
| [82-90 gift/1403 standard] | TX0001017081 | 11/22/1982 | Publishers Clearing House |
| [82-70 Meand/tip-on standard] | TX0001017082 | 11/22/1982 | Publishers Clearing House |
| [82-70 credit card package with plastic card] | TX0001017074 | 11/22/1982 | Publishers Clearing House |
| [82-80 decisions/1403 free inspection privilege test] | TX0001017076 | 11/22/1982 | Publishers Clearing House |
| [82-70 credit card package, no card] | TX0001017079 | 11/22/1982 | Publishers Clearing House |
| [82-65 winner's preview checks standard/1403] | TX0001017075 | 11/22/1982 | Publishers Clearing House |
| [82-80 decisions/1403 standard] | TX0001017077 | 11/22/1982 | Publishers Clearing House |
| [82-70 credit card package with perfed [sic] card] | TX0001017080 | 11/22/1982 | Publishers Clearing House |
| [82-62 bonus chances/1403 standard] | TX0001017078 | 11/22/1982 | Publishers Clearing House |
| 83-10 Harlequin solo mlg./1403 "romance style" (free tote bag) :comp. form/E-O card HC689 : product flyer HM2008a/b/c/d/e/f : prize brochure HM2007 : DYP insert HM2011cgb : reply envelope HR297 : miscel. HM2010 : envelope HE1794T. | TX0001052687 | 1/24/1983 | Publishers Clearing House |
| 83-10 million dollar game/Mead. | TX0001110904 | 1/24/1983 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 83-10 money look :directed messages : comp. form/E-O card HC670cg : stamp sheet 831-109A : product flyer HM1976a/b/c: prize brochure CM1968cgA/B/C : DYP insert CM1969 : reply envelope CR280cg : envelope HE1754Tcg. | TX0001052691 | 1/24/1983 | Publishers Clearing House |
| 83-10 third generation money look/1403 :comp. form/E-O card HC678cg : stamp sheet 831-1109A : letter/product flyer RHT:kkiA/KKIb cg : DYP insert HM1981cg : reply envelope HR287cg : envelope HE1772Tcg. | TX0001052689 | 1/24/1983 | Publishers Clearing House |
| 83-11 "zip-open reminder" post announcement. | TX0001110898 | 1/24/1983 | Publishers Clearing House |
| 83-10 1MM annuity (sweepstakes tickest) [sic] Mead :comp. form/E-O card HC679A/B/C/D/E/F : stamp sheet 831-110A9 : letter/product flyer RHT:kkjA/KKJb/c/d : prize brochure HM1982A/B/C : reply envelope HR288 : miscel. HM1983 : envelope HE1773T. | TX0001052688 | 1/24/1983 | Publishers Clearing House |
| 83-10 "win a million" money look/Mead (no D Y P) | TX0001110900 | 1/24/1983 | Publishers Clearing House |
| 83-10 D Y P-ID w/explanation. | TX0001110902 | 1/24/1983 | Publishers Clearing House |
| 83-10PCH identity/image :comp. form/E-O card CC668cg : stamp sheet 831-109A, letter/product flyer RHT:kkxA/KJRb/c/d, prize brochure HM2001cgA/B/C, reply envelope HR290cg, envelope HE1783Tcg. | TX0001110905 | 1/24/1983 | Publishers Clearing House |
| 83-05 "tip-on label" advance announcement. | TX0001110901 | 1/24/1983 | Publishers Clearing House |
| 83-10 DYP-2MM in prizes/Mead :comp. form/E-O card HC683 : stamp sheet 831-110A9 : letter/product flyer RHT:kkyA/KKYb/c/d : prize brochure HM1999A/B : reply envelope HR291 : free trial insert HM1984 : envelope HE1788T. | TX0001052686 | 1/24/1983 | Publishers Clearing House |
| 83-10 money look/Mead standard :comp. form/E-O card CC668cg : stamp sheet 831-109A : letter/product flyer RHT:kjrA/KJRb/c/d : prize brochure CM1968cgA/B/C : DYP insert CM1969 : reply envelope CR280cg : envelope HE1754Tcg. | TX0001052690 | 1/24/1983 | Publishers Clearing House |
| 83-10 credit card-directed messages/Mead (perfed card) | TX0001110903 | 1/24/1983 | Publishers Clearing House |
| 83-10 Harlequin solo M L G/Mead "P C H style" (free tote bag) | TX0001110899 | 1/24/1983 | Publishers Clearing House |
| 83-15 & 83PHD-18 MOD ELK/1403, comp. form HC694, E-O card HF1267, prize brochure HM2016, stamp sheet 831-79C, product flyer HM2027, gen. letter/SP piece/DYP insert RHT:klhA/KLHb/c, elk carrier HM2015, envelope HE1799T. | TX0001097848 | 3/14/1983 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 83-12 "registry"/1403 STD, comp. form/product flyer HC690a/HC690b, E-0 card HF1262, prize brochure HM2013, stamp sheet 831-109A, DYP insert HM2012, general letter RHT-klc, envelope HE1796T. | TX0001082696 | 3/14/1983 | Publishers Clearing House |
| 83-20 MEAD TIP-ON STD. with $67M TV bonus & with TV-WA, comp. form/gen. letter HC710a/b, E-O card HF1272, prize brochure HM2045A/B, stamp sheet 832-79E, product flyer HM2046, DYP insert HM2047, envelope tip on HM2044, envelope HE1815T. | TX0001097849 | 3/14/1983 | Publishers Clearing House |
| 83-40 perfed credit card std./Mead :comp. form/E-O device/letter HC716A/B, prize brochure HM2062A/B, stamp sheet 834-67G ... [et al.] | TX0001133289 | 5/23/1983 | Publishers Clearing House |
| 83-30 one-timer "bingo number 1" to one-timers/Mead. | TX0001196827 | 5/23/1983 | Publishers Clearing House |
| 83-30 "bingo number 1" to repeat buyers/Mead. | TX0001196828 | 5/23/1983 | Publishers Clearing House |
| 83-60 P C H Association :high emphasis with purchase. | TX0001206830 | 7/13/1983 | Publishers Clearing House |
| 83-60 all out product hard sell (money look) | TX0001206831 | 7/13/1983 | Publishers Clearing House |
| 83-60 pick your own prize number--$67M (money look) | TX0001151431 | 7/13/1983 | Publishers Clearing House |
| 83-60 pick your own prize number--no assigned numbers (money look) | TX0001151564 | 7/13/1983 | Publishers Clearing House |
| 83-60 double/triple/quadruple your prize/Mead. | TX0001151563 | 7/13/1983 | Publishers Clearing House |
| 83-60 $2MM annuity/Mead. | TX0001151430 | 7/13/1983 | Publishers Clearing House |
| 83-60 free inspection privilege. | TX0001151561 | 7/13/1983 | Publishers Clearing House |
| 83-50 raffle tickets std./1403. | TX0001151552 | 7/13/1983 | Publishers Clearing House |
| 83-61 post announcement "zip-open reminder." | TX0001151560 | 7/13/1983 | Publishers Clearing House |
| 83-60 money look std./Mead. | TX0001151555 | 7/13/1983 | Publishers Clearing House |
| 83-60 P C H Association :low emphasis without purchase. | TX0001151556 | 7/13/1983 | Publishers Clearing House |
| 83-60 Harlequin solo mlg. "P C H style"/1403. | TX0001151553 | 7/13/1983 | Publishers Clearing House |
| 83-60 $1,000-a-day/1403. | TX0001151562 | 7/13/1983 | Publishers Clearing House |
| 83-60 you can win both/Mead. | TX0001151429 | 7/13/1983 | Publishers Clearing House |
| 83-60 all out competitive/1403. | TX0001151554 | 7/13/1983 | Publishers Clearing House |
| 83-60 $4MM in prizes/Mead (money look) | TX0001151558 | 7/13/1983 | Publishers Clearing House |
| 83-60 pick your own prize number--extra chance to win (money look) | TX0001151557 | 7/13/1983 | Publishers Clearing House |
| F'83 newspaper insert. | TX0001151559 | 7/13/1983 | Publishers Clearing House |
| 83-90 "Gift"/1403 std. :computer form/letter HC777, E-O card HF1289, stamp sheet 839-108S, prize brochure HM3084, DYP insert HM3085, outer envelope HE1904T. | TX0001245380 | 12/7/1983 | Publishers Clearing House |
| 83-65 Lifetime prizes/1403 std :entry-order/computer form HC760, stamp sheet 836-Mcg, letter/product flyer RHT:knlA/KNLb/c, prize brochure HM3047A/B, DYP insert HM3054, celebration sweeps HM3055Ccg, reply envelope HR366, envelope HE1879T. | TX0001245379 | 12/7/1983 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 83-80 Credit card linkage tests (A-1, A-2, A-3, B-1) :computer form/letter/E-O form/DYP HC779a/b/c or HC780a/b/c, prize brochure HM3101, stamp sheet 838-84R1 or 838-84R2, product flyer HM3082, RHT note/2nd product flyer HM3074a/b, reply envelope HR395A-1 or HR396, miscellaneous HM3088, outer envelope HE1908T. | TX0001245376 | 12/7/1983 | Publishers Clearing House |
| 83-80 Credit card std. :computer form/letter/E-O form/DYP HC767a/b/c, prize brochure HM3083, stamp sheet 838-86R, product flyer HM3082, RHT note/2nd product flyer HM3074a/b, reply envelope HR377, outer envelope HE1894T. | TX0001245375 | 12/7/1983 | Publishers Clearing House |
| 83-70 Linkage tests :computer forms HC775A-F, stamp sheets 837-97P6 or 837-97P7, letter/product flyer RHT:kpcA/KNRb/c, prize brochure/major prize support HM3064A/B, reply envelope HR385A-1 or HR387, game card HM3080, request sample insert HM3063, envelope HE1899T. | TX0001245373 | 12/7/1983 | Publishers Clearing House |
| 83-62 "Bonus chances"/1403 std. :computer form/prize brochure HC750a/b, stamp sheet 836-99L18cg, product flyer HM3041a/b/c, general letter RHT:kng, double your prize HM3040, reply envelope HR351, envelope HE1868T. | TX0001245374 | 12/7/1983 | Publishers Clearing House |
| 83-70 Double entry/1403 :computer form/DYP/E-O card HC765cgA/B, stamp sheet 837-97P9, letter RHT:knuA, prize brochure/major prize support HM3046A/B, bonus prize support HM3062, reply envelope HR375cgA/B, DYP insert HM3075, envelope HE1888Tcg. | TX0001245377 | 12/7/1983 | Publishers Clearing House |
| 83-80 directed message--regional titles (map) | TX0001245393 | 12/7/1983 | Publishers Clearing House |
| 83-66 10X faster/1403 std :computer form/product flyer PC762A/B, entry-order card PF1284, stamp sheet 837-99N, prize brochure PM3066, letter RHT:hxuA/HXUb, DYP insert PM3067, prize support PM3069, envelope PE1880T. | TX0001245378 | 12/7/1983 | Publishers Clearing House |
| 83-70 $1MM annuity/Mead std. | TX0001245752 | 12/8/1983 | Publishers Clearing House |
| 84-05 advance announcement. | TX0001267757 | 1/18/1984 | Publishers Clearing House |
| 84-10 mini package, "Kitchen sink"/1403. | TX0001267760 | 1/18/1984 | Publishers Clearing House |
| 84-10 pick your own prize number--new package. | TX0001267799 | 1/18/1984 | Publishers Clearing House |
| 84-10 free inspection privilege emphasized. | TX0001267853 | 1/18/1984 | Publishers Clearing House |
| 84-10 money look w/Canadian graphics :computer form/E-O certificate HC796cg. | TX0001288424 | 1/18/1984 | Publishers Clearing House |
| 84-10 money look directed messages. | TX0001267758 | 1/18/1984 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 84-10 double annuity :computer form/E-O certificate HC787. | TX0001290893 | 1/19/1984 | Publishers Clearing House |
| 84-10 money look/Mead std. :computer form/E-O certificate CC786cg. | TX0001290892 | 1/19/1984 | Publishers Clearing House |
| 84-10 $1,000,000 annuity w/o explanation :computer form/E-O certificate HC804cgA/B. | TX0001290894 | 1/19/1984 | Publishers Clearing House |
| 84-10 punch card for double/quadruple :computer form/E-O certificate HC788. | TX0001290895 | 1/19/1984 | Publishers Clearing House |
| S'84 Harlequin new package. | TX0001269184 | 1/20/1984 | Publishers Clearing House |
| S'84 Harlequin solo mailing "P C H" style/1403 std. | TX0001269185 | 1/20/1984 | Publishers Clearing House |
| 84-12 decisions/1403 S T D. | TX0001273556 | 1/30/1984 | Publishers Clearing House |
| 84-11 post announcement/response graphics. | TX0001273555 | 1/30/1984 | Publishers Clearing House |
| 84-15 RE-MOD ELK/1403 STD.--computer form/E-O certificate/letter/tip-on label HC808a/b/TO-063, prize brochure/Elk card HM3164, stamp sheet 841-91Ccg, product flyer HM 3165A/B, bonus insert HM3186, reply envelope HR429, envelope HE1967T. | TX0001324289 | 3/7/1984 | Publishers Clearing House |
| 84-20 tip-on directed message package test. | TX0001324311 | 3/7/1984 | Publishers Clearing House |
| 84-20 $1,000-a-day/1403 STD. | TX0001498427 | 3/8/1984 | Publishers Clearing House |
| Publishers Clearing House high energy hard sell, 1 :piano/synthesizer. | PAu000610445 | 4/27/1984 | Publishers Clearing House |
| Lifetime prizes/1403 :84-30 STD. | TX0001339630 | 5/9/1984 | Publishers Clearing House |
| [84-22 tip-on NB opens & one-timer quick follow-up number 1--computer form/E-O certificate/letter/DYP seal HC821a/b, stamp sheet 842-79E1cg, prize brochure CM3207A/B, product flyer HM3190A/B, reply envelope CR443, miscellaneous HM3204, HM3208, envelope HE1986T, tip-on HM3209]. | TX0001376275 | 5/10/1984 | Publishers Clearing House |
| 84-40 10X Faster/Mead std :computer form HC830, E-O card HF1306, stamp sheet 844-79Gcg, letter/product flyer RHT : KrwA/KRWb/c, prize brochure HM3220, DYP insert HM3221, envelope HE1992T. | TX0001340063 | 5/11/1984 | Publishers Clearing House |
| 84-50 "regional map" Mead/Std. :14 new prize no. enclosed for .... | TX0001350318 | 5/23/1984 | Publishers Clearing House |
| 84-60 double annuity standard. | TX0001410425 | 6/22/1984 | Publishers Clearing House |
| 84-60 instant millionaire. | TX0001377520 | 6/28/1984 | Publishers Clearing House |
| 84-61 test :post announcement/communicolor. | TX0001380871 | 7/2/1984 | Publishers Clearing House |
| 84-61 post announcement STD./response graphics. | TX0001400246 | 7/31/1984 | Publishers Clearing House |
| 84-62 std :million dollar annuity. | TX0001402100 | 8/6/1984 | Publishers Clearing House |
| 84-70-20/21/22/23/24/25/26/27 double annuity questionnaire test(s) :computer form HC880 or HC888, stamp sheet 847-99P3cg, letter/product flyer RHT:ktjA/KTAb/c ... [et al.] | TX0001444584 | 9/14/1984 | Publishers Clearing House |
| 84-70-12 double annuity :new presentation of F I P. | TX0001428773 | 9/14/1984 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 84-70-08 $1MM certified check :computer form HC866 : stamp sheet 847-99P1 : letter/prize broch. : RHT:ksuA/b/c/d : product flyer HM3334a/b : questionnaire HM3340 : quadruple insert HM3290 : reply envelope HR496 : stamp on outer env. HM3288 : envelope HE2046T. | TX0001461652 | 9/14/1984 | Publishers Clearing House |
| 84-70-01 money look. | TX0001428787 | 9/14/1984 | Publishers Clearing House |
| 84-70-13 claim warrant (CW-70) :computer form HC867A/B/C/D, stamp sheet 847-99P2cg, ELK/prize brochure HM3300 ... [et al.] | TX0001444587 | 9/14/1984 | Publishers Clearing House |
| 84-65-01 FIP emphasized std. :computer form HC865cg, stamp sheet 846-89M, letter/product flyer RHT:ksyA/KSYb/c/d/e ... [et al.] | TX0001444586 | 9/14/1984 | Publishers Clearing House |
| 84-80 map regional std. | TX0001454300 | 11/2/1984 | Publishers Clearing House |
| 84-70 test, money look 21" form w/directed messages. | TX0001454350 | 11/2/1984 | Publishers Clearing House |
| 84-90 "Gift" std. :computer form/letter HC893, stamp sheet 849-109S, E-O certificate HF1321, ... [et al.] | TX0001462103 | 11/13/1984 | Publishers Clearing House |
| 84-90 test :triple entry gift mailing/1403. | TX0001495986 | 1/16/1985 | Publishers Clearing House |
| 85-10-01 S T D :$2MM hardsell annuity. | TX0001509897 | 1/31/1985 | Publishers Clearing House |
| 85-12-01 STD :RE-MOD ELK/1403. | TX0001511338 | 1/31/1985 | Publishers Clearing House |
| 85-10-11 test :total satisfaction, computer form C915A/B, stamp sheet 85A112, prize brochure/E-O, form M3404a/b/c, refund postage insert M3420, reply envelope R557, product flyer M3410a/bc/d, outer envelope E2093T. | TX0001540479 | 1/31/1985 | Publishers Clearing House |
| 85-10-10 test :map modified. | TX0001534188 | 1/31/1985 | Publishers Clearing House |
| 85-10-06 test :$10/M off. | TX0001511337 | 1/31/1985 | Publishers Clearing House |
| 85-10-12 test :promptness D Y P : double your prize insert M3407cg. | TX0001509899 | 1/31/1985 | Publishers Clearing House |
| 85-10-07 text :pre-emptive hardsell. | TX0001511709 | 2/1/1985 | Publishers Clearing House |
| 85-10-13 test :product sell--computer form/E-O card C919, stamp sheet 85A109. | TX0001511666 | 2/1/1985 | Publishers Clearing House |
| 85-10-20 test :$10 million dollars--computer form/E-O C894cgA/B/C, stamp sheet 85A100. | TX0001511703 | 2/1/1985 | Publishers Clearing House |
| 85-05-03 test :advance announcement customer award. | TX0001521099 | 2/13/1985 | Publishers Clearing House |
| 85-05-01 STD :advance announcement. | TX0001521098 | 2/13/1985 | Publishers Clearing House |
| Pared down contest structure :85-15-03 test. | TX0001524679 | 2/19/1985 | Publishers Clearing House |
| 84-05-04 test :advance announcement $10 million dollars. | TX0001598655 | 2/19/1985 | Publishers Clearing House |
| Instant winner/interactive TV :85-10-21 test. | TX0001524652 | 2/19/1985 | Publishers Clearing House |
| Lifetime prizes/Mead :85-15-01 STD. | TX0001524698 | 2/19/1985 | Publishers Clearing House |
| 85-12-03 test :84-70 certified check/backtest of $1MM cash. | TX0001524788 | 2/19/1985 | Publishers Clearing House |
| Proof of purchase :85-15-04 test. | TX0001524651 | 2/19/1985 | Publishers Clearing House |
| Bantam 85-10-01 std "P C H style"/M E A D. | TX0001525850 | 2/21/1985 | Publishers Clearing House |
| Bantam 85-10-03 :Bantam style test/mead. | TX0001527546 | 2/22/1985 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| Public places 85-10 number 2 :Ebsco style w/P C H product-related propositions (no contest) : 1403 label name & address. | TX0001591932 | 2/22/1985 | Publishers Clearing House |
| Public places 85-10 number 3 :P C H style with contest/mead. | TX0001591931 | 2/22/1985 | Publishers Clearing House |
| Public places 85-10-number1B :basic EBSCO style (no contest) with 1/4 part pay, 1403 label name & address. | TX0001528206 | 2/25/1985 | Publishers Clearing House |
| Bantam 85-10-02: PCH style w/mystery gift insert--mystery gift insert M3448. | TX0001528293 | 2/25/1985 | Publishers Clearing House |
| 85-22-01 $2MM annuity sweepstakes tickets/Mead :computer form C945a/b/c/d/e/f, stamp sheet 85I129, letter/flyer RHT:iagA/IAFb/c/d, prize brochure M3471, reply envelope R598, outer envelope E2134T. | TX0001543906 | 3/21/1985 | Publishers Clearing House |
| 85-10-08 test :"giant jackpot." | TX0001636716 | 3/21/1985 | Publishers Clearing House |
| 85-22-01 "FIP emphasized"/Mead :computer form C939cg, stamp sheet 85H126, letter/flyer RHT:kvrA/KVRb/c, prize brochure M3461cg, reply envelope R592cg, envelope E2128Tcg. | TX0001543907 | 3/21/1985 | Publishers Clearing House |
| Public places 85-10-number 1A basic EBSCO style (no contest) no part-pay. | TX0001551149 | 4/1/1985 | Publishers Clearing House |
| Double annuity :85-30-01 STD. | TX0001557370 | 4/10/1985 | Publishers Clearing House |
| 85-30-07 test, instant winner. | TX0001726958 | 4/11/1985 | Publishers Clearing House |
| 85-30-04/05 tests :seasonal bias, $10M already awarded. | TX0001590262 | 4/11/1985 | Publishers Clearing House |
| 85-30-06 test :$10M annuity, superprize all for you. | TX0001590263 | 4/11/1985 | Publishers Clearing House |
| 85-40-05 test :discount voucher format product flyer. | TX0001569187 | 5/1/1985 | Publishers Clearing House |
| 85-40-01 STD :certified checks/$500M cash/mead : computer form C968, stamp sheet 85K141, letter/prize brochure RHT:kwfA/B/C/D, product flyer M3489, $500M insert M3488, reply envelope R630, tip-on $500M stamp M3505, titralac dollar insert M3505, envelope E2127T. | TX0001569065 | 5/1/1985 | Publishers Clearing House |
| 85-40-10 test :scratch off eligibility. | TX0001569170 | 5/1/1985 | Publishers Clearing House |
| 85-40-06 test :certified checks as annuities. | TX0001569188 | 5/1/1985 | Publishers Clearing House |
| 85-50-03/04 tests :best customer award (non-adv. announcement) : computer form C977, stamp sheet 85L148, product flyer M3532, letter RHT:kwq, reply envelopes R630 or R632, bonus inserts M3531 or M3535, envelope E2166T. | TX0001574818 | 5/8/1985 | Publishers Clearing House |
| 85-50-05/06 tests :best customer award (non-adv. announcement) : computer form C976, stamp sheet 85L147, product flyer M3533, letter RHT:kwp, reply envelopes R629 or R633, bonus insert M3530 or M3536, envelope E2165T. | TX0001574824 | 5/8/1985 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 85-50-01 STD :money look w/directed message/Mead : computer form C971a/b, stamp sheet 85L134, prize brochure M3516a/b, product flyer M3524, DYP insert M3515, lift note M3517, reply envelope R624, envelope E2160T. | TX0001574817 | 5/8/1985 | Publishers Clearing House |
| 85-60-04 test :enhanced certified check as an annuity ($2MM) | TX0001622361 | 7/26/1985 | Publishers Clearing House |
| 85-60-01 STD :hardsell annuity. | TX0001624224 | 7/29/1985 | Publishers Clearing House |
| 85-60-12 test :instant winner for $1,000.00. | TX0001625552 | 7/29/1985 | Publishers Clearing House |
| 85-60-07 test :"gold blast" ($2MM superprize) | TX0001623533 | 7/29/1985 | Publishers Clearing House |
| 85-60-05 test :pick-a-number ($10MM) | TX0001626694 | 7/29/1985 | Publishers Clearing House |
| 85-60-16 test :$25M lucky ID number. | TX0001625550 | 7/30/1985 | Publishers Clearing House |
| 85-62-01 STD :giant jackpot/mead--computer form C987, stamp sheet 85M145, letter/flyer RHT:kxdA/KWOb/c/d/e, prize brochure/promptness M3553a/b, reply envelope R642,envelope E2194T. | TX0001627273 | 7/30/1985 | Publishers Clearing House |
| 85-60-15 test :$10MM superprize all for you. | TX0001625551 | 7/30/1985 | Publishers Clearing House |
| 85-60-03 test :the "token" package--computer form C993cgA/B, stamp sheet 85M152, letter/flyer RHT:kxpA/KWOb/c/d/e, prize brochure/form/questionnaire M3579A/B, celebration sweeps M3528, reply envelope R658cg, token M3563cg, envelope E2201Tcg. | TX0001627272 | 7/30/1985 | Publishers Clearing House |
| 85-60-14 test :scratch-off eligibility. | TX0001633038 | 7/31/1985 | Publishers Clearing House |
| 85-65-01 STD FIP EMPHASIZED. | TX0001634075 | 8/6/1985 | Publishers Clearing House |
| 85-65-05 test :flag mailing. | TX0001635815 | 8/12/1985 | Publishers Clearing House |
| 85-66-01 S T D :certified checks ($500M cash) | TX0001640585 | 8/21/1985 | Publishers Clearing House |
| 85-61-01 S T D :post announcement/communicolor package. | TX0001640606 | 8/21/1985 | Publishers Clearing House |
| 85-70-01 STD :$2MM annuity certified checks. | TX0001641699 | 8/22/1985 | Publishers Clearing House |
| F'85 catalog clearing house :1/4 part pay. | TX0001749093 | 1/29/1986 | Publishers Clearing House |
| $2MM annuity certified checks/U N I C E F cards :85-70-06. | TX0001745957 | 1/29/1986 | Publishers Clearing House |
| 85-75-01 "best customer award". | TX0001749092 | 1/29/1986 | Publishers Clearing House |
| F'85 catalog Clearing House cash or credit card. | TX0001749690 | 1/29/1986 | Publishers Clearing House |
| 5-90-01 STD :gift mailing--computer form letter C1027, ... [et al.] | TX0001749130 | 1/29/1986 | Publishers Clearing House |
| 85-80-01 STD :scratch-off eligibility. | TX0001749091 | 1/29/1986 | Publishers Clearing House |
| Efficient $2MM annuity certified check :85-70-03 test. | TX0001745956 | 1/29/1986 | Publishers Clearing House |
| S'85 birthday mailing :new birthday package test. | TX0001781949 | 3/10/1986 | Publishers Clearing House |
| 86-05-01 std :advance announcement best customer award. | TX0001784795 | 3/13/1986 | Publishers Clearing House |
| 86-10-05 test :discover the winner in you. | TX0001784793 | 3/13/1986 | Publishers Clearing House |
| 86-10-09 test :simple package. | TX0001788026 | 3/13/1986 | Publishers Clearing House |
| 86-10-03 test :ten winners. | TX0001784796 | 3/13/1986 | Publishers Clearing House |
| 86-10-01 std :$10MM hardsell annuity. | TX0001784797 | 3/13/1986 | Publishers Clearing House |
| 86-10-06 test :treasure hunt. | TX0001784792 | 3/13/1986 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 86-11-01 Std :post announcement/communicolor. | TX0001784791 | 3/13/1986 | Publishers Clearing House |
| 86NB-10-23 test :scratch-off eligibility w/one giant annuity. | TX0001788027 | 3/13/1986 | Publishers Clearing House |
| 86-10-04 test :new $10MM map. | TX0001788025 | 3/13/1986 | Publishers Clearing House |
| 85-78-01 std :$2MM hardsell annuity. | TX0001784794 | 3/13/1986 | Publishers Clearing House |
| 86-12-01 STD, RE-MOD ELK/1403. | TX0001788869 | 3/25/1986 | Publishers Clearing House |
| You may have already won :86-20-04 test. | TX0001785389 | 3/25/1986 | Publishers Clearing House |
| 86-15-01 STD :giant jackpot. | TX0001788741 | 3/25/1986 | Publishers Clearing House |
| Lifetime prizes :86-20-01 STD. | TX0001786565 | 3/26/1986 | Publishers Clearing House |
| 86-28-01 STD :$10mm hardsell annuity. | TX0001796897 | 3/27/1986 | Publishers Clearing House |
| Special control--$10MM hardsell annuity :86-40-06. | TX0002005536 | 2/26/1987 | Publishers Clearing House |
| Small pewter eagle (cert. checks) :86-30-09. | TX0002005654 | 2/26/1987 | Publishers Clearing House |
| Scratch-off eligibility :86-40-01 STD. | TX0002023390 | 2/27/1987 | Publishers Clearing House |
| 86-30-14 test :recognition award, computer form C1086. | TX0002023501 | 2/27/1987 | Publishers Clearing House |
| Fast fifty dollars, 86-30-18 test, (cert. checks)--computer form C1095a/b; stamp sheet 86I216 :letter/telegram/prize brochure RHT : lbkA/KZUb/c; product flyer/quest. M3734a/b; deal of month M3753; reply envelope R781; cash voucher M3765; win $10mm stamp M3660; envelope E233OT. | TX0002027243 | 2/27/1987 | Publishers Clearing House |
| 86-50-03 test :super promptness. | TX0002020799 | 3/2/1987 | Publishers Clearing House |
| 86-30-12 test :fast fifty pre-selected (cert. checks) | TX0002028244 | 3/2/1987 | Publishers Clearing House |
| 86-55-01 STD :best customer award, computer form C1102. | TX0002020623 | 3/2/1987 | Publishers Clearing House |
| 86-50-01 STD. flag mailing. | TX0002013612 | 3/2/1987 | Publishers Clearing House |
| 86-30-01 STD :$10MM certified checks. | TX0002028245 | 3/2/1987 | Publishers Clearing House |
| Hardsell annuity w/spokesperson :computer form C1125cgA/B/C : stamps 86L250 letter/flyer RHT : lcba/LBPb-e : prize brochure/flyers M3812a/b/c instant winner insert M3778, reply envelope R814cg lift note M3813, label M3817, envelope E2346Tcg. | TX0002026011 | 3/11/1987 | Publishers Clearing House |
| New gift package/Mead :86-90-06 test. | TX0002031533 | 3/12/1987 | Publishers Clearing House |
| 86-60-07 test :hardsell annuity w/insta-moneymania. | TX0002099776 | 3/13/1987 | Publishers Clearing House |
| Treasure hunt w/spokesperson :86-60-03 test. | TX0002033247 | 3/13/1987 | Publishers Clearing House |
| 86-60-11 test :flag package. | TX0002028968 | 3/13/1987 | Publishers Clearing House |
| 86-90-01 STD :gift/1403. | TX0002099777 | 3/13/1987 | Publishers Clearing House |
| 86-70-15 test :President's Club overlay on treasure hunt. | TX0002029401 | 3/13/1987 | Publishers Clearing House |
| 86-60-09 test :ten ways to win. | TX0002028967 | 3/13/1987 | Publishers Clearing House |
| 86-60-14 test :enhanced simple, computer form C111cg. | TX0002025970 | 3/13/1987 | Publishers Clearing House |
| Enhanced treasure hunt :86-60-13 test. | TX0002032032 | 3/13/1987 | Publishers Clearing House |
| 86-10-01 std :$10MM hardsell annuity. | TX0002030166 | 3/16/1987 | Publishers Clearing House |
| 86-60-10 test :lotto envelope. | TX0002030167 | 3/16/1987 | Publishers Clearing House |

| Full Title | Registration Number | Registration Date | Claimant |
|---|---|---|---|
| 86-62-01 std :enhanced simple package. | TX0002025377 | 3/18/1987 | Publishers Clearing House |
| 86-65-01 STD :lifetime prizes. | TX0002041018 | 3/18/1987 | Publishers Clearing House |
| Lifetime prizes/new stamp sheet design :86-65-03 test. | TX0002031473 | 3/18/1987 | Publishers Clearing House |
| 86-78-01 std :$10MM hardsell annuity. | TX0002025378 | 3/18/1987 | Publishers Clearing House |
| 86-70-01 STD :new enhanced treasure hunt. | TX0002017448 | 3/18/1987 | Publishers Clearing House |
| 87-10-31 test :contest test A with spokesperson | TX0002175350 | 5/20/1987 | Publishers Clearing House |
| 86-80-05 test :super promptness w postmarket. | TX0002080908 | 5/21/1987 | Publishers Clearing House |
| 87-05-07 test small gift calendar. | TX0002077899 | 5/21/1987 | Publishers Clearing House |
| 87-10-01 STD. S'resident MLG. computer form/E-O/non-order C1202 cgA/B/C. | TX0002073758 | 5/21/1987 | Publishers Clearing House |
| Super promptness :86-80-01 std. | TX0002078670 | 5/21/1987 | Publishers Clearing House |
| 87-10-01 STD :TV/CD comp. form E-O/non-order C1172cgA/B/C. | TX0002073756 | 5/21/1987 | Publishers Clearing House |
| 87-22-01 std :simple w/fast fifty. | TX0002175351 | 5/21/1987 | Publishers Clearing House |
| 87-11 STD :post announcement/communimailer. | TX0002079605 | 5/21/1987 | Publishers Clearing House |
| 87-10-07 test :cream the marketplace 3-frees--comp. form, comp. form C1193cg. | TX0002073757 | 5/21/1987 | Publishers Clearing House |
| 87-05-05 test :lifetime prizes as adv. ann. comp. | TX0002079664 | 5/21/1987 | Publishers Clearing House |
| 87-05-01 STD :advance announcement "best customer award," computer form C1170. | TX0002073760 | 5/21/1987 | Publishers Clearing House |
| 87-28-01 STD :treasure hunt. | TX0002079625 | 5/21/1987 | Publishers Clearing House |
| 87-10-08 test. | TX0002079606 | 5/21/1987 | Publishers Clearing House |
| 87-10-28 test :first 1000 entries free. | TX0002079626 | 5/21/1987 | Publishers Clearing House |
| 87-20-01 STD :simple President's Club. | TX0002080743 | 5/21/1987 | Publishers Clearing House |
| 87-10-11 test :simple updated w/fast fifty. | TX0002099775 | 5/21/1987 | Publishers Clearing House |
| 87-05-08 test :comp. form C1185. | TX0002080906 | 5/21/1987 | Publishers Clearing House |
| Comp. form/E. O. card/non-order :87-10-09 test. | TX0002078671 | 5/21/1987 | Publishers Clearing House |
| 87-15-01 std :$10MM certified check w, fast fifty preselected. | TX0002080907 | 5/21/1987 | Publishers Clearing House |
| 87-10-13 test :simplified TREAS. HUNT-comp. form. E-O C1175cgA/BC. | TX0002073759 | 5/21/1987 | Publishers Clearing House |
| 87-20-10 test :simple president's club, the more you enter the better your chances : comp. form/E-O C1235cg. | TX0002073755 | 5/21/1987 | Publishers Clearing House |
| 87-10-23 test :money in the mail. | TX0002080904 | 5/21/1987 | Publishers Clearing House |
| 87-05-09 test :adv. ann. small gift recipe card. | TX0002078649 | 5/21/1987 | Publishers Clearing House |
| 87-10-24 test :interactive TV/$1MM winner. | TX0002080905 | 5/21/1987 | Publishers Clearing House |
| 87-10-06 test, cream the marketplace, free home trial label. | TX0002079579 | 5/21/1987 | Publishers Clearing House |
| 87-10-12 test :simple/prize that grows. | TX0002099774 | 5/21/1987 | Publishers Clearing House |
| 87-10-26 test :free home trial, version B 2. | TX0002079665 | 5/22/1987 | Publishers Clearing House |
| 86-10-06 test :free home trial vers. A 2-stamp limit. | TX0002081211 | 5/28/1987 | Publishers Clearing House |
| 87-10-03 test. | TX0002084790 | 6/8/1987 | Publishers Clearing House |
| The Study of magazine buying patterns. | TX0003215644 | 12/18/1991 | Publishers Clearing House |
| [No title on deposit] | VA0001801482 | 12/23/2011 | Publishers Clearing House LLC |

<u>Annex 4.10(a)(i)(D)</u>

Domain Name Registrations

| | |
|---|---|
| publisherclearinghouselotto.net | pchdigital.com |
| publisherclearinghousetexting.net | pchdigital.net |
| publisherclearinghousetextme.net | publishersclearinghousedigital.com |
| publishersclearinghouselotto.net | publishersclearinghousedigital.net |
| publishersclearinghousetexting.net | campussubscriptions.net |
| publishersclearinghousetextme.net | mypch.com |
| news-candystand.com | mypch.net |
| livetowinslots.com | mypch.org |
| livetowinslots.net | pchlottoonline.net |
| pchinstantwin.com | pchlottoonline.org |
| pchinstantwin.net | publisher-clearinghouse.org |
| pchinstantwincard.com | prizecoin.com |
| pchinstantwincards.com | pchsearchandwin.com |
| pchinstantwins.com | publishers-clearinghouse-search-and-win.com |
| pchscratchcard.com | otherwaystowin.com |
| pchscratchcard.net | otherwaystowin.net |
| pchscratchcards.com | pchcommunity.com |
| pchscratchcards.net | pchcommunity.net |
| publishersclearinghouseinstantwin.com | pchotherwaystowin.com |
| publishersclearinghouseinstantwin.net | pchotherwaystowin.net |
| publishersclearinghousescratchcard.com | pchwinningways.com |
| publishersclearinghousescratchcard.net | pchwinningways.net |
| publishersclearinghousescratchcards.com | bigchipscasino.com |
| publishersclearinghousescratchcards.net | bigchipscasino.net |
| livetowincasino.com | bigchipscasino.org |
| pchmail.com | pchcasino.net |
| pchlottery.com | pchcasino.org |
| pchinstantwingame.com | pickaprizecasino.com |
| pchinstantwingame.net | pickaprizecasino.net |
| pchinstantwingames.com | pickaprizecasino.org |
| pchjackpot.com | rakeitincasino.com |
| pchjackpot.net | rakeitincasino.net |
| pchjackpotreward.com | rakeitincasino.org |
| pchjackpotreward.net | insidepch.com |
| pchjackpotrewards.com | realbucks.tv |
| pchjackpotrewards.net | pchcontact.com |
| pchjackpots.com | pchenter.com |
| pchjackpots.net | pchspacead.com |
| pchonlinegames.com | pchtv.com |
| myvalueexpress.com | freewinisp.com |
| pch-digital.com | freewinisp.net |
| pch-digital.net | pchfree.com |

pchfreemoney.com
pchmediahub.com
pchmediahub.net
pchmediahub.org
pchmillion.com
pchmoney.com
winfreeisp.com
winfreeisp.net
pchassets.com
pchassets.net
pchassets.org
funtank.com
pchcoupons.com
pchcoupons.net
pchmags.com
pchmags.net
pchmags.org
pchcareers.com
pchcareers.net
pchcareers.org
publisherclearinghouse.net
publisherclearinghouse.org
prepaidcardnow.mobi
topixcdn.com
5000aweekforever.com
5000aweekforever.net
5000aweekforever.org
infopchgames.com
infopchgames.net
infopchgames.org
pch-sweepstakes.com
pch-sweepstakes.net
pch-sweepstakes.org
sweepstakesofficial.com
sweepstakesofficial.net
sweepstakesofficial.org
pchvip.com
pchvip.info
pchvip.net
pchvip.org
sweepstakesandcontest.net
sweepstakesandcontest.org
pchdashboard.com
pchdashboard.mobi
pchdashboard.net
pchdashboard.org
pchgadget.com
pchgadget.mobi
pchgadget.net

pchgadget.org
pchgadgets.com
pchgadgets.mobi
pchgadgets.net
pchgadgets.org
pchgdesklets.com
pchshareandwin.com
pchshareandwin.mobi
pchshareandwin.net
pchshareandwin.org
pchsidebar.com
pchsidebar.mobi
pchsidebar.net
pchsidebar.org
pchwidget.com
pchwidget.mobi
pchwidget.net
pchwidget.org
pchwidgets.com
pchwidgets.mobi
pchwidgets.net
pchwidgets.org
publisherclearinghouseshareandwin.com
publisherclearinghouseshareandwin.mobi
publisherclearinghouseshareandwin.net
publisherclearinghouseshareandwin.org
publishersclearinghouseshareandwin.com
publishersclearinghouseshareandwin.mobi
publishersclearinghouseshareandwin.net
publishersclearinghouseshareandwin.org
topix.biz
pchonline.com
pchgammes.com
buzzgoggles.com
saveandwin.info
saveandwin.net
saveandwin.org
pchzip.com
realbucks.com
winandshop.com
hollywoodjuice.net
pchgamesnetwork.com
pchgamesnetwork.net
pchgamesnetwork.org
pchhouse.com
pchsearchwin.com
pcharcade.com
pchgames.com
pchfrontpage.net

pchhealthadvisor.com
pchhealthadvisor.net
pchhealthadvisor.org
pchplay-n-win.com
pchplay-n-win.net
pchplayandwin.com
pchplayandwin.net
pchplaynwin.com
pchplaynwin.net
pchscracthcards.com
sayandwin.com
puzzletank.com
pchpress.com
pchpress.net
pchpress.org
pchrealbucks.com
pchrealbucks.net
pchrealbucks.org
realbuck.net
realbuck.org
realbucksapps.com
realbucksapps.net
realbucksapps.org
realbucksclips.com
realbucksclips.net
realbucksclips.org
realbucksgames.com
realbucksgames.net
realbucksgames.org
realbucksgiftcards.com
realbucksgiftcards.net
realbucksgiftcards.org
realbucksmovies.com
realbucksmovies.net
realbucksmovies.org
realbucksoffers.com
realbucksoffers.net
realbucksoffers.org
realbucksrewards.com
realbucksrewards.net
realbucksrewards.org
realbuckssucks.com
realbuckssucks.net
realbuckssucks.org
realbuckstrivia.com
realbuckstrivia.net
realbuckstrivia.org
realbuckstv.com
realbuckstv.net

realbuckstv.org
realbucktv.com
realbucktv.net
realbucktv.org
americanguncollectors.com
usguncollectorassociation.com
pchoso.com
pchoso.net
pchoso.org
pchsearc.com
prizecircle.com
candystandarcade.com
pchblingo.biz
pchblingo.info
pchblingo.net
pchblingo.org
pchsayandwin.com
pchwinandshare.com
pchwinandshare.net
opinionwin.com
opinionwin.net
opinionwin.org
pchopinionwin.com
pchopinionwin.net
pchopinionwin.org
pchshopandwin.com
pchshopandwin.net
pchshopandwin.org
pchvoice2win.com
pchvoice2win.net
pchvoice2win.org
pchvoiceandwin.com
pchvoiceandwin.net
pchvoiceandwin.org
pchvoicetowin.com
pchvoicetowin.net
pchvoicetowin.org
pchvoicewin.com
pchvoicewin.net
pchvoicewin.org
voice2win.com
voice2win.net
voice2win.org
voiceandwin.com
voiceandwin.net
voiceandwin.org
voicetowin.com
voicetowin.net
voicetowin.org

voicewin.com
voicewin.net
voicewin.org
winbelievable.com
winconceivable.com
pchkey.com
pchkey.net
pchpass.com
pchpass.net
pchsuperpass.com
pchsuperpass.net
pchtripleplay.com
pchtripleplay.net
dreamhomesweeps.com
dreamhomesweeps.net
dreamhomesweeps.org
pchsearchndwin.com
altdrivermedia.com
pchprizessearch.co.uk
pchprizessearch.com
pchprizessearch.net
pchsearch.co.uk
pchsearch.org
pchsearchandwin.co.uk
pchsearchandwin.net
pchwinningapps.com
pchwinningapps.net
pchwinningapps.org
arizonawinninglotterynumbers.com
arizonawinninglotterynumbers.net
arizonawinninglotterynumbers.org
californiawinninglotterynumbers.com
californiawinninglotterynumbers.net
californiawinninglotterynumbers.org
coloradowinninglotterynumbers.com
coloradowinninglotterynumbers.net
coloradowinninglotterynumbers.org
connecticutwinninglotterynumbers.com
connecticutwinninglotterynumbers.net
connecticutwinninglotterynumbers.org
delawarewinninglotterynumbers.com
delawarewinninglotterynumbers.net
delawarewinninglotterynumbers.org
floridawinninglotterynumbers.com
floridawinninglotterynumbers.net
floridawinninglotterynumbers.org
georgiawinninglotterynumbers.com
georgiawinninglotterynumbers.net
georgiawinninglotterynumbers.org

idahowinninglotterynumbers.com
idahowinninglotterynumbers.net
idahowinninglotterynumbers.org
illinoiswinninglotterynumbers.com
illinoiswinninglotterynumbers.net
illinoiswinninglotterynumbers.org
indianawinninglotterynumbers.com
indianawinninglotterynumbers.net
indianawinninglotterynumbers.org
iowawinninglotterynumbers.com
iowawinninglotterynumbers.net
iowawinninglotterynumbers.org
kansaswinninglotterynumbers.com
kansaswinninglotterynumbers.net
kansaswinninglotterynumbers.org
kentuckywinninglotterynumbers.com
kentuckywinninglotterynumbers.net
kentuckywinninglotterynumbers.org
louisianawinninglotterynumbers.com
louisianawinninglotterynumbers.net
louisianawinninglotterynumbers.org
mainewinninglotterynumbers.com
mainewinninglotterynumbers.net
mainewinninglotterynumbers.org
marylandwinninglotterynumbers.com
marylandwinninglotterynumbers.net
marylandwinninglotterynumbers.org
massachusettswinninglotterynumbers.com
massachusettswinninglotterynumbers.net
massachusettswinninglotterynumbers.org
michiganwinninglotterynumbers.com
michiganwinninglotterynumbers.net
michiganwinninglotterynumbers.org
minnesotawinninglotterynumbers.com
minnesotawinninglotterynumbers.net
minnesotawinninglotterynumbers.org
missouriwinninglotterynumbers.com
missouriwinninglotterynumbers.net
missouriwinninglotterynumbers.org
montanawinninglotterynumbers.com
montanawinninglotterynumbers.net
montanawinninglotterynumbers.org
nebraskawinninglotterynumbers.com
nebraskawinninglotterynumbers.net
nebraskawinninglotterynumbers.org
newhampshirewinninglotterynumbers.com
newhampshirewinninglotterynumbers.net
newhampshirewinninglotterynumbers.org
newjerseywinninglotterynumbers.com

newjerseywinninglotterynumbers.net
newjerseywinninglotterynumbers.org
newmexicowinninglotterynumbers.com
newmexicowinninglotterynumbers.net
newmexicowinninglotterynumbers.org
newyorkwinninglotterynumbers.com
newyorkwinninglotterynumbers.net
newyorkwinninglotterynumbers.org
northdakotawinninglotterynumbers.com
northdakotawinninglotterynumbers.net
northdakotawinninglotterynumbers.org
ohiowinninglotterynumbers.com
ohiowinninglotterynumbers.net
ohiowinninglotterynumbers.org
oregonawinninglotterynumbers.com
oregonawinninglotterynumbers.net
oregonawinninglotterynumbers.org
pennsylvaniawinninglotterynumbers.com
pennsylvaniawinninglotterynumbers.net
pennsylvaniawinninglotterynumbers.org
rhodeislandwinninglotterynumbers.com
rhodeislandwinninglotterynumbers.net
rhodeislandwinninglotterynumbers.org
southcarolinawinninglotterynumbers.com
southcarolinawinninglotterynumbers.net
southcarolinawinninglotterynumbers.org
southdakotawinninglotterynumbers.com
southdakotawinninglotterynumbers.net
southdakotawinninglotterynumbers.org
tennesseewinninglotterynumbers.com
tennesseewinninglotterynumbers.net
tennesseewinninglotterynumbers.org
texaswinninglotterynumbers.com
texaswinninglotterynumbers.net
texaswinninglotterynumbers.org
vermontwinninglotterynumbers.com
vermontwinninglotterynumbers.net
vermontwinninglotterynumbers.org
virginiawinninglotterynumbers.com
virginiawinninglotterynumbers.net
virginiawinninglotterynumbers.org
washingtonwinninglotterynumbers.com
washingtonwinninglotterynumbers.net
washingtonwinninglotterynumbers.org
westvirginiawinninglotterynumbers.com
westvirginiawinninglotterynumbers.net
westvirginiawinninglotterynumbers.org
wisconsinwinninglotterynumbers.com
wisconsinwinninglotterynumbers.net

wisconsinwinninglotterynumbers.org
p-c-h.info
pch.info
prizepatrol.info
theclearinghouse.info
publishers-clearinghouse.info
publishersclearinghouse.info
aghtd.com
pchlotto.com
pchlotto.net
pchlotto.org
pchlottoonline.com
candystandtv.com
pch-shop-and-win.com
pch-shop-and-win.net
pch-shop-and-win.org
pchshopand-win.com
pchshopand-win.net
pchshopand-win.org
shop-and-win.net
shop-and-win.org
shopand-win.com
shopand-win.net
shopand-win.org
matchthemob.com
pchtrivia.com
wincredible.biz
wincredible.info
wincredible.net
pchstore.com
pchinsider.com
pchinsider.net
pchinsider.org
winwgp.com
pch1million.com
pchfreemillion.com
pchonemillion.com
liquidwireless.com
pchseach.com
everydaylifetoday.com
crowdtastic.com
pchmatch3.com
pchpoints.com
pchpoints.net
publisher-clearinghouse.info
publisherclearinghouse.info
theprizepatrol.info
answerandwin.com
pch-international.com

pch-international.net
pch-international.org
pchcashslots.com
pchcashslots.net
pchcashslots.org
playthelotteryonline.net
playthelotteryonline.org
pchgmes.com
magazinegroup.info
pch-sweeps.info
pchbingo.info
pchjobs.info
pchsweeps.info
campussubs.info
campussubscriptions.info
freewinisp.info
moola.info
mypch.info
pch-ca.info
pch-uk.info
pchcareers.info
pchlotto.info
pchlottoonline.info
pchmail.info
pchpay.info
pchsucks.info
pchwinners.info
prizecircle.info
rarecountryawards.com
themagazinegroup.info
themagazineoutlet.info
winandshop.info
winfreeisp.info
clubpch.com
clubpch.net
clubpch.org
infopch.com
pchbingo.com
pchbingo.net
fanbuzz.net
pchgames.org
pchbigevent.com
pchbigevent.net
pchbigevent.org
pchoffers.co.uk
pchoffers.com
pchoffers.net
pchoffers.org
pchprizes.co.uk

pchwordmania.com
publishersclearinghouse.shop
wordmaniagame.com
p-c-h.com
pch.shopping
pchcash4slots.com
pchsucks.com
pchsweeps.com
pchwinners.com
publishersclearinghouse.shopping
pchseachandwin.com
pchcontinuingeducation.com
pchcontinuingeducation.net
pchcontinuingeducation.org
pchedu.com
pchedu.net
pchedu.org
pcheducation.net
pcheducation.org
pcheducationadvisor.com
pcheducationadvisor.net
pcheducationadvisor.org
candystand.org
pchmedia.net
pchmedia.org
matchthecrowd.com
pchwinspinwin.com
pleasantlane.com
publishershearinghouse.com
pchtips.com
pchtipsandadvice.com
pchmarketplace.com
prizebar.com
theprizepatrol.com
topixsucks.info
topixsucks.org
mycandystand.com
pcheasysearch.com
pcheasysearch.net
pchpersonaprize.com
pchpersonaprize.net
pchpersonaprize.org
pchsearch.com
pchsearch.net
personaprize.com
personaprize.net
personaprize.org
pchtrevia.com
pchtrivia.net

triviapch.com
campussubs.com
pchgames.co.uk
pchgames.mobi
pchgames.tv
pchgaming.co.uk
pchgaming.mobi
pchgaming.net
pchgaming.org
pchgaming.tv
pchwinningsweepstakes.com
usguncollectors.com
topixsucks.net
wincredible.com
campussubs.biz
campussubscriptions.biz
freewinisp.biz
magazinegroup.biz
mypch.biz
pchbingo.biz
pchcareers.biz
pchjobs.biz
pchlotto.biz
pchlottoonline.biz
pchmail.biz
pchpay.biz
pchsucks.biz
pchsweeps.biz
pchwinners.biz
prizecircle.biz
publisher-clearinghouse.biz
publisherclearinghouse.biz
themagazinegroup.biz
themagazineoutlet.biz
theprizepatrol.biz
winandshop.biz
winfreeisp.biz
p-c-h.biz
pch-ca.biz
pch-sweeps.biz
pchtriva.com
pchscratchers.com
themagazinegroup.net
themagazineoutlet.com
themagazineoutlet.net
wideopenhome.com
wideopenhouses.com
blingo.com
weneedpeoplewhocandothis.com

pchbingo.eu
pchmedia.com
prizepatrol.biz
publishers-clearinghouse.biz
publishersclearinghouse.biz
candystandcardgames.com
candystandfreeonlinegames.com
candystandgaming.com
candystandmobile.com
candystandmobilegames.com
mycandystandgames.com
pchcashback.com
pchcard.com
pchslots.com
candystandmall.com
candystandshop.com
topixoffbeat.com
topixparenthood.com
topixpawsome.com
topixpets.com
topixstars.com
pchaffiliate.com
pchaffiliate.net
pchaffiliate.org
pchaffiliateprogram.com
pchaffiliateprogram.net
pchaffiliateprogram.org
pchquiz4cash.com
pchquizforcash.com
pchquizfourcash.com
pchquizzes.com
freepchames.com
freepchplay.com
pchfreegames.com
pchfun.com
pchgame.com
pchgamesworld.com
pchgameworld.com
pchgaming.com
pchplay.com
pchwin.com
publishersclearinghousefun.com
publishersclearinghousegames.com
publishersclearinghousegaming.com
pchpaidsurvey.com
pchpaidsurveys.com
pchpanel.com
pchresearchpanel.com
pchsurvey.com

pchsurveypanel.com
pleasant-lane.biz
pleasant-lane.com
pleasant-lane.info
pleasant-lane.net
pleasant-lane.org
pleasant-lane.us
realbucks.co
realbucks.org
realbucks.us
realbycks.com
realbucks.cash
faves.com
heresadeal.com
outdooroverload.com
publishersclearinghouse.com
realbicks.com
pchblackjack.com
pchblackjack.net
pchblackjack.org
decorativity.com
pchmobile.com
wideopenautos.com
wideopenfood.com
freepchpoker.co.uk
decorativity.biz
decorativity.cc
decorativity.info
decorativity.net
decorativity.org
decorativity.us
quiz4cash.com
pchcanada.com
pchboost.biz
pchboost.com
pchboost.info
pchboost.net
pchboost.org
pchgiveaway.com
pchanswerandwin.com
publishersclearinghouseanswerandwin.com
campussubscriptions.com
prizepatrol.com
theclearinghouse.com
pchsurveys.com
pch.ca
pchonlinenetwork.com
emojimillions.com
wideopendeals.com

candystandmusictrivia.com
pchsweepstake.com
pchscratchoffs.com
fans1stmedia.com
fansfirstmedia.com
pchonlinesurvey.com
pchonlinesurvey.net
pchonlinesurveys.com
pchonlinesurveys.net
topix2.com
pchonlinesurveys.ca
sweepstakesandcontest.com
pch.com
livetowin.com
mailfromtopix.com
mailfromtopix.net
topixalerts.com
topixalerts.net
topixfranchise.com
topixfranchise.net
topixfranchising.com
topixfranchising.net
topixmail.com
topixmail.net
pchcircle.biz
wideopenaction.com
wideopenag.com
wideopencamping.com
wideopenfarms.com
wideopenrecipes.com
livetowin.net
pchgames.net
valueexp.com
valueexp.net
valuexp.com
valuexp.net
pchtext.com
pchtexting.com
pchtextme.com
pchtextservice.com
pchclearinghouse.com
wideopenmedianetwork.com
wideopenmn.com
publisher-clearinghouse.com
publisher-clearinghouse.net
publishers-clearinghouse.net
publishersclearinghouse.net
publishersclearinghouse.org
tpolitix.com

tpolitix.net
pchhosted.com
stateoftheheartland.com
wideopenwinning.com
pchbames.com
mountainmanminute.com
prizepatrol.net
theprizepatrol.net
theprizepatrol.org
wildrevue.com
topixsales.net
topixblackbeat.com
topixestrellas.com
topixsideline.com
topixwellnest.com
tpxblackbeat.com
tpxestrellas.com
tpxoffbeat.com
tpxparenthood.com
tpxpawsome.com
tpxsideline.com
tpxstars.com
campussubs.net
campussubs.org
freewinisp.org
magazinegroup.org
p-c-h.net
p-c-h.org
pch-sweeps.com
pch-sweeps.net
pch-sweeps.org
pchbingo.org
pchjobs.com
pchjobs.net
pchjobs.org
pchmail.net
pchmail.org
pchsucks.net
pchsucks.org
pchsweeps.net
pchsweeps.org
pchtext.mobi
pchtexting.mobi
pchtextme.mobi
pchtextservice.mobi
pchtxting.com
pchtxting.mobi
pchtxtme.com
pchtxtme.mobi

pchwinners.net
pchwinners.org
prizecircle.net
prizecircle.org
publisherclearinghousetexting.com
publisherclearinghousetexting.mobi
publisherclearinghousetextme.com
publisherclearinghousetextme.mobi
publishers-clearinghouse.com
publishers-clearinghouse.org
publishersclearinghousetexting.com
publishersclearinghousetexting.mobi
publishersclearinghousetextme.com
publishersclearinghousetextme.mobi
shopandwin.com
themagazinegroup.org
themagazineoutlet.org
winandshop.net
winandshop.org
winfreeisp.org
pchpay.com
pchpay.net
pchpay.org
topixpassport.com
topixrewind.com
topixtempo.com
tpxpassport.com
tpxrewind.com
tpxtempo.com
pchdealmania.com
pchdealtastic.com
pchprizeddeals.com
pchsuperdeal.com
pchsuperdeals.com
pchsweepsdeals.com
pchsweetdeals.com
pchwinningdeals.com
publisherclearinghouselotto.com
publishersclearinghouseloto.com
publishersclearinghouselotto.com
quizforcash.com
topix.net
pchscratchtickets.com
rareanf.com
pchland.com
pchland.net
pchonlinediscounts.com
pchonlinediscounts.net
pchsaveandwin.com

pchsaveandwin.net
pchsweepsland.com
pchsweepsland.net
pchwatchandwin.com
pchwatchandwin.net
pchwatchthenwin.com
pchwatchthenwin.net
pchwonderland.com
pchwonderland.net
pchworld.com
pchworld.net
pchplaywin.com
topix.com
publishersclearinghouseloto.net
pchsuperlotto.com
pchsuperlotto.info
pchsuperlotto.net
pchsuperlotto.org
pchsuperlotto.tv
candystand.com
chefsquest.com
candystnad.com
pchplaytowin.com
pchgaames.com
pchpopandwin.com
pchpopandwin.net
pchpopandwin.org
pchsratchcards.com
pchfrontpage.com
pchfrontpage.org
pchdaily.com
prizeandshine.com
wideopenboating.com
wideopenfarming.com
pchprizebar.com
pchprizebar.net
pchprizebar.org
liquid.biz
moola.biz
pch.biz
theclearinghouse.biz
pchinstantwingames.net
pchgamees.com
pchdreams.com
pchdreams.net
pchdreams.org
pchdreams.tv
pchfastcash.com
pchfastcash.net

pchfastcash.org
pchfastcash.tv
pchgqames.com
pchknock.com
pchknock.net
pchknock.org
pchknock.tv
pchknok.com
pchknok.net
pchknok.org
pchknok.tv
pchnock.com
pchnock.net
pchnock.org
pchnock.tv
pchnok.com
pchnok.net
pchnok.org
pchnok.tv
pchprizes.com
pchprizes.net
pchprizes.org
pchprizes.tv
pchrightnow.com
pchrightnow.net
pchrightnow.org
pchrightnow.tv
pchwow.com
pchwow.net
pchwow.org
pchwow.tv
candystandjr.com
candystandkids.com
candystandtoons.com
wideopenadspecs.com
pch.us
prizepatrol.us
publishers-clearinghouse.us
publishersclearinghouse.us
theclearinghouse.us
pchgamrs.com
pchsuperprizeentryformpch.com
p-c-h.us
mypch.ca
wideopenmotors.com
tpxwellnest.com
pchrewards.com
raremedia.com
pchinstantwin.org

pchscratchandwin.com
pchscratchandwin.net
pchscratchandwin.org
p-c-h.ca
pch-ca.ca
pch-sweeps.ca
pchbingo.ca
pchinstant.com
pchlotto.ca
pchlottoonline.ca
pchmail.ca
pchpay.ca
pchsucks.ca
pchsweeps.ca
pchwinners.ca
publisher-clearinghouse.ca
publisherclearinghouse.ca
publishers-clearinghouse.ca
publishersclearinghouse.ca
theclearinghouse.ca
candystandgirls.com
pchlivetowin.com
pchlivetowin.net
pchlivetowin.org
pchcashcasino.com
pchcashcasino.net
pchcashcasino.org
pchshopping.com
pchscatchcards.com
respondersociety.com
uniformedresponder.com
pchgamames.com
saveandwin.com
blingopch.com
pchblingo.com
wideopencare.com
wideopendiy.com
wideopenkids.com
wideopentk.com
wideopenwell.com
womenofthewilderness.net
womenofthewilderness.us
theresponders.com
americanfirearminsurance.com
guncollectioninsurance.com
usfirearminsurance.com
whitetailoverload.com
americanfamilyshield.com
familydefenseshield.com

pchblingo.ca
weeklygrandprize.com
rarecountry.co
freewinisp.co.uk
mypch.co.uk
pch-sweeps.co.uk
pchbingo.co.uk
pchlotto.co.uk
pchsweeps.co.uk
prizecircle.co.uk
prizepatrol.co.uk
publisher-clearinghouse.co.uk
publisherclearinghouse.co.uk
publishers-clearinghouse.co.uk
publishersclearinghouse.co.uk
theprizepatrol.co.uk
winfreeisp.co.uk
pch.tv
pchuk.co.uk
pch-uk.co.uk
pch-uk.org.uk
topix.co.uk
pchblingo.co.uk

All other Systems/Software built to support the Business as a whole as to which related source code is stored in centralized depositories.

7.    <u>Schedule 4.10(a)(ii)</u>.  Schedule 4.10(a)(ii) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

Schedule 4.10(a)(ii)

<u>Intellectual Property Fees, Filings and Actions</u>

<u>Trademarks</u>

| Mark | Registration No. | Country | Action Due | Due Date |
|---|---|---|---|---|
| GOLD COAST ALWAYS IN STYLE Plus Design | TMA779468 | Canada | Renewal | October 8, 2025 |
| PCHSEARCH&WIN | 5550653 | United States | Post-Registration Office Action Response | October 9, 2025 |
| PCH | 1371841 | United States | Renewal | November 19, 2025 |
| THE SKYLINE COLLECTION STEP INTO STYLE Plus Design | 4833261 | United States | Renewal | October 13, 2025 |

<u>Patents</u>

| Title | Application No. | Country | Action Due | Due Date |
|---|---|---|---|---|
| SYSTEM AND METHOD TO SELECTIVELY UPDATE SUPPLEMENTAL CONTENT RENDERED IN PLACEMENT REGIONS OF A RENDERED PAGE | 18/122,094 | United States | Respond to Non-Final Office Action (FINAL) | July 24, 2025 |

8.    <u>Schedule 4.10(b)</u>.  Schedule 4.10(b) of the Purchase Agreement is hereby amended and restated in its entirety as follows:

Schedule 4.10(b)

<u>Ownership Exceptions</u>

The Topix Patents were not assigned in writing to Seller prior to dissolution of PCH Topix, LLC (the "<u>Dissolution</u>").  Prior to the Closing, a Certificate of Correction will be filed to rescind the Dissolution in order to properly wind up the affairs of PCH Topic, LLC, including enabling and effectuating the transfer of the Topix Patents to Seller as originally contemplated in connection with the Dissolution.  Such transfer will be effective immediately prior to the Dissolution. Documentation evidencing such transfer will be filed with the USPTO  prior to the Closing.  Once such transfer is completed and such documentation is filed, PCH Topix, LLC will be dissolved and wound up.

9.    <u>Terms; Effect of Amendment; Counterparts</u>.  Except as amended, restated or modified as set forth above, the Purchase Agreement shall continue in full force and effect.   In the event of any conflict between the Purchase Agreement and this Amendment, the provisions of this Amendment shall govern and control in respect of such conflict. This Amendment may be executed in counterparts (including DocuSign, electronic transmission in portable document format (pdf) or other electronic means), each of which shall be deemed and original and together shall constitute one and the same agreement.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the Parties have caused this Agreement to be executed and delivered by their duly authorized representatives, respectively, all as of the Effective Date.

**<u>NEWCO</u>**:

PCH Digital LLC

By: _____
Name: Patrick Fechtmeyer
Title:   Chief Executive Officer

[*Signature Page to Amendment to Asset Purchase Agreement*]

**SELLER**:

Publishers Clearing House LLC

By: _____
Name:  William H. Henrich
Title: Co-Chief Restructuring Officer

*[Signature Page to Amendment to Asset Purchase Agreement]*