**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

   382 Channel Drive LLC, f/k/a Publishers
        Clearing House LLC,

                    Debtor.

NOT FOR PUBLICATION

Case No. 25-10694 (MG)

Chapter 11

## MEMORANDUM OPINION CONFIRMING CHAPTER 11 PLAN

*A P P E A R A N C E S :*

**KLESTADT WINTERS JURELLER**
**SOUTHARD & STEVENS, LLP**
*Counsel to 382 Channel Drive LLC, f/k/a*
*Publishers Clearing House LLC, Debtor and*
*Debtor-in-Possession*
200 West 41st Street, 17th Floor
New York, New York 10036
By:   Tracy L. Klestadt, Esq.
       Lauren C. Kiss, Esq.
       Stephanie R. Sweeney, Esq.
       Andrew C. Brown, Esq.

**RIMON P.C.**
*Counsel to the Official Committee of*
*Unsecured Creditors*
100 Jericho Quadrangle - Suite 300
Jericho, New York 11753
By:   Kenneth P. Silverman, Esq.
       Brian Powers Esq,

**WILLIAM K. HARRINGTON**
*UNITED STATES TRUSTEE, REGION 2*
Office of United States Trustee
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
By:   Tara Tiantain, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the debtor 382 Channel Drive LLC, f/k/a Publishers Clearing House LLC (the "Debtor") *Amended Plan of Liquidation Pursuant to Chapter 11 of the Bankruptcy Code* (the "Plan," ECF Doc. # 270) along with a supplement to the Plan (the "Supplement," ECF Doc. # 313). Previously on October 29, 2025, the Court entered an order (the "Disclosure Statement Order," ECF Doc. # 278) approving the Debtor's disclosure statement (the "Disclosure Statement," ECF Doc. # 271) which was filed in connection with the Plan. The deadline for claimants to vote on the Plan was December 10, 2025, at 5:00 PM (the "Voting Deadline") (Disclosure Statement Order ¶ 14) and the objection deadline for the Plan was December 15, 2025 (the "Objection Deadline") (Disclosure Statement Order ¶ 4). No relevant objections related to the Plan were received. A Declaration of Jeriad R. Paul with respect to the Tabulation of Votes on the Plan (the "Paul Decl.," ECF Doc. # 321) was filed on December 12, 2025, and admitted into evidence at the Confirmation Hearing. A Memorandum of Law in Support of Confirming the Amended Plan (the "MOL," ECF Doc. # 323) and the Declaration of William Hendrich in support (the "Henrich Decl.," ECF Doc. 322) were filed on December 17, 2025. The Hendrich declaration was also admitted into evidence at the Confirmation Hearing.

As the requirements of section 1129 are satisfied, the Court **CONFIRMS** the Plan.

## I.    BACKGROUND

### A.  General Background

Publishers Clearing House ("PCH") was founded as a partnership between Harold and LuEsther Mertz in 1953, operating as a magazine subscription business out of the family home. The company was reformed as a New York limited partnership in 1957 and then converted into a

2

New York limited liability company in 2002. (Disclosure Statement at 5.) As the Company grew, PCH introduced its first direct mail sweepstakes starting in 1967. When coupled with TV advertising and increased name recognition thanks to the PCH "Prize Patrol" and "Iconic Big Check," the company experienced extended growth. (*Id.* at 5-6.) By the 1990s, PCH began to diversify their offerings, first by adding digital marketing and acquiring additional websites offering online games, quizzes, sweepstakes, and a search engine. (*Id.* at 6-7). In 2017 revenue for PCH neared $1 billion. (*Id.* at 7).

However, shifts in consumer behavior and the rise of major commerce platforms such as Amazon and Walmart resulted in decreasing consumer demand and revenue within the company's commerce business. As a result, PCH wound down its commerce division in 2024. (*Id.* at 7). Currently, PCH offers free-to-play, chance-to-win digital games and entertainment across a network of web and app-based entertainment properties. (*Id.*) These websites and apps have attracted approximately 36 million customers in 2024, allowing the company to serve targeted advertising to these users and maximize ad revenue by offering attractive placements to advertisers. (*Id.*)

### B. Relevant Case History

On April 9, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Voluntary Petition, the "Motion," ECF Doc. # 1 ¶ 3.) The Debtor continues to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. (*Id.,* at ¶ 4.) On April 24, 2025, the U.S. Trustee appointed the official committee of unsecured Creditors (the "Committee"). (*Id.,* at ¶ 6.) No trustee or examiner has been appointed in this case. (*Id.,* at ¶ 5.)

Debtor sought and received court approval for the sale and auction of Debtor's assets free and clear of all liens, claims, encumbrances, and interests. (ECF Doc. # 177.) Debtor ultimately sold said assets to NewCo for $7,100,000, plus over $670,000 in cure costs related to contracts assumed and assigned to NewCo. (Disclosure Statement at 11). All of Debtor's employees and consultants were terminated as of July 14, 2025, and soon after existing leases from facilities that were no longer necessary for operation. (*Id.* at 11.)

As of the filing of the Disclosure Statement, approximately 200 claims were filed against the Debtor: (i) five (5) administrative claims in the amount of approximately $5 million and other unliquidated amounts; (ii) three (3) secured claims in the amount of approximately $20,000 and other unliquidated amounts; (iii) approximately 60 priority claims in the amount of approximately $1.2 million; and (iv) approximately 165 general unsecured claims in the amount of approximately $2.5 billion. (*Id.* at 9.)

### C. Overview of the Plan

Relevant sections of the Plan are discussed below. Any undefined capitalized terms have the meaning assigned to them in the Plan.

#### 1. Proposed Classification of Claims and Interests

The Plan proposes to classify claims and interests in the following manner:

| Classes of Claims | Status & Voting Rights | Proposed Treatment |
|---|---|---|
| **Class 1 – Secured Claims** | Unimpaired. Deemed to accept | Holders of an Allowed Secured Claim shall receive one of the following: (i) delivery of collateral securing such Allowed Secured Claim; (ii) the net proceeds, if any, of the sale or other disposition of the Assets on which such Holder has a lien; or (iii) such other, less favorable treatment as may be agreed to in writing by the Holder of such Allowed Secured Claim and the Plan Administrator. |

| | | Any Deficiency Claim arising due to a lack of collateral will be treated as a Class 3 General Unsecured Claim |
|---|---|---|
| **Class 2 – Priority Non-Tax Claims** | Unimpaired. Deemed to accept | Holders of an Allowed Priority Non-Tax Claim shall receive either: (a) an amount in Cash equal to the Allowed amount of such Priority Non-Tax Claim; or (b) such other treatment as to which the Debtor and the Holder of such Allowed Priority Non-Tax Claim shall have agreed upon in writing. |
| **Class 3 – General Unsecured Claims** | Impaired. Entitled to vote. | Holders of General Unsecured Claims shall receive their *pro rata* share of the remaining portion of the Post-Confirmation estate fund after senior Claims are satisfied. |
| **Class 4 – Equity Interests** | Impaired. Presumed to reject. | Equity Interests are deemed to reject the plan. All Class 4 Claims will be canceled, null and void and of no force and effect. |

(Disclosure Statement at 12-13, 16-18.)

The Plan does not classify administrative expense claims, priority tax claims, or professional fee claims, but summarizes the treatment of such claims and provides the outstanding amounts due as follows:

- Administrative Expense Claims: All Allowed Administrative Expense Claims shall be paid by the Plan Administrator from the Post-Confirmation Estate Fund. In the event there exist any Disputed Administrative Expense Claims on the Effective Date, the Plan Administrator shall at all times hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Administrative Expense Claims. (Disclosure Statement at 13.)

- Priority Tax Claims Holders of an Allowed Priority Tax Claim shall receive full and final satisfaction of such claim, either (a) an amount in Cash equal to the amount of the Claim paid from the Post-Confirmation Estate Fund, or (b) other treatment which the Plan Administrator and the Holder of the Claim have agreed upon in writing. (Disclosure Statement at 13-14.)

- Professional Fee Claims: The Plan Administrator shall pay all Professional Fee Claims from the Post-Confirmation Estate Fund in the amount Allowed by the Bankruptcy Court pursuant to proper application in accordance with Section 5.10 of the Plan. In the event any Disputed Professional Fee Claims exist on the Effective Date, the Plan Administrator shall hold and maintain Cash in an amount equal to that portion of a Disputed Claims Reserve attributable to all Disputed Professional Fee Claims until such dispute is resolved consensually or by order of the Bankruptcy Court. (Disclosure Statement at 14.)

- Ordinary Course Professional Claims:  All payments of Ordinary Course Professional Claims incurred prior to the Effective Date shall be made pursuant to the Ordinary Course Order.  The Plan Administrator shall have no obligation to pay any fees and expenses incurred by any of the Ordinary Course Professionals on or after the Effective Date unless and until such Ordinary Course Professional and the Plan Administrator have entered into a new engagement agreement. (Disclosure Statement at 15.)

2.  <u>Plan Funding and Operation</u>

The Plan will be funded primarily from the sale of the Debtor's Assets, including accounts receivable.  (Plan at 12.)  The Plan will be governed by the Plan Administrator, Kenneth Silverman, who shall be appointed through the Confirmation Order and will be the exclusive representative of the Estate.  The Plan Administrator will succeed in all of the rights of the Debtor and Estate upon Confirmation.  (*Id*. at 12-13.)  The Plan Administrator will use the Post Confirmation Estate Fund to make all post-confirmation payments.  (*Id*. at 12.)  The Plan sets out that the Administrator and all of the Administrator's designees and/or employees shall not be liable for any act or omission taken or omitted to be taken in their respective capacities other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud. (*Id.* at 13.)

In addition to the Plan Administrator, the Plan sets forward the appointment of the Oversight Committee which shall consist of willing Holders of Allowed Class 3 Claims. Members will be selected by the Official Committee or the Plan Administrator, and the new committee will not exceed 5 members.  (*Id*. at 15.)  All action taken by the Oversight Committee will be by majority vote, and like the Plan Administrator they will not be held liable for any act or omission taken in their capacity other than for acts or omissions resulting from willful misconduct, gross negligence, or fraud.  (*Id*. at 15-16.)

3.  <u>Treatment of Executory Contracts and Unexpired Leases</u>

All executory contracts and unexpired leases of the Debtor shall be deemed to be rejected as of the Effective Date unless any contract or lease has been assumed, assigned, or rejected pursuant to an order of the Bankruptcy Court.  (*Id*. at 19.)

4.  <u>Injunction and Exculpation Provisions</u>

The Plan enjoins all entities from beginning a cause of action against the Plan after the confirmation date (*id* at 20) and exculpates the Debtor and professionals retained by the Debtor from liability relating to the Chapter 11 case or the formation of the Plan (*id* at 21).

5.  <u>Distributions</u>

All claims will be paid by the Plan Administrator in accordance with the treatment as specified by the Plan under Article 4, the section discussing the treatment of classes and claims. (*Id.* at 22.)  All disputed distributions will be held by the Plan Administrator in a Disputed Claims Reserve until the matter is resolved by Final Order or by written agreement among the parties.  (*Id.* at 25.)  If a Disputed Claim becomes an Allowed Claim, then the funds will be distributed to the holder of the Allowed Claim in accordance with the plan.  (*Id*. at 27.)

**D.  Votes**

Starting November 3, votes were solicited by Omni Agent Solutions ("Omni"), a chapter 11 administrative services firm, to all known Holders of Claims in Class 3 (General Unsecured Claims) (the "Voting Class").  (Paul Decl. ¶ 5.)  Omni received 62 valid ballots, the vast majority of which voted to *accept* the Plan:

| Accept | | Reject | |
|---|---|---|---|
| Number | Amounts *(% of Amount)* | Number | Amounts |

| (% of Number) | | (% of Number) | (% of Amount) |
|---|---|---|---|
| 61 (98.36%) | $25,910,137.16 (99.99999%) | 1 (1.64%) | $2.52 (0.00001%) |

(*Id.* ¶ 10.)  Omni also received 28 additional ballots deemed invalid for reasons including

"[c]laim is disallowed for voting purposes pursuant to section 15(ix) of the Disclosure Statement

approval order," "[v]ote not indicated," or "[c]reditor not a voting party.  Ballot signed by POA."

(*Id.* Ex. A.)

### E.  Memorandum of Law

The Debtor's Memorandum of Law and Henrich Decl. were submitted on December 17,

with both discussing why the Court should confirm the Plan.  The Memorandum of Law notes

that the Plan has been approved by the sole Voting Class, Class 3.  (MOL ¶ 24.)  No substantive

objections were received by the objection deadline. [1]  (*Id.* ¶ 25.)  Arguments made by the

Debtors in support of Confirmation are discussed below.

## II.    <u>ANALYSIS</u>

To obtain confirmation of a plan of reorganization, a debtor must establish by a

preponderance of the evidence that the plan has satisfied the requirements set forth under section

1129 of the Bankruptcy Code.  *See JPMorgan Chase Bank, N.A. v. Charter Commc'ns*

*Operating, LLC (In re Charter Commc'ns, Inc.)*, 419 B.R. 221, 244 (Bankr. S.D.N.Y. 2009)

(finding that the plan proponent bears the burden of establishing compliance with the factors set

---

[1]    Claimant Aloysius A. Agada made reference to Plan confirmation in his response to Debtor's Omnibus Claim Objection, requesting testimony during the Confirmation Hearing from former executives of the Debtor regarding his disputed claim.  (ECF Doc. # 316 at 2.)  This request from Mr. Agada does not implicate the Plan itself and therefore should not be considered an objection to Confirmation.

forth in section 1129 by a preponderance of the evidence); *see also In re Young Broad. Inc.*, 430

B.R. 99, 128 (Bankr. S.D.N.Y. 2010) (same).

**A.  Section 1129(a)**

1.  <u>Section 1129(a)(1): Meets Requirements</u>

Section 1129(a)(1) requires that the Plan comply with applicable provisions of the

Bankruptcy Code.  11 U.S.C. § 1129(a)(1).  The Plan, therefore, must satisfy sections 1122 and

1123 of the Bankruptcy Code.  *In re Texaco Inc.*, 84 B.R. 893, 905 (Bankr. S.D.N.Y. 1988) ("In

determining whether a plan complies with section 1129(a)(1), reference must be made to Code

§§ 1122 and 1123 with respect to the classification of claims and the contents of a plan of

reorganization").

*a.  Section 1122: Meets Requirements*

Section 1122 governs the classification of claims in plans.  Section 1122 states:

> (a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

> (b) A plan may designate a separate class of claims consisting only of every unsecured claim that is less than or reduced to an amount that the court approves as reasonable and necessary for administrative convenience.

11 U.S.C. § 1122.

Claims or interests may only be placed in a particular class if such claims or interests are

"substantially similar to the other claims or interests of such class."  11 U.S.C. § 1122(a).  "A

plan proponent is afforded significant flexibility in classifying claims under § 1122(a) if there is

a reasonable basis for the classification scheme and if all claims within a particular class are

substantially similar."  *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 757 (Bankr.

S.D.N.Y. 1992); *see also Aetna Cas. & Sur. Co. v. Chateaugay Corp. (In re Chateaugay Corp.)*,

89 F.3d 942, 949 (2d Cir. 1996) ("[C]lassification is constrained by two straight-forward rules: Dissimilar claims may not be classified together; similar claims may be classified separately only for a legitimate reason.").

Article 3 of the Plan classifies Claims into four individual classes: Class 1, containing Secured Claims; Class 2, containing Priority Non-Tax Claims; Class 3, containing General Unsecured Claims; and Class 4, containing Equity Interests. Each claim in these classes is sufficiently similar and all claims are separated for a legitimate reason.

Accordingly, the Plan **MEETS** the requirements of section 1122.

> *b. Section 1123(a): Meets Requirements*

A plan must fulfill the following eight requirements to satisfy 11 U.S.C. 1123(a):

> (1) designate classes of claims and interests;
> (2) specify unimpaired classes of claims and interests;
> (3) specify treatment of impaired classes of claims and interests;
> (4) provide for equality of treatment within each class;
> (5) provide adequate means for the plan's implementation;
> (6) provide for the prohibition of non-voting equity securities and provide an appropriate distribution of voting power among the classes of securities;
> (7) contain only provisions that are consistent with the interests of the creditors and equity security holders and with public policy with respect to the manner of selection of the reorganized company's officers and directors; and
> (8) in a case in which the debtor is an individual, provide for the payment to creditors under the plan of all or such portion of earnings from personal services performed by the debtor after the commencement of the case or other future income of the debtor as is necessary for the execution of the plan.

11 U.S.C. § 1123(a).

Article 3 of the Plan designates five classes of claims and interests, specifies which classes are unimpaired, specifies how each class will be treated, and provides that each claim within a class will be treated the same way, meeting the requirements of subsections 1-4.

Article 5 of the Plan sets out the means of Plan implementation, including how the Plan will be funded, the appointment and powers of the Plan Administrator, and the creation of the Oversight Committee, among other factors necessary for successful implementation. Furthermore, Article 9 details how distributions will be made under the Plan.

The requirements of sections 1123(a)(vi) and (vii) are not implicated by the Plan because it is a liquidating plan. Section 1123(a)(viii) does not apply here because the Debtor is not an individual.

Accordingly, the Plan **MEETS** the requirements of section 1123(a).

### c.    Section 1123(b): Meets Requirements

Section 1123(b) of the Bankruptcy Code sets forth provisions that may be incorporated into a chapter 11 plan. The Plan raises some such non-mandatory provisions of the plan, and each is consistent with section 1123(b).

### Section 1123(b)(1)

Section 1123(b)(1) provides that a plan may impair or leave unimpaired any class of claims, which is consistent with the Debtor's impaired/non-impaired treatment under the Plan. (*See* Plan at Article 3.)

### Section 1123(b)(2)

The Plan sets out that all Executory Contracts and Unexpired Leases are rejected as of the Effective Date of the plan. (*See* Plan at Article 6.) This is consistent with section 1123(b)(2) which allows "assumption, rejection, or assignment," pursuant to other sections of the Code (i.e., section 365) and requirements in the caselaw. *See In re Child World, Inc.*, 147 B.R. 847, 850 (Bankr. S.D.N.Y. 1992) (stating that the standard for assumption or rejection of contracts is business judgment).

11

<u>Section 1123(b)(6)</u>

Section 1123(b)(6) permits a Debtor to "include any other appropriate provision not inconsistent with the applicable provisions of this title." 11 U.S.C. § 1123(b)(6). The Debtor has included both injunction and exculpation provisions in the plan. Both the injunction and exculpation provisions have been found appropriate by Courts when they are fair and equitable, necessary to successful reorganization, and integral to the plan. *See, e.g. In re Bally Total Fitness of Greater New York, Inc.*, 2007 WL 2779438, at \*8 (Bankr. S.D.N.Y. September 17, 2007). Both provisions are contained in Article 8 of the Plan.

The Injunction provision: enjoins all Holders of Claims from commencing a case against the Debtor, estate, Plan Administrator, or the Oversight Committee that could interfere with the consummation of the plan; and enjoins all persons from bringing a case or enforcing an order for against the Debtor, the Estate, the Plan Administrator, or the Oversight Committee unless otherwise specifically provided for by the Plan. (Plan at 20-21.) As the injunctions here are to limit both creditors and third parties from attacking implementation of the Plan post-confirmation, they are permissible under the Bankruptcy Code.

The Exculpation Provisions listed in Article 8 exculpate the Debtor and its professionals from liability that may have arisen out of the Chapter 11 case, Disclosure Statement, the Plan, or any contract or agreement with connection to the Chapter 11 case. (Plan at 21.) The Provision does not cover acts or omissions constituting fraud, willful misconduct, or gross negligence. Exculpation provisions are permissible when they are important to a debtor's plan or where the exculpated party has provided substantial consideration to a debtor's reorganization. *See In re Chemtura*, 439 B.R. 561, 610-11 (Bankr. S.D.N.Y. 2010) (citing *In re DBSD*, 419 B.R. 179, 218 (Bankr. S.D.N.Y. 2009); *see also In re Residential Cap. LLC*, 2013 WL 12161584, at \*13

12

(Bankr. S.D.N.Y. Dec. 11, 2013) (order confirming plan contained exculpations for parties "instrumental to the successful prosecution of the Chapter 11 Cases or their resolution pursuant to the Plan, and/or provided a substantial contribution to the Debtors."). In determining whether to approve exculpation provisions, courts also consider whether the beneficiaries of the exculpation participated in good faith in negotiating the plan and bringing it to fruition, and whether the provision is integral to the plan. *See In re BearingPoint, Inc.*, 453 B.R. 486, 494 (Bankr. S.D.N.Y. 2011) ("Exculpation provisions are included so frequently in chapter 11 plans because stakeholders all too often blame others for failures to get the recoveries they desire; seek vengeance against other parties, or simply wish to second guess the decisionmakers[.]").

The requirements for exculpation provisions seem to have been met here, as they come as part of the overall plan process and will limit liability against those who drafted of the Plan. The Debtor submits that the exculpation provision set forth in the Proposed Plan is reasonable, appropriate, and entirely consistent with applicable law and should be approved. The Debtor appears to be correct.

Given the above, the Plan **MEETS** the requirements of section 1123(b).

2. Section 1129(a)(2): Meets Requirement

Under section 1129(a)(2), the plan proponent must comply "with the applicable provisions" of the Bankruptcy Code. 11 U.S.C. § 1129(a)(2). Courts have interpreted the section 1129(a)(2) requirement to include satisfaction of the disclosure and solicitation requirements of sections 1125 and 1126 of the Bankruptcy Code. *In re WorldCom, Inc.*, 2003 WL 23861928, at *25-26 (Bankr. S.D.N.Y. 2003); *In re Johns-Manville Corp.*, 68 B.R. 618, 630 (Bankr. S.D.N.Y. 1986).

### a. Section 1125: Meets Requirements

Section 1125 of the Bankruptcy Code provides:

> (b) An acceptance or rejection of a plan may not be solicited after the commencement of the case under this title from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. The court may approve a disclosure statement without a valuation of the debtor or an appraisal of the debtor's assets.
> (c) The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different disclosure statements, differing in amount, detail, or kind of information, as between classes.

11 U.S.C. § 1125.

The Court has already approved the Disclosure Statement as providing adequate information on October 29, 2025. (Disclosure Statement Order.) The Disclosure Statement contains a concise and easy to read overview of the Plan, which includes a summary of Plan terms and the distribution scheme. In addition, the Disclosure Statement describes all materially important aspects of the Plan. After the Court approved the Disclosure Statement, the Debtor's agent Omni transmitted solicitation materials in accordance with the Court's order. (ECF Doc. # 295.)

Therefore, the Plan **MEETS** the requirements of section 1125.

### b. Section 1126: Meets Requirements

Section 1126 indicates that a holder of a claim or interest may accept or reject a plan, outlines the classes entitled to vote on proposed plans, and describes how it is determined whether a class of claims or interests either accepts or rejects a plan. "A class of claims has accepted a plan if such plan has been accepted by creditors . . . that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors .

14

. . that have accepted or rejected such plan." 11 U.S.C. § 1126(c). "Only creditors that actually

voted count in determining whether the requisite majorities in number and amount are met." 7

COLLIER ON BANKRUPTCY ¶ 1126.04. "[A] class that is not impaired under a plan, and each

holder of a claim or interest of such class, are conclusively presumed to have accepted the plan,

and solicitation . . . is not required." 11 U.S.C. § 1126(f).

The Plan entitles the appropriate parties, Holders of Class 3 Claims, the right to vote on

the plan. Classes 1 and 2 are deemed to accept the Plan. Debtors did not solicit votes from Class

4, Equity Interest Holders, as the Debtor did not anticipate that they would be able to recover

under the Plan. (MOL ¶ 71.) Nonetheless, the Plan **MEETS** the requirements of section 1126.

### 3. Section 1129(a)(3): Meets Requirements

Section 1129(a)(3) requires the plan to be "proposed in good faith and not by any means

forbidden by law." 11 U.S.C § 1129(a)(3). This means that plans must have been "proposed

with honesty and good intentions and with a basis for expecting that a reorganization can be

effected." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 649 (2d Cir. 1988). Courts have held

that a plan is considered proposed in good faith "if there is a likelihood that the plan will achieve

a result consistent with the standards prescribed under the [Bankruptcy] Code." *In re The Leslie

Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R. at 907).

"The requirement of good faith must be viewed in light of the totality of the circumstances

surrounding the establishment of a chapter 11 plan." *In re Leslie Fay*, 207 B.R. at 781 (citations

omitted); *Greer v. Gaston & Snow (In re Gaston & Snow)*, 1996 WL 694421, at *9 (S.D.N.Y.

Dec. 4, 1996) ("failure to propose a plan in good faith occurs when the Plan is not proposed with

honesty, good intentions, and to effectuate the reorganization of the enterprise, but rather for

some other motive") (citing *Kane*, 843 F.2d at 649).

The Debtor contends that the Plan has been proposed in good faith and there have been no objections asserting otherwise. (Henrich Decl. ¶ 31.) Additionally, the overwhelming majority of Claim Holders have voted to accept the plan. Accordingly, the Plan **MEETS** the requirements of Section 1129(a)(3).

    4.  <u>Section 1129(a)(4): Meets Requirements</u>

Section 1129(a)(4) mandates that:

> Any payment made or to be made by the proponent, by the debtor, or by a person issuing securities or acquiring property under the plan, for services or for costs and expenses in or in connection with the case, or in connection with the plan and incident to the case, has been approved by, or is subject to the approval of, the court as reasonable.

11 U.S.C § 1129(a)(4).

This requires a plan to provide for the disclosure and Court approval of payment of any fees promised or received in connection with the chapter 11 case. *See* 7 COLLIER ON BANKRUPTCY ¶ 1129.03[4].

The Plan requires all parties seeking professional fee payments to file with the Bankruptcy Court within 30 days of notice of the Confirmation of the Plan for such payments to be approved. (Plan at 17.) The 30-day deadline to file with the Court extends to all parties asserting an asserting an Administrative Expense Claim as well. (*Id.*) Both claims will only be paid by the amount allowed by the Court. Accordingly, the Plan **MEETS** the requirements of section 1129(a)(4). *See In re Resorts Int'l, Inc.*, 145 B.R. 412, 475-76 (Bankr. D.N.J. 1990) (as long as fees, costs and expenses are subject to final approval of the court, section 1129(a)(4) is satisfied).

    5.  <u>Section 1129(a)(5): Not Applicable</u>

Section 1129(a)(5) requires that:

(A) **(i)** The proponent of the plan has disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the plan, as a director, officer, or voting trustee of the debtor, an affiliate of the debtor participating in a joint plan with the debtor, or a successor to the debtor under the plan; and **(ii)** the appointment to, or continuance in, such office of such individual, is consistent with the interests of creditors and equity security holders and with public policy; and

(B) the proponent of the plan has disclosed the identity of any insider that will be employed or retained by the reorganized debtor, and the nature of any compensation for such insider.

11 U.S.C. § 1129(a)(5).

Here, the Plan discloses that the Plan Administrator will be Keneth P. Silverman. The Plan Administrator will be the person winding down the Debtor and making distributions to applicable creditors. Therefore, the Plan **MEETS** the requirements of section 1129(a)(5).

### 6. Section 1129(a)(6): Not Applicable

Under section 1129(a)(6), if the plan provides for changes in rates controlled by governmental agencies, the rate change must have been pre-approved by the relevant agency. 7 COLLIER ON BANKRUPTCY ¶ 1129.03[6]. This requirement applies to debtors who are "utilities or other entities whose ability to price their products or services are subject to regulation by governmental agencies." *Id*.

Here, the Debtor is not a regulated entity. Accordingly, the requirements of section 1129(a)(6) are not applicable to the Plan.

### 7. Section 1129(a)(7): Meets Requirements

Section 1129(a)(7)—the so-called "best-interests" requirement—mandates that each creditor or interest impaired under a plan must either have (i) accepted the plan, or (ii) would receive at least as much under the plan as it would under a chapter 7 liquidation. 11 U.S.C. § 1129(a)(7); 7 COLLIER ON BANKRUPTCY ¶ 1129.03[7].

Holders of Class 3 claims have voted to accept the Plan.  In addition, conversion to a chapter 7 liquidation would come with additional administrative expenses and lead to lesser recoveries for the remining impaired class who has not voted on the Plan.  Therefore, the Plan **MEETS** the requirements of section 1129(a)(7).

8.   Section 1129(a)(8): Satisfied

Pursuant to section 1129(a)(8), the plan may be confirmed where either (i) the class of creditors has accepted the plan; or (ii) the class of creditors is not impaired under the plan.  11 U.S.C. § 1129(a)(8).  A class of creditors is considered to have accepted a plan when at least two-thirds in amount and more than one-half in number of allowed claims of such class accept the plan, measured out of those claims that vote.

If a plan otherwise satisfies Section 1129(a), including the requirement that at least one impaired class of creditors has accepted the plan under § 1129(a)(10), the plan may be confirmed pursuant to Section 1129(b).  7 COLLIER ON BANKRUPTCY ¶ 1129.03[8].

Given that Class 4 has not voted on the Plan, the Plan does not meet the requirements of section 1129(a)(8).  However, the Plan is still confirmable pursuant to a cramdown as discussed below.

9.   Section 1129(a)(9): Meets Requirements

Section 1129(a)(9) requires that, except to the extent that the holder of a particular claim agrees to a different treatment of such claim, the plan provide that:

> (A) with respect to a claim of a kind specified in section 507(a)(2) or 507(a)(3) of [the Bankruptcy Code], on the effective date of the plan, the holder of such claim will receive . . . cash equal to the allowed amount of such claim;
> (B) with respect to a class of claims of a kind specified in section 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6), or 507(a)(7) of [the Bankruptcy Code], each holder . . . will receive -- (i) if such class has accepted the plan, deferred cash payments of a value, as of the effective date of the plan, equal to the

18

> allowed amount of such claim; or (ii) if such class has not accepted the plan, cash on the effective date of the plan equal to the allowed amount of such claim;
>
> (C) with respect to a claim of a kind specified in section 507(a)(8) of [the Bankruptcy Code], the holder of such claim will receive . . . regular installment payments in cash -- (i) of a total value, as of the effective date of the plan, equal to the allowed amount of such claim; (ii) over a period ending not later than 5 years after the date of the order for relief . . . and (iii) in a manner not less favorable than the most favored nonpriority unsecured claim provided for by the plan . . . .

11 U.S.C. § 1129(a)(9).

Section 1129(a)(9)(A) requires that claims identified in 507(a)(2) and (3) are paid on the effective date of a plan. Section 507(a)(2) specifies administrative expenses allowed under section 503(b). Section 507(a)(3) specifies unsecured claims in involuntary cases. Article 2 of the Plan states that administrative claims will be paid in cash "as soon as practicable following the later of the Effective Date or the date upon which the Court enters a Final Order allowing any such Administrative Expense Claim, or (b) upon such other terms as may exist in accordance with the ordinary course of the Debtor's liquidation, or (c) as may be agreed upon between the Holder of any such Administrative Expense Claim and the Plan Administrator." (Plan at 9.) Given that the plan provides for the payment of administrative claims in full, the requirements of 1129(a)(9)(A) are satisfied.

Section 1129(a)(9)(B) is met as Priority Non-Tax Claims under sections 507(a)(1), 507(a)(4), 507(a)(5), 507(a)(6) or 507(a)(7) will all be paid on the Effective Date or soon thereafter as reasonably practicable. (*Id.* at 11.)

Section 1129(a)(9)(C) requires that each holder of a section 507(a)(8) priority tax claim receive installment payments in cash over a period not longer than five years after the order for relief a value equal to the allowed amount of such claim as of the effective date of the plan. The Plan will ensure Priority Tax Claims will be paid as required by the Code. (*See id.* at 9.)

Given the above, the Plan **MEETS** the requirements of section 1129(a)(9).

10. Section 1129(a)(10): Meets Requirements

Section 1129 requires at least one class of impaired creditors—if there are any impaired

creditors—to have accepted the Plan.  As Class 3 has voted to accept the plan, the requirements

of section 1129(a)(10) have been **MET**.

11. Section 1129(a)(11): Meets Requirements

Section 1129(a)(11) requires the Court to determine that "[c]onfirmation of the plan is

not likely to be followed by the liquidation, or the need for further financial reorganization, of

the debtor or any successor to the debtor under the plan, unless such liquidation or reorganization

is proposed in the plan."  11 U.S.C. § 1129(a)(11).  That requirement, commonly known as the

"feasibility" standard, requires that "the Plan is workable and has a reasonable likelihood of

success."  *In re Drexel Burnham Lambert Grp., Inc.*, 138 B.R. at 762.  "It is not necessary that

success be guaranteed, but only that the plan present a workable scheme of organization and

operation from which there may be a reasonable expectation of success."  *Id*. (quoting 5 COLLIER

ON BANKRUPTCY ¶ 1129.02[11], at 1129-54 (15th ed. 1991)); *see also In re Cellular Info. Sys.,

Inc.*, 171 B.R. 926, 945 (Bankr. S.D.N.Y. 1994) ("[T]he plan proponent need only demonstrate

that there exists the reasonable probability that the provisions of the Plan can be performed")

(internal quotation omitted).  "Although it is perfectly legitimate for a Chapter 11 debtor to adopt

a plan that liquidates all or part of its assets, logic and authorities suggest that the feasibility

analysis under such plans will vary somewhat from that used in 'true' reorganizations. . . .  In

particular, the courts in these [liquidation] cases were concerned over the absence of a reliable

cash flow or proven earning power that could ensure regular payments to the creditors."

*Resolution Trust Corp. v. Wood (In re Wood)*, 1991 WL 332637, *3 (W.D. Va. 1991).

20

The Plan will be funded through the sale of the Debtor's assets and all Causes of Action will be vested in the Plan Administrator.  The Debtor believes this will be sufficient to make all payments as required by the Plan.  (Henrich Decl. ¶ 58-59.)  Therefore, the requirements for Section 1129(a)(11) have been **MET**.

### 12. Section 1129(a)(12): Meets Requirements

Section 1129(a)(12) requires that fees payable under 28 U.S.C. § 1930, as determined by the court at a hearing on confirmation of a plan, have been paid or are provided under the plan to be paid on its effective date.

The Plan sets out that all fees any applicable interest payable pursuant to 28 U.S.C. § 1930 shall be paid by the Plan Administrator.

Accordingly, the Plan **MEETS** the requirements of section 1129(a)(12).

### 13. Sections 1129(a)(13)-(16): Not Applicable

Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established pursuant to section 1114. 11 U.S.C. § 1129(a)(13). The Debtor does not have any obligation to pay retiree benefits. Accordingly, section 1129(a)(13) does not apply.

Section 1129(a)(14) relates to the payment of domestic support obligations. 11 U.S.C. § 1129(a)(14). Section 1129(a)(14) does not apply.

Section 1129(a)(15) applies in cases in which the debtor is an "individual." It provides as follows:

> (15) In a case in which the debtor is an individual and in which the holder of an allowed unsecured claim objects to the confirmation of the plan—
>> (A) the value, as of the effective date of the plan, of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or
>> (B) the value of the property to be distributed under the plan is not less than the projected disposable income of the debtor (as defined in section 1325(b)(2)) to be received during the 5-year period beginning on the date

that the first payment is due under the plan, or during the period for which
the plan provides payments, whichever is longer.

11 U.S.C. § 1129(a)(15). Section 1129(a)(15) does not apply as the Debtor is not an individual.

Section 1129(a)(16) states that "all transfers of property under [a] plan shall be made in
accordance with any applicable provisions of non-bankruptcy law that govern the transfer of
property by a corporation or trust that is not a moneyed, business, or commercial corporation or
trust." 11 U.S.C. § 1129(a)(16). "This provision limits the permissible transfers by any nonprofit
entity[.]" 7 COLLIER ON BANKRUPTCY ¶ 1129.02. The Debtor is not a nonprofit entity. Therefore,
section 1129(a)(16) does not apply.

### B. Section 1129(b): Meets Requirements

When at least one class of impaired creditors votes for confirmation of a plan, pursuant to
section 1129(b) the court may "cram down" a plan over the dissent of another impaired class.
Cramdown is permitted so long as a plan (i) does not discriminate unfairly; and (ii) is fair and
equitable. As all other requirements to section 1129(a) have been met except for 1129(a)(8), a
cramdown analysis can proceed. As the following will explain, the Plan meets the requirements
of 1129(b).

#### 1. The Plan Does Not Discriminate Unfairly

Unfair discrimination includes instances where the plan discriminates among creditors
with equal non-bankruptcy priority. 7 COLLIER ON BANKRUPTCY ¶ 1129.04[3][b][ix]. Unfair
discrimination occurs when "similarly situated classes are treated differently without a
reasonable basis for the disparate treatment." *In re Worldcom, Inc.*, 2003 WL 23861928, at *59;
*see also In re Buttonwood Partners, Ltd.,* 111 B.R. 57, 63 (Bankr. S.D.N.Y.1990).

This factor is relevant to Holders of Class 4 claims (Equity Interest) as they are an
impaired class deemed to have rejected the Plan. As discrimination is relevant for *similarly*

situated claims, this factor of the analysis is not relevant as the Equity Interests are not similarly

situated to the claims in the other classes (e.g., the Unsecured Claims of Class 3).  Therefore, the

Plan does not discriminate unfairly.

### 2.   The Plan is Fair and Equitable

Courts will consider a cramdown fair and equitable if the absolute priority rule is

followed.  That is, if no claim that is junior to the dissenting class benefits from the proposed

plan.  7 COLLIER ON BANKRUPTCY ¶ 1129.04[4][a]; *see also In re Charter Commc'ns*, 419 B.R.

at 269 ("the absolute priority rule is violated when an equity interest holder 'leapfrogs'

unsecured creditors and receives property on account of a junior interest.")  The Plan follows

Absolute Priority, as Class 4 is the most junior class being made up of Equity Interests.

Therefore, the Plan does not discriminate unfairly.

### C.  Section 1129(c): Meets Requirements

Section 1129(c) of the Bankruptcy Code provides that a court "may only confirm one

plan."  11 U.S.C. § 1129(c).  The Plan submitted is the only plan the Debtor is seeking to

confirm in this case.  Therefore, the Plan **MEETS** the requirements of section 1129(c).

### D.  Section 1129(d): Not Applicable

Section 1129(d) provides that "on request of a party in interest that is a governmental

unit, the court may not confirm a plan if the principal purpose of the plan is the avoidance of

taxes or the avoidance of the application of section 4 of the Securities Act of 1933."  Here, no

such objection was raised.  Thus, section 1129(d) does not apply.

### III.   CONCLUSION

Given the above, the Court **CONFIRMS** the Plan.  A separate Order confirming the Plan will be entered.

Dated:   December 22, 2025
New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge