**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x

In re:                                                              NOT FOR PUBLICATION

      382 CHANNEL DRIVE LLC,                          Chapter 11
      f/k/a PUBLISHERS CLEARING HOUSE LLC, *et al.*
                                                         Case No. 25-10694 (MG)

                            Debtors.

------------------------------------------------------------------------x

## MEMORANDUM OPINION SUSTAINING THE DEBTOR'S FIRST, SECOND, AND THIRD OMNIBUS CLAIM OBJECTIONS

*A P P E A R A N C E S :*

**KLESTADT WINTERS JURELLER SOUTHARD & STEVENS, LLP**
*Attorneys for 382 Channel Drive LLC*
200 West 41st Street
17th Floor
New York, NY 10036-7203
By:    Tracy L. Klestadt, Esq.
       Lauren C. Kiss, Esq.
       Stephanie R. Sweeney, Esq.
       Andrew Brown, Esq.

**BERRY LAW & ACCOUNTING**
*Attorney for Marquise Latrel Nelson*
625 Clay Street,
Arkadelphia, AR 71923
By:    Morgan A Berry, Esq.

**ALOYSUIS AGADA**
*Pro Se Claimant*

**GA LAGBARA**
*Pro Se Claimant*

**SONYA GONZALES**
*Pro Se Claimant*

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court are the first, second, and third omnibus claims objections (the "First Omnibus Objection," ECF Doc. # 293; the "Second Omnibus Objection," ECF Doc. # 294; the "Third Omnibus Objection," ECF Doc. # 297; collectively the "Omnibus Objections") of the debtor 382 Channel Drive LLC, *f/k/a* Publishers Clearing House LLC (the "Debtor" or "PCH") for the entry of orders disallowing and expunging certain claims (each, collectively, the "Claims") from the Debtor's claims register.  (First Omnibus Objection at 2; Second Omnibus Objection at 2; Third Omnibus Objection at 2.)  The Objections were each filed with respective proposed orders (the "First Proposed Order," ECF Doc. # 293-2; the "Second Proposed Order," ECF Doc. # 294-2; the "Third Proposed Order," ECF Doc. # 297-2; collectively the "Proposed Orders") listing the Claims specific to each objection.  Also included with each Omnibus Objection is a declaration of William H. Henrich, co-chief restructuring officer of the Debtor (the "First Henrich Decl.," ECF Doc. # 293-3; the "Second Henrich Decl.," ECF Doc. # 294-3; the "Third Henrich Decl.," ECF Doc. # 297-3).

The objection deadline for all Omnibus Objections was January 2, 2026.  Three timely responses from named claimants (collectively, the "Responses") were received:

| Claimant | Claim No. | Basis for Claim Objection | Response(s) by Claimant |
|---|---|---|---|
| Aloysius Agada | 247 (the "Agada Claim") | Unliquidated Late Filed | EFC Doc. ## 300, 307, 314, 316, 328, and 330; 337 and 347 were received after the objection deadline |
| Ga Lagbara | 136, 194, and 212 (collectively, the "Lagbara Claims") | Unsupported by the Debtor's Books and Records Late Filed | Claimant mailed response, which was received by Debtor's counsel on January 2, 2026 and |

| | | | filed by Debtor, ECF Doc. # 343-1 |
|---|---|---|---|
| Sonya Gonzales | 236 (the "Gonzales Claim") | Unsupported by the Debtor's Books and Records<br>Late Filed | ECF Doc. ## 299, 301, 302, and 320; 353 was received after the objection deadline |

Three additional responses were timely filed by Prize Winner 1, Prize Winner 14 and Prize Winner 32, of which the Plan Administrator has adjourned his reply with respect to the claims. (Reply (defined *infra*) at 2 n.1.) One untimely response was received six (6) days after the objection deadline from claimant Marquise Latrel Nelson in response to claim No. 59 (the "Nelson Claim") (the "Nelson Response," ECF Doc. # 338).

On January 9, 2026, the Debtor replied to the three timely Responses (the "Reply," ECF Doc. # 343) and filed three supporting declarations: *Declaration of Michael Cooper in Support of the Debtor's First Omnibus Objection* (the "Cooper Decl.," ECF Doc. # 344); *Declaration of Stephanie Sweeney in Support of Debtor's First Omnibus Objection* (the "Sweeny Decl.," ECF Doc. # 345); and *Declaration of Paul H. Deutch in Support of Debtor's First Omnibus Objection* (the "Deutch Decl.," ECF Doc. # 346). The Debtor filed a supplemental reply to the Nelson Response (the "Supp. Reply," ECF Doc. # 354) and included a supporting declaration from Michael Cooper, former PCH employee for over twenty (20) years (the "Cooper Supp. Decl.," ECF Doc. # 355).

For the reasons explained below, the Objections to claims are **SUSTAINED.**

## I.    BACKGROUND

### A.  General Background

PCH was founded as a partnership between Harold and LuEsther Mertz in 1953, operating as a magazine subscription business out of the family home. The company was

reformed as a New York limited partnership in 1957 and then converted into a New York limited liability company in 2002. ("Disclosure Statement," ECF Doc. # 271.) As the Company grew, PCH introduced its first direct mail sweepstakes starting in 1967. When coupled with TV advertising and increased name recognition thanks to the PCH "Prize Patrol" and their "iconic Big Check," the company experienced extended growth. (*Id.* at 5-6.) By the 1990s, PCH began to diversify their offerings, first by adding digital marketing and acquiring websites offering online games, quizzes, sweepstakes, and a search engine. (*Id.* at 6-7.) In 2017 revenue for PCH neared $1 billion. (*Id.* at 7).

However, shifts in consumer behavior and the rise of major commerce platforms such as Amazon and Walmart resulted in decreasing consumer demand and revenue within the company's commerce business. As a result, PCH wound down its commerce division in 2024 and shifted to offering free-to-play, chance-to-win digital games and entertainment across a network of web and app-based entertainment properties. (*Id.*) These websites and apps attracted approximately 36 million customers in 2024, allowing the company to serve targeted advertising to these users and maximize ad revenue by offering attractive placements to advertisers. (*Id.*)

### B. Relevant Case History

On April 9, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. (Voluntary Petition, ECF Doc. # 1 ¶ 3.) The Debtor continued to operate its business and manage its property as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. (*Id.,* at ¶ 4.) On April 24, 2025, the U.S. Trustee appointed the official committee of unsecured Creditors (the "Committee"). (First Omnibus Objection ¶ 5.)

On May 21, 2025, the Court entered the *Order Establishing Deadline for Filing Proofs of Claim and Approving the Form and Manner of Notice Thereof* (the "Bar Date Order," ECF Doc. # 115) fixing a deadline (the "Bar Date"), establishing procedures for filing proofs of claim against the Debtor and its estate pursuant to Federal Rule of Bankruptcy Procedure 3003(c)(3) and approving the form and manner of service thereof. The Bar Date Order fixed July 14, 2025, at 5:00 P.M. as the Bar Date by which all Claims which arose prior to April 9, 2025, other than those types of Claims specifically excepted thereby, had to be filed. The Bar Date Order also set a Bar Date of October 6, 2025 with respect to governmental entities. On August 2, 2025, the Court entered the Order Approving Omnibus Claim Objection Procedures (the "Omnibus Claim Objection Procedures Order," ECF Doc. # 237.)

According to the Amended Disclosure Statement (ECF Doc. # 280) filed on October 30, 2025, approximately 200 claims were filed against the Debtor: (i) five (5) administrative claims in the amount of approximately $5 million and other unliquidated amounts; (ii) three (3) secured claims in the amount of approximately $20,000 and other unliquidated amounts; (iii) approximately 65 priority claims in the amount of approximately $1.5 million; and (iv) approximately 180 general unsecured claims in the amount of approximately $3.7 billion. (ECF Doc. # 280, at 9.)

On December 22, 2025, the Court entered a Memorandum Opinion (ECF Doc. # 325) and Order (ECF Doc. # 326) confirming the Debtor's amended liquidation plan.

### C. The First Omnibus Objection

1. Debtors Objection

On November 18, 2025, the Debtor filed the First Omnibus Objection seeking an order to disallow and expunge the following claims: (i) the unliquidated claims identified on Schedule 1

to the First Proposed Order (collectively, the "Unliquidated Claims"); (ii) the claims identified

on Schedule 2 to the First Proposed Order for which insufficient support was provided and for

which the Debtor's books and records reflect no obligation (collectively, the "Unsupported

Claims"); and (iii) the late filed claims identified on Schedule 3 to the First Proposed Order

(collectively, the "Late Filed Claims").  (First Omnibus Objection at 2.)

According to the First Omnibus Objection and First Henrich Decl., the Debtor has

received the proofs of claim filed and found that the Unliquidated Claims listed on Schedule 1 to

the First Proposed Order either leave open or unliquidated the amount claimed, and/or do not

contain adequate supporting documents or facts to verify the claimed amounts.  (First Henrich

Decl. ¶ 6.)  According to Schedule 1 to the First Proposed Order, there were 43 Unliquidated

Claims filed.  (First Proposed Order, Schedule 1.)

The Debtor has determined that its books and records do not reflect owing to the

claimants of the Unsupported Claims listed on Schedule 2 to the First Proposed Order.  (First

Henrich Decl. ¶ 7.) According to Schedule 2, there are 13 Unsupported Claims.  (First Proposed

Order, Schedule 2.)

Finally, the Debtor seeks to have all Late Filed Claims, which the Debtor defines as filed

after the Bar Date, disallowed and expunged.  (Henrich Decl. ¶ 8.)  There are 25 claims listed in

Schedule 3 of the First Proposed Order that the Debtor seeks to be disallowed and expunged as

Late Filed Claims.  (First Proposed Order, Schedule 3.)

   2.   Various Claimant's Reponses

   a.  *Aloysius Agada*

Aloysus Agada ("Mr. Agada") has filed nine (9) documents on the docket responding to

the First Omnibus Objection and the Debtor's basis for objecting to his claim as an Unliquidated

Claim.  While each of the filed documents differ slightly, Mr. Agada's general argument is largely the same throughout.  According to Mr. Agada, he received a letter in April 2023 from Susan Williamson, former Vice President of the PCH, which he claims confirms he won a $20 million award.  (ECF Doc. # 314.)  According to a later filing, Mr. Agada states that he spoke with Debtor's counsel who informed Mr. Agada that the letter appears to be promotional material from PCH.  (ECF Doc. # 328.)  Mr. Agada vehemently disagrees with that characterization.  (*Id.*)  A copy of the letter Mr. Agada claims is from Ms. Williamson is below:



### b.  Sonya Gonzales a.k.a. Sonya Valenzuela

Sonya Gonzales *a.k.a.* Sonya Valenzuela ("Ms. Gonzales") has filed five (5) documents on the docket responding to the First Omnibus Objection and the Debtor's basis for objecting to her claim as an Unsecured Claim and a Late Filed Claim.  According to Ms. Gonzales, she did not receive notice of the Debtor's Chapter 11 filing, and emails to both Counsel for the Debtor

and the Claims agent went unanswered until the bar date had passed.  (ECF Doc. # 299 at 2.)

Ms. Gonzales contends that while the Debtor has records of her claim being $1.07, she has a

good faith basis for her $54 million claim.  (*Id.* at Ex. A.)  She claims that she received mail,

calls, and text messages from PCH confirming her winnings.  (*Id.* at Ex. B.)  She has included

screenshots of the conversations she had with PCH, including the below message:



(ECF Doc. # 301 at 5.)

> ### c.   *Ga Lagbara*

Ga Lagbara ("Dr. Lagbara") mailed his response to the First Omnibus Objection to the

Debtor, which was ultimately filed by the Debtor (ECF Doc. # 343-1).  According to the Debtor,

Lagbara has made three claims of $1 billion, all of which are classified by the Debtor as

Unsecured Claims and one of which was filed after the Bar Date.  (First Proposed Order at

Schedule 2, Schedule 3.)  While Dr. Lagbara's response is somewhat unclear, he appears to be

seeking monetary compensation for the two and half (2.5) billion tokens that he has won through games played on the PCH platform.  (ECF Doc. # 343-1, at 1.)  Dr. Lagbara has included screenshots of the PCH website where customers are able to exchange tokens for chances to win Visa, JCPenney, and Walmart gift cards.  (*Id*. at 17-21.)

> #### d.  Marquise Latrel Nelson

Marquise Latrel Nelson ("Mr. Nelson") filed his response to the First Omnibus Objection after the objection deadline.  His counsel, Morgan Berry ("Mr. Berry"), claimed that he attempted to file the response prior to the deadline but had trouble with the Court's e-filing system.  (ECF Doc. # 343-2, at 1.)  Mr. Berry provided a certificate of service (signed by Mr. Berry) indicating that Debtor's counsel and the U.S. Trustee were served on January 2, 2026. (*Id.*, at 2.)

According to the Nelson Response, Mr. Nelson filed the proof of claim based on representations made by the Debtor in promotional materials distributed to Mr. Nelson which stated that purchases from PCH would increase his chances to win a "grand prize" sweepstakes. (Nelson Response ¶¶ 1-3.)  Mr. Nelson recognizes that the Debtor's books might not reflect an award obligation to him, but that the Debtor's "bad faith," "deceptive," and "malicious" representations to consumers, including Mr. Nelson, should lead the Court to award Mr. Nelson the grand prize of $10 million.  (*Id.* ¶¶ 6-9.)  Mr. Nelson included many examples of PCH's promotional materials in his response, with the below containing examples of the claimed "deceptive" language:

9



(*Id.*, at Ex. 2.)

3. Debtor's Replies

On January 9, 2026, the Debtor filed three Certificates of No Objection (collectively, the "CNOs"): a CNO with respect to the Debtor's First Omnibus Objection (the "First CNO," ECF Doc. # 340), a CNO with respect to the Debtor's Second Omnibus Objection (the "Second CNO," ECF Doc. # 341), and a CNO with respect to the Debtor's Third Omnibus Objection (the "Third CNO," ECF Doc. # 342). The Second CNO and Third CNO indicate that the Debtor did

not receive any responses to the claims listed in the respective Omnibus Objections.  The First CNO indicates that the Debtor received only the above referenced responses from claimants.

In addition to the CNOs, the Debtor filed two replies to the responses filed by claimants. The Reply addresses the Agada Response, Lagbara Response, and the Gonzales Response.  The Reply notes that the Agada Claim, two of the Lagbara Claims, and the Gonzales Claim were all filed after the Bar Date.  (Reply ¶ 3.)  All claimants received adequate and timely notice of the Bar Date.  (*Id.* ¶ 7.)  The Sweeney Decl. also notes that, contrary to Ms. Gonzales' claim, Debtor's counsel did respond to Ms. Gonzales' request for assistance for the claims process for which they did not receive a reply.  (Sweeney Decl. ¶¶ 6-8, Exs. A, B.)  The Debtor also refutes the substance of each the three responses:

- Gonzales Claim:  Ms. Gonzales was not chosen as winner of a grand prize sweepstakes.  The Debtor believes that she was "victim of a scam" as PCH never informed individual award winners in the manner that Ms. Gonzales was contacted – through postcards or calls.  (Cooper Decl. ¶ 10.)  Additionally, the individual who contacted Ms. Gonzales claiming to be with PCH was never employed by the Debtor.  (*Id*. ¶ 11.)

- Agada Claim:  Mr. Agada was never the winner of the prize he is claiming.  The mailings he received from the Debtor, including the letter from Ms. Williamson, were promotional and marketing materials.  (*Id.* ¶¶ 13-14.)

- Lagbara Claim:  Dr. Lagbara was never the winner of a $1 billion prize from the Debtor.  The tokens that he has won through the Debtor's games have no monetary value and could only be used to redeem entries into prize drawings.  (*Id.* ¶¶ 15-16.)

Debtor filed their Supplemental Reply to separately address the Nelson Response given Mr. Nelson's late filing.  The Supplemental Reply notes that while Mr. Nelson claims that he is owed $10 million due to false promises made by the Debtor that "a purchase from the Debtor increased the chance of winning the grand prize," (Nelson Response ¶ 3), no such statements were made by PCH (Supplemental Reply ¶ 5).  Debtor contends that Mr. Nelson has failed to plead sufficient facts to establish the Debtor had engaged in fraudulent conduct, and that none of the promotional materials that the Debtor sent Mr. Nelson created an enforceable promise on the Debtor.  (*Id.* ¶ 7.)  Mr. Nelson was never informed that he was a winner of a giveaway.  (*Id.* ¶¶ 10-11.)

### D.  Second Omnibus Objection

The Debtor filed their Second Omnibus Objection on November 18, 2025.  The Debtor is seeking to disallow and expunge (i) the amended, superseded, or duplicative claims identified in Schedule 1 to the Second Proposed Order (the "Amended and Duplicate Claims" and (ii) claims that have already been satisfied which are identified in Schedule 2 to the Second Proposed Order (the "Satisfied Claims").  (Second Omnibus Objection at 2.)  For both types of claims at issue in the Second Omnibus Objections, the Debtor is seeking to limit double recovery by claimants. The Debtor is seeking to disallow Amended and Duplicate Claims to ensure that creditors receive single satisfaction for their claims; the objection would not prejudice claimants from seeking relief for any surviving claims.  (*Id.* ¶¶ 21-23.)  The Debtor is seeking to disallow the Satisfied Claims as they have already been satisfied by the Debtor.  (*Id.* ¶ 25.)

According to the Second Proposed Order, there are 28 Amended and Duplicate claims identified by the Debtor (Second Proposed Order, Schedule 1) and 38 Satisfied Claims (Second Proposed Order, Schedule 2).  No responses to any of the objected to claims have been filed.

### E. Third Omnibus Objection

The Debtor filed their Third Omnibus Objection on November 19, 2025 seeking to reduce and allow certain claims identified in Schedule 1 of the Third Proposed Order at their net present value as of the filing date of the Voluntary Petition, less any post-petition payments made.  (Third Omnibus Objection at 2.)  The Debtor had initially applied an 11% net present value discount to all of the Debtor's annuity style installment prize claims to account for the prizes being awarded in installments after the petition date.  (*Id.* ¶ 24.)  The Debtor claims that this calculation is necessary to ensure the claims listed in Schedule 1 are treated consistently with other creditor claims.  (*Id.* ¶ 26.)  According to Schedule 1, there are 17 claims that the Debtor is seeking to revalue.  (Third Proposed Order, Schedule 1.)  No responses to the 17 claims were filed.

## II.  <u>LEGAL STANDARD</u>

Section 501(a) of the Bankruptcy Code provides that "[a] creditor . . . may file a proof of claim" to claim an interest in a debtor's bankruptcy estate.  11 U.S.C. § 501(a).  Section 502(a) provides that a claim or interest, properly filed, "is deemed allowed, unless a party in interest . . . objects."  11 U.S.C. § 502(a).  "The proof of claim, if filed in accordance with section 501 and the pertinent Bankruptcy Rules, constitutes *prima facie* evidence of the validity and amount of the claim under Federal Rule of Bankruptcy 3001(f) and Code section 502(a)."  4 COLLIER ON BANKRUPTCY ¶ 502.02[3][f] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019). Pursuant to Federal Bankruptcy Rule 3001(f), a claimant establishes a *prima facie* case against a debtor upon filing a proof of claim alleging facts sufficient to support the claim.  FED. R. BANKR. P. 3001(f).

Under section 502 of the Bankruptcy Code, if an objection is made, the court shall

determine the amount of such claim "as of the filing date." *In re Solutia, Inc.*, 379 B.R. 473, 483 (Bankr. S.D.N.Y. 2007) (citation omitted). Section 502(b)(1) provides that claims may be disallowed if they are "unenforceable against the debtor and property of the debtor, under any agreement or applicable law." 11 U.S.C. § 502(b)(1).

"To overcome this *prima facie* evidence, an objecting party must come forth with evidence which, if believed, would refute at least one of the allegations essential to the claim." *Sherman v. Novak* (*In re Reilly*), 245 B.R. 768, 773 (2d Cir. B.A.P. 2000). If the objector does not "introduce[] evidence as to the invalidity of the claim or the excessiveness of its amount, the claimant need offer no further proof of the merits of the claim." 4 COLLIER ON BANKRUPTCY ¶ 502.02 (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2019). But by producing "evidence equal in force to the *prima facie* case," an objector can negate a claim's presumptive legal validity, thereby shifting the burden back to the claimant to "prove by a preponderance of the evidence that under applicable law the claim should be allowed." *Creamer v. Motors Liquidation Co. GUC Trust* (*In re Motors Liquidation Co.*), 2013 WL 5549643, at *3 (S.D.N.Y. Sept. 26, 2013) (internal quotation marks omitted); *see also In re Allegheny Int'l, Inc.*, 954 F.2d 167, 173–74 (3d Cir. 1992) (laying out identical burden-shifting framework).

Bankruptcy Rule 3007(d) permits a Debtor make omnibus objections to certain claims when the basis for such objection is that the claims in question:

(a) duplicate other claims;

(b) have been filed in the wrong case;

(c) have been amended by subsequently filed proofs of claim;

(d) were not timely filed;

(e) have been satisfied or released during the case in accordance with the [Bankruptcy]

14

Code, applicable rules, or a court order;

(f) were presented in a form that does not comply with the applicable rules, and ... the

objector is unable to determine the validity of the claim because of the noncompliance;

(g) are interests, rather than claims; or

(h) assert priority in an amount that exceeds the maximum amount under [section] 507 of

the [Bankruptcy] Code.

*In re Endo Int'l PLC*, 2024 WL 5114119, at *3 (Bankr. S.D.N.Y. Dec. 13, 2024) (citing FED. R.

BANKR. P. 3007(d)).

### III.    DISCUSSION

The Court **SUSTAINS** all the claim objections listed in the Omnibus Objections (other

than those that the Claims Administrator has adjourned his reply), both those for which no

response was received and for those which a response was received.

#### A.  Claims for Which Responses Were Filed

The Debtor has met its burden for establishing a *prima facie* case for rejecting each of the

respective creditor claims for which a response was received.  None of the creditor responses

meet the burdens of proof required for the claims to be allowed.

##### 1.  The Agada Claim

The Debtor objects to the Agada Claim as unliquidated due to a failure to contain

adequate supporting documentation to verify the claim and as late filed.  (First Proposed Order,

Schedule 1 at 1.)  Mr. Agada's response to the Debtor's objection fails to establish the validity of

his claim.  The documents that Mr. Agada has appended to his briefing, including various

mailers sent by PCH to Mr. Agada, consisted of promotional materials indicating that Mr. Agada

would be eligible to win PCH sweepstakes.  The letter that Mr. Agada claims states that he won a

prize of $20 million (ECF Doc. # 307) only offers him the opportunity to win the prize.  It is

possible that Mr. Agada misunderstood the various mailings he received as granting him the

prize as a result of the purchases he made from PCH.

The Debtor notes that a winner was drawn for the $20 million prize in question, and their

records indicate that it was not Mr. Agada.  (Cooper Decl. ¶ 14.)  The information and

documents provided to the Court by Mr. Agada are insufficient to prove by a preponderance of

the evidence that he is the rightful winner of the $20 million prize.  Therefore, the Court

**SUSTAINS** the Debtor's objection to the Agada Claim.

### 2. The Gonzales Claim

The Debtor objects to the Gonzales Claim as both unsupported by the Debtor's books and

records and for being late filed.  According to the Debtor, their books reflect a $1.07 obligation

to Ms. Gonzales for a refund check, not the $54 million that Ms. Gonzales claims.  (First

Proposed Order, Schedule 2 at 11.)  Ms. Gonzales provided the Court information that she

purports establishes proof of her claim, including screenshots of messages and voicemails

received by her from individuals who claimed to work for PCH with her response.  (ECF Doc. #

301 at 5).  However, information provided by the Debtor suggests that the correspondence cited

to by Ms. Gonzales was not with PCH or an agent thereof; Mr. Cooper attests that PCH never

notified prize winners through calls or postcard, only through in person appearances by the PCH

Prize Patrol.  (Cooper Decl. ¶ 10.)  Mr. Cooper also notes that he was not aware of the individual

who contacted Ms. Gonzales as a PCH employee and did not recognize the phone number that

contacted her as belonging to PCH.  (*Id.* ¶ 11.)

It appears that Ms. Gonzales was victim of a scam, with the individual claiming to be

with PCH almost certainly not being associated with the Debtor.  Given that Ms. Gonzales has

not provided the court any additional information supporting her claim aside from these messages, the Court cannot find that she has met her burden of proof. As such the Court **SUSTAINS** the Debtor's objection to the Gonzales Claim.

### 3. The Lagbara Claims

Debtor objects to the Lagbara Claims as both unsupported by the Debtor's books and records and, for one of the Dr. Lagbara claims, as being late filed. (First Proposed Order, Schedule 2 at 2.) According to the Debtor Dr. Lagbara's sole claim is worth $5.00, not the $1 billion that Dr. Lagbara initially filed his claims for. (*Id.*) Dr. Lagbara notes that he has a substantial number of "tokens" that he has won through playing games on the PCH platform (Lagbara Response at 1), but these tokens do not have a monetary value. (Cooper Decl. ¶ 16.) The purpose of the tokens was solely for redemption for entries in PCH drawings, none of which guaranteed winnings. (*Id.*) Other than claiming ownership of the tokens, Dr. Lagbara does not establish additional support for his claims. Therefore, the Debtor's objections regarding the Lagbara Claims are **SUSTAINED**.

### 4. The Nelson Claim

The Debtor objects to the Nelson Claim as unsecured and not reflected in the Debtor's books and records. (First Proposed Order, Schedule 2 at 6.) Mr. Nelson does not contest that the Debtor's records do not indicate an obligation to Mr. Nelson. (Nelson Response ¶ 5.) Mr. Nelson seems to argue – the response is not forthcoming on what exactly Mr. Nelson is alleging – that he relied on promotion materials sent by the Debtor containing "deceptive" and "malicious" promises that purchases made from PCH would increase his chances in winning various sweepstakes. (*Id.* ¶¶ 3, 8.) While not outright stated by Mr. Nelson in his response, it

appears that he is claiming that the Debtor defrauded him through making false promises in the marketing materials sent to him.

In order to satisfy the requirements of common law fraud, a party must show that "(1) the defendant made a material false representation, (2) the defendant intended to defraud the plaintiff thereby, (3) the plaintiff reasonably relied upon the representation, and (4) the plaintiff suffered damage as a result of such reliance." *Banque Arabe et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 153 (2d Cir. 1995). Mr. Nelson fails to satisfy the first requirement of a fraud claim, showing that the Debtor made a materially false statement. None of the promotional materials appended to the Nelson Response suggest, as Mr. Nelson purports, that purchases from PCH would increase his opportunity to win the prize awards. The Nelson Response contains two types of promotional materials – mailings with information regarding prize drawings and mailings promoting the products being sold by the Debtor (*See, e.g.*, Nelson Response Ex. 2) – neither of which make claims suggesting purchases increase one's chance of winning future drawings. In fact, PCH regularly advertised that there was "no purchase necessary" to enter their drawings. (Cooper Supp. Decl. ¶ 9.) The promotional materials cited by Mr. Nelson make clear that he can *enter* the grand prize sweepstakes and make no assurances as to whether he will be drawn as the winner. (Nelson Response, Ex. 2.)

Mr. Nelson has failed to show that the Debtor made a materially false representation in the promotional materials he has appended to his response. Therefore, he has failed to meet his burden of proof and the Debtor's objection is **SUSTAINED**.

### B. Claims for Which no Response was Filed

Debtors filed the First, Second, and Third CNOs indicating that only the responses discussed above were received by the Debtor in response to the Omnibus Objections. The

Debtor has sufficiently refuted the remaining claims referenced in the Omnibus Objections.

Therefore, the Court **SUSTAINS** all remaining objections.

## IV.    <u>CONCLUSION</u>

The Court **SUSTAINS** all objections to Claims made in the Omnibus Objections, except

to the claims of Prize Winner 1, Prize Winner 14, and Prize Winner 32, of which the Plan

Administrator has adjourned his reply.

Separate orders sustaining the Omnibus Objections will be entered.


Dated:          February 4, 2026
                New York, New York


                                    _____*Martin Glenn*_____
                                        MARTIN GLENN
                                Chief United States Bankruptcy Judge